## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **SHANNON PHILLIPS** | : | **CIVIL ACTION NO. 19-19432** |
| **Woolwich Township, NJ 08085** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **STARBUCKS CORPORATION d/b/a/** | : | |
| **STARBUCKS COFFEE COMPANY** | : | |
| **2401 Utah Avenue Suite 800** | : | |
| **Seattle, WA 98134** | : | |
| | : | |
| **Defendant.** | : | |

## SECOND AMENDED COMPLAINT

### I.    INTRODUCTION

Plaintiff, Shannon Phillips, ("Plaintiff"), an approximately thirteen year employee, was a loyal, dedicated and high performing Regional Director for Defendant Starbucks Corporation d/b/a Starbucks Coffee Company ("Defendant") tasked with overseeing operations of Defendant's retail operations in Southern New Jersey, the Philadelphia region, Delaware and parts of Maryland. Following an arrest of two black men in a store within her region in April, 2018, Plaintiff worked tirelessly on behalf of Defendant to repair community relations while ensuring employee and customer safety. Weeks after the arrests and surrounding media coverage, Defendant took steps to punish white employees who had not been involved in the arrests, but who worked in and around the city of Philadelphia, in an effort to convince the community that it had properly responded to the incident. As part of Defendant's efforts, Plaintiff was ordered to place a white employee (who had not had any involvement in the arrests) on administrative leave because of an allegation of

discriminatory conduct that Plaintiff knew to be false. Plaintiff provided information to Defendant that proved that the details of the allegation were factually impossible amid Defendant's practices. Defendant ignored the information provided by Plaintiff. At the same time, Defendant did not take any steps to punish a black district manager who had been responsible for the management of the location where the arrests took place. Plaintiff was notified of her termination less than one month after the arrests on May 9, 2018. Plaintiff now brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. §2000e, *et. seq.* ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:501, *et seq.*

## II.  PARTIES

1.      Plaintiff, Shannon Phillips, is an individual and citizen of New Jersey.

2.      Plaintiff is Caucasian/white.

3.      Defendant Starbucks Corporation d/b/a Starbucks Coffee Company is organized under the laws of Washington with its headquarters located at 2401 Utah Avenue, South, Seattle, Washington, 98134.

4.      At all material times, Defendant maintained locations throughout the State of New Jersey, including without limitation, in Haddonfield and other locations in Camden, County, New Jersey.

5.      At all times material hereto, Plaintiff worked out of her home office in Woolwich, New Jersey and traveled to Defendants' locations in New Jersey, Delaware, Maryland and Pennsylvania.

6.      Defendant is engaged in an industry affecting interstate commerce and regularly does business in the State of New Jersey.

7.      At all times material hereto, Plaintiff worked for Defendant from her home in Woolwich, New Jersey and throughout the region assigned to her.

8.      At all times material hereto, Defendant employed more than fifteen (15) employees.

9.      At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

10.     At all times material hereto, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

11.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes that form the basis of this matter.

## III.   JURISDICTION AND VENUE

12.     The causes of action which form the basis of this matter arise under Title VII, Section 1981, and the NJLAD.

13.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

14.     The District Court has jurisdiction over Count II (Section 1981) pursuant to U.S.C. §1331.

15.     The District Court has jurisdiction over Counts III (NJLAD) pursuant to 28 U.S.C. §1332 since the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of costs and interest and as there is complete diversity of citizenship as Plaintiff is a citizen of New Jersey and Defendant is a citizen of Washington.

16.     Venue is proper in this District Court under 28 U.S.C. §1391 (b) and 42 U.S.C. §2000e-5(f).

17.     On or about May 22, 2018, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") complaining of acts of discrimination alleged herein. Attached hereto, incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of discrimination (with personal identifying information redacted).

18.     On or about July 30, 2019, the EEOC issued the Plaintiff a Notice of Right to Sue for her Charge of Discrimination. Attached hereto and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

19.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS

20.     Plaintiff was hired by Defendant in or about December, 2005 as a District Manager based out of Youngstown, Ohio.

21.     Amid her exemplary performance, Plaintiff was promoted in or about 2011 to Regional Director of Operations for a region encompassing Philadelphia and some Pennsylvania suburbs, Southern New Jersey, Delaware and parts of Maryland. This region was known to Defendant as "Area 71." In total, Plaintiff oversaw operations for approximately one hundred (100) retail stores.

22.     Plaintiff relocated to New Jersey for the Regional Director of Operations ("RD") position.

23.     At all times material hereto, Plaintiff was based out of her home office in Woolwich, New Jersey.

24.     Plaintiff spent more than 51% of her time working for Defendant in New Jersey, with the remaining time divided among Delaware, Maryland and Pennsylvania.

25.     Plaintiff's schedule/routine was such that she worked from her home office on Mondays and Fridays and visited her direct reports in their stores in southern New Jersey, Delaware, Maryland and Pennsylvania on Tuesdays, Wednesdays and Thursdays.

26.     On several occasions each month, Plaintiff hosted trainings, round-table discussions or team meetings at Defendant's Haddonfield, New Jersey location as it was the only location in Plaintiff's region that had meeting space/a training room.

27.     As RD, Plaintiff managed District Managers reporting to her and their portfolio stores. In addition, and without limitation, she was tasked with touring with real estate partners and brokers to find new locations for stores; developing new stores, partnering with other departments to coordinate resources such as vendors, assessing/determining financial impact of new stores on existing stores, managing special events (such as the Pope's visit to Philadelphia) and coordinating community engagement efforts on behalf of Defendant.

28.     Plaintiff initially reported to Joe Hallinan, Regional Vice President. Upon Hallinan's retirement, Plaintiff reported to Victor Huetz ("Huetz"), Regional Vice President.

29.     Beginning in or about 2015, Plaintiff reported to Camille Hymes ("Hymes") (black), Vice President, Operations.

30.     At all material times, Plaintiff received positive performance evaluations and related merit driven bonuses and salary increases.

31.     Approximately nine (9) District Managers ("DM") reported to Plaintiff. Each DM had responsibility for between ten and fourteen stores each and managed the Store Managers ("SM") assigned to each retail location.

32.     Two DMs were assigned stores in Philadelphia and reported to Plaintiff: Ben Trinsey ("Trinsey") (white) and Paul Sykes ("Sykes") (black).

33.     Sykes's stores included a retail location at 18th and Spruce Street in Philadelphia, PA.

34.     On or about April 12, 2018, two Black men were arrested at the 18th and Spruce Street location.

35.     Plaintiff was not involved in the arrests in any way.

36.     Upon learning of the arrest from Sykes, Plaintiff promptly notified Hymes from her New Jersey office.

37.     Plaintiff immediately took steps to learn additional information about the events leading up to the events and to address strong community reaction following the events.

38.     At the same time, amid substantial public sentiment against Defendant, Plaintiff actively sought to ensure the safety of Defendant's employees and customers.

39.     On or about April 14, 2018, Plaintiff went to the 18th and Spruce Street store with Hymes. Plaintiff worked with Sykes and the other Philadelphia area DM, Trinsey, to formulate a plan of support for Defendant, its stores and customers across the city of Philadelphia and to address the community's concerns about the arrests. For example, and without limitation:

  a.   Plaintiff brought all her DMs into the city with some of their SMs to offer additional support to Defendant's stores and customers;

  b.   Plaintiff organized teams of management-level employees to work at the approximately twenty Center City Philadelphia locations as hourly workers were afraid to come to work amid community protests at Defendant's retail locations;

  c.   Plaintiff worked closely with her supervisors to understand what had happened at the 18th and Spruce Location in an effort to determine appropriate next steps; and,

  d.   Plaintiff organized multiple round-table events for Defendant's company-founder and Chairman Emeritus, Howard Schultz, in Philadelphia so that Defendant could

properly understand the issues surrounding the arrests and adequately address the public's reaction.

40. By April 14, 2018, amid the arrests making local and national news, protests from the public took place outside and inside of the 18th and Spruce Street store.

41. At all material times, Plaintiff actively worked with her subordinates and her superiors to coordinate Defendant's efforts at "crisis management" and ensure the safety of Defendant's employees and customers at all of Defendant's stores within the City of Philadelphia.

42. Plaintiff also took steps to ensure that the retail locations within her area were a safe and welcoming environment for all customers, regardless of race.

43. On April 23, 2018, Hymes encouraged Plaintiff to apply for a Temporary Limited Assignment position that was being created in Philadelphia to support Defendant's Government and Community Affairs unit.

44. Plaintiff was well qualified for the position and she was interviewed. Substantial portions of the interview took place in New Jersey.

45. Following her interview, she was told on or about April 26, 2018 that the position was being put "on hold."

46. On or about May 2, 2018, Defendant reached a settlement with the two men who had been arrested. According to Defendant's website, "[t]he agreement between the parties stemming from the events in Philadelphia on April 12 will include a financial settlement as well as continued listening and dialogue between the parties and the specific action and opportunity."

47. Defendant further stated, "And Starbucks will continue to take actions that stem from this incident to repair and reaffirm our values and vision for the kind of company that we want to be."

48.     On or about May 4, 2018, Hymes told Plaintiff to take the weekend off. Hymes further told Plaintiff that she wanted to speak to employees without Plaintiff being present.

49.     On or about May 7, 2018, Plaintiff was called to a meeting with Hymes, Nathalie Cioffi ("Cioffi") (white), Partner Resources Director and Paul Pinto ("Pinto") (white),Vice President, Partner Resources.

50.     Plaintiff was ordered to set up a meeting with Trinsey the following morning and place him on suspension.

51.     Trinsey was not involved in the April 12th arrests nor did he have any responsibility for the 18th and Spruce Street store.

52.     Trinsey did not have any performance issues.

53.     Defendant told Plaintiff there would be an investigation into Trinsey's conduct, including allegations of race discrimination that had been made against him.

54.     Plaintiff objected to Defendant's treatment of Trinsey and stated that Trinsey is not racist and that she had never observed any race discriminatory comments or conduct by Trinsey.

55.     Plaintiff further explained that Trinsey was a fifteen (15) year employee of Defendant and that he volunteered every week with YouthBuild Philadelphia, an organization primarily servicing young, African American/black individuals.

56.     Plaintiff believed that Trinsey was being falsely accused of racial bias because he was white and because Defendant was attempting to quell community response to actions taken by Defendant in which Trinsey had no involvement.

57.     In response, Hymes stated that non-white, salaried managers at Trinsey's stores had made claims that they were paid less than white employees.

58.     Plaintiff continued to object to Defendant's treatment of Trinsey and explained to Hymes that Trinsey could not, by Defendant's policies and procedures, determine salaried employee compensation. In fact, Plaintiff told Hymes, Trinsey could not have *any* input on employee salaries.

59.     Plaintiff further stated that Defendant's required process is to send employee resumes upon hire to Partner Resources. Upon receipt of the resume, Partner Resources, and not any DM, sets employee salaries.

60.     Despite the information that Plaintiff provided to Hymes and Pinto indicating that the race-based allegations against him were factually impossible, Plaintiff was ordered to put Trinsey on suspension.

61.     In contrast, Defendants did not take any action against Sykes, who is African American/black and was the DM responsible for the store where the men had been arrested. Sykes' subordinate, who he had promoted to the SM position, was responsible for making the call to police that lead to the arrests and the subsequent community reaction.

62.     On that same day, from her New Jersey office, Plaintiff telephoned Ebony Johnson ("Johnson") (black), Partner Resource Manager, and complained that Trinsey was being treated unfairly because of his race.

63.     Johnson told Plaintiff "trust the process" and further instructed Plaintiff to put Trinsey on suspension.

64.     On May 8, 2018, Plaintiff was told by Hymes that she should come to a meeting the following day ready to negotiate her separation package as she was being terminated.

65.     The only reason given for her pending termination was "the situation is not recoverable."

66.     When Plaintiff told Hymes, upon learning of her pending termination, that her performance had been exceptional and that she had last received a bonus only the month prior, Hymes agreed.

67.     On May 9, 2018, Hymes and Pinto formally notified Plaintiff of her termination, effective immediately.

68.     Defendant did not articulate any stated reason other than "the situation is not recoverable."

69.     Defendant's stated reason is pre-text for race discrimination.

70.     Plaintiff was replaced by substantially less qualified employees who had not complained of race discrimination by Defendant and had not been working in the region at the time of the arrests.

71.     Plaintiff's race was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including without limitation, in connection with her termination.

72.     Plaintiff's complaints of race discrimination were a motivating and/or determinative factor in Defendant's discriminatory and retaliatory treatment of Plaintiff, including without limitation, in terminating her.

73.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

74.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

75.     Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights.

76.     The conduct of Defendant, as set forth above, was outrageous and warrants the imposition of punitive damages against Defendant.

## COUNT I - TITLE VII

77.     Plaintiff incorporates by reference paragraphs 1 through 76 above, as if set forth herein in their entirety.

78.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

79.     Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights, and warrant the imposition of punitive damages.

80.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

81.     Plaintiff suffered irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

82.     No previous application has been made for the relief requested herein.

## COUNT II – SECTION 1981

83.     Plaintiff incorporates by reference paragraphs 1 through 82 above, as if set forth herein in their entirety.

84.     By committing the foregoing acts of discrimination against Plaintiff, Defendant has violated Section 1981.

85.     Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights, and warrant the imposition of punitive damages.

86.     As a direct and proximate result of Defendant's violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

87.     Plaintiff suffered irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

88.     No previous application has been made for the relief requested herein.

## COUNT III - NJLAD

89.     Plaintiff incorporates herein by reference paragraphs 1 to 88 above, as if set forth herein in their entirety.

90.     Defendant, by the above-described discriminatory and retaliatory acts, has violated the NJLAD.

91.     Defendant's conduct as set forth herein was especially egregious.

92.     Members of Defendant's upper management had actual participation in, or willful indifference to, Defendant's wrongful conduct described herein, and their conduct warrants the imposition of punitive damages against Defendant.

93.     As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorney's fees and costs.

94.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant' discriminatory, retaliatory, and unlawful acts unless and until this Court grants the relief requested herein.

95.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a. Declaring the acts and practices complained of herein to be in violation of Title VII;

b. Declaring the acts and practices complained of herein to be in violation of Section 1981;

c. Declaring the acts and practices complained of herein to be in violation of the NJLAD;

d. Enjoining and permanently restraining the violations alleged herein;

e. Entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

f. Awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, which Plaintiff has suffered as a result of Defendant's improper conduct;

g. Awarding compensatory damages to Plaintiff for past pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered as a result of Defendant's improper conduct;

h. Awarding punitive damages to Plaintiff under Title VII;

i. Awarding punitive damages to Plaintiff under Section 1981;

j. Awarding punitive damages to Plaintiff under the NJLAD;

k. Awarding Plaintiff other such damages as are appropriate under Title VII, Section 1981, and the NJLAD;

l. Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

m. Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACI LAW LLC**

Dated: August 5, 2020         BY:    */s/ Katherine C. Oeltjen*_____
                            Stephen G. Console, Esquire (040281983)
                            Katherine C. Oeltjen, Esquire (57372013)
                            1525 Locust Street, 9th Floor
                            Philadelphia, PA 19102
                            (215) 545-7676
                            *Attorneys for Plaintiff Shannon Phillips*

# IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **SHANNON PHILLIPS** | **:** | **Civil Action No. 2:19-cv-19432-RMB-AMD** |
| **Plaintiff,** | **:** | |
| **v.** | **:** | **CERTIFICATE OF SERVICE** |
| | **:** | |
| **STARBUCKS CORPORATION** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| | **:** | |

I, Katherine C. Oeltjen,  hereby certify that I caused the foregoing Stipulation to File a Second Amended Complaint with accompanying Second Amended Complaint was made available for viewing and downloading for all counsel of record via the Court's ECF system on this fifth day of August, 2020.

*/s/ Katherine C. Oeltjen*

Case 1:19-cv-19432-RMB-AMD Document 21 Filed 01/22/20 Page 16 of 23 PageID: 60

# EXHIBIT 1

| AMENDED CHARGE OF DISCRIMINATION | | AGENCY | CHARGE NUMBER |
| --- | --- | --- | --- |
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | | Q   FEPA<br>X   EEOC | 530-2018-02412 |

STATE OR LOCAL AGENCY: Pennsylvania Human Relations Commission; Philadelphia Commission on Human Relations

| NAME (Indicate Mr., Ms., Mrs.)<br>Shannon Phillips | | HOME TELEPHONE NUMBER *(Include Area Code)*<br>REDACTED |
| --- | --- | --- |
| STREET ADDRESS<br>REDACTED | CITY, STATE AND ZIP<br>Woolwich Township, NJ 08085 | DATE OF BIRTH<br>REDACTED |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one then list below)

| NAME<br>Starbucks Corporation;<br>Starbucks Coffee Company | NUMBER OF EMPLOYEES, MEMBERS<br>> 20 | TELEPHONE (Include Area Code)<br>(800) 782-7282 |
| --- | --- | --- |
| STREET ADDRESS<br>2401 Utah Avenue S. #800 | CITY, STATE AND ZIP<br>Seattle, WA 98134 | COUNTY<br>King |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>X Race   Q Color   Q Sex   Q Religion   Q National Origin<br>X Retaliation   Q Age   Q Disability   Q Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br><br>*Earliest*          *Latest* 05/09/2018 |
| --- | --- |

**The Particulars Are:**

**A.    1.    Relevant Work History**

I was hired by Respondents in or about December 2005. I held the position of Regional Director. I reported to Camille Hymes (black), Regional Vice President, since 2015. Hymes reports to Zeta Smith (black), Divisional Senior Vice President, who reports to Rossann Williams (white), Executive Vice President, President, U.S. Retail. Williams reports to Rosalind Brewer (black), Chief Operating Officer and Group President, who reports to Kevin Johnson (white), President and Chief Executive Officer. I worked out of my home office in New Jersey.

Respondents terminated my employment because of my race and because I had complained of race discrimination.

I consistently demonstrated excellent performance and dedication to Respondents. I performed my job duties and responsibilities in a highly competent manner. I received positive feedback throughout my employment at Respondents.

| X I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
| --- | --- |
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty or perjury that the foregoing is true and correct. | |
| Date:          Charging Party *(Signature)*:<br><br>5/22/18   *Shannon L. Phillips* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |



EEOC Charge of Discrimination
Page 2 of 4
Initials of Charging Party –

2.    Harm Summary

Respondents discriminated against me because of my race (white) and retaliated against me because of my complaints of race discrimination. Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following:

(a)  The following employees, among others, directly reported to me: Paul Sykes (black), District Manager for 18th and Spruce, Philadelphia; and Benjamin Trinsey (white), District Manager for East Center City, Philadelphia.

(b)  On April 12, 2018, two (2) black men were arrested at Respondents' 18th and Spruce, Philadelphia location.

(c)  The April 12, 2018 incident occurred at one (1) of the stores over which I was Regional Director. I was not involved in the April 12, 2018 incident.

(d)  On April 12, 2018, Sykes alerted me of the incident and I alerted Hymes.

(e)  On April 14, 2018, protests began outside of Respondents' 18th and Spruce, Philadelphia location, as people protested the arrest of the black individuals.

(f)   On April 16, 2018, Respondents terminated Holly Hylton (white), Store Manager for 18th and Spruce, Philadelphia. Hylton had followed Respondents' Safe and Welcoming policies in handling the April 12, 2018 incident.

(g)  On April 18, 2018, Respondents announced that it will close 8,000 of its stores on May 29, 2018 for racial bias training.

(h)  On April 23, 2018, Hymes encouraged me to apply for a Temporary Limited Assignment position that was being created in Philadelphia to support Government and Community Affairs.

(i)   On April 26, 2018, I interviewed with Shannon Boldizsar (white), Government and Community Affairs, Senior Manager, for the Temporary Limited Assignment position. Following the interview, I was told that Respondents had put the position on hold.

(j)   On May 2, 2018, Respondents reached a settlement with the two (2) black men who were arrested at Respondents' 18th and Spruce, Philadelphia location. According to Respondents' website, "The agreement between the parties stemming from the events in Philadelphia on April 12 will include a financial settlement as well as continued listening and dialogue between the parties and specific action and opportunity." Respondents' website also stated the following: "'I want to thank Donte and Rashon [the two (2) black men] for their willingness to reconcile,' said Kevin Johnson, ceo Starbucks. 'I welcome the opportunity to begin a relationship with them to share learnings and experiences. And Starbucks will continue to take actions that stem from this incident to repair and reaffirm our values and vision for the kind of company we want to be.'"

(k)  On May 4, 2018, Hymes called me and told me to take the weekend off, and that she, Smith, Williams, and Michael Scott (white), Regional Operations Coach, were visiting the stores over which I was Regional Director. The stated reason was to speak with employees at the stores, without me.



EEOC Charge of Discrimination
Page 3 of 4
Initials of Charging Party –

(l) On May 7, 2018, I was called into a meeting with Hymes, Nathalie Cioffi (white), Partner Resources Director, and Paul Pinto (white), Vice President, Partner Resources. I was instructed to set up a meeting for the next morning with Trinsey and place him on suspension. I was told that there would be an investigation into Trinsey's conduct, including allegations of race discrimination that had been made against him. I objected, stating that Trinsey was not racist, and that I never heard or observed any race discriminatory comments or conduct by Trinsey. I explained that Trinsey had been an employee of Respondents for approximately fifteen (15) years, and that Trinsey volunteers every week at YouthBuild Philly, where he works primarily with black individuals. Hymes stated that non-white salaried managers at Trinsey's store had made claims that they were paid less than white employees. I objected, stating that Trinsey had no input in salary or compensation decisions. I explained that Respondents' process is to send employees' resumes to Partner Resources, and that Partner Resources determines the salary for each employee. Pinto then stated that, in my conversation with Trinsey, I was not to make any reference to pay and equity—that I was only to reference the volume and seriousness of the allegations against him. I was instructed to tell Trinsey that the investigation would be expedited as quickly as possible, that I would be his contact person during the investigation, that he should not be in his stores or have contact with his employees, and that I would tell other employees that he was taking personal time off. I was told that Brian Dragone (white), District Manager, would cover Trinsey's stores going forward.

(m) On May 8, 2018, Cioffi and I met with Trinsey, and informed him that Respondents were placing him on suspension, effective immediately. Trinsey was blindsided.

(n) Respondents suspended Trinsey while taking no action against Sykes, who was the District Manager for 18th and Spruce, Philadelphia location.

(o) On May 8, 2018, I was called into a meeting with Hymes. She informed me that I would receive a meeting request to meet with her and Pinto the next day, and that I should come prepared to negotiate what I would want in a separation package. I was blindsided. Hymes stated that "the situation is not recoverable." I understood that the "situation" to which Hymes was referring was the race-based situation stemming from the April 12, 2018 incident at Respondents' 18th and Spruce, Philadelphia location. I told Hymes that my performance has been exceptional, and that I received bonuses in January and April 2018. Hymes agreed.

(p) On May 9, 2018, I was called into a meeting with Hymes and Pinto. My employment was terminated, effective immediately. I was presented with a separation agreement and release of all claims. I refused to sign the agreement.

(q) The stated reason for terminating my employment—that "the situation is not recoverable"—is code for the efforts by Respondents to discipline white, but not black, employees, in an effort to project to Respondents' employees and the public that Respondents do not discriminate against blacks on the basis of race, as well as code for Respondents not tolerating complaints of race discrimination from managers when the stated victim is white. It is further an admission by Respondents that my termination was a result of the racially charged and much publicized arrest of two (2) black individuals at Respondents' 18th and Spruce, Philadelphia location.

(r) Respondents provided no explanation, including the selection criteria, as to why I was terminated and the black employees were retained.



EEOC Charge of Discrimination
Page 2 of 4
Initials of Charging Party –

(s)  I was terminated because I am white.  If I was black, I would not have been terminated.

(t)  I was terminated because I complained of and objected to race discrimination.

(u)  Respondents did not provide me with any option to remain employed with Respondents.

(v)  Respondents did not suspend or terminate Sykes.

(w)  Linda Johnson (white), Regional Director, has taken over my job duties and responsibilities.  I am more qualified and experienced to perform my job duties and responsibilities than Johnson.

(x)  The race discrimination and retaliation because of my complaints of race discrimination to which I have been subjected at Respondents has caused me emotional distress.

B.  1.  **Respondents' Stated Reasons**

(a)  Respondents' stated reason for terminating my employment, that the situation was not recoverable, is an admission of race discrimination and/or retaliation because of my complaints of race discrimination and/or a statement made because of my race.

C.  1.  **Statutes and Bases for Allegations**

I believe that Respondents have discriminated against me based on my race (white), and have retaliated against me because of my complaints of race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, et seq. ("NJLAD"); the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"); and the Philadelphia Fair Practices Ordinance, as amended, Phila. Code § 9-1100, *et seq.* ("PFPO") as set forth herein. Respondents' discriminatory conduct also violated 42 U.S.C. § 1981 ("Section 1981").

**INFORMATION FOR COMPLAINANTS & ELECTION OPTION
TO DUAL FILE WITH THE
PENNSYLVANIA HUMAN RELATIONS COMMISSION**

**Shannon Phillips v. Starbucks Corporation; Starbucks Coffee Company**

EEOC No. _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.

**[Sign and date appropriate request below]**

__X__ I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

__X__ *I understand that false statements in this complaint are made subject to the penalties of*
18 *Pa. C.S. § 4904, relating to unsworn falsification to authorities.*

        X    *Shannon L. Phillips* 5/22/18
               Signature and Date

_____ I do not want my charge dual filed with PHRC

           _____
           Signature and Date

RECEIVED – EEOC
PHILADELPHIA D.O.
2018 MAY 22 P 5 10

Case 1:19-cv-19432-RMB-AMD Document 31 Filed 04/22/20 Page 22 of 23 PageID: 74

# EXHIBIT 2

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: **Shannon Phillips**
REDACTED
**Woolwich Township, NJ 08085**

From: **Philadelphia District Office**
**801 Market Street**
**Suite 1300**
**Philadelphia, PA 19107**

[ ] On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2018-03852** | **Legal Unit** | **(215) 440-2828** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Jamie R. Williamson_      7/30/2019

Enclosures(s)

**Jamie R. Williamson,**
**District Director**

*(Date Mailed)*

cc: **Danielle Mehallo**
**Starbucks**
**c/o Littler Mendelson, GSC**
**2301 McGee Street, 8th Floor**
**Kansas City, MO 64108**

**Emily Derstine Friesen, Esq.**
**CONSOLE MATTIACCI**
**1525 Locust Street, 9th Floor**
**Philadelphia, NJ 19102**