# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANNON PHILLIPS,<br><br>　　　　*Plaintiff*,<br>　v.<br><br>STARBUCKS CORPORATION d/b/a<br>STARBUCKS COFFEE COMPANY,<br><br>　　　　*Defendant*. | CIVIL ACTION NO.: 1:19-cv-19432<br><br>Hon. Joel H. Slomsky, U.S.D.J. |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO COMPEL DISCOVERY FROM THE DEFENDANT

|  |  |  |
|---|---|---|
| | | Respectfully Submitted,<br><br>**CONSOLE MATTIACI LAW, LLC** |
| Dated: June 10, 2021 | By: | */s/ Katherine C. Oeltjen*<br>Stephen G. Console, Esquire<br>Katherine C. Oeltjen, Esquire<br>Holly W. Smith, Esquire<br>1525 Locust Street, Ninth Floor<br>Philadelphia, PA 19102<br>(215) 545-7677<br><br>*Attorneys for Plaintiff,*<br>*Shannon Phillips* |

# **TABLE OF CONTENTS**

I. FACTUAL BACKGROUND..................................................................................................2

    A. Defendant's Assertion of Privilege Over All Documents Related To Its Internal Investigation Into Pay Disparities Within The Philadelphia Market……..3

    B. Defendant's Intentional Withholding Of Relevant And Responsive Documents Related To Paul Sykes' Separation…………………………………...5

II. LEGAL ARGUMENT ..........................................................................................................8

    A. Plaintiff is Entitled to Documents Related to Paul Sykes' Separation from Defendant And His Complaints About Decision-Maker In Plaintiff's Termination, Camille Hymes……………………………………………………...9

    B. Plaintiff is Entitled to Documents Related to Any Investigation Into Pay Disparities Within Defendant's Philadelphia Market Following the April 2018 Arrests So Long As the Defendant Continues To Use The Findings of The Investigation To Support Its Stated Reason For Plaintiff's Termination…...11

III. CONCLUSION..................................................................................................................14

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                        **Page(s)**

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d. Cir. 2006) ........................................11,12

*Casey v. Unitek Glob. Servs.*, 2015 U.S. Dist. LEXIS 15715 (E.D. Pa. Feb. 9, 2015) ........... 11,12

*Gaul v. Zep Mfg. Co.*, 2004 U.S. Dist. LEXIS 1990 (E.D. Pa. Feb. 4, 2004) .................................9

*In re Niaspan Antitrust Litig.*, 2018 U.S. Dist. LEXIS 87150 (E.D. Pa. May 23, 2018) ............. 12

*Inferrera v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 146007 (D.N.J. Dec. 20, 2011) .........9

*Lewis v. Fome Ins. Co.*, 1988 U.S. Dist. LEXIS 12882 (E.D. Pa. Nov. 17, 1988) .................. 8-10

*Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, 2008 U.S. Dist. LEXIS 72172 (D.N.J. Sep. 23, 2008) ........................................................................................................................................ 10

*Mikulan v. Allegheny Cty.*, 2017 U.S. Dist. LEXIS 83315 (W.D. Pa. May 31, 2017) ................ 12

*Moran v. Davita, Inc.*, 2008 U.S. Dist. LEXIS 74326 (D.N.J. Sep. 26, 2008) .............................12

*Northern v. City of Phila*, 2000 U.S. Dist. LEXIS 4278 (E.D. Pa. Apr. 4, 2000) ......................... 8

*Pacitti by Pacitti v. Macy's*, 193 F.3d 766 (3d Cir 1999) ............................................................... 8

*Robbins v. Camden City Bd. of Education*, 105 F.R.D. 49 (D.N.J. 1985) .................................... 9

*Stabilus v. Haynsworth, Baldwin, Johnson, & Greaves, P.A.*, 144 F.R.D. 258 (E.D. Pa. 1992) .. 8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973) ................................ 11

*Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692 (D.N.J. 2015) ...............................................................9

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 26 ................................................................................................................. passim

Fed. R. Civ. P. 45 ............................................................................................................................ 5

Fed. R. Civ. P. 37 ...................................................................................................................... 1, 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANNON PHILLIPS,<br><br>               *Plaintiff*,<br>v.<br><br>STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY,<br><br>               *Defendant*. | CIVIL ACTION NO.: 1:19-cv-19432<br><br>Hon. Joel H. Slomsky, U.S.D.J. |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER
MOTION TO COMPEL DISCOVERY FROM THE DEFENDANT**

Pursuant to Federal Rule of Civil Procedure 37(a), Plaintiff, Shannon Phillips ("Plaintiff"), by and through her undersigned counsel, hereby moves this Court to compel Defendant, Starbucks Corporation d/b/a Starbucks Coffee Company ("Defendant"), to produce full and complete responses/documents to Plaintiff's Requests for the Production of Documents in this matter ("Motion"). Specifically, Plaintiff seeks (1) any and all documents related to Paul Sykes' separation of employment from Defendant, and (2) any and all documents related to Defendant's internal investigation into pay disparities within its Philadelphia market beginning in April of 2018. Consistent with the Local Rule 26.1[1] and this Court's policies and procedures, the Parties have fully met and conferred over the issues discussed herein but have, unfortunately, reached an impasse.[2]

---

[1] This is a District of New Jersey case, however, given the Court's Scheduling Order of June 19, 2020 [Dkt. Ent. 31], Plaintiff submits her Motion and accompanying materials in compliance with the Local Rules for the Eastern District of Pennsylvania.
[2] *See* Certification of Counsel Pursuant to Local Rule 26.1(f) (attached hereto as **Exhibit A**).

1

I. **FACTUAL BACKGROUND**

This lawsuit arises out of Defendant's discriminatory conduct during its efforts to fix its public relations crisis following the April 12, 2018 arrests of two (2) Black men in Defendant's 18th Street and Spruce Street location in Philadelphia ("April 2018 arrests"). Plaintiff's Second Amended Complaint [Dkt. Ent. 36] ("Complaint") ¶ 34. The fallout from these arrests, which occurred after a store manager, acting pursuant to a Starbucks policy (and without the input of Plaintiff or any supervisor) called the police to report the two men, was immense and threatened the Defendant's brand on local and national levels. *Id.* ¶¶ 35, 40. In an effort to quell community outrage and revitalize the Defendant's image, the Defendant embarked on a publicized campaign to "take actions that stem from this incident to repair and reaffirm [its] values and vision for the kind of company" it wanted to be. *Id.* ¶ 47.

At the time of the April 2018 arrests, Plaintiff, a nearly thirteen-year employee of Defendant, served as a Regional Director of Operations ("RD") for nearly one-hundred (100) stores, including those in Philadelphia. *Id.* ¶ 31. In her role as RD, approximately nine (9) employees who served as District Managers ("DM") reported to her. *Id.* Each DM, in turn, had responsibility for approximately ten (10) to fourteen (14) stores each. *Id.* In April 2018, all Starbucks locations within Philadelphia were encompassed within the territories of two (2) DMs: Paul Sykes ("Mr. Sykes"), who is Black, and Ben Trinsey ("Mr. Trinsey"), who is white. *Id.* ¶ 32. Mr. Sykes was responsible for the store where the arrests took place and Mr. Trinsey was not. *Id.* ¶¶ 32-33. Yet following the arrests, Mr. Trinsey was suspended and ultimately terminated amid what Plaintiff has alleged were factually impossible claims of discrimination against him. *Id.* ¶¶ 50-60. In contrast, Mr. Sykes, whose stores were the source of several discrimination complaints following the arrests, was retained. *Id.* ¶ 61. Ultimately, after Plaintiff offered information to the

Defendant disputing the allegations underlying its investigation into Mr. Trinsey's conduct, she was terminated and told only that "the situation was not recoverable." *Id.* ¶¶ 54-60, 65.[3]

Plaintiff alleges that she was terminated because of her race and because of her participation in and opposition to the results of an investigation into Mr. Trinsey's allegedly race discriminatory practices for determining compensation for store managers within his region – determinations that fall squarely within the purview of Defendant's Human Resources or "Partner Resources" department. Complaint ¶¶ 57-60, 71-72. Since this litigation's infancy, Plaintiff has maintained the position that the facts and circumstances surrounding both the investigation into Mr. Trinsey's pay practices *and* Mr. Sykes' separation of employment were highly relevant to this matter, and she propounded discovery requests upon the Defendant seeking documents related to same. *See* Plaintiff's First Set of Requests for Production of Documents ("RPD") (attached hereto as **Exhibit C**). The Defendant continues to withhold relevant documents responsive to these requests, necessitating Plaintiff's filing of the present Motion. In addition, the Defendant concealed a highly relevant document so as to attempt to surprise Plaintiff during a deposition that took place on June 3, 2021. The Defendant used the withheld document throughout the deposition, reading large excerpts from same. The document, despite Plaintiff's repeated requests, was not produced in full to the Plaintiff until June 8, 2021. This Motion followed.

    A. **Defendant's Assertion of Privilege Over All Documents Related To Its Internal Investigation Into Pay Disparities Within The Philadelphia Market**

During depositions in this matter, several of Defendant's witnesses testified that, in the wake of the April 2018 arrests and in response to a race discrimination complaint lodged against

---

[3] During this litigation, Defendant's stated reason for terminating Plaintiff is that "her actions in the weeks after the arrests demonstrated she lacked the leadership skills and ability to guide the market and its partners through the crisis and toward recovery." *See* Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories ("ROGs") (attached hereto as **Exhibit B**).

3

Mr. Trinsey by a Black subordinate, Defendant conducted an internal investigation into pay disparities within the Defendant's Philadelphia market. *See* Deposition of Ebony Johnson ("Johnson Dep.") (attached hereto as **Exhibit D**) 34:14-39:21; Deposition of Camille Hymes ("Hymes Dep.") (attached hereto as **Exhibit E**) 184:2-185:23. The investigation was conducted by Defendant's Partner Resources Manager, Ebony Johnson ("Ms. Johnson"), who is not a lawyer and does not work within the legal department of Defendant. Complaint ¶ 62. Plaintiff participated directly in this investigation and was called upon by the Defendant to place Mr. Trinsey on suspension during the pendency of the investigation. Johnson Dep. 11:6-16; 34:14-39:21. Defendant's witnesses testified that this investigation concluded that pay disparities existed within the Philadelphia market and, although there were no allegations that Plaintiff herself had engaged in pay discrimination (or any discrimination for that matter), the existence of pay disparities in Plaintiff's region contributed to the Defendant's belief that Plaintiff was an unfit leader. *See* Deposition of Paul Pinto ("Pinto Dep.") (attached hereto as **Exhibit F**) 134:3-136:4. In other words, the Defendant has taken the position that the results flowing from its internal investigation into pay disparities within the Philadelphia market serve as evidence supporting its purportedly legitimate, non-discriminatory reason for Plaintiff's termination.

Following the deposition of Ms. Johnson who testified regarding the Defendant's investigation, Plaintiff again asked that the Defendant produce any and all documents related to the Defendant's investigation into pay disparities within the Philadelphia market, which are clearly implicated by and responsive to multiple of Plaintiff's document requests.[4] In response, the

---

[4] The specific discovery requests implicated by this category of information are RPD Nos. 2, 3, 6, 7, 8, and 13, which read as follows:

- **RPD No. 2:** All documents that refer or relate to Plaintiff's performance, whether expressing satisfaction, dissatisfaction, or otherwise, including, without limitation, all performance evaluations, self-assessments, skills assessments, management skills appraisals, personal improvement plans, and all other documents created by an agent, employee, or customer of Defendant.

4

Defendant asserted that all documents related to this investigation were protected from disclosure by attorney-client privilege and/or the attorney work-product doctrine.[5]

### B. **Defendant's Intentional Withholding Of Relevant And Responsive Documents Related To Paul Sykes' Separation**

Throughout this litigation, Defendant's witnesses have repeatedly taken the position that negative personnel decisions related to Paul Sykes ("Mr. Sykes") which precipitated his resignation from Starbucks were anticipated if not effecuated as a reaction to the April 2018 arrests. Pinto Dep. 191:15-193:1; Hymes Dep. 254:20-256:6; Deposition of Nathalie Cioffi ("Cioffi Dep.") (attached hereto as **Exhibit G**) 68:21-71:4. In the Defendant's view, these negative personnel actions against Mr. Sykes, who is Black, serve as evidence that the personnel decisions following the April 2018 arrests were not motivated by race. Plaintiff vehemently disputes that Paul Sykes' **voluntary** separation from Starbucks many months after the April 2018 arrests was in any way comparable to her own termination.

On June 3, 2021, Plaintiff's counsel deposed Mr. Sykes who appeared pursuant to a subpoena. The Defendant was notified of the Plaintiff's intention to serve the subpoena consistent with Fed. R. Civ. P. 45 on April 2, 2021. Initially the Defendant objected to Mr. Sykes' deposition before ultimately relenting. The deposition began at 6:30 pm, after Court business hours, to

---

- **RPD No. 3:** All documents that refer or relate to Defendant's decision to terminate Plaintiff.
- **RPD No. 6:** All documents that refer or relate to any/all complaints involving Benjamin Trinsey from January 1, 2017 to the present.
- **RPD No. 7:** Any and all documents that refer to or relate to any discipline of Benjamin Trinsey.
- **RPD No. 8:** Any and all documents that refer to or relate to the circumstances surrounding Benjamin Trinsey's separation from employment by Defendant.
- **RPD No. 13:** All documents that refer to, relate to, or evidence: (a) any charges, accusations or complaints both formal and informal, internal or external) of race discrimination made by any employee or former employee of Defendant on January 1, 2016 through the present; (b) any investigation undertaken by Defendant (or someone on Defendant's behalf or at Defendant's request) regarding the same; and (c) any and all actions taken by Defendant as a result of (a) or (b).

[5] Further complicating the issue related to any documents testified to by Ms. Johnson as part of her investigation is that Defendant has admitted that it did not preserve Ms. Johnson's laptop, company phone, or emails following her departure from Starbucks in or about October 2018, approximately five (5) months after Plaintiff filed her Charge of Discrimination with the EEOC.

accommodate the witnesses' work schedule. The witness was not represented by any counsel at the deposition. After Plaintiff's counsel concluded her direct examination of Mr. Sykes, Defendant questioned the witness. During the Defendant's examination of the witness, counsel for the Defendant began to read a document into the record – namely, a resignation and complaint letter that Mr. Sykes sent to the highest levels of senior management of Defendant on June 15, 2018 – and questioning the witness regarding same.[6] This document had not been produced to the Plaintiff during discovery, despite being responsive to multiple of Plaintiff's document requests.[7] Plaintiff's counsel objected to Defendant's use of this non-produced document, but the Defendant persisted in reading lengthy portions of the document into the record and questioning Mr. Sykes about same.[8] Further, during the back-and-forth with defense counsel regarding Plaintiff's counsel's objection to using an intentionally withheld document during a deposition, defense counsel seemed to acknowledge that its conduct was intentional and state on the record, in sum, that given that the Defendant had objected to certain of Plaintiff's requests and that Plaintiff had not, without more information, "challenged" their objections, Plaintiff was responsible for any

---

[6] *See* Mr. Sykes' June 15, 2018 resignation and complaint letter (attached hereto as **Exhibit H**).

[7] The specific discovery requests implicated by this document are RPD Nos. 14, 15, 16, 25, 26, and 31, which read as follows:

- **RPD No. 14:** Any and all documents relating to the arrests of two men in or about April 2018 at Defendant's retail location at 18th and Spruce Street, Philadelphia, PA.
- **RPD No. 15:** Any and all documents relating to any personnel changes within Defendant's organization resulting from the arrests of two men in or about April, 2018 at Defendant's retail location at 18th and Spruce Street, Philadelphia, PA.
- **RPD No. 16:** Any and all documents that refer to, relate to or evidence any effort by Defendant to "continue to take actions that stem from this incident to repair and reaffirm our values and vision for the kind of company that we want to be."
- **RPD No. 25:** All documents that contain any witness statements pertaining to this litigation or the allegations referred to in this litigation, which are in the possession, custody, or control of Defendant.
- **RPD No. 26:** All documents that Defendant intends to use at trial, any deposition, or any motion in this matter.
- **RPD No. 31:** All documents that refer to, relate to, evidence, or support any factual denials or affirmative defenses asserted by Defendant in this matter.

[8] Plaintiff received the deposition transcript of Mr. Sykes on June 10, 2021. However, she is prohibited from filing its relevant portions pursuant to Section 3 of the Parties' Stipulated Confidentiality Agreement and Protective Order [Dkt. Ent. 37] which provides that "[f]or a period of five (5) business days after receipt of a deposition transcript, no party shall publicly file the deposition transcript".

surprise. At no time, did the Defendant, consistent with Fed. R. Civ. P. 26 disclose that it was withholding the document at issue over an objection.

Following Mr. Sykes' deposition, Plaintiff promptly contacted the Defendant's counsel to obtain a copy of the document and an explanation as to why the document had not been produced to the Plaintiff despite its substantive responsiveness to Plaintiff's discovery requests *and* the Defendant's clear intention to utilize the document during Mr. Sykes' deposition. The following day, June 4th, the Defendant's counsel provided a screenshot of portions of the document which omitted relevant detail including, without limitation, the recipients of the letter which was sent over email. Upon receiving the email, Plaintiff learned that not only is the document Mr. Sykes' resignation letter within the context of Starbucks' conduct following the arrests in Philadelphia, but also a complaint about Camille Hymes ("Hymes"), then Regional Vice President ("RVP"). Ms. Hymes, who is Black, testified that she decided to terminate Ms. Phillips and her own conduct, bias, and credibility is directly at issue in this case. Only after providing excerpts of the document did the Defendant offer the following by way of explanation for withholding it but using it during a deposition: [Starbucks] "had no intention of relying on this document or questioning Mr. Sykes' about it until it heard Mr. Sykes' testimony." Yet, the Defendant had been aware of Mr. Sykes' deposition for weeks prior and that without regard to whether or not Mr. Sykes was ever deposed, the document was responsive to multiple requests.[9] Further, there were no lengthy breaks during the deposition or other lengthy pauses that suggested that counsel for the Defendant needed to track down any document based on something that had happened in Mr. Sykes' questioning by Plaintiff's counsel; clearly, the document was "at the ready" for use by defense counsel. The

---

[9] To the extent that the Defendant argues that it withheld this document pursuant to an objection as to its relevancy, as it has represented to Plaintiff, the Defendant failed to comply with Fed. R. Civ. P. (b)(2)(C) which requires a party withholding a document over an objection to state that it is doing so.

Defendant did not produce this document in its entirety until June 8th – two (2) days before the close of fact discovery and just minutes before the final deposition in this case.[10] Importantly, the document, when it was finally produced, demonstrates that there clearly must be documents related to the email that have not been produced. When Plaintiff asked for any and all document related to the email, defense counsel refused.

## II. LEGAL ARGUMENT

The Federal Rules of Civil Procedure allow for "broad and liberal discovery." *Pacitti by Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). Fed. R. Civ. P. 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Discovery is deemed relevant "if there is **any** possibility that the information may be relevant to the general subject matter of the action." *Northern v. City of Phila*, 2000 U.S. Dist. LEXIS 4278, at *4 (E.D. Pa. Apr. 4, 2000). In other words, "if the information [sought] has potential cogency to the case, the defendant must shoulder the burden." *EEOC v. Princeton Healthcare System*, 2011 U.S. Dist. LEXIS 58056, at *39 (D.N.J. May 31, 2011). Once relevance is established, the objecting party must show why discovery should not be compelled; "where there is doubt over relevance, the rule indicates that the court should be permissive." *Stabilus v. Haynsworth, Baldwin, Johnson, & Greaves, P.A.*, 144 F.R.D. 258, 265-66 (E.D. Pa. 1992)).

In the context of employment discrimination, courts interpret a plaintiff's right to discovery broadly "because of the nature of the proofs required to demonstrate unlawful discrimination, which may often be indirect or circumstantial." *Lewis v. Fome Ins. Co.*, 1988 U.S. Dist. LEXIS

---

[10] Pursuant to Plaintiff's meet and conferral obligation pursuant to Local Rule 26.1(f), it was only on June 8, 2021 when the Defendant produced Mr. Sykes' resignation and complaint letter and confirmed that it would not produce any documents related to same that Plaintiff's Motion became ripe for presentation to the Court.

12882, at *3 (E.D. Pa. Nov. 17, 1988). As such, courts are especially loathe to impose "unnecessary limitations" in employment cases" and "are willing to broaden discovery parameters beyond the particular facts of a particular case. *Robbins v. Camden City Bd. of Education*, 105 F.R.D. 49, 55 (D.N.J. 1985); *see also Gaul v. Zep Mfg. Co.*, 2004 U.S. Dist. LEXIS 1990, at *7 (E.D. Pa. Feb. 4, 2004) (in employment discrimination cases "the needs of the individual plaintiff to information controlled by the . . . employer requires that the parameters of discovery be broader than the specific individual facts upon which the claim is based."). Ultimately, parties are entitled to "discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Id.* (citations and quotations omitted).

### A. Plaintiff is Entitled to Documents Related to Paul Sykes' Separation from Defendant And His Complaints About Decision-Maker In Plaintiff's Termination, Camille Hymes.

The Defendant's conduct in withholding Mr. Sykes' resignation and complaint letter (which it clearly understood to be relevant and responsive to Plaintiff's document requests) and reading this document into the stenographic record to circumvent its obligations under the Federal Rules of Civil Procedure is inexcusable.[11] This conduct on behalf of the Defendant was pure gamesmanship carried out for the purpose of surprising Plaintiff during a deposition and thwarting the truth-seeking function of discovery. "Discovery is not a 'gotcha' game." *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 708 (D.N.J. 2015). In fact, "[t]he law [] abhors a gotcha." *Inferrera v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 146007, at *4 (D.N.J. Dec. 20, 2011). Defendant's "strategic manipulation of the discovery process" is "the ill toward which Rule 26 and Rule 37 are

---

[11] Although Plaintiff is not specifically seeking sanctions through this Motion, she believes that any variety of sanctions are appropriate given the outrageousness of the Defendant's conduct. Plaintiff has put the Defendant on notice and is reserving her right to seek sanctions in connection with same. Plaintiff does, however, presently seek expenses and attorneys' fees incurred in connection with this aspect of her present Motion pursuant to Fed. R. Civ. P. 37(a)(5)(A).

9

aimed." *Mercedes Benz USA LLC v. Coast Auto. Grp. Ltd.*, 2008 U.S. Dist. LEXIS 72172, at *14 (D.N.J. Sep. 23, 2008). Given the Defendant's very clear engagement in a "gotcha" game with respect to Mr. Sykes' resignation and complaint letter, how can the Plaintiff possibly be confident that the Defendant is not withholding other relevant and responsive documents?

Because the Defendant seeks to use Mr. Sykes' separation of employment as evidence to rebut Plaintiff's claims in this case[12], Plaintiff is entitled to any and all documents related to his separation. Further, Plaintiff is entitled to the resignation and complaint letter as it directly relates to conduct of her supervisor and the decision-maker in her termination. Plaintiff has requested documents "relating to the arrests of two men in or about April 2018"; documents "relating to personnel changes within Defendant's organization resulting from the arrests of two men in or about April, 2018"; and documents "that refer to, relate to or evidence any effort by Defendant to 'continue to take actions that stem from this incident to repair and reaffirm our values and vision for the kind of company that we want to be.'" *See* RPD Nos. 14, 15, and 16. Yet, the Defendant has withheld documents relating to Mr. Sykes' separation of employment despite taking the position that the unfavorable personnel changes precipitating his resignation were a response to the April 2018 arrests. The Defendant simply cannot have it both ways: it cannot rely on the separation of Mr. Sykes, a Black man, to rebut Plaintiff's race discrimination claims, while refusing to produce highly relevant and clearly responsive documents related to same.[13] As such,

---

[12] There is no dispute that Mr. Sykes resigned. There is not an iota of evidence that he was told to quit in lieu of termination. There is no evidence that anyone at Starbucks had made a decision to fire Mr. Sykes. Nonetheless, throughout this litigation, various defense witnesses have tried to suggest that he would have, or should have, ultimately been punished or disciplined. Despite questioning multiple defense witnesses about the circumstances surrounding the end of Mr. Sykes employment, the Defendant not only never produced the resignation and complaint letter, but never even signaled that such a document existed.

[13] In addition to being responsive the Plaintiff's discovery requests, Mr. Sykes' resignation and complaint letter, which was sent to the highest-ranking individuals in the Defendant's organization including its then CEO Howard Schultz, is relevant to Plaintiff's claim for punitive damages in connection with her NJLAD claim which focuses on participation by any upper management of a defendant in the analysis of whether or not punitive damages questions should be submitted to a jury.

the Defendant must produce any and all documents related to Mr. Sykes' separation from Defendant. Further, we believe that the Defendant must also explain to the Court and on the record why it intentionally withheld a document for the purpose of prejudicing the Plaintiff mid-way through a deposition at the end of the fact discovery period and assure the Court that there are no other documents it is intentionally withholding.[14]

> **B. Plaintiff is Entitled to Documents Related to Any Investigation Into Pay Disparities Within Defendant's Philadelphia Market Following the April 2018 Arrests So Long As the Defendant Continues To Use The Findings of The Investigation To Support Its Stated Reason For Plaintiff's Termination.**

Because the Defendant seeks to use the results of its internal investigation into pay disparities within its Philadelphia market as justification for Ms. Phillips' termination, a critical component of its defense in this case pursuant to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973) burden-shifting framework, the Defendant has waived its purported attorney-client privilege over documents created and transmitted during this investigation. Accordingly, the Defendant has no legitimate basis for withholding these highly relevant and responsive documents, and must be compelled to produce same to enable Plaintiff to effectively vindicate her claims.

Third Circuit courts have long held that "the attorney-client privilege cannot be used as both a shield and a sword." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d. Cir. 2006). To put a finer point on it, "[a] party should not be permitted to use the privilege to shield information which it has deliberately chosen to use offensively." *Casey v. Unitek Glob. Servs.*, 2015 U.S. Dist. LEXIS 15715, at *25 (E.D. Pa. Feb. 9, 2015) (quoting *Tracinda Corp. v.*

---

[14] Defendant's intention in withholding the document may be illustrated by the fact that at no time during the deposition, and despite Plaintiff's counsel on the record statements about the document being responsive and withheld, did defense counsel even simply offer to take a break in the deposition and email it to Plaintiff's counsel so that she could have the benefit of the document for re-direct. Notably, as a courtesy to the witness, the deposition began at 6:30 pm, after regular Court hours, so that the Plaintiff could not seek the Court's aid in the moment.

11

*DaimlerChrysler AG*, 362 F. Supp. 2d 487, 513 (D. Del. 2005). Accordingly, "[a] party cannot make factual assertions based on a supposedly privileged document, and then deny its adversary an opportunity to uncover the foundation for those assertions in order to contradict them." *Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 303, 310-11 (E.D. Pa. 2007); *see also Berckeley*, 455 F.3d at 222 (party may not "rely upon the legal advice it received … without permitting [its adversary] the opportunity to probe the surrounding circumstances and substance of that advice.").

"Documents to which a party claims protection from discovery based upon the attorney-client privilege cannot thereafter be used in the furtherance of that party's defense without that party waiving the privilege." *Casey*, 2015 U.S. Dist. LEXIS 15715, at *25 (quoting *Todd v. S. Jersey Hosp. Sys.*, 152 F.R.D. 676, 687 (D.N.J. 1993)). Accordingly, "[a] party is deemed to have waived privilege where it 'has made the decision and taken the affirmative step in the litigation to place [privileged material] in issue" by asserting a defense and "attempt[ing] to prove that defense by disclosing or describing an attorney client communication." *In re Niaspan Antitrust Litig.*, 2018 U.S. Dist. LEXIS 87150, at *4-5 (E.D. Pa. May 23, 2018) (quoting *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994)); *see also Casey*, 2015 U.S. Dist. LEXIS 15715, at *25 (defendant's offensive use of attorney-client privileged communications as a defense to plaintiff's Title VII claims constituted waiver of privilege); *Mikulan v. Allegheny Cty.,* 2017 U.S. Dist. LEXIS 83315, at *15-17 (W.D. Pa. May 31, 2017) ("[i]t would be extremely unfair to allow the [defendant] to withhold this evidence from [plaintiff] in discovery and then allow the [defendant] to turn around and argue that it did not discriminate against [plaintiff] based on the withheld legal advice.") *Moran v. Davita, Inc.*, 2008 U.S. Dist. LEXIS 74326, at *16-18 (D.N.J. Sep. 26, 2008) (allowing defendant to use the attorney-client privileged documents pertaining to purported business reason for plaintiff's termination "might amount to a miscarriage of justice").

The Defendant's approach of asserting that the results of its investigation (conducting by a non-attorney) into pay disparities in the Philadelphia market support its reason for terminating Plaintiff, while simultaneously shielding any and all documents related to such investigation (including documents authored by non-lawyers, some of which reflect Plaintiff's direct participation in said investigation) from discovery is untenable. That the Plaintiff was interviewed as part of the investigation and fired shortly thereafter renders the defense position even more untenable. By asserting privilege over these documents, the Defendant essentially asks the Plaintiff to relinquish her right to test the legitimacy of its articulated reason for terminating her employment and to take it at its word, a request that is particularly outrageous given the Defendant's conduct in connection with Mr. Sykes' deposition. Allowing the Defendant's objections to stand will inhibit Plaintiff's ability to establish pretext in connection with anything related to its assertion that Ms. Phillips failed in any way related to pay disparity. This result is not contemplated by the Federal Rules of Civil Procedure, the *McDonnell Douglas* burden shifting framework, or the attorney-client privilege and/or work product doctrines.

Importantly, as part of the meet and confer process leading up to the filing of this Motion, the Plaintiff asked the Defendant if it would stipulate that it would not seek to introduce evidence of the investigation's outcome in support of its stated reason for Plaintiff's termination. By doing so, the Plaintiff informed the Defendant, the Plaintiff would remove its objection to the use of privilege as both a sword and a shield and the investigation would remain privileged. However, the Defendant declined. The Plaintiff believes that in declining to stipulate that it would not use the pay disparity investigation in defending its case only clarifies that Defendant's intention is to use the investigation as both a sword and a shield.

13

It is the Defendant, not the Plaintiff, who took the affirmative step of placing these purportedly privileged documents at issue in this case by cherry-picking favorable content to support its legitimate non-discriminatory reason for Plaintiff's termination. No defense witness was given an instruction by their counsel not to offer testimony relating to the investigation on the grounds of privilege. By placing these materials at the epicenter of the most significant fact disputes in this case – the reason(s) for Plaintiff's termination – the Defendant has waived its privilege over these documents. As such, the Defendant must produce any and all documents related to its investigation into pay disparities within the Philadelphia market in order to avoid undue prejudice to the Plaintiff.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that her Motion to Compel be granted and that the Court issue an Order in the form attached hereto.

Respectfully Submitted,

**CONSOLE MATTIACI LAW, LLC**

Dated: June 10, 2021          By:     */s/ Katherine C. Oeltjen*
                                      Stephen G. Console, Esquire
                                      Katherine C. Oeltjen, Esquire
                                      Holly W. Smith, Esquire
                                      1525 Locust Street, Ninth Floor
                                      Philadelphia, PA 19102
                                      (215) 545-7676

                                      *Attorneys for Plaintiff,*
                                      *Shannon Phillips*

## **CERTIFICATE OF SERVICE**

I, Katherine C. Oeltjen, hereby certify that on the tenth (10th) day of June, 2021, the foregoing Plaintiff's Motion to Compel Discovery from the Defendant and all accompanying exhibits was served upon counsel of record for the Defendant via electronic case filing.

*/s/Katherine C. Oeltjen*