## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SHANNON PHILLIPS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:19-cv-19432 |
| | : | |
| v. | : | |
| | : | Hon. Joel H. Slomsky, U.S.D.J. |
| STARBUCKS CORPORATION d/b/a | : | |
| STARBUCKS COFFEE COMPANY, | : | |
| | : | **FILED VIA ECF** |
| Defendant. | : | |
| | : | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION TO COMPEL DISCOVERY

*/s/ Marc D. Esterow*

Richard R. Harris (*admitted pro hac vice*)
Marc D. Esterow (NJ No. 210102016)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
267.402.3000 (t)
267.402.3131 (f)
rharris@littler.com
mesterow@littler.com

*Attorneys for Defendant,*
*Starbucks Corporation d/b/a*
*Starbucks Coffee Company*

Dated: June 24, 2021

**TABLE OF CONTENTS**

**PAGE**

I.     STATEMENT REQUESTING ORAL ARGUMENT ....................................................1

II.    INTRODUCTION ..............................................................................................................1

III.   RELEVANT BACKGROUND..........................................................................................2

      A.    Starbucks Terminated Ms. Phillips' Employment After Her Manager Determined She Was Incapable Of Leading Her Market In A Moment Of Crisis ....................................................................................................................2

      B.    Before Her Separation From Employment, Starbucks Instructed Ms. Phillips To Suspend District Manager Ben Trinsey So That It Could Investigate Multiple Allegations of Discrimination Against Him........................4

      C.    Following Ms. Phillips' Separation, Starbucks Investigated The Allegations Against Mr. Trinsey At The Direction And With The Involvement Of Starbucks' In-House Counsel ................................................................................5

      D.    During Discovery, Ms. Phillips Sought No Documents Regarding Mr. Sykes' Separation From Employment With Starbucks.........................................7

      E.    Starbucks Is Not Relying On The Circumstances Of Mr. Sykes' Separation As Part Of Its Defense.........................................................................................8

IV.   LEGAL STANDARD ......................................................................................................11

V.    ARGUMENT ...................................................................................................................12

      A.    The Court Should Not Compel Starbucks To Produce Privileged Documents Because Starbucks Is Not Relying On Legal Advice or Attorney Communications Contained In Those Documents To Defend Itself In This Case .....................................................................................................................12

      B.    The Court Should Not Compel Starbucks To Produce Documents Related To Mr. Sykes' Separation..................................................................................14

           1.    Documents Related To Mr. Sykes' Separation Are Not Relevant..........14

           2.    Ms. Phillips' Request For Documents Related To Mr. Sykes' Separation Is Untimely ........................................................................16

VI.   CONCLUSION ................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkinson v. Luitpold Pharms., Inc.*,
    414 F. Supp. 3d 742 (E.D. Pa. 2019)...........................................................................11, 15

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) ................................................................................................13

*Brewer v. Berks Cnty. Sheriff*,
    Civ. A. No. 13-5763, 2015 WL 13620425 (E.D. Pa. Oct. 5, 2015).....................................11

*DiGregorio v. First Rediscount Corp.*,
    506 F.2d 781 (3d Cir.1974) ................................................................................................11

*In re Domestic Drywall Antitrust Litigation*,
    300 F.R.D. 234 (E.D. Pa. 2014) .........................................................................................11

*In re EchoStar Communs. Corp.*,
    448 F.3d 1294 (Fed. Cir. 2006)...........................................................................................12

*In re Grand Jury Subpoena*,
    745 F.3d 681 (3d Cir. 2014) ...............................................................................................12

*Mohmah v. Albert Einstein Med. Ctr.*,
    164 F.R.D. 412 (E.D. Pa. 1996)..........................................................................................16

*Moore v. Mann*,
    Civ. A. No. 13-2771, 2015 WL 672444 (M.D. Pa. Feb. 17, 2015) .....................................17

*Philip Delpalazzo v. Horizon Group Holding, LLC*,
    Civ. A. No. 19-5682, 2021 WL 1546229 (E.D. Pa. Apr. 20, 2021) ....................................17

*Rhone-Poulenc Rorer v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994) ................................................................................................13

*Trask v. Olin Corp.*,
    298 F.R.D. 244 (W.D. Pa. 2014)........................................................................................12

*Williams v. Wetzel*,
    Civ. A. No. 17-79, 2019 WL 1206061 (M.D. Pa. Mar. 14, 2019).......................................17

**Other Authorities**

Federal Rule of Civil Procedure 26..............................................................................11, 15, 17

## **TABLE OF AUTHORITIES**

**Page(s)**

Federal Rule of Civil Procedure 34...........................................................................................17

Federal Rule of Civil Procedure 37................................................................................... 11, 17

E.D. Pa. Local Rule 5.1.2 ..........................................................................................17

**I.      STATEMENT REQUESTING ORAL ARGUMENT**

Starbucks respectfully requests that the Court schedule oral argument on Plaintiffs' Motion to Compel.

**II.     INTRODUCTION**

Ms. Phillips asks this Court to compel Starbucks to produce two categories of documents: (1) "any and all documents related to [Starbucks'] internal investigation into pay disparities within its Philadelphia market beginning in April of 2018"; and (2) "any and all documents related to Paul Sykes' separation of employment from [Starbucks]." (ECF 50-2, p. 4 of 18.)  The Court should exercise the broad discretion afforded to it when deciding discovery motions to deny Ms. Phillips' motion, for two reasons.

*First*, Ms. Phillips claims Starbucks is relying on the results of an internal investigation into pay disparities in the Philadelphia market as evidence to support its case, while at the same time withholding those documents on the basis of privilege.  However, Starbucks has withheld only two privileged documents that relate to this topic, and Starbucks has not attempted to defend itself by disclosing or describing legal advice or attorney communications contained in either document.  Accordingly, Starbucks is not using the attorney-client privilege as both a "sword" and a "shield," and there is no basis to compel Starbucks to produce privileged documents.

*Second*, documents related to Paul Sykes' separation are not relevant to the claims or defenses in this case and thus beyond the scope of permissible discovery.  Significantly, contrary to Ms. Phillips' repeated assertions in her motion, Starbucks is not relying on the circumstances of Mr. Sykes' separation as part of its defense.  Moreover, Ms. Phillips failed to seek documents related to Mr. Sykes' separation earlier in discovery, and her request for such documents now, at the close of discovery, is untimely.  To the extent Ms. Phillips spends the remainder of her motion lambasting Starbucks for what she believes was the intentional withholding of a relevant and

responsive document for surprise use at Mr. Sykes' deposition, her theory is patently false. The document is not relevant to the claims or defenses in this case, was not responsive to an existing discovery request, and Starbucks only used the document as a means of testing Mr. Sykes' memory and credibility after Mr. Sykes misrepresented the events surrounding his separation from Starbucks during his initial testimony.

## III.  RELEVANT BACKGROUND

### A.  Starbucks Terminated Ms. Phillips' Employment After Her Manager Determined She Was Incapable Of Leading Her Market In A Moment Of Crisis

On April 12, 2018, an incident occurred in a Philadelphia Starbucks store at 18th and Spruce Street that resulted in the arrest of two black customers.  The incident sparked protests at the store and widespread media coverage throughout the country.   In the weeks thereafter, Starbucks faced a public relations and employer-partner[1] crisis that required leadership to delve into the market and not only gain a better understanding of the incident, but also guide the market and the partners who worked there through the aftermath and toward recovery.

As the Regional Director for the Philadelphia market, Ms. Phillips was expected to lead the market through the events following the April 12, 2018 arrests and provide ongoing support to her partners.  However, senior leaders and members of Partner Resources all observed Ms. Phillips demonstrate a complete absence of leadership during this crisis.  Ms. Phillips' manager, Regional Vice President Camille Hymes, observed that Ms. Phillips appeared overwhelmed and lacked awareness of how critical the situation had become for Starbucks and its partners.  Meetings and store visits were scheduled, and Ms. Phillips did not show up.  When she did show up, Ms. Phillips was late, disengaged, and observed standing in the corner, including at meetings that she was

---

[1] Starbucks refers to its employees as "partners."

expected to lead or where Starbucks' executive leadership was present.  Paul Pinto, Director, Partner Resources, similarly observed that Ms. Phillips was neither physically nor emotionally present:  as he explained, Ms. Phillips's leadership was "completely paralyzed" and driven by "panic."  Based on his observations, Mr. Pinto believed there was no way that the market would recover under Ms. Phillips' leadership.

As further evidence of Ms. Phillips' leadership failures, during multiple roundtable meetings in late April and early May 2018 with partners who worked in Ms. Phillips' Philadelphia stores, Mr. Pinto, Ms. Hymes, and Ms. Hymes' manager, Zeta Smith, Divisional Senior Vice President, learned of numerous systemic issues in the Philadelphia market.  Partners complained about the lack of opportunities being provided to black employees or employees that had special relationships with Ms. Phillips and the two district managers who reported to her, Paul Sykes and Ben Trinsey.  One black assistant store manager who worked in one of Mr. Trinsey's stores, Jaicee Huff, reported to Partner Resources Manager Ebony Johnson a disparity in pay between her salary and that of another white assistant store manager.  (Exh. A, Johnson Tr. 30:3-22.)  Ms. Huff specifically told Ms. Johnson she was concerned because the white assistant store manager was friends with Mr. Trinsey and Ms. Phillips.  (Exh. A, Johnson Tr. 30-22:31:1.)  Mr. Pinto cited Ms. Phillips' lack of awareness of inequitable pay practices happening in her market as one example of how Ms. Phillips did not have a significant leadership presence in the market.  (Exh. B, Pinto Tr. 101:2-12.)

Partners also complained about Ms. Phillips' lack of physical presence in the market, citing instances where she cancelled planned store visits at the last minute.  Partners shared that they had come forward to Ms. Phillips or her district managers with their concerns, yet none were documented, resulting in a perception that partners did not feel seen, valued, or heard in Ms.

3

Phillips' region.   Ms. Hymes testified that the "overwhelming theme" emanating from the roundtables was that partners in the Philadelphia region "did not trust [Ms. Phillips]," and "partners in distress . . . cannot be led through crisis in an effective way with excellence if they do not trust their leader." (Exh. C, Hymes Tr. 204:24-205:5.)

In light of these concerns, Ms. Hymes concluded that Ms. Phillips was not able to lead the Philadelphia market and its partners through this moment of crisis.  Because strong leadership was essential during that time, Ms. Hymes decided to remove Ms. Phillips from her Regional Director role.  Ms. Hymes and Mr. Pinto informed Ms. Phillips of her termination from employment on May 9, 2018.  After Ms. Phillips' termination, four individuals were or currently are Regional Directors responsible for supporting the districts Ms. Phillips previously supported.  Each of these four individuals is white.

### B.   Before Her Separation From Employment, Starbucks Instructed Ms. Phillips To Suspend District Manager Ben Trinsey So That It Could Investigate Multiple Allegations of Discrimination Against Him

In the aftermath of the April 12, 2018 arrests, Starbucks leadership delved into the Philadelphia market to gain a better understanding of the issues affecting the market and its partners.  In the context of roundtable discussions with leadership in late April and early May 2018, several partners raised complaints that Mr. Trinsey made promotional and partner development decisions based on race or personal relationships he had with certain team members.  One of those complaints came from assistant store manager Jaicee Huff, who, as discussed above, reported to Ms. Johnson a disparity between her salary and that of another white assistant store manager.

Consistent with its policies and procedures regarding the handling of complaints of discrimination in the workplace, Starbucks was obligated to investigate these claims against Mr. Trinsey.  Indeed, Mr. Trinsey testified that it was appropriate for Starbucks to investigate the

allegations against him.  Accordingly, on May 7, 2018, Ms. Hymes, Mr. Pinto, and Partner Resources Director Nathalie Cioffi met with Ms. Phillips and instructed her, as Mr. Trinsey's manager, to suspend Mr. Trinsey pending the outcome of the investigation into the allegations against him.  Ms. Phillips testified that she told Ms. Hymes, Mr. Pinto, and Ms. Cioffi that the allegations against Mr. Trinsey were false, that Mr. Trinsey had no control over setting salaries, and that, in her view, it was "unfair" and "wrong" to suspend Mr. Trinsey.  She also testified about a similar conversation with Ms. Johnson the same evening, where she reiterated her belief that it was "wrong" to suspend Mr. Trinsey.  At no point did Ms. Phillips complain to anyone at Starbucks that Mr. Trinsey's race (white) motivated the decision to investigate or suspend him or that he was being treated differently because of his race.  (Exh. D, Phillips Tr. 96:18-100:3.)

### C.   Following Ms. Phillips' Separation, Starbucks Investigated The Allegations Against Mr. Trinsey At The Direction And With The Involvement Of Starbucks' In-House Counsel

Following receipt of Ms. Huff's complaint about a pay disparity, Ms. Johnson investigated the allegations by speaking with various team members and reviewing promotional histories to see whether there were inequities.  (Exh. A, Johnson Tr. 32:22-33:7.)  Ms. Johnson concluded that there was, in fact, a disparity in Ms. Huff's pay compared to the white assistant store manager Ms. Huff had referenced in her complaint.  (Exh. A, Johnson Tr. 37:5-12.)  Ms. Johnson did not reach a conclusion that the disparity was a result of race discrimination.  (Exh. A, Johnson Tr. 44:1-4.)  Ms. Johnson further testified that, as part of her investigation into these allegations and the other allegations against Mr. Trinsey, she recalled sending an email or emails recapping the conversations she had with partners about Mr. Trinsey to either her supervisor or Starbucks' Business Ethics and Compliance ("BEC") department.  (Exh. A, Johnson Tr. 47:7-22.)

After Ms. Johnson's deposition, Plaintiff's counsel asked Starbucks to search for and produce the emails that Ms. Johnson had described.  Starbucks searched the emails of Ms.

Johnson's supervisor (Ms. Cioffi), as well as relevant individuals within the BEC, and identified only one email, sent on May 10, 2018, that reflected a summary of Ms. Johnson's conversations with partners about their complaints regarding Mr. Trinsey.  Ms. Johnson sent this email to Ms. Cioffi, BEC Director Becky Critch, Starbucks' in-house counsel Robyn Ruderman, Esq., and Starbucks' in-house counsel Shelly Ranus, Esq.  In her email, Ms. Johnson referenced the conversations she recently had with partners in Mr. Trinsey's district and requested legal advice pertaining to the investigation into those partners' concerns.  There is no reference in Ms. Johnson's email to any discussion with Ms. Phillips.  Starbucks declined to produce the email on the basis that it is protected from disclosure by the attorney-client privilege, and it identified the email on a privilege log produced to opposing counsel.  (Exh. E, Starbucks Third Supplemental Privilege Log.)[2]

Following receipt of Ms. Johnson's May 10, 2018 email, BEC launched an investigation into whether Mr. Trinsey was motivated by discriminatory animus in making pay and promotional decisions.  The Starbucks attorney who partnered with BEC for the investigation, Robyn Ruderman, Esq., provided direction and input regarding steps to take during the investigation, as well as conclusions to be drawn from it.  The investigation findings and conclusions are summarized in a case file containing interview notes and summaries of conversations with Ms.

---

[2] Contrary to Plaintiff's assertions in footnote five of her motion (ECF 50-2, p. 8 of 18), the fact that Ms. Johnson's emails no longer exist is of no moment.  Starbucks searched the emails for the individuals with whom Ms. Johnson testified she communicated and identified only one responsive email:  the privileged May 10, 2018 email described above.  Starbucks further denies that it had an obligation to preserve Ms. Johnson's emails.  Ms. Johnson had no role in the decision to terminate Ms. Phillips employment, and Ms. Phillips did not mention Ms. Johnson by name in her EEOC Charge or even her initial Complaint.  It was only until Ms. Philips amended her Complaint on January 22, 2020 that Ms. Johnson's name first appeared in connection with Ms. Phillips' allegations in this case, thus triggering any obligation by Starbucks to preserve Ms. Johnson's emails.  By that point, however, Ms. Johnson had been separated from Starbucks for over one year and her emails had already been deleted consistent with Starbucks' retention policies and procedures.

Ruderman.  Ms. Phillips did not participate in the BEC investigation, as her employment with Starbucks had already been terminated.  Starbucks did not produce this document during discovery; instead it identified the document on its privilege log as protected from disclosure by the attorney-client privilege.  (Exh. E, Starbucks Third Supplemental Privilege Log.)[3]

### D.  During Discovery, Ms. Phillips Sought No Documents Regarding Mr. Sykes' Separation From Employment With Starbucks

Ms. Phillips claims she has taken the position throughout this litigation that the facts relating to Mr. Sykes' separation of employment are "highly relevant," and that she has pursued discovery related to same.  However, the history of discovery in this case belies Ms. Phillips' contentions.

Ms. Phillips served her first set of Interrogatories and Requests for Production of Documents on April 6, 2020.  (Exh. G, Plaintiff's First Set of Interrogatories; Exh. H, Plaintiff's First Set of Requests for Production of Documents.)  Neither discovery device sought information or documents about Mr. Sykes or his separation.  Instead, Ms. Phillips made clear that her focus was on collecting documents relating to Mr. Trinsey—the white District Manager whose suspension Ms. Phillips intends to point to as evidence that Starbucks was making personnel decisions on the basis of race.  Ms. Phillips sought "[a]ll documents that refer or relate to any/all complaints involving Benjamin Trinsey from January 1, 2017 to the present"; "[a]ny and all documents that refer to or relate to any discipline of Benjamin Trinsey"; and "[a]ny and all documents that refer to or relate to the circumstances surrounding Benjamin Trinsey's separation from employment by Defendant."  (Exh. H, Plaintiff's First Set of Requests for Production of

---

[3] The document was responsive to one of Plaintiff's requests for production of documents served on March 26, 2021.  *See* Exh. F, Plaintiff's Second Set of Requests for Production of Documents, Request No. 47 ("Any and all documents, including communications, that refer to, relate to or evidence information received or distributed during any "round table" discussion during April and May, 2018 that refer to or relate to the performance and/or conduct of Shannon Phillips, Ben Trinsey and/or Paul Sykes.").

Documents, Request Nos. 6-8.).

In contrast, Ms. Phillips served no similar requests for documents relating to Ms. Sykes'
separation or any discipline he received.  Indeed, Mr. Sykes's name does not appear *even once* in
Ms. Phillips' 37 individual document requests.  Ms. Phillips did not even deem discovery relating
to Mr. Sykes important or relevant enough to include his name in the list of 13 search terms she
wanted Starbucks to search through emails and text messages.  (*Id.* at Request No. 37.)  Ms.
Phillips did, however, include the search terms "Ben" and "Trinsey."  (*Id.*)

Starbucks served its responses to Ms. Phillips' document requests on July 21, 2020.  (Exh.
I, Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.)
Starbucks produced no documents related to Mr. Sykes' separation from Starbucks.  Later in
discovery after several depositions had occurred, on March 26, 2021, Ms. Phillips served a Second
Set of Requests for Production of Documents, containing ten additional document requests.  (Exh.
F, Plaintiff's Second Set of Requests for Production of Documents.)  Once again, Ms. Phillips
declined to seek documents relating to Mr. Sykes' separation.  Though the parties have addressed
(and resolved) multiple discovery disputes throughout this case, at no point before the meet-and-
confer process immediately preceding Ms. Phillips' present motion, filed hours before the close of
discovery, did Ms. Phillips assert that Starbucks' discovery responses were deficient for not
producing documents relating to Mr. Sykes' separation.

### E.      Starbucks Is Not Relying On The Circumstances Of Mr. Sykes' Separation As Part Of Its Defense

Ms. Phillips claims that Starbucks intends to use the circumstances of Mr. Sykes'
separation from Starbucks as evidence to support its defenses in this case.  (ECF 50-2, p. 8 of 18.)
In other words, Ms. Phillips believes that Starbucks and its witnesses want to point to the separation
of Mr. Sykes (who is black) as evidence that Starbucks was not making personnel decisions

following the April 12, 2018 arrests because of race.  (*Id.*)  Ms. Phillips is mistaken, and the testimony of Starbucks' witnesses does not support Ms. Phillips' postulations regarding Starbucks' defense theories.

Ms. Hymes testified that she believed Starbucks did not terminate Mr. Sykes from employment.  (Exh. C, Hymes Tr. 150-23-151:1.)  She further testified Starbucks offered him a position outside of the Philadelphia region in a suburban market, which he declined.  (Exh. C, Hymes Tr. 151:1-7, 254:20-24.)  Mr. Pinto testified he did not know whether Mr. Sykes was terminated from employment and was unaware of any decision by Starbucks to fire him.  (Exh. B, Pinto Tr. 150:22-151:4.)  Ms. Cioffi testified that Mr. Sykes asked to be transferred to New York City and that Starbucks declined his request.  (Exh. J, Cioffi Tr. 70:16-23.)  She further testified that, although Starbucks did not fire Mr. Sykes, it did not give him an option to remain as a district manager in Philadelphia.  (Exh. J, Cioffi Tr. 68:21-71:4.)

Starbucks and its witnesses are not interested in comparing the circumstances between Mr. Sykes' and Ms. Phillips' separations from employment as part of its defense in this case.  However, Starbucks *is* interested in testing the credibility and memory of witnesses who will testify for Ms. Phillips at trial, and that is precisely what Starbucks did during Mr. Sykes' deposition on June 3, 2021.[4]  During questioning by Ms. Phillips' counsel, Mr. Sykes testified about his separation from Starbucks.  The extent of Mr. Sykes' testimony was simply that he resigned after Starbucks denied his request to transfer to New York City and told him he needed to transfer to a market outside of Philadelphia to remain employed.  (Exh. K, Sykes Tr. 7:17-8:22.)

Starbucks' counsel was surprised by Mr. Sykes' testimony, as counsel had believed from its own investigation that Mr. Sykes was unhappy with his separation from Starbucks.  Indeed,

---

[4] Mr. Sykes testified that he believed Ms. Phillips' race played a role in her termination, thus cementing himself as a witness for Ms. Phillips.  (Exh. K, Sykes Tr. 28:12-14.)

though Mr. Sykes painted his separation as a mutual parting-of-ways, a contemporaneous email he wrote on June 15, 2018 to former CEO Howard Schulz, current CEO Kevin Johnson, and former COO Roz Brewer suggested otherwise.  In that email, Mr. Sykes complained about the denial of his transfer request and wrote that he felt like he was being "kicked out" by Starbucks.  (Exh. L, Sykes Email.)  Because Mr. Sykes omitted from his testimony both the fact that he wrote this email and that he believed Starbucks had "kicked [him] out," upon completion of questioning by Ms. Phillips' counsel, Starbucks' counsel read out portions of the email to Mr. Sykes to test his credibility and memory regarding why he wrote the email and to understand what he meant by the phrase "kicked out."  (Exh. K, Sykes Tr., 41:6-51:15.)  As Starbucks' counsel explained to Ms. Phillips' counsel the next day, Starbucks "had no intention of relying on this document or questioning Mr. Sykes' about it until it heard Mr. Sykes' testimony in which he misrepresented the events surrounding his separation from Starbucks."  (Exh. M, June 8, 2021 email.)  Further, Starbucks' counsel maintained on the record during Mr. Sykes' deposition, and continues to maintain, that documents related to Mr. Sykes' separation are neither relevant nor responsive to any existing document request.

At Ms. Phillips' counsel's request, Starbucks produced the content of the Sykes email to Ms. Phillips' counsel the next morning, on Friday, June 4, 2021. (*Id.*)  On Tuesday, June 8, 2021, Starbucks produced a complete Bates stamped version of the email to Ms. Phillips' counsel.  (*Id.*)  As Starbucks' counsel explained, the email read into the record at Mr. Sykes' deposition did not plainly list the email's recipients, and though the undersigned counsel for Starbucks was ill and out of the office on Monday June 7, 2021 and Tuesday June 8, 2021, the undersigned counsel reached out to Starbucks, obtained a full and complete version of the email listing the recipients, and produced it to Ms. Phillips' counsel within minutes of receiving it.  (*Id.*)

10

On June 10, 2021, during the meet-and-confer process preceding Ms. Phillips' motion, Ms. Phillips' counsel asked Starbucks, for the first time, to produce "all documents related to Mr. Sykes' email[.]"  (Exh. N, June 10, 2021 email.)  Starbucks declined to do so, noting that "[d]ocuments related to Mr. Sykes' email are not relevant to the decision to terminate Shannon Phillips' employment and thus are outside the scope of permissible discovery under Rule 26." (*Id.*).  Thereafter, Ms. Phillips filed her motion to compel.

## IV.        LEGAL STANDARD

Federal Rule of Civil Procedure 37 governs motions to compel discovery, and "[t]he scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rule of Civil Procedure." *Brewer v. Berks Cnty. Sheriff*, Civ. A. No. 13-5763, 2015 WL 13620425, at *2 (E.D. Pa. Oct. 5, 2015).  Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).

"Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *In re Domestic Drywall Antitrust Litigation*, 300 F.R.D. 234, 238 (E.D. Pa. 2014) (*quoting Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999)).  Thus, when deciding a motion to compel, "[t]he moving party bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1). If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1), or (ii) is not sufficiently relevant to justify the burden of producing the information." *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019)

Decisions regarding motions to compel discovery are "committed to the sound discretion of the district court." *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d Cir.1974).  "In

evaluating whether a party is entitled to discovery, the trial court should not simply rule on some categorical imperative, but should consider all the circumstances of the pending action." *Trask v. Olin Corp.*, 298 F.R.D. 244, 258 (W.D. Pa. 2014)

V.      **ARGUMENT**

   A.      **The Court Should Not Compel Starbucks To Produce Privileged Documents Because Starbucks Is Not Relying On Legal Advice or Attorney Communications Contained In Those Documents To Defend Itself In This Case**

Starbucks has withheld two documents on the basis of privilege that relate to an "internal investigation into pay disparities within its Philadelphia market" following the April 12, 2018 arrests:  (1) Ms. Johnson's May 10, 2018 email and (2) the BEC case file pertaining to the investigation of partner allegations against Mr. Trinsey.  Although Ms. Phillips claims Starbucks is relying on "the results flowing from its internal investigation into pay disparities within the Philadelphia market" as evidence to support its legitimate, non-discriminatory reason for her termination, Starbucks has not attempted to defend itself by disclosing or describing legal advice or attorney communications contained in either of the documents Starbucks withheld.  (*See* ECF 50-2, pp. 7 of 18).  Accordingly, Starbucks has not waived the privilege as it relates to those two documents, and there is no basis to compel Starbucks to produce them to Ms. Phillips.

The attorney-client privilege "protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client." *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014).  However, a party may not use the attorney-client privilege as "both a sword and a shield" by selectively "waiv[ing] its privilege for favorable advice while asserting its privilege on unfavorable advice." *In re EchoStar Communs. Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006).  Consequently, a party may not "rely upon the legal advice it received . . . without permitting [the opposing party] the opportunity to

probe the surrounding circumstances and substance of that advice." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006) (citation omitted). A party is deemed to have waived the privilege where it "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue." *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). Attorney advice "is not in issue merely because it is relevant" to witnesses' testimony. *Id.* at 863. Instead, the "advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id.* In other words, "the advice of . . . counsel is not placed in issue, and the privilege is not waived, unless the [party availing itself of the privilege] seeks to limit its liability by describing that advice and by asserting that [it] relied on that advice." *Id.*

Here, Ms. Phillips fails to show that Starbucks has improperly used the attorney-client privilege as both a "sword" and a "shield." Starbucks has not placed at issue the advice of, or communications with, counsel as part of its defense to Ms. Phillips' claims. The testimony elicited by Ms. Johnson was that there was, in fact, a pay disparity between Ms. Huff and a white assistant store manager. (Exh. A, Johnson Tr. 37:5-12.) The testimony elicited by Mr. Pinto was that Ms. Philips' lack of awareness of inequitable practices happening in her market was one of several examples of what made her an unfit leader for the Philadelphia market. (Exh. B, Pinto Tr. 101:2-12.) Neither Ms. Johnson, Mr. Pinto, nor any other witness for Starbucks testified that, in evaluating whether to terminate Ms. Phillips' employment, Starbucks relied on legal advice or attorney communications contained in Ms. Johnson's privileged May 10, 2018 email or the privileged BEC case file—both of which relate to the investigation into multiple partner allegations *against Mr. Trinsey*. Critically, both Ms. Johnson's email and the BEC investigation into Mr. Trinsey occurred *after* Ms. Phillips' May 9, 2018 termination; thus, it would be temporally

13

impossible for Starbucks to "use the results of its internal investigation into pay disparities within its Philadelphia market as justification for Ms. Phillips' termination[.]" (ECF 50-2, p. 15 of 18.)

No part of Mr. Pinto's or Ms. Johnson's testimony (or any other witness's testimony) disclosed legal advice given to Starbucks or the content of privileged documents. Although Mr. Pinto's and Ms. Johnson's testimony may relate to the same topics as the privileged May 10, 2018 email (which sought legal advice about investigating allegations against Mr. Trinsey, including Ms. Huff's allegation of a pay disparity) and the privileged BEC case file (which summarized the findings and conclusions of the investigations into partner allegations against Mr. Trinsey), neither Mr. Pinto's nor Ms. Johnson's testimony sought to use the privileged documents as a sword while keeping other information hidden behind the shield of the attorney-client privilege. Accordingly, Starbucks has not waived the privilege as it relates to Ms. Johnson's May 10, 2018 email or the BEC case file, and the Court should not compel Starbucks to produce them to Ms. Phillips.

**B.    The Court Should Not Compel Starbucks To Produce Documents Related To Mr. Sykes' Separation**

The Court should deny Ms. Phillips' request to compel Starbucks to produce documents related to Mr. Sykes' separation two reasons: Ms. Phillips (1) fails to meet her burden of demonstrating that documents related to Mr. Sykes' separation are relevant; and (2) failed to seek documents related to Mr. Sykes' separation earlier in discovery, and her request for such documents now, at the close of discovery, is untimely.

**1.    Documents Related To Mr. Sykes' Separation Are Not Relevant**

Ms. Phillips offers only one reason why this Court should compel Starbucks to produce documents related to Mr. Sykes' separation: "Because the Defendant seeks to use Mr. Sykes' separation of employment as evidence to rebut Plaintiff's claims in this case, Plaintiff is entitled to any and all documents related to his separation." (ECF 50-2, p. 13 of 18.) However, as

previously discussed, Starbucks does not intend to compare the circumstances between Mr. Sykes' and Ms. Phillips' separations from employment to support its defenses in this case.   Rather, Starbucks intends to prove that Ms. Phillips was separated from employment because her manager (Ms. Hymes) determined Ms. Phillips was not capable of leading the Philadelphia market and its partners through a moment of crisis.

Ms. Phillips has offered no explanation as to how Mr. Sykes' separation—which, according to Mr. Sykes and other witnesses, was voluntary—bears any relation to her claims that Starbucks terminated her employment because of her race and in retaliation for alleged complaints of discrimination.   At most, Ms. Phillips references the fact that, in his June 15, 2018 email, Mr. Sykes complained that he was treated unfairly by Ms. Hymes.   (ECF 50-2, p. 10 of 18.)   However, Mr. Sykes was not complaining that Ms. Hymes treated him or any other employee unfairly because of race; instead, in the context of his complaint that Starbucks denied his request to transfer to New York City, Mr. Sykes made a non-specific reference to how Ms. Hymes was "out to make [herself] appear and look a certain way at the cost of anyone," and that Starbucks should take his suggestion to "look into how [Ms. Hymes] is operating her market" because she "clearly cares only for her own livelihood and not about anyone else."   (Exh. L, Sykes Email.)   These generalized complaints about Ms. Hymes—which do not involve allegations of discrimination, or as pertinent to this case, reverse discrimination—shed no light whatsoever on the disputed issues in this case (*i.e.*, whether Ms. Phillips was the victim of reverse discrimination).

Mr. Sykes' separation is irrelevant to the parties' claims and defenses in this case. Accordingly, Ms. Phillips fails to carry her "initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1)," *Atkinson, Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019), and the Court should deny her motion to compel.

15

**2.      Ms. Phillips' Request For Documents Related To Mr. Sykes' Separation Is Untimely**

The Court should also deny Ms. Phillips' motion because her request for documents related to Mr. Sykes' separation is untimely.  As discussed above, not a single document request served by Ms. Phillips during discovery sought documents related to Mr. Sykes's separation, and Ms. Phillips declined to ask Starbucks to search his name through its text messages and emails.  By contrast, Ms. Phillips sought the very specific information she now wants for Mr. Sykes (documents related to his separation) for Mr. Trinsey, when, on April 6, 2020, she served a request seeking "[a]ny and all documents that refer to or relate to the circumstances surrounding Benjamin Trinsey's separation from employment by Defendant."  (Exh. F, Plaintiff's First Set of Requests for Production of Documents, Request No. 8.).

Recognizing that she failed to ask for documents related to Mr. Sykes' separation during discovery, Ms. Phillips now contends that Starbucks should have read six of her extraordinarily broad and objectionable document requests to have been asking for documents related to Mr. Sykes' separation.  (ECF 50-2, p. 9 of 18, n.7) (referencing Plaintiff's Request Nos. 14, 15, 16, 25, 26, and 31.)  However, Starbucks objected to each of those Requests on multiple, supported grounds, and at no point during discovery did Ms. Phillips offer to narrow her requests to focus on documents related to Mr. Sykes' separation.  (Exh. I, Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents.)  In fact, though Ms. Philips has had Starbucks' discovery responses for almost one year, she never asserted, prior to the meet-and-confer process preceding her motion to compel, that Starbucks' responses to Request Nos. 14, 15, 16, 25, 26, and 31 were deficient for not producing documents relating to Mr. Sykes' separation.  *See Mohmah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) ("If [an] objection has been properly articulated, it rests with the party seeking discovery to show that a discovery request lies

16

within the bounds of Rule 26.").

Ms. Phillips' *new* request for documents relating to Mr. Sykes' termination, which her counsel made via her motion to compel, is untimely.[5]   The Court-ordered fact discovery deadline in this case was June 10, 2021.  (ECF 48.)  The federal rules provide that parties have thirty days in which to respond to requests for production.  Fed. R. Civ. P. 34(b)(2).  Accordingly, Starbucks' response to Ms. Phillips' request for documents relating to Mr. Sykes' termination, served on June 10, 2021, would not be due until July 12, 2021—30 days after the June 10, 2021 discovery deadline.  Because Starbucks' deadline to respond would be after the discovery cutoff date, Ms. Phillips' request is untimely.  *See Philip Delpalazzo v. Horizon Group Holding, LLC*, Civ. A. No. 19-5682, 2021 WL 1546229, at *2 (E.D. Pa. Apr. 20, 2021) (collecting cases and holding that discovery requests are untimely where the deadline to respond is after the expiration of the discovery deadline).  There is no excuse for Ms. Phillips' delay:  if she believed documents relating to Mr. Sykes' separation were relevant in this case, she had ample opportunity to request them during discovery.  However, she failed to do so until the last possible minute, rendering her requests untimely.[6]

---

[5] Ms. Phillips' motion seeks a different category of documents than the documents she sought via the meet-and-confer process.  In her counsel's June 10, 2021 email, Ms. Phillips' counsel asked Starbucks to produce "all documents related to Mr. Sykes' *email.*"  (Exh. N, June 10, 2021 email) (emphasis added).  However, Ms. Phillips' motion now seeks "any and all documents related to Paul Sykes' *separation of employment*[.]"  (ECF 50-2, p. 4 of 18) (emphasis added).  Ms. Phillips' request, made via her motion, violates E.D. Pa. Local Rule 5.1.2(2)(d), which mandates that a request for documents "shall not be filed with the court."  L.R. 5.1.2(2)(d).  This alone is grounds to deny Ms. Phillips' motion to compel.  *See Williams v. Wetzel*, Civ. A. No. 17-79, 2019 WL 1206061, at *5, n.1 (M.D. Pa. Mar. 14, 2019) (denying motion to compel because plaintiff made new requests for documents within her motion in violation of identical local rule); *Moore v. Mann*, Civ. A. No. 13-2771, 2015 WL 672444, at *1 (M.D. Pa. Feb. 17, 2015) (striking plaintiff's discovery requests because the requests were filed with the court, rather than served on the parties).

[6] Ms. Phillips seeks expenses and attorney's fees incurred in connection with the aspect of her motion pertaining to her request that Starbucks produce all documents relating to Mr. Sykes' separation.  (ECF 50-2, p. 12 of 18, n.11.)  Though Starbucks believes this Court should deny Ms. Phillips' motion to compel in its entirety, in the event it grants this aspect of Ms. Phillips' motion, it should decline to award fees because, for all of the reasons discussed at length herein, Starbucks' "nondisclosure, response, or objection was substantially justified."  Fed. R. Civ. P. 37(a)(5)(A).

## VI.        CONCLUSION

For the foregoing reasons, Starbucks respectfully requests that the Court deny Ms. Phillips'

Motion to Compel Discovery.

Respectfully submitted,

*/s/ Marc D. Esterow*

Richard R. Harris (*admitted pro hac vice*)
Marc D. Esterow (NJ No. 210102016)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
267.402.3000 (t)
267.402.3131 (f)
rharris@littler.com
mesterow@littler.com

Dated: June 24, 2021                    *Attorneys for Defendant,*
                                        *Starbucks Corporation d/b/a*
                                        *Starbucks Coffee Company*

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on this 24th day of June 2021, the foregoing document was filed using the District of New Jersey's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

*/s/ Marc D. Esterow*
Marc D. Esterow
