# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHANNON PHILLIPS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:19-cv-19432 |
| | : | |
| v. | : | |
| | : | Hon. Joel H. Slomsky, U.S.D.J. |
| STARBUCKS CORPORATION d/b/a | : | |
| STARBUCKS COFFEE COMPANY, | : | |
| | : | **FILED VIA ECF** |
| Defendant. | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**PAGE**

I.   STATEMENT REQUESTING ORAL ARGUMENT ...................................................... 1

II.  IN ANY MOMENT OF DECISION, THE BEST THING YOU CAN DO IS THE
     RIGHT THING, THE NEXT BEST THING IS THE WRONG THING, AND
     THE WORST THING YOU CAN DO IS NOTHING.................................................... 1

III. STATEMENT OF UNDISPUTED FACTS ................................................................... 3

IV.  ARGUMENT ............................................................................................................... 3

     A.   Summary Judgment Standard ............................................................................. 3

     B.   Starbucks Is Entitled To Summary Judgment On Ms. Phillips' Reverse
          Race Discrimination Claims Under Title VII, NJLAD and Section 1981 ............. 4

          1.   Ms. Phillips Cannot Prove That Her Race Motivated Starbucks'
               Decision To Terminate Her Employment And Not Hire Her For
               The TLA Position ...................................................................................... 5

               a.   Ms. Phillips Was Not Discriminated Against – Therefore,
                    She Cannot Make Out A Prima Facie Case of Race
                    Discrimination.................................................................................. 6

               b.   Ms. Phillips Cannot Establish That Similarly Situated Non-
                    White Employees Were Treated More Favorably Than Her ......... 7

               c.   Ms. Phillips Fails To Present Any Evidence That Starbucks
                    Had An Agenda To Get Rid Of White People – This
                    Allegation Is Fabricated And Insulting........................................ 10

     C.   Starbucks Is Entitled To Summary Judgment On Ms. Phillips' Retaliation
          Claims ............................................................................................................... 11

          1.   Ms. Phillips Did Not Engage In Protected Activity ................................. 12

     D.   STARBUCKS HAD A LEGITIMATE, NON-DISCRIMINATORY REASON
          FOR ITS EMPLOYMENT ACTIONS TOWARDS MS. PHILLIPS ............................ 13

          1.   Starbucks Terminated Ms. Phillips' Employment Because She Was
               Incapable Of Leading Her Team.............................................................. 13

          2.   Starbucks Did Not Hire Ms. Phillips For The TLA Position Because It
               Decided Not To Create The Position And Did Not Hire Anyone Into The
               Position ................................................................................................... 15

## TABLE OF CONTENTS
(CONTINUED)

PAGE

E.    MS. PHILLIPS CANNOT SHOW THAT STARBUCKS' PROFFERED REASON FOR DISCHARGING AND FAILING TO HIRE HER IS PRETEXT FOR DISCRIMINATION OR RETALIATION ............................................................. 17

V.    CONCLUSION .............................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acampora v. Konica Business Machines USA, Inc.*,
    No. CIV.A. 95–3936, 1997 WL 214800 (E.D. Pa. 1997)......................................18

*Ade v. KidsPeaceCorp.*,
    698 F. Supp. 2d 501 (E.D. Pa. 2010), *aff'd*, 401 F. App'x 697 (3d Cir. 2010) ......................12

*Ali v. Woodbridge Twp. Sch. Dist.*,
    957 F.3d 174 (3d Cir. 2020) ............................................................4

*Allia v. Target Corp.*,
    No. CIVA07-4130 NLHAMD, 2010 WL 1050043, at *5 (D.N.J. Mar. 17,
    2010) ..........................................................................6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).......................................3, 4

*Barber v. CSX Distrib. Servs.*,
    68 F.3d 694 (3d Cir. 1995)...........................................................12

*Billet v. CIGNA Corp.*,
    940 F.2d 812 (3rd Cir. 1991) ........................................................17, 19

*Bloch v. Mack Trucks, Inc.*,
    240 F. Supp. 3d 365 (E.D. Pa. 2017) ....................................................19

*Bond v. City of Bethlehem*,
    505 F. App'x 163 (3d Cir. 2012) .........................................................5

*Boykins v. CLBW Assocs.*,
    No. Civ. A. 11-6126, 2013 WL 6506309 (E.D. Pa. Dec. 11, 2013) ...........................7

*Boykins v. Lucent Tech., Inc.*,
    78 F. Supp. 2d 402 (E.D. Pa. 2000), *aff'd*, 29 F. App'x 100 (3d Cir. 2002) ..........................13

*Braddock v. SEPTA*,
    Civ. A. No. 13-06171, 2014 WL 6698306 (E.D. Pa. Nov. 25, 2014)......................................8

*Brewer v. Quaker State Oil Ref. Corp.*,
    72 F.3d 326 (3d Cir. 1995)...........................................................18

*Castleberry v. STI Group*,
    863 F.3d 259 (3d Cir. 2017)...........................................................4

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106. S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ........................................................3

*Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*,
   450 F.3d at 135 (3d Cir. 2006) ..............................................................................................12

*Deville v. Givaudan Fragrances Corp.*,
   419 F. App'x 201 (3d Cir. 2011) ...........................................................................................11

*Doe v. C.A.R.S. Prot. Plus, Inc.*,
   527 F.3d 358 (3d Cir. ), *order clarified*, 543 F. 3d 178 (3d Cir. 2008) .................................17

*Fatzinger v. Lehigh Valley Hosp.*,
   130 F. Supp. 2d 674 (E.D. Pa. 2001) ...................................................................................17

*Fuentes v. Perskie*,
   32 F.3d 759 (3d Cir. 1994) ...................................................................................5, 13, 16, 17

*Iadomarco v. Runyon*,
   190 F.3d 151 at 163 (3d Cir. 1999) ...................................................................................5, 6

*Kaucher v. County of Bucks*,
   455 F.3d 418 (3d Cir. 2006) ...................................................................................................3

*Kautz v. Met-Pro Corp.*,
   412 F.3d 463 (3d Cir. 2005) .................................................................................................18

*Keller v. Orix Credit Alliance, Inc.*,
   130 F.3d 1101 (3d Cir. 1997) ..............................................................................................18

*Koller v. Riley Riper Hollin & Colagreco*,
   850 F. Supp. 2d 502 (E.D. Pa. 2012) ....................................................................................5

*Ma v. Westinghouse Elec. Co., LLC*,
   559 F. App'x 165 (3d Cir. 2014) ..........................................................................................17

*Martin v. Health Care & Ret. Corp.*,
   67 F. App'x 109 (3d Cir. 2003) ............................................................................................18

*Mathews v. Hermann*,
   Civil Action No. 07-01318, 2008 U.S. Dist. LEXIS 35726 (E.D. Pa. Apr. 30,
   2008) .......................................................................................................................................7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507
  U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993)..........................................4, 5, 11

*Mitchell v. UBS Services USA LLC*,
  Civ. Action No. 07-1651 (KSH), 2009 WL 1856630 (D.N.J. June 26, 2009) ......................12

*Monaco v. Am. Gen. Assur. Co.*,
  359 F.3d 296 (3d Cir. 2004)..........................................................................................8

*Moore v. City of Philadelphia*,
  461 F.3d 331 (3d Cir. 2006), *as amended* (Sept. 13, 2006)......................................11

*Mosca v. Cole*,
  384 F. Supp. 2d 757 (D.N.J. 2005), *aff'd* 217 F. App'x 158 (3d Cir. 2007) ...........6

*Opsatnik v. Norfolk S. Corp.*,
  335 F. App'x 220 (3d Cir. 2009) ..............................................................................7

*Osuala v. Community College of Phila.*,
  No. CIV. A. 00-98, 2000 WL 1146623 (E.D. Pa. Aug. 15, 2000), *aff'd*, 259
  F.3d 717 (3d Cir. 2001)..............................................................................................8

*Outten v. Genesis Health Care, LLC*,
  Civ. A. No. 13-4708, 2014 WL 3964918 (E.D. Pa. Aug. 12, 2014)........................8

*Patterson v. McLean Credit Union*,
  491 U.S. 164 , 109 S. Ct. 2363, 105 L. Ed. 132 (1989)............................................4

*Preston v. Vanguard Group, Inc.*
  No. 14-7243, 2015 WL 7717296 (E.D. Pa. Nov. 30, 2015) ....................................7

*Rene v. Lidestri Foods, Inc.*,
  Civ. A. No. 09-3908 RMB, 2010 WL 4807050 (D.N.J. Nov. 17, 2010) ................12

*Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*,
  172 F.3d 238 (3d Cir. 1999)........................................................................................4

*Ryder v. Westinghouse Elec. Corp.*,
  128 F.3d 128 (3d Cir. 1997)...................................................................................5, 13

*Sarullo v. U.S. Postal Serv.*,
  352 F.3d 789 (3d Cir. 2003)........................................................................................5

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Sauchelli v. U.S. Postal Serv*,
  407 F. App'x 610 (3d Cir. 2011) ............................................................11

*Schurr v. Resorts Int'l Hotel, Inc.*,
  196 F.3d 486 (3d Cir. 1999)......................................................................4

*Szostek v. Drexel Univ.*,
  No. CIV. A. 12-2921, 2013 WL 4857989 (E.D. Pa. Sept. 11, 2013) ......................19

*Tex. Dep't of Cmty. Affairs v. Burdine*,
  450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)........................................16

*Wilcher v. Postmaster Gen.*,
  441 F. App'x 879 (3d Cir. 2011) ................................................................8

**Statutes**

42 U.S.C. § 1981.................................................................................4, 13

42 U.S.C. § 1981(b) ...................................................................................4

N.J.S.A. § 10:5-3........................................................................................4

Title VII of the Civil Rights Act of 1964.................................................4, 11, 12, 13

Fed. R. Civ. P. 56(a) ..................................................................................3

**Other Authorities**

*Dare to Lead* by Brenee Brown, 2018 ...........................................................1

*Principles: Life & Work* by Ray Dalio, 2017 .................................................1

## I. STATEMENT REQUESTING ORAL ARGUMENT

Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks") respectfully requests that the Court schedule oral argument on its Motion for Summary Judgment.

## II. IN ANY MOMENT OF DECISION, THE BEST THING YOU CAN DO IS THE RIGHT THING, THE NEXT BEST THING IS THE WRONG THING, AND THE WORST THING YOU CAN DO IS NOTHING.[1]

In the midst of a crisis, a great leader cannot hide behind others in hopes that their reputation for leading in times of non-crisis will carry them through. Rather, a true leader demonstrates "the willingness to step up, put [themself] out there, and lean into courage." Brenee Brown, *Dare to Lead*, 2018. A leader "must cultivate a culture in which brave work, tough conversations, and whole hearts are the expectation, and armor is not necessary or rewarded." *Id.* A great leader must be both "truthful and transparent." Ray Dalio, *Principles: Life & Work*, 2017. Shannon Phillips not only failed to lead, she did not even attempt to lead, and rather did absolutely nothing when Starbucks was in the midst of a crisis in April 2018.

On April 12, 2018, two Black men – Donte Robinson and Rashon Nelson – were arrested at the Starbucks store located at 18th and Spruce Street in Philadelphia while waiting for a business meeting. Mr. Robinson and Mr. Nelson were in the store for *approximately three minutes* when the Store Manager, Holly Hylton called the police. Once the police arrived at the store, the men were arrested. The arrests garnered significant national media attention. By the following weekend, this incident resulted in two million hits on the internet and sparked protests throughout Philadelphia. The arrests resulted in an emotional outpour from the City of Philadelphia as well as outrage from partners who reported to Ms. Phillips. In stark contrast to this emotional response, Ms. Phillips, who served as Regional District Manager, overseeing the

---

[1] Theodore Roosevelt, 26th U.S. President

Philadelphia market, had no response.  During this time of crisis, Starbucks' Philadelphia market needed a leader who could perform.  Ms. Phillips failed in every aspect of that role.  Indeed, Ms. Phillips could not see (and still cannot see to this day) why Ms. Hylton should not have called the police on two Black men for doing absolutely nothing.  Rather, Ms. Phillips is satisfied that Ms. Hylton "probably thought she was doing the right thing" and simply followed Starbucks' policy.  Instead of exhibiting outrage as a response to the arrests, Ms. Phillips now somehow attempts to transform herself into the victim by stating Starbucks terminated her because she is White.

Ms. Phillips' cannot see beyond herself.  During a time where Starbucks employees were desperately seeking strong and reliable leadership, Ms. Phillips:

- Appeared overwhelmed, "completely paralyzed," driven by "panic," and lacked awareness of how critical the situation was for Starbucks and its partners (SOF ¶ 29);

- Did not attend scheduled meetings or showed up late (SOF ¶33);

- Was physically and mentally absent from meetings (SOF ¶25);

- Was sometimes unreachable by her team (SOF ¶33);

- Appeared disengaged and stood in the corner at meetings where she was expected to lead or where Starbucks' executive leadership was present (SOF ¶27);

- Was unable to respond to questions and did not lead the discussion during partner roundtable sessions (SOF ¶35); and

- Lacked awareness with respect to pay disparities in her market (SOF ¶49.)

Ms. Phillips' failure to lead her team during the crisis was her downfall.  Additionally, Ms. Phillips' claims regarding non-selection for the TLA position fail because Starbucks did not hire anyone for that role.  Lastly, Ms. Phillips' never engaged in protected activity, so she has no basis

for a retaliation claim.  For the following reasons, Ms. Phillips' claims fail, and this Court should enter summary judgment in Starbucks' favor on Ms. Phillips' race discrimination and retaliation claims.

## III.     STATEMENT OF UNDISPUTED FACTS

*See* Starbucks' Statement of Undisputed Material Facts, filed contemporaneously with this memorandum of law.

## IV.     ARGUMENT

### A.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  The U.S. Supreme Court has explained the movant's burden as follows:

> In our view, the plain language of [then] Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis added).  An issue is "genuine" only if there is a sufficient evidentiary basis from which a reasonable jury could find in favor of the non-moving party.  *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006).  An issue is "material" only if it is a legal element of the claim under the applicable substantive law, which might affect the outcome of the case.  *Anderson,* 477 U.S. at 248, 106 S.

Ct. 2505, 91 L. Ed. 2d 202 (1986); *Kaucher v. County of Bucks,*, 455 F.3d at 423 (3d Cir. 2006).

To defeat a properly supported motion for summary judgment, the non-moving party must present ***affirmative evidence*** showing a genuine issue of material fact. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is "merely colorable" or "not significantly probative" is not enough. *Id.*; *see also Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 252 (3d Cir. 1999) (stating that speculation and conclusory allegations cannot be the basis for denying summary judgment).

Viewing the facts in the light most favorable to Plaintiff, she cannot sustain her claims of reverse race discrimination. Accordingly, Starbucks is entitled to summary judgment.

**B.     Starbucks Is Entitled To Summary Judgment On Ms. Phillips' Reverse Race Discrimination Claims Under Title VII, NJLAD and Section 1981**

Ms. Phillips alleges that Starbucks discriminated against her on the basis of her race (White) by (1) terminating her employment and (2) failing to hire her for a Temporary Limited Assignment ("TLA") position, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), New Jersey Law Against Discrimination ("NJLAD"), and 42 U.S.C. § 1981 ("Section 1981").

Ms. Phillips' claims under Title VII, NJLAD and Section 1981 are subject to the well-known burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993), and  its progeny. [2]   *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989), *overruled on other*

---

[2] Claims under Title VII, the NJLAD, and § 1981 are governed under the same legal framework and analyzed co-extensively. *See Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020) ("Claims brought under NJLAD and § 1981 are analyzed under the same framework."); *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) ("[§ 1981 claims are subject to the same analysis as discrimination claims under Title VII . . . .").

4

*grounds by* 42 U.S.C. § 1981(b); *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999); N.J.S.A. § 10:5-3.  Under this formulation, a plaintiff must first establish a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802.  If they are able to do so, the burden will shift to Starbucks to articulate legitimate, non-discriminatory reasons for its actions.  *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  Once Starbucks meets that burden, Ms. Phillips must then show that the reasons offered by Starbucks for her termination amount to a pretext for intentional discrimination. *Id.*   The ultimate burden of proof always remains with Ms. Phillips to show that Starbucks intentionally discriminated against her because of her race.  *Id.*; *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 136 (3d Cir. 1997).

As discussed below, there is no evidence—direct or circumstantial—from which a jury could reasonably conclude that Starbucks terminated Ms. Phillips' employment or did not hire her for the TLA position.  Accordingly, Starbucks is entitled to summary judgment.

### 1.   Ms. Phillips Cannot Prove That Her Race Motivated Starbucks' Decision To Terminate Her Employment And Not Hire Her For The TLA Position

Ms. Phillips cannot establish a *prima facie* case of discrimination.  To do so, she must show that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the circumstances raise an inference of unlawful discrimination.  *Bond v. City of Bethlehem*, 505 F. App'x 163, 165 (3d Cir. 2012).  "The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race . . . ."  *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (internal quotations omitted).

First, Ms. Phillips is Caucasian, so she is alleging "reverse discrimination." Where a non-protected class is the target of alleged discrimination, Ms. Phillips is not required to establish the first element of a *prima facie* case.  *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d

502, 517 (E.D. Pa. 2012).  The Third Circuit has adopted a modified *McDonnell Douglas* standard in reverse discrimination cases.  *Iadimarco v. Runyon*, 190 F.3d 151 at 163 (3d Cir. 1999).  To establish a *prima face* case of reverse discrimination, the plaintiff must show (1) she was qualified for the job which she held; (2) despite her qualifications, she was terminated by her employer; and (3) sufficient evidence to allow a reasonable fact finder to conclude, given the totality of circumstances, that the employer treated her less favorably because of her race.  *See Mosca v. Cole*, 384 F. Supp. 2d 757, 765 (D.N.J. 2005), *aff'd* 217 F. App'x 158 (3d Cir. 2007); *see also Iadimarco*, 190 F.3d at 163.

Here, Ms. Phillips' *prima facie* case fails at the third element.  Ms. Phillips has not presented any evidence that the adverse actions she alleges – her termination and failure to be hired – raise an inference of unlawful discrimination.  Ms. Phillips supports her discrimination claims *solely* on two fabricated assertions: (1) Starbucks "took steps to punish white employees who had not been involved in the arrests, but who worked in and around the city of Philadelphia, in an effort to convince the community that it had properly responded to the incident"; and (2) "Plaintiff's race was a motivating and/or determinative factor in [Starbucks'] discriminatory treatment of Plaintiff . . . ." (Second Am. Complaint, Introduction.)  However, there is no evidence to support either theory.

<blockquote>

a.     **Ms. Phillips Was Not Discriminated Against – Therefore, She Cannot Make Out A Prima Facie Case of Race Discrimination.**
</blockquote>

Ms. Phillips admits she was replaced by a White male – Marcus Eckensberger, Regional Director. (SOF ¶¶ 80, 81.)  Courts uniformly hold that when a plaintiff is replaced by someone of the same race or in the same protected class (or a plaintiff is unable to show otherwise) – as here – her *prima facie* case fails.  *See Allia v. Target Corp.*, No. CIVA07-4130 NLHAMD, 2010 WL 1050043, at *5 (D.N.J. Mar. 17, 2010) ("The third element of a *prima facie* case of "reverse" race

discrimination requires sufficient evidence to allow a reasonable fact finder to conclude, given the totality of circumstances, that the employer treated plaintiff less favorably because of her race. Plaintiff has not provided any evidence that Target's decision to terminate her from the Gloucester store was in any way related to plaintiff being white. Plaintiff has not demonstrated that she was replaced by a person of a minority race, that a minority employee of her same status was treated more favorably, or that race was ever an issue in the Gloucester store during her six months as the top HR executive there."); *Preston v. Vanguard Group*, *Inc.* No. 14-7243, 2015 WL 7717296, at **11-12 (E.D. Pa. Nov. 30, 2015) (granting summary judgment on §1981 discrimination claim where plaintiff had no evidence of discrimination other than her own subjective beliefs and could not show she was replaced by someone outside her protected class); *Boykins v. CLBW Assocs.*, No. CIV. A. 11-6126, 2013 WL 6506309, at *8 (E.D. Pa. Dec. 11, 2013) (holding African-American plaintiff failed to establish *prima facie* case of race discrimination to overcome employer's motion for summary judgment because plaintiff ultimately was replaced by another African-American employee).

For this reason alone, this Court should enter summary judgment in Starbucks' favor on Ms. Phillips' race discrimination claims.

### b. Ms. Phillips Cannot Establish That Similarly Situated Non-White Employees Were Treated More Favorably Than Her

There is also no evidence that Starbucks treated similarly-situated employees outside of Ms. Phillips' protected class more favorably than it treated her. It is well settled that, to establish that Starbucks treated a similarly-situated employee outside their protected class more favorably, Ms. Phillips must show that her situation and that of her putative comparator was similar in all relevant respects. *See Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009). To meet this standard, "the comparator's misconduct must be nearly identical to the plaintiff's in order

to prevent courts from second guessing employers' reasonable decisions and confusing apples with oranges." *Mathews v. Hermann*, Civil Action No. 07-01318, 2008 U.S. Dist. LEXIS 35726, *27 (E.D. Pa. Apr. 30, 2008) (quoting *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)).

"[T]o be considered similarly situated, comparator employees must be similarly situated in *all relevant respects*." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) (emphasis added). That determination "takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Id*. Critically, "employers are permitted to hold employees in leadership positions to higher standards and such higher-ranked employees are not 'similarly situated' to their subordinates." *Outten v. Genesis Health Care, LLC*, Civ. A. No. 13-4708, 2014 WL 3964918, at *7 (E.D. Pa. Aug. 12, 2014).

The only non-White employee Ms. Phillips claims was treated more favorably than her is District Manager Paul Sykes, who is Black. (SOF ¶41.) Mr. Sykes was the District Manager responsible for the district, which included the store at 18th and Spruce where the two Black men were arrested. (SOF ¶9.) Ms. Phillips claims that Starbucks treated Mr. Sykes more favorably than her because he is Black by not terminating his employment after the two Black men were arrested at the store within his District. (SOF ¶41.)

First, Mr. Sykes is not a suitable comparator because he is not similarly situated to Ms. Phillips. Ms. Phillips as a Regional Director directly *supervised* Mr. Sykes, a District Manager - therefore, Mr. Sykes is not her comparator. (SOF ¶7); *see Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 306 (3d Cir. 2004) (holding "the eight vice presidents/branch managers whom [the plaintiff] directly supervised" were not similarly situated to the plaintiff); *Braddock v. SEPTA*,

Civ. A. No. 13-06171, 2014 WL 6698306, at *4 (E.D. Pa. Nov. 25, 2014) (holding that plaintiff's putative comparators "were not similarly situated to plaintiff because they were his own subordinates."); *Osuala v. Community College of Phila.*, No. CIV. A. 00-98, 2000 WL 1146623, at *7 (E.D. Pa. Aug. 15, 2000), *aff'd,* 259 F. 3d 717 (3d Cir. 2001) (holding "[a]llegations about the failure of [employer] to discipline [plaintiff's subordinates] are inapposite" because employees cannot be similarly situated to their supervisors), *aff'd*, 259 F.3d 717 (3d Cir. 2001)).

Further, Ms. Phillips has not presented any evidence that Mr. Sykes was treated more favorably than her.  Starbucks did not terminate Ms. Phillips' employment simply because she was Regional Director over the stores that included the store at 18th and Spruce.  Starbucks terminated her employment because of her failure to lead her team following the incident, and her failure to address Black employees' concerns regarding pay disparities, as outlined in greater detail in Section IV.B.1.c, *infra*.  In contrast, Mr. Sykes exhibited a higher level of leadership as compared to Ms. Phillips following the April 2018 arrests.  (SOF ¶42.)  Specifically, he displayed a strong work ethic and exhibited an attitude that partners needed to work together to reach a solution. (SOF ¶43.)  Nevertheless, Mr. Sykes ultimately resigned from Starbucks. (SOF ¶44.) Mr. Sykes requested a transfer to the New York market, but Starbucks denied his transfer because his managers received feedback that his managerial style is "harsh."  (SOF ¶40.)

Additionally, Mr. Sykes' perception of Ms. Phillips as a strong leader has no bearing on this case.  Ms. Phillips supervised Mr. Skyes, thus he was her subordinate.  Rather, it is the perception of those who supervised Ms. Phillips – Ms. Hymes – that ultimately bears any significance.  Ms. Hymes, in addition to Mr. Pinto, were qualified to evaluate the performance of one of their subordinates, and determined that Ms. Phillips could not lead her market. (SOF ¶¶73-75.)

Lastly, to the extent that Ms. Phillips argues that Starbucks treated Mr. Skyes better than Mr. Trinsey, that argument has no merit.  Mr. Trinsey voluntarily resigned from Starbucks.  (SOF ¶68.)  Mr. Sykes also voluntarily resigned from Starbucks.  (SOF ¶44.)  Therefore, Ms. Phillips cannot demonstrate that similarly-situated, non-White employees were treated more favorably.

>       c.       **Ms. Phillips Fails To Present Any Evidence That Starbucks Had An Agenda To Get Rid Of White People – This Allegation Is Fabricated And Insulting.**

There is also no evidence that race played any role in the decision to terminate Ms. Phillips' employment and not hire her for the TLA position.  First, there is no evidence that Camille Hymes (Black), Regional Vice President of Operations – who was involved in the decision to terminate Ms. Phillips' employment - displayed any discriminatory animus towards White people, particularly given that Starbucks replaced Ms. Phillips with another White Regional Director.

The only evidence Ms. Phillips presents of discriminatory animus by Ms. Hymes is allegations that she asked Ms. Phillips to put Mr. Trinsey on suspension for allegations that she believed were false, regarding pay disparities for Black partners. (SOF ¶58.) However, Ms. Hymes' decision to suspend Mr. Trinsey to investigate the claims against him does not demonstrate that Ms. Hymes had a discriminatory animus towards Ms. Phillips because she is White.  In fact, Mr. Trinsey's suspension had absolutely nothing to do with Ms. Phillips.  Ms. Phillips even admits that Starbucks had an ethical obligation to investigate these allegations.  (SOF ¶67.)  Further, as Regional Vice President of Operations, it was Ms. Hymes' responsibility to take claims by her Black partners that there were pay disparities seriously, and to investigate the claims against Mr. Trinsey.  After Ms. Hymes decided to launch an investigation, Ms. Phillips simply stated that the accusations against Mr. Trinsey were "unfair" without even knowing the results of the investigation.  (SOF ¶59, 60.)  Thus, Ms. Hymes' legitimate decision to suspend Mr. Trinsey to

investigate the claims against him does not suggest that she had a discriminatory animus towards White employees.

Further, Ms. Phillips does not point to any evidence to suggest that Ms. Hymes had a discriminatory animus towards White partners. Starbucks leadership never discussed or considered Ms. Phillips' race in making the termination decision.  (SOF ¶77.)  Further, there is no evidence that Starbucks leadership, displayed any discriminatory animus towards White people.  (SOF ¶78.) To the contrary, Ms. Hymes actually recommended Ms. Phillips for the TLA position. (SOF ¶89.)[3] Lastly, a White employee replaced Ms. Phillips. (SOF ¶¶80, 81.) Therefore, there is absolutely no evidence that Starbucks had a discriminatory animus towards White people.  In fact, in text messages following the incident, even Ms. Phillips stated that even she did not believe that Starbucks only tried to terminate White partners. (SOF ¶82.)

The fact that Ms. Phillips disagrees with Starbucks' decision to terminate her employment is not enough to establish a claim of reverse race discrimination.  *See Sauchelli v. U.S. Postal Serv*, 407 F. App'x 610 (3d Cir. 2011).  As demonstrated below in Section IV.D, Starbucks had a legitimate, nondiscriminatory reason for its employment actions with respect to Ms. Phillips, which had nothing to do with her race.

### C.    Starbucks Is Entitled To Summary Judgment On Ms. Phillips' Retaliation Claims

To establish a *prima facie* case of retaliation under Title VII and NJLAD, Ms. Phillips must establish that (1) she engaged in a protected activity; (2) Starbucks took adverse action against her; and (3) a causal link exists between the protected activity and Starbucks' adverse action.  *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006), *as amended* (Sept. 13, 2006).

---

[3] Further, as outlined in Section IV.B.1 *supra*, Ms. Phillips cannot establish that the decision not to hire her for the TLA position had anything to do with her race, since Starbucks decided to abandon its plans to create the position and no one was hired into the position.

Retaliation claims under the Title VII and NJLAD are analyzed under the *McDonnell Douglas* burden-shifting analysis, set forth in Section IV.B *supra*. *Deville v. Givaudan Fragrances Corp.*, 419 F. App'x 201, 205 (3d Cir. 2011) (citations omitted).  Ms. Phillips' retaliation claim fails because she cannot establish the first and third elements of a *prima facie* case—she did not engage in protected activity and there was no causal link between her opposition to Mr. Trinsey's suspension and her discharge or failure to be hired for the TLA position.

### 1.    Ms. Phillips Did Not Engage In Protected Activity

To constitute protected activity, a complaint of discrimination must be "specific enough to notify management of the particular type of discrimination at issue."  *Ade v. KidsPeaceCorp.*, 698 F. Supp. 2d 501, 520 (E.D. Pa.), *aff'd* 401 F. App'x 697 (3d Cir. 2010).  Generalized complaints about unfair treatment do not constitute a protected activity.  *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (stating that "[a] general complaint of unfair treatment does not translate into a charge of . . . discrimination."); *Mitchell v. UBS Services USA LLC*, Civ. Action No. 07-1651 (KSH), 2009 WL 1856630 at *13 (D.N.J. June 26, 2009) ("[V]ague complaints or generalized grievances of unfair treatment without alleging the employer engaged in unlawful discriminatory conduct do not qualify as protected activity.").

Importantly, "opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context."  *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d at 135 (3d Cir. 2006) ("A general complaint of unfair treatment is insufficient to establish protected activity under Title VII."); *Barber v. CSX Distribution Services*, 68 F.3d 694, 701-02 (3d Cir. 1995) (letter to employer not protected activity because it neither explicitly nor implicitly complained of discrimination and instead raised general complaints of unfairness); *Rene v. Lidestri Foods, Inc.*, Civ. A. No. 09-3908, 2010 WL 4807050, at *9 (D.N.J. Nov. 17, 2010) (Bumb, J.) (complaint to employer not protected activity

because "[p]laintiff never alleged in any fashion that he was harassed because of his race, color, or national origin," and instead raised general complaints of unfairness).

Ms. Phillips alleges that her protected activity was objecting to Mr. Trinsey's suspension, because she did not agree with the reasons for his suspension.  (SOF ¶61.)  Even if Ms. Phillips did not agree with the reasons for Mr. Trinsey's suspension, she made no mention of Mr. Trinsey's race when objecting to his investigation.  (SOF ¶59, 61.)  Additionally, Ms. Phillips did not even know that Mr. Trinsey was responsible for monitoring pay.  (SOF ¶55.)  Rather she asserts that the District Manager did not have discretion in determining pay.  (SOF ¶55.)  Starbucks had an obligation to treat the accusations of Black employees of pay disparities by Mr. Trinsey seriously, including investigating the claims against him.  (SOF ¶67.)  Although she felt Mr. Trinsey's suspension was unfair, she does not allege that she had a reasonable belief it was unlawful under Title VII.  Therefore, Ms. Phillips has not plausibly alleged any facts to suggest that she engaged in protected activity, and her retaliation claims fail.

> **D.   Starbucks Had A Legitimate, Non-Discriminatory Reason For Its Employment Actions Towards Ms. Phillips**

Even if Ms. Phillips could establish a *prima facie* case of race discrimination and retaliation (which she cannot), her claims fail because there is no genuine issue of material fact that: (1) Starbucks terminated Ms. Phillips' employment because of her failure to lead her region following the arrests of two black men at the Starbucks store on 18th and Spruce, as required by her position as Regional Director; (SOF ¶74)  and (2) Starbucks did not hire Ms. Phillips for the TLA position because it ultimately decided not to create the position and did not hire anyone for the position. (SOF ¶¶100, 101.)

> **1.   Starbucks Terminated Ms. Phillips' Employment Because She Was Incapable Of Leading Her Team**

If Ms. Phillips succeeds in establishing a *prima facie* case of discrimination and retaliation

under the Title VII, Section 1981 and the NJLAD, the burden then shifts to Starbucks to articulate a legitimate, non-discriminatory reason for its termination of Ms. Phillips' employment. *See Fuentes v. Perskie*, 32 F.3d at 763 (3d Cir. 1994). The employer's burden at this stage is relatively light in that it is satisfied if the employer articulates *any* reason for the action taken. *See Boykins v. Lucent Tech., Inc.*, 78 F. Supp. 2d 402, 409 (E.D. Pa. 2000), *aff'd*, 29 F. App'x 100 (3d Cir. 2002). Once an employer has demonstrated a legitimate reason for the employment action, the burden returns to the plaintiff, who must ultimately prove that the employer's proffered reason is a pretext for discrimination. *See Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 136 (3d Cir. 1997).

Starbucks terminated Ms. Phillips' employment because she failed to perform the essential functions of her role as Regional Director, and was unable to demonstrate strong leadership, which was more important than ever following the April 2018 arrests. (SOF ¶¶74, 75.) As Regional Director, Ms. Phillips played a key in leading those changes. Nevertheless, Mr. Pinto, Vice President of Partner Resources (who is White), noted that Ms. Phillips was neither physically nor emotionally present. (SOF ¶28.) He noted, Ms. Phillips' leadership was "completely paralyzed," driven by "panic." (SOF ¶29.) Similarly, Ms. Hymes noted that Ms. Phillips appeared overwhelmed, and during the roundtables, and the partners in the Philadelphia region did not trust Ms. Phillips to lead them through the crisis. (SOF ¶¶22, 23.) Ms. Hymes noticed that Ms. Phillips appeared disengaged and stood in the corner at meetings where she was expected to lead or where Starbucks' executive leadership was present. (SOF ¶27.) Ms. Phillips was unable to respond to questions and did not lead the discussion during debrief session following roundtables. (SOF ¶35.) She observed that Ms. Phillips lacked awareness on how critical the situation was for Starbucks and its partners. (SOF ¶49.) On several occasions, Ms. Phillips did not attend meetings, which

14

gave partners the perception that she "would not show up when  it was raining."  (SOF ¶26.) On several occasions Ms. Phillips failed to attend meetings or showed up late. (SOF ¶33.)  Further, her team struggled to reach her.  (SOF ¶¶27, 33.)

Additionally, in or around May 2018, multiple partners in the Philadelphia store complained about the lack of opportunities provided to black employees. (SOF ¶45.) Other employees perceived that those employees with special relationships with Ms. Phillips received greater opportunities.  (SOF ¶46.)  Black employees expressed concerns of pay disparities as compared to White employees and they felt that Ms. Phillips did not take a leadership role and correct these issues. (SOF ¶48.)  When allegations came out that Mr. Trinsey made inappropriate comments about race, sexuality, and the treatment of other partners and team members, and was involved in pay disparities between Black and White employees, she claimed that his suspension was unfair.  (SOF ¶¶53, 59.)  Although she was not involved in the investigation of the claims, Ms. Phillips maintained that Mr. Trinsey did not do anything wrong and that the decision to suspend him pending an investigation was unfair, without knowing the actual outcome of the investigation.  (SOF ¶60.)  Ms. Phillips' lack of awareness of inequitable pay practices happening in her market was yet another example of how she did not have a significant leadership presence in the market.  (SOF ¶49.)  Ultimately, Starbucks terminated Ms. Phillips' employment because of her complete failure to lead her team and perform the duties of her role as Regional Director. Ms. Phillips' termination had absolutely nothing to do with her race and was not in retaliation for a complaint of discrimination. For these reasons, Ms. Phillips' termination was for the legitimate, non-discriminatory reasons.

> **2.     Starbucks Did Not Hire Ms. Phillips For The TLA Position Because It Decided Not To Create The Position And Did Not Hire Anyone Into The Position**

Moreover, Ms. Phillips' race played no factor in the decision not to hire Ms. Phillips for

the TLA position. Starbucks decided to abandon the position and not hire anyone for the position. (SOF ¶¶100,101.)  In or around May 2018, Shannon Boldizsar (White), then-Government & Community Affairs, Senior Manager, and her colleagues decided not to create the TLA position because she felt that the partners she considered for the TLA role were not well suited for the position because none had the expertise necessary to ensure that Starbucks continued its commitment to maintaining deep relationships with policy makers and elected officials following the April 2018 arrests.  (SOF ¶96.)  On May 2, 2018, Ms. Boldizsar notified the candidates with whom she had previously spoken, including Ms. Phillips, that the position was being put "on hold." (SOF ¶100.)  The decision had nothing to do with Ms. Phillips' race. In fact, Ms. Phillips admits she herself stated that she was not qualified for the TLA position. (SOF ¶93.)  When Ms. Boldizsar and Ms. Phillips exchanged emails about the role on April 25, 2018, Ms. Phillips conceded she did not believe she was qualified for the role and would have "no hard feelings if [she was] not the right person." (SOF ¶93.)

Moreover, Starbucks had no obligation to consider Ms. Phillips for the TLA position after it terminated her employment. The fact that Starbucks did consider her demonstrates that the decision to abandon the position had nothing to do with Ms. Phillips's race. In fact, Ms. Hymes – recommended her for the position. (SOF ¶89.)

Because Starbucks has established a legitimate, non-discriminatory reason for terminating Ms. Phillips' employment and not hiring her for the TLA position, the burden therefore shifts back to Ms. Phillips to point to evidence from which a "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.  As discussed below, Ms. Phillips cannot meet this standard under either prong.

16

**E.      Ms. Phillips Cannot Show That Starbucks' Proffered Reason For Discharging And Failing To Hire Her Is Pretext For Discrimination Or Retaliation**

Starbucks having met its burden of articulating a legitimate, non-discriminatory reason for the challenged employment decisions, the burden shifts to Ms. Phillips to prove that this reason is pretextual, and that race was the true reason for the termination decisions or in retaliation for a complaint of discrimination.

To show pretext, a plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision. . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  Thus, to survive summary judgment after an employer has articulated a legitimate non-discriminatory reason for its actions, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.  Stated differently, "to avoid summary judgment, [Ms. Phillips'] evidence rebutting [Starbucks'] proffered legitimate reason[ ] must allow a fact-finder to infer that . . . [Starbucks'] proffered non-discriminatory reason [ ] was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir.), *order clarified*, 543 F. 3d 178 (3d Cir. 2008).

Ms. Phillips has no evidence to cast doubt on Starbucks' reason for discharging her. Instead, Ms. Phillips instead will cite (1) her own disagreement with Starbucks' decision; and (2) the testimony of her subordinate District Managers, Mr. Sykes and Mr. Trinsey, both of whom

believed Ms. Phillips was doing an effective job.  As a matter of law, however, neither reason establishes that Starbucks' employment decisions with respect to Ms. Phillips have anything to do with her race.

At the pretext stage, the Court's analysis "centers on the employer's beliefs and, to be blunt about it, not reality as it exists outside the decision maker's head." *Ma v. Westinghouse Elec. Co., LLC*, 559 F. App'x 165, 170 (3d Cir. 2014).  It does not matter whether Ms. Phillips disagrees with Starbucks' evaluation of her job performance.  *See Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3rd Cir. 1991) ("[T]he fact that an employee disagrees with an employer's evaluation [of her performance] does not prove pretext."); *Fatzinger v. Lehigh Valley Hosp.*, 130 F. Supp. 2d 674, 679 (E.D. Pa. 2001) ("[I]t is well-established that neither a simple denial of the charges against her, nor her own rosier perception of her performance, saves Plaintiff from summary judgment."). Likewise, the opinions of Ms. Phillips' subordinates relative to her leadership skills are irrelevant in a pretext analysis because what matters is the perception of the decisionmaker.  *See Martin v. Health Care & Ret. Corp.*, 67 F. App'x 109, 114 (3d Cir. 2003) (co-workers' opinions that the plaintiff performed her job well did not demonstrate that the decision-makers were lying when they said they thought she performed poorly, and thus, were insufficient to prove pretext); *Acampora v. Konica Business Machines USA, Inc.*, No. CIV.A. 95–3936, 1997 WL 214800 at *7 (E.D. Pa. 1997) (co-worker's belief regarding plaintiff's performance is not indicative of pretext; the focus is on the perception of the decisionmaker); *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) ("[P]retext is not shown by evidence that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.").

Additionally, it does not matter whether the decision to terminate Ms. Phillips was the

"best" decision, only that the decision to terminate her was not based on race.  *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (stating that the analysis is "not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [an unlawful one]."); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[Courts] do not sit as a super-personnel department that reexamine[] an entity's business decisions. . . . Rather, [a court's] inquiry is limited to whether the employer gave an honest explanation of its behavior.").

As discussed above, Starbucks had ample reasons for terminating Ms. Phillips' employment – her ineffectiveness in leading her team as Regional Director following the April 2018 arrests.  (SOF ¶74.)  Similarly, its reason for not hiring her for the TLA position was simply because Starbucks made the business decision to place the position on hold and not hire anyone into the position.   (SOF ¶¶100, 101.)   Ms. Phillips essentially takes issue with Starbucks' evaluation of its business decisions and practices.   *Billet,* 940 F.2d at 825 ("An employee's disagreement with an employer's evaluation of one's qualifications, or disagreement with the employer's evaluation of its own needs or proper business decisions, is not enough to prove pretext."). "[A] company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions." *Id.*; *see Bloch v. Mack Trucks, Inc.,* 240 F. Supp. 3d 365, 375 (E.D. Pa. 2017) ("[C]hallenges to the adequacy of an investigation insufficient to establish pretext.").

Ms. Phillips attempts to distract from Starbucks' legitimate decisions by suggesting that its decisions were a ploy to weed out White employees following the April 2018 incident.  However, there is no evidence to suggest this is the case other than Ms. Phillips' own speculations. Moreover, as explained above, Starbucks ultimately replaced Ms. Phillips with another White employee.

19

(SOF ¶¶80, 81.)  Further, White as well as Black employees (for example, Mr. Pinto) observed that Ms. Phillips appeared physically and emotionally detached and demonstrated leadership that was "completely paralyzed" following the April 2018 crisis.  (SOF ¶29.)

As with her discrimination claims, Ms. Phillips cannot establish the elements of a *prima facie* case of retaliation.  Even if she could do so, for the same reason she cannot show that the reason for her termination was a pretext for discrimination, she cannot point to evidence that would show that the reason for her termination was a pretext for retaliation.  *See Szostek v. Drexel Univ.*, No. 12-2921, 2013 WL 4857989, at *15 (E.D. Pa. Sept. 11, 2013) (declining to analyze pretext on retaliation claim after analyzing pretext on other claim and concluding it did not exist).

As discussed above, Starbucks terminated Ms. Phillips' employment because of her complete failure to lead her team and perform the duties of her role as Regional Director.  Ms. Phillips does not have evidence to establish that the reasons given for either for her termination or non-selection of the TLA role were because of her alleged complaints of discrimination.  Therefore, Ms. Phillips has not presented any evidence to dispute the legitimate, non-discriminatory reason for Starbucks not hiring Ms. Phillips for the TLA position.

## V.     CONCLUSION

Starbucks did not discriminate against Ms. Phillips because of her race nor did it retaliate against Ms. Phillips because she objected to Mr. Trinsey's suspension.  Starbucks had legitimate reasons to terminate Ms. Phillips – her complete failure to lead her team during a key moment in Starbucks history.  Indeed, there is no evidence that creates an inference of discrimination.  Ms. Hymes, on whom Ms. Phillips pegs the discriminatory animus, hired someone who is the *same race* as Ms. Phillips to replace her, and even recommended Ms. Phillips for the TLA position.

Moreover, Starbucks did not hire Ms. Phillips for the TLA position because it decided to abandon the position and not hire anyone for the position. Because Ms. Phillips cannot meet her

burden to prove that Starbucks' decisions related to her employment were a pretext for discrimination, Starbucks is entitled to summary judgment.  Accordingly, Starbucks respectfully requests that the Court enter judgment in its favor and against Ms. Phillips and dismiss her case with prejudice.

Respectfully submitted,

*/s/ Hannah M. Lindgren*

Richard R. Harris (*admitted pro hac vice*)
Hannah M. Lindgren (NJ No. 292082019)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
267.402.3000 (t)
267.402.3131 (f)
rharris@littler.com
hlindgren@littler.com

Dated: November 12, 2021

*Attorneys for Defendant,*
*Starbucks Corporation d/b/a*
*Starbucks Coffee Company*