**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHANNON PHILLIPS,<br><br>        *Plaintiff*,<br><br>    v.<br><br>STARBUCKS CORPORATION<br>d/b/a STARBUCKS COFFEE<br>COMPANY<br><br>        *Defendant.* | CIVIL ACTION NO.: 2:19-cv-19432<br><br><br>Hon. Joel H. Slomsky, U.S.D.J. |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

                                Respectfully Submitted,

                                **CONSOLE MATTIACI LAW, LLC**

Dated: <u>December 23, 2021</u>          By:    <u>*/s/ Katherine C. Oeltjen*</u>
                                Stephen G. Console, Esquire
                                Katherine C. Oeltjen, Esquire
                                Holly W. Smith, Esquire
                                1525 Locust Street, Ninth Floor
                                Philadelphia, PA 19102
                                (215) 545-7677

                                *Attorneys for Plaintiff,*
                                *Shannon Phillips*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

I.      INTRODUCTION ................................................................................. 1

II.     STATEMENT OF FACTS ....................................................................... 1

III.    STANDARD OF REVIEW ..................................................................... 5

IV.     LEGAL ARGUMENT ............................................................................ 7

        A.      Analysis Of Plaintiff's Discrimination And Retaliation Claims Under The
                *McDonnell Douglas* Burden-Shifting Framework Precludes Summary
                Judgment ................................................................................. 7

                1.      Plaintiff Meets Her *Prima Facie* Burden With Respect To Her
                        Discrimination Claims ........................................................ 9

                        i.      Comparator Evidence Is *Not* An Element Of Plaintiff's *Prima
                                Facie* Burden ........................................................... 10

                        ii.     Plaintiff's Termination Occurred Under Circumstances Giving
                                Rise To An Inference Of Discrimination ........................ 12

                2.      Plaintiff Meets Her *Prima Facie* Burden With Respect To Her
                        Retaliation Claims ............................................................. 16

                        i.      Plaintiff's Objection To The Race Discriminatory Suspension Of
                                Her Subordinate Constitutes Protected Activity ............. 17

                        ii.     Unduly Suggestive Temporal Proximity And The Testimony Of
                                Decisionmakers Demonstrate A Casual Connection Between
                                Plaintiff's Protected Activity And Her Termination .......... 21

                3.      Ample Pretext Evidence Exists To Allow A Reasonable Jury To
                        Disbelieve Defendant's Stated Reason(s) And Infer That Defendant
                        Harbored Discriminatory And Retaliatory Animus Against Plaintiff ........... 24

                        i.      Defendant's Explanations Regarding The Timing Of And
                                Reasons For Plaintiff's Termination Have Shifted Over Time ........ 25

                        ii.     Plaintiff's Alleged Performance Deficiencies Are Undocumented
                                And Based Exclusively On Subjective Criteria ................ 27

iii.    Defendant's Assertion That Plaintiff "Failed To Lead" And "Failed To Perform The Duties Of Her Role" In The Wake Of The April 2018 Arrests Is Contradicted By The Record ...........................29

iv.    Defendant's Characterization Of Plaintiff As "Insubordinate" In Response To Her Race Discrimination Complaint Demonstrates Retaliatory Animus ....................................................................................33

B.    Because The Most Important Facts In This Matter Are Unquestionably In Dispute – Namely, Whether Defendant Terminated Plaintiff Because Of Her Race And/Or Protected Activity – Summary Judgment Must Be Denied ..........................................................................................................34

V.    CONCLUSION .................................................................................................36

# TABLE OF AUTHORITIES

## CASES

*Aman v. Cort Furniture Rental Corp.*,
    85 F.3d 1074 (3d Cir. 1996) ................................................. 17

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................... 6

*Anderson v. Wachovia Mortg. Corp.*,
    621 F.3d 261 (3d Cir. 2010) ................................................. 11

*Arpajian v. Prop. Sols., Inc.*,
    2005 U.S. Dist. LEXIS 18120 (D.N.J. Aug. 16, 2005) ........................ 26

*Barnett v. Lowes Home Ctrs., LLC*,
    2019 U.S. Dist. LEXIS 34645 (E.D. Pa. Mar. 4, 2019) ....................... 18

*Bearer v. Teva Pharm. USA, Inc.*,
    2021 U.S. Dist. LEXIS 170741 (E.D. Pa. Sep. 8, 2021) ...................... 29

*Berardinucci v. Temple Univ.*,
    2020 U.S. Dist. LEXIS 128868 (E.D. Pa. July 16, 2020) ..................... 26

*Bonson v. Hanover Foods Corp.*,
    451 F. Supp. 3d 345 (M.D. Pa. 2020) ...................................... 18

*Bowles v. City of Camden*,
    993 F. Supp. 255 (D.N.J. 1998) ............................................ 28

*Braddock v. SEPTA*,
    2016 U.S. Dist. LEXIS 39996 (E.D. Pa. Mar. 28, 2016) ..................... 24

*Brewer v. Quaker State Oil Refining Corp.*,
    72 F.3d 326 (3d Cir. 1995) ................................................. 15

*Bulifant v. Del. River & Bay Auth.*,
    698 F. App'x 660 (3d Cir. 2017) ........................................... 11

*Bullock v. Children's Hosp.*,
    71 F. Supp. 2d 482 (E.D. Pa. 1999) ....................................... 12

*Burton v. Teleflex Inc.*,
    707 F.3d 417 (3d Cir. 2013) ............................................... 8

*Celotex Corp v. Catrett*,
477 U.S. 317 (1986) ............................................................................. 6

*Colgan v. Fisher Sci. Co.*,
935 F.2d 1407 (3d Cir. 1991) ............................................................ 31

*Crabtree v. Volkert, Inc.*,
2012 U.S. Dist. LEXIS 173792 (S.D. Ala. Dec. 7, 2012) .................... 24

*Crawford v. Metro. Gov't of Nashville*,
555 U.S. 271 (2009) .................................................................... 18, 21

*Cullen v. Select Med. Corp.*,
779 F. App'x 929 (3d Cir. 2019) ........................................................ 26

*Davies v. Virtua Health & Rehab. Ctr. at Mount Holly, Inc.*,
2015 U.S. Dist. LEXIS 192711 (D.N.J. Sep. 30, 2015) ........................ 24

*Davis v. Mothers Work, Inc.*,
2005 U.S. Dist. LEXIS 15890 (E.D. Pa. Aug. 4, 2005) ........................ 17

*DeCecco v. UPMC*,
3 F. Supp. 3d 337 (W.D. Pa. 2014) .................................................... 32

*Doe v. C.A.R.S. Protection Plus, Inc.*,
527 F.3d 358 (3d Cir. 2008) ............................................................... 6

*Dreshman v. Villa*,
733 F. Supp. 2d 597 (W.D. Pa. 2010) ................................................ 27

*Ellis v. Bank of N.Y. Mellon Corp*,
837 F. App'x 940 (3d Cir. 2021) .......................................................... 9

*Ezold v. Wolf Block*,
983 F.2d 509 (3d Cir. 1993) ............................................................... 9

*Fernandes v. City of Jersey City*,
2017 U.S. Dist. LEXIS 100224 (D.N.J. June 27, 2017) ....................... 23

*Flores v. Pa. State Police*,
2018 U.S. Dist. LEXIS 191965 (E.D. Pa. Nov. 9, 2018) ...................... 16

*Fuentes v. Perskie*,
32 F.3d 759 (3d Cir. 1994) ........................................................... 8, 29

*Gharzouzi v. Nw. Human Servs. of Pa.*,
  225 F. Supp. 2d 514 (E.D. Pa. 2002) .................................................. 24

*Golod v. Bank of Am. Corp.*,
  403 F. App'x 699 (3d Cir. 2010) ................................................. 13, 15

*Goosby v. Johnson & Johnson Med., Inc.*,
  228 F.3d 313 (3d Cir. 2000) .............................................. 7, 11, 28

*Gosnell v. Runyon*,
  926 F. Supp. 493 (M.D. Pa. 1995) .................................................. 31

*Hanna v. Lincoln Fin. Grp.*,
  498 F. Supp. 3d 669 (E.D. Pa. 2020) ......................................... 22, 28

*Hennessey v. Dollar Bank, FSB*,
  2019 U.S. Dist. LEXIS 214021 (W.D. Pa. Dec. 12, 2019) ................... 10

*Hunt v. Cromartie*,
  526 U.S. 541 (1999) .................................................................. 6

*Iadimarco v. Runyon*,
  190 F.3d 151 (3d Cir. 1999) .................................................. 8, 9, 10

*Idahoan Fresh v. Advantage Produce, Inc.*,
  157 F.3d 197 (3d Cir. 1998) ........................................................ 7

*Jajua v. Diakon Lutheran Soc. Ministries*,
  299 F. Supp. 3d 645 (E.D. Pa. 2018) ........................................... 18

*Jalil v. Avdel Corp.*,
  873 F.2d 701 (3d Cir. 1989) .................................................. 8, 22

*Jimmy v. Elwyn, Inc.*,
  2014 U.S. Dist. LEXIS 19603 (E.D. Pa. Feb. 18, 2014) ................... 15

*Johnson v. Keebler-Sunshine Biscuits, Inc.*,
  214 F. App'x 239 (3d Cir. 2007) ................................................. 11

*Johnson v. Verizon Servs. Corp.*,
  2017 U.S. Dist. LEXIS 59472 (E.D. Pa. Apr. 18, 2017) ................... 27

*Kamara v. Horizon House, Inc.*,
  2015 U.S. Dist. LEXIS 169215 (E.D. Pa. Dec. 18, 2015) ................... 16

v

*Kuzdrowski v. Nicholson*,
    314 F. App'x 410 (3d Cir. 2008) ........................................... 12

*Lake v. AK Steel Corp.*,
    2006 U.S. Dist. LEXIS 25118 (W.D. Pa. Apr. 27, 2006) ....................... 27

*Lawrence v. Nat'l Westminster Bank*,
    98 F.3d 61 (3d Cir. 1996) .................................................. 30

*Leaphart v. Am. Friends Serv. Committee*,
    2008 U.S. Dist. LEXIS 85530 (E.D. Pa. Oct. 23, 2008) ........................ 7

*Mammen v. Thomas Jefferson Univ.*,
    523 F. Supp. 3d 702 (E.D. Pa. 2021) .................................... 13, 22

*Martin v. Exelon Corp.*,
    2016 U.S. Dist. LEXIS 17096 (E.D. Pa. Feb. 9, 2016) ......................... 33

*Marzano v. Computer Science Corp.*,
    91 F.3d 497 (3d Cir. 1996) ............................................... 6, 16

*Matczak v. Frankford Candy & Chocolate Co.*,
    136 F.3d 933 (3d Cir. 1997) .............................................. 11

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ...................................................... 7

*McFadden v. Whole Foods Mkt. Grp., Inc.*,
    2021 U.S. Dist. LEXIS 35644 (E.D. Pa. Feb. 24, 2021) ....................... 13

*Medvic v. Compass Sign Co., LLC*,
    2011 U.S. Dist. LEXIS 89275 (E.D. Pa. Aug. 10, 2011) ....................... 29

*Mikell v. Marriott Intern, Inc.*,
    789 F. Supp. 2d 607 (E.D. Pa. 2011) ..................................... 17

*Miller v. Patterson Motors*,
    2009 U.S. Dist. LEXIS 24482 (W.D. Pa. Mar. 24, 2009) ...................... 28

*Moccio v. Cornell Univ.*,
    889 F. Supp. 2d 539 (S.D.N.Y. 2012) ..................................... 24

*Moore v. City of Phila.*,
    461 F.3d 331 (3d Cir. 2006) .............................................. 16

*Mosca v. Cole*,
   384 F. Supp. 2d 757 (D.N.J. 2005) ...................................................................... 11

*Nagle v. Comprehensive Women's Health Servs., P.C.*,
   2018 U.S. Dist. LEXIS 9722 (M.D. Pa. Jan. 19, 2018) ................................... 31, 32

*Nettles v. Daphne Utils.*,
   2015 U.S. Dist. LEXIS 36574 (S.D. Ala. Mar. 24, 2015) ..................................... 24

*Newell v. Heritage Senior Living, LLC*,
   2016 U.S. Dist. LEXIS 13416 (E.D. Pa. Feb. 3, 2016) ........................................ 18

*Oakley v. Orthopedic Assocs. of Allentown, Ltd., et al.*,
   742 F. Supp. 2d 601 (E.D. Pa. 2010) .................................................................... 7

*Pivirotto v. Innovative Sys.*,
   191 F.3d 344 (3d Cir. 1999) ................................................................................. 11

*Presbyterian Shadyside*,
   2007 U.S. Dist. LEXIS 78531 (W.D. Pa. Oct. 23, 2007) ...................................... 21

*Price v. Cushman & Wakefield, Inc.*,
   808 F. Supp. 2d 670 (S.D.N.Y. 2011) ................................................................... 34

*Reiter v. Metro. Transp. Auth.*,
   2002 U.S. Dist. LEXIS 18537 (S.D.N.Y. Sep. 30, 2002) ..................................... 32

*Sarullo v. United States Postal Serv.*,
   352 F.3d 789 (3d Cir. 2003) ................................................................................. 11

*Scheidermantle v. Slippery Rock Univ.*,
   470 F.3d 535 (3d Cir. 2006) ................................................................................. 10

*Schlichtig v. Inacom Corp.*,
   271 F. Supp. 2d 597 (D.N.J. 2003) ....................................................................... 28

*Selvanathan v. Opportunities Industrialization Ctrs. Int'l*,
   871 F. Supp. 2d 349 (E.D. Pa. 2012) .................................................................... 32

*Sempier v. Johnson & Higgins*,
   45 F.2d 724 (3d Cir. 1995) ................................................................................... 1-

*Sheridan v. E.I. Dupont de Nemours & Co.*,
   100 F.3d 1061 (3d Cir. 1996) ............................................................................... 41

*Siegel v. Alpha Wire Corp.*,
894 F.2d 50 (3d Cir. 1990) ......................................................... 32

*Smith v. Borough of Wilkinsburg*,
147 F.3d 272 (3d Cir. 1998) ....................................................... 27

*Smith v. Pittsburgh Gage & Supply Co.*,
464 F.2d 870 (3d Cir. 1972) ......................................................... 6

*Sorba v. Pennsylvania Drilling Co.*,
821 F.2d 200 (3d Cir. 1987) ......................................................... 8

*St. Mary's Honor Ctr v. Hicks*,
509 U.S. 502–11 (1993) .............................................................. 35

*Stewart v. Rutgers Univ.*,
120 F.3d 426 (3d Cir. 1997) ......................................................... 7

*Tomasso v. Boeing Co.*,
445 F.3d 702 (3d Cir. 2006) ....................................................... 28

*Verma v. Univ. of Pa.*,
2012 U.S. Dist. LEXIS 70333 (E.D. Pa. May 18, 2012) ............. 23

*White v. Purolite Corp.*,
2020 U.S. Dist. LEXIS 66171 (E.D. Pa. Apr. 15, 2020) ............. 18

*Williams v. City of Phila. Office of Fleet Mgmt.*,
2020 U.S. Dist. LEXIS 60287 (E.D. Pa. Apr. 6, 2020) ................ 8

*Woodson v. Scott Paper Co.*,
109 F.3d 913 (3d Cir. 1997) ....................................................... 23

*Zelesnick v. Temple Univ. Health Sys.*,
2021 U.S. Dist. LEXIS 10139 (E.D. Pa. Jan. 19, 2021) ......... 24, 28

**Statutes**

42 U.S.C. §1981 ............................................................................ 1

42 U.S.C. §2000e ........................................................................... 1

N.J.S.A. §10:5-3, et seq. ............................................................... 1

**Rules**

Fed. R. Civ. P. 56 .......................................................................... 5

# I.   <u>INTRODUCTION</u>

Plaintiff, Shannon Phillips ("Ms. Phillips" or "Plaintiff"), through her undersigned counsel, hereby opposes the Motion for Summary Judgment ("Motion") filed by Defendant, Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks" or "Defendant") on Plaintiff's claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. §10:5-3, *et seq.* ("NJLAD"). Because the record contains ample evidence from which a jury could conclude that Plaintiff's race and complaints of race discrimination motivated Defendant's discriminatory and retaliatory treatment of her, summary judgment should be denied. Plaintiff respectfully requests that this Court deny Defendant's Motion and allow this matter to proceed to trial as soon as practicable.

# II.   <u>STATEMENT OF FACTS[1]</u>

The facts underlying Plaintiff's present lawsuit are exceedingly simple: Defendant discriminated against Black customers and tried to fix it by discriminating against white employees.

Plaintiff began her career with Defendant in 2005 as a District Manager. PSF ¶ 1. Amid her exemplary performance and with the endorsement of then-Partner Resources Manager, Paul Pinto ("Mr. Pinto"), Plaintiff ascended to the rank of Regional Director of Operations ("RDO") for Area 71, a geographic area encompassing approximately one hundred (100) stores across southern New Jersey, Delaware, Maryland, and Pennsylvania, including the City of Philadelphia. *Id*. ¶¶ 2-3. Throughout her tenure at Defendant, Plaintiff was widely regarded as an invaluable

---

[1] Plaintiff incorporates herein by reference Plaintiff's Response to Defendant's Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment ("DSF") and Plaintiff's Statement of Additional Facts Precluding Summary Judgment ("PSF").

leader and among the very best RDOs reporting to Camille Hymes ("Ms. Hymes"), Defendant's Vice President of Operations. *Id*. ¶¶ 4, 7-8. Ms. Hymes is Black. *Id*. Plaintiff was commended for fostering "good relationships with her partners" and engaging in "noteworthy" community work. *Id*. ¶ 4. According to Ms. Hymes, Plaintiff "understood [Starbucks'] culture, was deeply immersed in connecting with [Starbucks'] partners," and "was a developer of talent." *Id*. ¶ 5. Among her subordinates, Plaintiff was regarded as "approachable", "genuine", and "really supportive." *Id*. ¶ 6. At no time during her nearly thirteen (13) years of employment was Plaintiff issued a corrective action, warned that her performance was materially deficient, or advised that her job was in jeopardy. *Id*. ¶ 9.

On April 12, 2018, two (2) Black men – Donte Robinson ("Mr. Robinson") and Rashon Nelson ("Mr. Nelson") – were arrested by the Philadelphia Police at Defendant's 18th and Spruce retail location after the Store Manager, Holly Hylton ("Ms. Hylton"), called the police ("April 2018 arrests"). *Id*. ¶ 11. Ms. Hylton called the police pursuant to Defendant's "Safe and Welcoming" policy – a policy created and disseminated by Defendant to deter non-paying customers from congregating in its retail locations. *Id*. ¶ 14. Plaintiff played no role in the April 2018 arrests and testified unequivocally that she believes that police should not have been called. *Id*. ¶¶ 12-13. Plaintiff played no role in creating Defendant's Safe and Welcoming policy and believes that the policy was deeply flawed. *Id*. ¶ 15. Defendant admits that the Safe and Welcoming policy invited racial profiling by its employees and discontinued its use within the City of Philadelphia following the April 2018 arrests. *Id*. ¶ 16. However, no individual responsible for designing Defendant's Safe and Welcoming policy was disciplined. *Id*. ¶ 17.

During the days and weeks following the April 2018 arrests, Plaintiff worked tirelessly to lead her market and support her partners. *Id*. ¶¶ 18-20. Plaintiff worked around the clock and was

"very, very present" in the Philadelphia market. *Id.* ¶ 19. Plaintiff's subordinates, Black and white, perceived her as being "compassionate", "100 percent" present, and intent on providing "whatever emotional support [they] needed" during Defendant's public relations crisis. *Id.* ¶ 20. Defendant itself observed Plaintiff's strong leadership in the wake of the April 2018 arrests, recommending Plaintiff for a public-facing Temporary Limited Assignment ("TLA") role to support Defendant's Government and Community Affairs apparatus. *Id.* ¶¶ 21-22. At no time during the twenty-seven-day period between April 12th and May 9th was Plaintiff ever advised that her performance was materially lacking or that her job was in jeopardy. *Id.* ¶ 52.

Plaintiff informed her supervisor, Ms. Hymes, of the arrests on April 12th – the day they occurred – but Ms. Hymes did not believe that the event would "blow up" or garner significant media attention and made no immediate plans to visit the Philadelphia market. *Id.* ¶ 26. It was only after a video of the April 2018 arrests surfaced and social media activity became "significant and concerning" that Defendant determined that a leadership presence was necessary. *Id.* ¶ 27. Amid an emerging realization that the April 2018 arrests were "turning into a big deal" placing Defendant's brand and bottom line at risk, Defendant's leadership descended upon the City of Philadelphia. *Id.* ¶¶ 28-29.

Following the April 2018 arrests, "race was definitely the topic of conversation" among Defendant's leadership, including in connection with "changes" that needed to be made within Defendant's organization. *Id.* ¶ 31. Defendant determined that a "strong message" needed to be sent to signal that it was taking the April 2018 arrests seriously to fix its ailing business. *Id.* ¶ 32. On May 2, 2018, after a settlement was reached with Mr. Robinson and Mr. Nelson, Defendant issued a public statement vowing that "Starbucks will continue to take actions that stem from this incident to repair and reaffirm our values and vision for the kind of company that we want to

be." *Id*. ¶ 30. Then, as promised, Defendant began taking "action" – namely, by ridding its Philadelphia market of white leaders. *Id*. ¶ 33.

On May 7th, Defendant received a complaint from a Black Assistant Store Manager ("ASM") named Jaicee Huff ("Ms. Huff") regarding a "pay difference" between her salary and the salary of her colleague, who was white. *Id*. ¶ 34. Despite the fact that her complaint did not allege race discrimination or allege any discriminatory conduct by her District Manager, Ben Trinsey ("Mr. Trinsey"), Defendant interpreted Ms. Huff's complaint as an allegation of race discrimination because Ms. Huff was Black and her alleged comparator was white. *Id*. ¶¶ 35-36. Thereafter, Defendant initiated an investigation into Mr. Trinsey for perpetuating race-based pay disparities and decided to place Mr. Trinsey on suspension pending results of same. *Id*. ¶ 37. At the time of this decision, Defendant knew that any pay difference was out of Mr. Trinsey's control because, under Defendant's practices, it was Partner Resources, not the District Manager, who determined partner pay. *Id*. ¶ 38. Defendant knew that its allegation of race discrimination against Mr. Trinsey was factually impossible but it suspended Mr. Trinsey anyway. *Id*. ¶¶ 38-40.

During a May 7th meeting with Ms. Hymes, Nathalie Cioffi ("Ms. Cioffi"), Partner Resources Director, and Paul Pinto ("Mr. Pinto"), Vice President of Partner Resources, Plaintiff was advised of Mr. Trinsey's suspension and instructed to inform Mr. Trinsey of same. *Id*. ¶ 41. Plaintiff vehemently objected to Mr. Trinsey's suspension, reminding Defendant that Mr. Trinsey was not responsible for determining partner pay and complaining that Mr. Trinsey was being falsely accused of being racist. *Id*. ¶¶ 42-43. Unfortunately, Plaintiff's complaint of race discrimination fell on deaf ears and she was required to suspend Mr. Trinsey, which she did in complete adherence with the talking points provided to her during the May 7th meeting. *Id*. ¶ 47. Two (2) days later, on May 9th, Plaintiff was terminated. *Id*. ¶ 50. Defendant admits that the

decision to terminate Plaintiff was not made until after she engaged in protected activity and that she was terminated, in part, because she complained of race discrimination. *Id*. ¶¶ 47, 51, 54.

Meanwhile, Defendant was receiving multiple allegations of misconduct and race discrimination in stores that fell under the purview of District Manager, Paul Sykes ("Mr. Sykes"). Mr. Sykes is Black and oversaw the 18th and Spruce retail location where the April 2018 arrests took place. *Id*. ¶¶ 57-58, 60, 62-65. Mr. Sykes, who was the most senior Black partner working within the Philadelphia market, was never counseled, coached, or disciplined in connection with the April 2018 arrests or subsequent allegations emerging from his stores. *Id*. ¶¶ 56, 59, 61, 66. Mr. Sykes maintained his DM position well after Plaintiff's termination and Mr. Trinsey's suspension and subsequent negotiated exit from Defendant's organization before voluntarily resigning. DSF ¶ 38. Mr. Sykes himself believes that he remained employed in the wake of the April 2018 arrests because of his race. *Id*. ¶ 67.

Defendant contends that Plaintiff was terminated for legitimate reasons and that the fact that all white leaders within the Philadelphia market were outed from Defendant's organization within weeks of the April 2018 arrests while the Black leader who was responsible for the store where the arrests occurred remained employed is a mere "coincidence." This position defies credulity and ignores the undisputed fact that in the fallout of the April 2018 arrests, every discussion and every decision at Defendant was centered upon race. *Id*. ¶ 31.

## III.   **STANDARD OF REVIEW**

Summary judgment under Fed. R. Civ. P. 56 may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If there are any genuine issues of

material fact such that a reasonable jury could return a verdict for the plaintiff, summary judgment should be denied. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

At the summary judgment stage, the role of the trial judge is to determine whether or not there is a genuine dispute of material fact, as "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). On a motion for summary judgment, a "district court must resolve all inferences, doubts, and issues of credibility against the moving party." *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir. 1972) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970)).

The Third Circuit has made clear that "[t]he burden of persuasion on summary judgment remains unalterably with the employer as movant." *C.A.R.S.,* 527 F.3d at 362. The employer retains the burden of persuading the Court that, "even if all the inferences which would reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, *no reasonable jury* could find in the plaintiff's favor." *Marzano v. Computer Science Corp.,* 91 F.3d 497, 502 (3d Cir. 1996) (emphasis added). Thus, if there is any record evidence from which a reasonable inference may be drawn in favor of the non-moving party, then "the moving party simply cannot obtain summary judgment." *Celotex Corp v. Catrett,* 477 U.S. 317, 330 n.2 (1986).

Even when the facts are not in dispute, summary judgment must be denied if competing inferences can be drawn from the undisputed facts on material issues. *Hunt v. Cromartie,* 526 U.S. 541, 552-53 (1999). "Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment." *Leaphart v. Am. Friends Serv. Committee,*

2008 U.S. Dist. LEXIS 85530, at *1 (E.D. Pa. Oct. 23, 2008). At the summary judgment stage, "all that is required [for the non-moving party to survive the motion] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve [at trial] the parties' differing versions of the truth." *Oakley v. Orthopedic Assocs. of Allentown, Ltd., et al.,* 742 F. Supp. 2d 601, 604 (E.D. Pa. 2010).

Summary judgment is to be used sparingly in employment discrimination cases. *C.A.R.S.,* 527 F.3d at 369.  The Third Circuit urges particular caution about granting summary judgment to an employer when intent is at issue, particularly in discrimination and retaliation cases.  *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 321 (3d Cir. 2000); *see also Stewart v. Rutgers Univ.,* 120 F.3d 426, 431 (3d Cir. 1997) (explaining that the summary judgment standard is to be "applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues.").   Additionally, the relevant laws in this matter – Title VII, Section 1981, and the NJLAD – are remedial statutes, and therefore must be interpreted broadly to protect the rights of individuals.  *Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 202 (3d Cir. 1998).

## IV.   **LEGAL ARGUMENT**

### A.   **Analysis Of Plaintiff's Discrimination And Retaliation Claims Under The *McDonnell Douglas* Burden-Shifting Framework Precludes Summary Judgment[2]**

Plaintiff's state and federal discrimination and retaliation claims are analyzed pursuant to the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the first step of the *McDonnell Douglas* analysis, the plaintiff has the burden of

---

[2] Plaintiff is not pursuing a discriminatory or retaliatory failure to hire claim in connection with the TLA position described in her Second Amended Complaint [Dkt. Ent. 36]. However, Plaintiff believes that the circumstances surrounding Defendant's failure to hire her for the TLA position serve as evidence of Defendant's race discriminatory and retaliatory motives.

establishing a *prima facie* case of discrimination or retaliation. *Id*. If Plaintiff meets her light burden, the burden shifts to Defendant to advance a legitimate, non-discriminatory/non-retaliatory reason for the adverse employment action. *Id*. Finally, Plaintiff is afforded an opportunity to present evidence suggesting that Defendant's proffered reason is pretext. *Id*.

Plaintiff's "evidence of pretext need not be overwhelming." *Williams v. City of Phila. Office of Fleet Mgmt.,* 2020 U.S. Dist. LEXIS 60287, at *22 (E.D. Pa. Apr. 6, 2020). At the summary judgment stage, the issue "is whether [the plaintiff] has pointed to evidence of inconsistencies and implausibilities in the employer's proffered reasons for [the employment actions] which could support an inference that the employer did not act for non-discriminatory [or non-retaliatory] reasons." *Sorba v. Pennsylvania Drilling Co.,* 821 F.2d 200, 205 (3d Cir. 1987). In other words, Plaintiff can defeat summary judgment by pointing to some evidence from which a rational factfinder could reasonably *either* disbelieve Defendant's articulated explanation *or* "believe that an invidious discriminatory [or retaliatory] reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). Plaintiff is not required to produce direct evidence of discriminatory or retaliatory intent to demonstrate pretext and survive a motion for summary judgment. *Burton v. Teleflex Inc.,* 707 F.3d 417, 427 (3d Cir. 2013).

"The *prima facie* case and pretext inquiries often overlap." *C.A.R.S.,* 527 F.3d at 370. Therefore, "evidence supporting the *prima facie* case is often helpful in the pretext stage, and nothing about the *McDonnell Douglas* formula requires [the Court] to ration the evidence between one stage or the other." *Id.* (citing *Farrell v. Planters Lifesavers, Co.,* 206 F.3d 271, 286 (3d Cir. 2001)); *Iadimarco v. Runyon,* 190 F.3d 151, 166 (3d Cir. 1999) (explicitly referring to the evidence of the *prima facie* case in finding evidence supporting pretext); *Jalil v. Avdel*

*Corp.*, 873 F.2d 701, 709 n.6 (3d Cir. 1989) ("[a]lthough this fact is important in establishing plaintiff's *prima facie* case, there is nothing preventing it from also being used to rebut the defendant's proffered explanation.").

The *McDonnell Douglas* analysis precludes summary judgment in favor of Defendant on each of Plaintiff's claims. With respect to Plaintiff's race discrimination claims, Plaintiff clears her low *prima facie* burden with ease and has set forth ample pretext evidence which could allow a reasonable jury to infer that Defendant considered Plaintiff's race in connection with its post-April 2018 arrests personnel decisions, including its decision to terminate her employment following thirteen (13) years of stellar performance. With respect to Plaintiff's retaliation claim, Plaintiff satisfies her *prima facie* burden and has set forth ample evidence from which a reasonable jury could infer that Plaintiff's termination was carried out in retaliation for her complaint of race discrimination. As such, and as set forth in detail below, Defendant's Motion should be Denied.

### 1. Plaintiff Meets Her *Prima Facie* Burden With Respect To Her Discrimination Claims

To establish her *prima facie* race discrimination burden, Plaintiff must demonstrate that: (1) she was qualified for her position; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances that raise an inference of discrimination. *Ellis v. Bank of N.Y. Mellon Corp*, 837 F. App'x 940, 941 (3d Cir. 2021) (citing *Iadimarco v. Runyon*, 190 F.3d 151, 158 (3d Cir. 1999)). Plaintiff's *prima facie* burden is "not intended to be onerous." *See Sempier v. Johnson & Higgins,* 45 F.2d 724, 728 (3d Cir. 1995)); *see also Scheidermantle v. Slippery Rock Univ.,* 470 F.3d 535, 539 (3d Cir. 2006) (describing plaintiff's *prima facie* burden as a "low bar"); *Ezold v. Wolf Block*, 983 F.2d 509, 523 (3d Cir.

1993) ("[b]ecause the *prima facie* case is easily made out, it is rarely the focus of the ultimate disagreement.").

To be clear (and contrary to Defendant's suggestion), "[a] claim of discrimination by a non-minority is analyzed under the same *McDonnell Douglas* standard and a non-minority claimant does not have to meet a 'heightened standard' in making out a *prima facie* case." *Hennessey v. Dollar Bank, FSB*, 2019 U.S. Dist. LEXIS 214021, at *17-18 (W.D. Pa. Dec. 12, 2019) (quoting *Hopp v. City of Pittsburgh*, 194 F.3d 434, 438 (3d Cir. 1999)). Rather, the "central focus" of the non-minority plaintiff's *prima facie* inquiry remains whether she has presented "sufficient evidence to allow a reasonable factfinder to conclude that the defendant treated [her] less favorably than others because of [her] race." *Iadimarco v. Runyon*, 190 F.3d at 163 (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). In it's Motion, Defendant misstated the law related to claims by a "non-minority" claimant.

Defendant correctly concedes that Plaintiff was qualified for her position and that Plaintiff's termination constitutes an adverse employment action, thereby establishing the first two *prima facie* elements. Defendant nevertheless contends that Plaintiff's *prima facie* case fails at the third element because Plaintiff was replaced by a white employee and "there is no evidence that Starbucks treated similarly-situated employees outside of Ms. Phillips' protected class more favorably than it treated her." Motion, pp. 6-7. As set forth in detail below, Defendant's challenge to Plaintiff's *prima facie* case is premised on mischaracterizations of both facts and law. Consistent with the law of this Circuit, Plaintiff has set forth evidence demonstrating that her termination occurred under circumstances giving rise to an inference of discrimination. As such, Plaintiff meets her *prima facie* burden with respect to her race discrimination claims.

i. **Comparator Evidence Is *Not* An Element Of Plaintiff's *Prima Facie* Burden**

Defendant contends that "Courts uniformly hold that when a plaintiff is replaced by someone of the same race or in the same protected class (or a plaintiff is unable to show otherwise) – as here – her *prima facie* case fails." Motion, p. 6. This is false. The Third Circuit has expressly and repeatedly disavowed the notion that a plaintiff must prove that they were replaced by someone outside of the protected class to establish a *prima facie* case of discrimination. *See Pivirotto v. Innovative Sys.*, 191 F.3d 344, 355-56 (3d Cir. 1999) ("it is inconsistent with Title VII to require a plaintiff to prove that she was replaced by someone outside her class in order to make out a *prima facie* case.").[3] Instead, the Third Circuit considers replacement by a person outside the protected class an "alternative element" to a *prima facie* case while "ma[king] clear that this element **can** be but by no means **must** be present." *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 939 (3d Cir. 1997) (emphasis added).

Defendant's assertion that a plaintiff's *prima facie* case fails absent evidence that she was replaced by a non-white individual is not even supported by the case law upon which they purport to rely. Rather, each of the three cases cited by Defendant support the notion that replacement by an individual outside of a plaintiff's protected class may be sufficient, but is

---

[3] *See also Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (citing *Pivirotto* and reasoning, "[c]learly, an employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class."); *Bulifant v. Del. River & Bay Auth.*, 698 F. App'x 660, 665 (3d Cir. 2017) ("[e]ven if the plaintiff was replaced by someone within her own class, this . . . does not establish that the employer did not fire the plaintiff on the basis of her protected status."); *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 n.7 (3d Cir. 2003) ("[n]owhere did the Supreme Court describe the fourth element as hiring of (or, by implication, replacement by) a person outside the plaintiff's class."); *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 272 (3d Cir. 2010) ("a plaintiff need not prove, as part of her prima facie case, that she was replaced by someone outside of the relevant class," since an inability to make this showing "is not necessarily inconsistent with her demonstrating that the employer treated her less favorably than others because of her race[.]"); *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007) ("this Court no longer requires a plaintiff to show that he was replaced by someone outside of the protected class to establish an inference of discrimination."); *see also Mosca v. Cole,* 384 F. Supp. 2d 757, 765 n.7 (D.N.J. 2005) ("[t]he court does not find that a *prima facie* case requires that plaintiff be replaced by a non-white person.").

certainly not necessary, to satisfy a plaintiff's *prima facie* burden.[4] Relatedly, Defendant contends that Plaintiff cannot meet her *prima facie* burden because she has not produced comparator evidence. This argument, too, seeks to supplant firmly established Third Circuit precedent holding time and time again that "evidence of favorable treatment outside the protected class is not an element of a *prima facie* case." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802); *see also Bullock v. Children's Hosp.,* 71 F. Supp. 2d 482, 487-88 (E.D. Pa. 1999) (collecting cases).

In sum, Defendant's arguments challenging Plaintiff's *prima facie* case – replacement by a white employee and lack of comparator evidence – advance the impermissibly restrictive approach to the *prima facie* analysis that courts within this Circuit routinely caution against. *See Matczak*, 136 F.3d at 939; *Waldron*, 56 F.3d at 494 n.3.

### ii. Plaintiff's Termination Occurred Under Circumstances Giving Rise To An Inference Of Discrimination

The Third Circuit has repeatedly emphasized that "the requirements of the *prima facie* case are flexible and must be evaluated in light of the circumstances of the case," noting that the same "applies with particular force to the [final] element of the *prima facie* case." *Kuzdrowski v. Nicholson,* 314 F. App'x 410, 413 (3d Cir. 2008) (quoting *Pivirotto,* 191 F.3d at 357). Plaintiff

---

[4] For example, in *Allia v. Target Corp*., the court stated that the third element of the plaintiff's *prima facie* burden "requires sufficient evidence to allow a reasonable fact finder to conclude, given the totality of circumstances, that the employer treated plaintiff less favorably because of her race" and discussed replacement by a person of a different race as **one of several ways** that the plaintiff could make this showing. 2010 U.S. Dist. LEXIS 25337, at *15 (D.N.J. Mar. 17, 2010). Similarly, in *Preston v. Vanguard Grp., Inc.*, the court stated that "[f]acts that **can** give rise to a reasonable inference of discrimination include that . . . the plaintiff was replaced by a person outside the protected class" while emphasizing that "the exact nature of what a plaintiff must show depends on the circumstances of the case." 2015 U.S. Dist. LEXIS 159897, at *36 (E.D. Pa. Nov. 30, 2015) (emphasis added). Lastly, in *Boykins v. CLBW Assocs.*, the court opined that the plaintiff "presented no evidence from which this Court can draw any inference of a nexus between his termination and his race, **particularly in light of** Gulph Creek's choice to permanently retain a member of Boykins's protected class in the position from which Boykins was terminated." 2013 U.S. Dist. LEXIS 173833, at *23 (E.D. Pa. Dec. 11, 2013) (emphasis added).

need not (as Defendant suggests[5]) produce direct evidence of race discrimination to satisfy the final element of her *prima facie* burden; rather, she need only produce sufficient evidence to allow a reasonable factfinder to *infer* that Defendant treated her less favorably because of her race. *See Iadimarco*, 190 F.3d at 163. Plaintiff may support an inference of discrimination through "any kind of relevant evidence," including, without limitation, "evidence of similar racial discrimination against other employees" or "statements or actions by [Defendant] suggesting racial animus." *McFadden v. Whole Foods Mkt. Grp., Inc.*, 2021 U.S. Dist. LEXIS 35644, at *20-21 (E.D. Pa. Feb. 24, 2021) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010)). Moreover, "courts may consider as circumstantial evidence the atmosphere in which the company made its employment decisions." *Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 722 (E.D. Pa. 2021) (quoting *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 641 (3d Cir. 1993)).

Here, the circumstances surrounding Plaintiff's termination amply support an inference of discrimination. Defendant's arguments implore this Court to analyze Plaintiff's termination in a vacuum and ignore the corporate atmosphere that existed at Defendant in the fallout of the April 2018 arrests. Defendant's brand and bottom line were under fire and "race was definitely the topic of discussion." PSF ¶¶ 29, 31-32. In an effort to quell community outrage and revitalize Defendant's image, Defendant embarked on a publicized campaign to "take actions that stem from this incident to repair and reaffirm [its] values and vision for the kind of company" it wanted to be. *Id.* ¶ 30. To put it bluntly, during the twenty-seven-day period between the April 12, 2018 and Plaintiff's termination, every decision made by Defendant was influenced by race, including the decision to end Plaintiff's employment after nearly thirteen (13) years of undisputedly stellar performance.

---

[5] *See* Motion p. 10.

Examination of the personnel actions occurring within Defendant's Philadelphia region on the heels of the April 2018 arrests readily supports an inference of race discrimination. Following the arrests, Defendant determined that a "message needed to be sent that leadership was being held accountable for what had occurred in the stores." *Id*. ¶ 32. Acting pursuant to this determination, Defendant turned its attention to the leadership ranks within the Philadelphia region. Within weeks of the arrests, Defendant suspended Mr. Trinsey and terminated Plaintiff, both of whom are white and neither of whom played any role in the April 2018 arrests. *Id*. ¶¶ 12, 15, 40, 55. Meanwhile, Mr. Sykes, who is Black and served as District Manager for the 18th and Spruce retail location where the April 2018 arrests took place, remained gainfully employed. *Id*. ¶¶ 56-58, 67.

Contrary to Defendant's assertion that "there is absolutely no evidence that Starbucks had a discriminatory animus towards White people" and that Plaintiff merely "disagrees with Starbucks' decision", Motion p. 11, the glaringly unequal nature of Defendant's treatment of white versus Black members of Philadelphia leadership was observed by others within Defendant's organization, including Mr. Sykes himself. When asked if he believed that Plaintiff's race played a role in her termination, Mr. Sykes responded with an unequivocal "yes" and explained: "I did find it interesting because it happened in my district, and I certainly didn't cause that, but it was in my district and it was my manager and I felt really bad with what happened with [Mr. Trinsey] and then what happened with [Plaintiff] because they were the furthest from it and I was the closest to it." *Id*. ¶¶ 40, 55. When asked if he believed that his race played a role in his remaining employed at Defendant following the April 2018 arrests even though he was "was closest to it", Mr. Sykes testified: "I do … what message would that send if they let me go and there is these conversations about race and I am the Black leader that's there."

14

*Id.* ¶ 55. As Mr. Trinsey observed, he was put up as a scapegoat because "[he] was white and it was easy to go after [him] and say that [Defendant] made changes in leadership." *Id.* ¶ 40.

Moreover, during the weeks following the April 2018 arrests, several allegations of race discrimination occurring within Defendant's Philadelphia region surfaced. On May 7th, Defendant received a complaint from a Black partner within one of Mr. Trinsey's stores alleging "pay differences" which Defendant interpreted as a race discrimination complaint. PSF ¶¶ 34-36. Immediately upon receiving the allegation of race-discriminatory salary practices implicating Mr. Trinsey, who is white, Defendant initiated an investigation and suspended Mr. Trinsey's employment pending same. *Id.* ¶ 37. In contrast, mere days following Mr. Trinsey's suspension and Ms. Phillips' termination, three race discrimination complaints emerged from a single store within Mr. Sykes' district regarding the persistent race discriminatory behavior of the employees' shift supervisor. *Id.* ¶¶ 62-64. Through the course of its investigation, Defendant learned that the complaining employees had raised a similar complaint regarding the same shift supervisor's discriminatory conduct several months earlier which Mr. Sykes had failed to appropriately address. *Id.* ¶ 65. Mr. Sykes was never counseled, coached, or disciplined in connection with his failure to adequately safeguard his partners against race discrimination occurring within his store. *Id.* ¶ 66. Finally, Ms. Phillips' supervisor, Ms. Hymes and Ms. Hymes' supervisor, Ms. Smith, are both Black and neither was suspended or terminated in connection with the fall-out from the arrests. DSF ¶ 32; PSF ¶ 69. Simply stated, every white employee in the chain of command from the Store Manager (Ms. Hylton) to the Divisional Senior Vice President (Ms. Smith) was terminated and every Black employee in the same chain of command was retained. PSF ¶ 70.

15

The foregoing evidence relating to Defendant's unequal treatment of Mr. Trinsey and Mr. Sykes following the April 2018 arrests supports the inference that Plaintiff, too, was discriminated against because of her race. *See e.g., Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 334 (3d Cir. 1995) (observing that evidence of discrimination against other employees shines light on the atmosphere within which the employment decision was made was relevant to determining the presence of discrimination in present matter); *Golod v. Bank of Am. Corp.,* 403 F. App'x 699, 703 n.2 (3d Cir. 2010) (in lieu of comparator evidence, inference of discrimination can be supported by "evidence of similar race discrimination against other employees"); *Jimmy v. Elwyn, Inc.,* 2014 U.S. Dist. LEXIS 19603, at *20 (E.D. Pa. Feb. 18, 2014) (finding that evidence of similar instances of discrimination could lead a reasonable jury to find an inference of discrimination); *Kamara v. Horizon House, Inc.,* 2015 U.S. Dist. LEXIS 169215, at *19-23 (E.D. Pa. Dec. 18, 2015) (same).

Relatedly, Defendant's performative public statements pledging to "take actions that stem from this incident" and internal discussions committing to "send a message" support an inference of discrimination. PSF ¶¶ 30-32. "Although such remarks, standing alone, are not sufficient to support an inference of discrimination, 'such remarks can constitute evidence of the atmosphere in which the employment decision was carried out'" and further inform an inference of discrimination. *Flores v. Pa. State Police,* 2018 U.S. Dist. LEXIS 191965, at *22-23 (E.D. Pa. Nov. 9, 2018) (quoting *Walden v. Georgia-Pacific Corp.,* 126 F.3d 506, 521 (3d Cir. 1997)).

Plaintiff's evidentiary burden at the *prima facie* stage "is rather modest" and requires Plaintiff to demonstrate a factual scenario that is "compatible with discriminatory intent – i.e., that discrimination *could* be a reason for the employer's action." *Marzano v. Computer Science Corp.*, 91 F.3d 497, 508 (3d Cir. 1996). Because the record evidence viewed in total

16

unquestionably supports an inference of race discrimination, Plaintiff meets her *prima facie* burden and a presumption of discriminatory motive has been established. The burden now shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination.

### 2.   Plaintiff Meets Her *Prima Facie* Burden With Respect To Her Retaliation Claims

To meet her *prima facie* retaliation burden, Plaintiff must establish that: (1) she engaged in protected activity; (2) Defendant took adverse action against her; and (3) a causal connection between her protected activity and the Defendant's adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). Defendant concedes that Plaintiff's termination constitutes an adverse action, but otherwise disputes Plaintiff's *prima facie* retaliation case at the first and third elements. Because Plaintiff's opposition to the race-discriminatory suspension of Mr. Trinsey constitutes protected activity *and* because the undisputed facts demonstrate causal connection between such opposition (or, in Defendant's words, "insubordination") and Plaintiff's termination, Plaintiff meets her *prima facie* retaliation burden.

### i.   Plaintiff's Objection To The Race Discriminatory Suspension Of Her Subordinate Constitutes Protected Activity

Defendant contends that Plaintiff "has not plausibly alleged any facts to suggest she engaged in protected activity", characterizing Plaintiff's complaint as mere "disagreement" with Mr. Trinsey's suspension because Plaintiff "made no mention of Mr. Trinsey's race when objecting to his investigation." Motion p. 13. Defendant's argument ignores the context within which Plaintiff's protected activity occurred and seeks to impose upon Plaintiff an obligation to use magic words to ensure protection from retaliation, in contrast to the law.

Under Title VII, Section 1981, and the NJLAD, "protected activity" encompasses not only formal complaints but also "informal protests of discriminatory employment practices" such

as complaints to management. *Mikell v. Marriott Intern, Inc.*, 789 F. Supp. 2d 607, 618 (E.D. Pa. 2011). When assessing whether an employee engaged in protected activity, the Court should "look to the message being conveyed rather than the means of conveyance." *Curay-Cramer*, 450 F.3d at 135. "A plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[s]he was acting under a good faith, reasonable belief that a violation existed.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996).  Complaints of discrimination will be considered protected activity so long as "it [is] possible to discern from the context of the statement that the employee opposes an unlawful employment practice." *Jajua v. Diakon Lutheran Soc. Ministries*, 299 F. Supp. 3d 645, 656 (E.D. Pa. 2018); *see also Curay-Cramer*, 450 F.3d at 135 (opposition conduct must "identify the employer and the practice—if not specifically, at least by context.").

"[C]omplaints need not specify 'discrimination' or other 'magic words' to qualify as protected activity." *Newell v. Heritage Senior Living, LLC*, 2016 U.S. Dist. LEXIS 13416, at *22 (E.D. Pa. Feb. 3, 2016) (quoting *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003)); *see also Barnett v. Lowes Home Ctrs., LLC,* 2019 U.S. Dist. LEXIS 34645, at *19-20 (E.D. Pa. Mar. 4, 2019) (reasonable factfinder could conclude that plaintiff engaged in protected activity "even though the complaint did not use the magic words 'racial discrimination.'"). "As the Supreme Court has recognized, when an employee communicates to [her] employer a belief that the employer has engaged in ... a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Bonson v. Hanover Foods Corp.*, 451 F. Supp. 3d 345, 357 (M.D. Pa. 2020) (quoting *Crawford v. Metro Gov't of Nashville and Davidson County, Tennessee*, 555 U.S. 271, 276 (2009)) (internal quotations omitted). Importantly, a legitimate complaint of discrimination does not lose protection "merely because

18

the employer is offended by its delivery." *White v. Purolite Corp.*, 2020 U.S. Dist. LEXIS 66171, at *16 n.7 (E.D. Pa. Apr. 15, 2020).

On May 7, 2018, Defendant received a complaint from a Black Assistant Store Manager named Jaicee Huff regarding a "pay difference" between her salary and the salary of her colleague. PSF ¶ 34. To be clear, Ms. Huff did not specifically allege that she was discriminated against or that she believed that she was being paid less because of her race; in fact, Ms. Huff did not mention her race during this conversation at all. *Id.* ¶ 35. Nevertheless, Defendant interpreted Ms. Huff's allegation to be an allegation of race-discriminatory pay practices, presumably because Ms. Huff was Black and the partner with whom she compared herself was white. *Id.* ¶ 36. Accordingly, Defendant initiated an internal investigation into Mr. Trinsey for allegedly perpetuating race-based pay disparities and to place Mr. Trinsey on suspension pending results of the investigation. *Id.* ¶ 37.

That afternoon, during a meeting with Ms. Hymes, Ms. Cioffi, and Mr. Pinto, Plaintiff was informed of Defendant's decision to suspend Mr. Trinsey due to Ms. Huff's allegation which it had determined to be an allegation of race-discriminatory pay practices by Mr. Trinsey and tasked with informing Mr. Trinsey of same. *Id.* ¶ 41. During this conversation, Plaintiff stated that the allegations against Mr. Trinsey were "completely false" explained that Mr. Trinsey was not responsible for determining his subordinates' salaries. *Id.* ¶ 42. Plaintiff went on to state: "This is completely wrong. [Mr. Trinsey] is not a racist. He volunteers all the time. He's my community lead." *Id.* ¶¶ 42-43.

Drawing all inferences in Plaintiff's favor and evaluating Plaintiff's statements in their proper context, Defendant cannot meet its burden of demonstrating that no reasonable jury could find that Plaintiff's objection to Mr. Trinsey's suspension was a complaint of race

19

discrimination. First, Defendant admits that Ms. Phillips' statements are protected activity pursuant to its own policies and protected from retaliatory conduct. *Id*. ¶¶ 45-46. Second, while "magic words" are not required under the law, Defendant's suggestion that Plaintiff's complaint did not implicate race is inaccurate: the very meaning of the word is rooted in race. For example, the Merriam-Webster dictionary provides the following definition: "person who is racist: someone who holds the belief that race is a fundamental determinant of human traits and capacities and that racial differences produce an inherent superiority of a particular race."[6]

Plaintiff and Ms. Hymes both testified that Plaintiff shared her belief that Mr. Trinsey "was being wrongfully accused of being racist." PSF ¶ 43. Moreover, the context of Plaintiff's statements regarding Mr. Trinsey which occurred within breaths of Defendant accusing him of engaging in discriminatory pay practices clearly implicates race. *Id*. ¶ 42. Notably, Defendant did not hesitate to categorize Ms. Huff's allegations as race discrimination complaints despite the undisputed fact that Ms. Huff, herself, never alleged that the "pay difference" was attributed to her race. *Id*. ¶¶ 35-36. Defendant's assertion that it did not consider Plaintiff's complaint to be a race discrimination complaint defies credibility and the fact that Defendant now advances this argument serves as further evidence of Defendant's disparate treatment of Black and white employees during the weeks and months following the April 2018 arrests.

Third Circuit courts have concluded that the first retaliation *prima facie* element was met under circumstances where the alleged protected activity was far less specific than Plaintiff's race discrimination complaint in the present matter. For example, in *Mathis v. Christian Heating & Air Conditioning, Inc.,* the court found that the plaintiff engaged in religious-based protected activity by applying a piece of tape obscuring the defendant's religious-based mission statement on the back of his employer-issued I.D. card and telling his colleagues (and possibly his

---

[6]*See* https://www.merriam-webster.com/dictionary/racist (last visited Dec. 23, 2021).

supervisor) that he did not agree with the mission statement and felt that employees should not "have to wear a religious statement because of somebody else's religion." 158 F. Supp. 3d 317, 321-22 (E.D. Pa. 2016). By way of further example, in *Scott v. Genesis Healthcare, Inc.*, the court concluded that the plaintiff had engaged in protected activity by discussing with his supervisor "whether [plaintiff's colleague] was a racist." 2016 U.S. Dist. LEXIS 111262, at *62-63 (E.D. Pa. Aug. 22, 2016). The *Scott* court reasoned, "though Plaintiff did not explicitly tell [his supervisor] that he perceived [his colleague] as discriminating against him because of his race, Plaintiff did insinuate that [his colleague] was treating Plaintiff differently because he may be a racist." *Id.* at *63; *see also Elston v. UPMC - Presbyterian Shadyside*, 2007 U.S. Dist. LEXIS 78531, at *29 (W.D. Pa. Oct. 23, 2007) (plaintiff's complaint that defendant's "minority recruitment effort was stalled and was destined to fail" constituted protected activity).

Defendant baselessly asserts that Plaintiff "does not allege that she had a reasonable belief that [Mr. Trinsey's suspension] was unlawful under Title VII." Motion p. 13. To the contrary, Plaintiff testified that she believed Mr. Trinsey was being placed on suspension "under false pretenses" and that Defendant "was being discriminatory towards [Mr. Trinsey]." PSF ¶¶ 42-43. To put a finer point on it, Plaintiff believed that Mr. Trinsey was being falsely accused of racism and that "it was because [Mr. Trinsey] was white that he was being suspended." *Id.* Plaintiff's objection to what she perceived to be Defendant's race-discriminatory decision to suspend Mr. Trinsey was reasonable; indeed, even Defendant's HR manager confirmed that the conduct to which Plaintiff was objecting would constitute discrimination. *Id.* ¶¶ 44-45. Accordingly, Plaintiff's objection to Defendant's instruction to suspend Mr. Trinsey based on factually impossible allegations which Plaintiff understood to be motivated by Mr. Trinsey's race and a component of Defendant's financially motivated scheme to "send a message" in the wake

21

of the April 2018 arrests constituted protected activity. *See Crawford v. Metro. Gov't of Nashville,* 555 U.S. 271, 277 (2009) ("we would call it 'opposition' if an employee took a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons.").

           **ii.    Unduly Suggestive Temporal Proximity And The Testimony Of Decisionmakers Demonstrate A Causal Connection Between Plaintiff's Protected Activity And Her Termination**

With respect to the third *prima facie* element, Defendant states only that "there was no causal link between [Plaintiff's] opposition to Mr. Trinsey's suspension and her discharge" but advances no legal argument in support of such contention. Motion p. 12. This statement is plainly insufficient to satisfy Defendant's affirmative burden of demonstrating that no reasonable jury could conclude that a causal connection exists between Plaintiff's protected activity and her termination. To the contrary, the undisputed facts and disputed facts viewed in Plaintiff's favor demonstrate causation.

"Generally, an employee demonstrates retaliatory animus by showing either an unusually suggestive temporal proximity between the employee's protected activity and the employer's adverse action, or a pattern of antagonism in the period between the protected activity and the adverse action." *Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 717 (E.D. Pa. 2021). Nevertheless, "an employee is permitted to rely on a broad array of evidence to demonstrate a causal link between her protected activity and the adverse action taken against her" because "it is causation, not temporal proximity or evidence of antagonism, that is an element of plaintiff's *prima facie* case." *Id*. (quoting *Farrell v. Planters Lifesavers Co*., 206 F.3d 271, 281-284 (3d Cir. 2000)). As such, the causation inquiry instructs courts to ask whether the proffered evidence,

*taken as a whole*, can support the inference of retaliatory animus. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 921 (3d Cir. 1997).

The temporal proximity between Plaintiff's protected activity on May 7th and Defendant's decision to terminate her employment on May 9th is alone sufficient to raise an inference of causation. PSF ¶¶ 50-51. *See e.g.*, *Hanna v. Lincoln Fin. Grp.*, 498 F. Supp. 3d 669, 681-82 (E.D. Pa. 2020) ("temporal proximity (of only two days []) is sufficient to raise an inference of causal connection"); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) ("plaintiff demonstrated the causal link between the two by the circumstance that the discharge followed rapidly, only two days later, upon [protected activity]."); *Verma v. Univ. of Pa.*, 2012 U.S. Dist. LEXIS 70333, at *30 (E.D. Pa. May 18, 2012) ("[s]ituations 'unusually suggestive of retaliatory motive,' and therefore establishing causation based on temporal proximity alone, include an employer firing an employee two days after receiving actual notice of the employee's having filed a discrimination complaint.") (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)).

Moreover, the testimony of Defendant's own witnesses supports an inference of causation. During her deposition, Ms. Hymes testified that Plaintiff was terminated, in part, because of "insubordination when [Defendant was] asking Shannon to issue a suspension to [Mr. Trinsey]". PSF ¶ 47. Nevertheless, Plaintiff delivered Defendant's talking points "line by line" when advising Mr. Trinsey of his suspension. *Id*. When asked to explain the basis for her belief that Plaintiff displayed insubordination, Ms. Hymes explained: "it was literally like, I don't agree… I don't think this is right." *Id*. In other words, the only example provided by Defendant of alleged "insubordination" by Plaintiff in connection with Mr. Trinsey's suspension was the

fact that Plaintiff objected to it at all. *Id*.[7] The inference of a causal connection between Plaintiff's protected activity and her termination could not be clearer: one of Defendant's stated reasons for terminating Plaintiff – that she exhibited "insubordination" by objecting to the race-discriminatory suspension of Mr. Trinsey – is a euphemism for "protected activity". *Id*. ¶¶ 47, 51. Courts within and outside of this Circuit have inferred causation where, as here, the employer's stated reason for taking adverse action against a complaining employee is simply code for or otherwise indicative of a retaliatory animus.[8]

Plaintiff has demonstrated her retaliation *prima facie* case with ease, and a presumption of retaliatory motive has been established. The burden now shifts to Defendant to articulate a legitimate, non-retaliatory reason for Plaintiff's termination.

### 3. Ample Pretext Evidence Exists To Allow A Reasonable Jury To Disbelieve Defendant's Stated Reason(s) And Infer That Defendant Harbored Discriminatory And Retaliatory Animus Against Plaintiff

---

[7] Notably, Mr. Pinto testified that Plaintiff was not insubordinate "at all" during the May 7th meeting and, instead, described her as "stoic". PSF ¶ 48.

[8] *See e.g.*, *Fernandes v. City of Jersey City*, 2017 U.S. Dist. LEXIS 100224, at *23-24 (D.N.J. June 27, 2017) (causal connection inferred where defendant accused complaining-plaintiff of being "disgruntled" after vocalizing concerns); *Davies v. Virtua Health & Rehab. Ctr. at Mount Holly, Inc.*, 2015 U.S. Dist. LEXIS 192711, at *5-6 (D.N.J. Sep. 30, 2015) (causal connection inferred where defendant described complaining-plaintiff as "a pain in the butt" and told her that "she complains too much"); *Braddock v. SEPTA*, 2016 U.S. Dist. LEXIS 39996, at *18-19 (E.D. Pa. Mar. 28, 2016) (causation established defendant contended that plaintiff was "insubordinate" when he complained of race discrimination); *Moccio v. Cornell Univ.*, 889 F. Supp. 2d 539, 590-91 (S.D.N.Y. 2012) (causal connection inferred because defendant's statements casting plaintiff as "insubordinate" following pay discrimination complaint could "plausibly be read to fault her for from complaining."); *Crabtree v. Volkert, Inc.*, 2012 U.S. Dist. LEXIS 173792, at *70-72 (S.D. Ala. Dec. 7, 2012) (causation inferred where complaining-plaintiff was terminated for being "disloyal", describing "disloyalty" as a "mere euphemism used by the employer to mask retaliatory animus"); *EEOC v. St. Michael Hosp. of Franciscan Sisters*, 6 F. Supp. 2d 809, 823-24 (E.D. Wis. 1998) (finding defendant's stated reason, that the complaining-plaintiff was "too aggressive" probative of causation, reasoning "one task a jury may face is deciding whether 'aggressive' is a euphemism for "she complains about [] discrimination."; *Nettles v. Daphne Utils.*, 2015 U.S. Dist. LEXIS 36574, at *35-36 n.23 (S.D. Ala. Mar. 24, 2015) (inferring causation where complaining-plaintiff was terminated for having an "argumentative attitude" preserving for the jury to decide if the same was "'code' for retaliation itself"); *Cty. of Bureau v. Ill. Labor Rels. Bd.*, 2014 IL App (3d) 130271-U, ¶ 154 ("sometimes the term 'bad attitude' can be a euphemism for exercising protected activity").

"In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Zelesnick v. Temple Univ. Health Sys.*, 2021 U.S. Dist. LEXIS 10139, at *23 (E.D. Pa. Jan. 19, 2021). Relatedly, to survive summary judgment, "a plaintiff need not prove that the employer's purported reason for its actions was false" but, rather, "must criticize it effectively enough so as to raise a doubt as to whether it was the true reason for the action." *Gharzouzi v. Nw. Human Servs. of Pa.*, 225 F. Supp. 2d 514, 544 (E.D. Pa. 2002). As the Third Circuit has recognized, there will seldom be "smoking gun" evidence as to the employer's mental processes; accordingly, "the proper inquiry is whether evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge reasonably *could* support an inference that the employer did not act for [illegal] reasons, not whether the evidence *necessarily* leads to [the] conclusion that the employer did act for [illegal] reasons." *Id.* (quoting *Josey v. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993)) (emphasis in original).

While Defendant's stated reason(s) for Plaintiff's termination have shifted throughout the pendency of this litigation, for purposes of the present Motion, Defendant advances the following reasons for Plaintiff's termination: (1) Plaintiff was "incapable of leading her team" and "failed to perform the essential functions of her role as Regional Director" following the April 2018 arrests; (2) Plaintiff exhibited a "lack of awareness of inequitable pay practices happening in her market"; and (3) Plaintiff was insubordinate in objecting to the race discriminatory suspension of her subordinate, Mr. Trinsey. Motion pp. 13-15; PSF ¶¶ 47, 51.

Here, in addition to the evidence set forth in support of her *prima facie* case, Plaintiff has set forth ample evidence from which a reasonable jury could either disbelieve Defendant's stated reason(s) for terminating Plaintiff *or* believe that Defendant's decision was motivated by

Plaintiff's race and/or her protected activity. Material factual disputes abound, summary judgment with respect to Plaintiff's discrimination and retaliation claims would be inappropriate.[9]

> ### i. Defendant's Explanations Regarding The Timing Of And Reasons For Plaintiff's Termination Have Shifted Over Time

When it comes to the critical questions of why Plaintiff was terminated and when this decision was made, Defendant simply cannot keep its story straight. At the time of her termination, Ms. Hymes told Plaintiff that she was being terminated because the situation was "not recoverable." Second Amended Complaint [Dkt. Ent. 34] ¶ 65. Then, in response to an interrogatory asking for each and every reason for Plaintiff's termination, Defendant stated, *inter alia*: "Ms. Phillips' [] actions in the weeks after the arrests demonstrated that she lacked the leadership skills and ability to guide the market and its partners through the crisis and toward recovery." *See* Defendant's Answers and Objections to Plaintiff's First Interrogatories, No. 1 (attached hereto as "Exhibit 21"). Defendant's interrogatory responses were verified by Ms. Hymes. *Id*. Then, during Ms. Hymes' first deposition, a new reason for Plaintiff's termination emerged: that Plaintiff was "insubordinate" when Defendant instructed her to issue to Mr. Trinsey in connection with patently false accusations of race discrimination. PSF ¶ 47. Now, in its present Motion, Defendant has seemingly abandoned Plaintiff's "insubordination" as a stated reason for her termination and replaced it with yet another new explanation: unspecified and undocumented complaints about the "lack of opportunities provided to black [sic] employees"

---

[9] In support of its purportedly legitimate, non-discriminatory and non-retaliatory reasons for Plaintiff's termination, Defendant relies heavily on the perceptions and testimony of Ebony Johnson. Defendant's reliance on Ms. Johnson is wholly inappropriate in light of the fact that Defendant failed to produce Ms. Johnson's electronic materials upon her separation from Starbucks because Ms. Johnson was not "relevant" to this matter. *See* Exhibit 17.

and a "lack of awareness of inequitable pay practices happening in her market". *See* Motion pp. 13-15.

Defendant's shifting explanations regarding the reason(s) for Plaintiff's termination decisions is evidence of pretext. *See e.g., Cullen v. Select Med. Corp.,* 779 F. App'x 929, 932 (3d Cir. 2019) (employer's inconsistent explanations for taking adverse action complained of were "the sort of weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence" and highlighting the jury's function in weighing competing explanations); *Berardinucci v. Temple Univ.,* 2020 U.S. Dist. LEXIS 128868, at *16 (E.D. Pa. July 16, 2020) (citing *Cullen* and stating "[s]ummary judgment can be precluded where a plaintiff demonstrates that her employer offered inconsistent explanations" for its adverse action); *Arpajian v. Prop. Sols., Inc.,* 2005 U.S. Dist. LEXIS 18120, at *28 (D.N.J. Aug. 16, 2005) ("[s]hifting explanations for an employment action is one of the strongest types of evidence for pretext."); *Smith v. Borough of Wilkinsburg,* 147 F.3d 272 (3d Cir. 1998) (shifting justifications for adverse action were evidence of pretext); *Abramson,* 260 F.3d at 284 (same); *Lake v. AK Steel Corp.,* 2006 U.S. Dist. LEXIS 25118, at *91-92 (W.D. Pa. Apr. 27, 2006) (same).

### ii. Plaintiff's Alleged Performance Deficiencies Are Undocumented And Based Exclusively On Subjective Criteria

More troublesome than Defendant's inability to maintain a straight story about the reason(s) for and timing of Plaintiff's termination is the fact that Defendant's primary stated reason for terminating Plaintiff – that after thirteen years of undisputedly stellar performance, Plaintiff, in a time period of twenty-seven (27) days, became plagued with performance

deficiencies so severe that the situation could "not be recovered" – lacks any documentary support whatsoever. Defendant has not produced a single document memorializing, for example, that Plaintiff was "incapable of leading her team" or "failed to perform the essential functions of her role as Regional Director" or that any partner complained about her conduct by referring to her by name or by her position (i.e., that anyone ever actually complained or remarked about her at all) in the wake of the April 2018 arrests.

At the summary judgment stage, Plaintiff is entitled to have all inferences drawn in her favor. One reasonable inference to be drawn from Defendant's inability to produce a single document evidencing poor performance by Plaintiff is that Defendant's stated reason for terminating Plaintiff is false. *See Dreshman v. Villa*, 733 F. Supp. 2d 597, 622 (W.D. Pa. 2010) ("a reasonable jury could infer pretext from" lack of documentation supporting defendant's stated reason); *Johnson v. Verizon Servs. Corp.*, 2017 U.S. Dist. LEXIS 59472 (E.D. Pa. Apr. 18, 2017) (finding genuine dispute of material fact as to pretext where there was a "lack of documentation concerning [plaintiff's] termination", noting that the court "only has before it dueling narratives provided [] as to the motivation for [plaintiff]'s termination"); *Zelesnick v. Temple Univ. Health Sys.*, 2021 U.S. Dist. LEXIS 10139, at *24 (E.D. Pa. Jan. 19, 2021) (absence of documentary evidence supporting defendant's stated reason supported finding of pretext and "makes this a question of credibility, inappropriate for resolution at summary judgment."); *Davis v. Mothers Work, Inc.*, 2005 U.S. Dist. LEXIS 15890, at *39 (E.D. Pa. Aug. 4, 2005) ("[defendant's] lack of documentation seriously impairs its defense to [plaintiff's] allegations and shows a lack of credibility on the part of [defendant]"); *Schlichtig v. Inacom Corp.*, 271 F. Supp. 2d 597, 615 (D.N.J. 2003) (defendant's failure to produce documentation to corroborate its claim that plaintiff engaged in terminable misconduct supported inference of

pretext); *Bowles v. City of Camden*, 993 F. Supp. 255, 264 (D.N.J. 1998) (same); *Miller v. Patterson Motors*, 2009 U.S. Dist. LEXIS 24482, at \*59-61 (W.D. Pa. Mar. 24, 2009) (same).

Instead of producing documentary evidence to support its assertion that Plaintiff suffered from performance deficiencies in the wake of the April 2018 arrests, Defendant relies exclusively on the testimony of its own witnesses to depict Plaintiff as "paralyzed", driven by "panic", and "lacking awareness" of the critical nature of Defendant's public relations crisis. Motion pp. 13-15. These subjective evaluations which seek to malign Plaintiff – a thirteen-year employee with no prior performance issues – should not be taken at face value because "[s]ubjective evaluations are more susceptible of abuse and more likely to mask pretext." *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 320 (3d Cir. 2000); *see also Tomasso v. Boeing Co.,* 445 F.3d 702, 706 (3d Cir. 2006) ("[w]here termination decisions rely on subjective evaluations, careful analysis of possible impermissible motivations is warranted."); *Hanna v. Lincoln Fin. Grp.*, 498 F. Supp. 3d 669, 678 (E.D. Pa. 2020) ("the use of subjective criteria can, under certain circumstances, cloak the real motive(s) of an employer"); *Bearer v. Teva Pharm. USA, Inc.*, 2021 U.S. Dist. LEXIS 170741, at \*72-73 (E.D. Pa. Sep. 8, 2021) (denying summary judgment, reasoning that defendant's use of subjective criteria coupled with lack of documentation of the decision-making process were "sufficient circumstantial evidence from which a factfinder could reasonably disbelieve [defendant's] articulated reason"); *Medvic v. Compass Sign Co., LLC*, 2011 U.S. Dist. LEXIS 89275, at \*29 (E.D. Pa. Aug. 10, 2011) ("it will be the responsibility of the factfinder to determine whether or not [defendant's] subjective evaluation of performance was legitimate or masked pretext.").

To accept, *as a matter of law*, Defendant's subjective and undocumented appraisals of Plaintiff's performance would, at best, usurp the jury's function of assessing witness credibility

29

and, at worst, sanction the exact sort of *post hoc* justifications that the *McDonnell Douglas* burden-shifting framework seeks to prevent. *Fuentes,* 32 F.3d at 767.

> ### iii. Defendant's Assertion That Plaintiff "Failed To Lead" And "Failed To Perform The Duties Of Her Role" In The Wake Of The April 2018 Arrests Is Contradicted By The Record

Not only does the record lack evidentiary support for the notion that Plaintiff "failed to lead" and "failed to perform" following the April 2018 arrests (as discussed in Section IV.A.3.ii, *supra*), but the evidence of record directly contradicts this proposition. Defendant points to amorphous testimony from its own witnesses stating that Plaintiff "appeared overwhelmed", was not "emotionally present", "appeared disengaged, and "gave partners the perception that she would not show up when it was raining" as informing its determination that Plaintiff was "incapable of leading her team" and that termination was warranted. Motion pp. 13-15. The record not only lacks any evidentiary support for this notion; it also contains substantial evidence which directly contradicts it.

Two individuals who reported to Ms. Phillips before and after the April 2018 arrests were deposed in this matter. Notably, Defendant has not cited to a single excerpt of either individual's deposition testimony to support its argument that Plaintiff "failed to lead" in the wake of the April 2018 arrests. There is only one reason why Defendant would ignore the sworn testimony of the individuals whom Plaintiff actually led: Defendant's assertion that Plaintiff "failed to lead" is false.

Mr. Sykes believed that Plaintiff was "100 percent" present throughout the crisis and "provided whatever support [he] and the partners needed in Philadelphia. PSF ¶¶ 19-20. Mr. Sykes did not believe that Plaintiff was "checked out" or out of touch with the seriousness of the arrests. *Id*. Likewise, Mr. Trinsey explained that Plaintiff was "really supportive" and "showed

compassion" "for all of the partners." *Id*. Additionally, several other Starbucks employees who reported to Plaintiff submitted written commendations of Plaintiff's leadership throughout the crisis. *Id*. ¶ 20. Defendant's own witnesses acknowledged that there were multiple aspects of Plaintiff's performance which demonstrated positive leadership during the relevant time period, and Ms. Hymes recommended Plaintiff for a public facing TLA role to support Defendant's Government and Community Affairs apparatus. *Id*. ¶¶ 21-22. Notably, Ms. Hymes never revoked her recommendation of Plaintiff for the TLA role and Defendant never determined that Plaintiff was unqualified for the position. *Id*. ¶¶ 23-24.

Defendant contends that the foregoing evidence should be disregarded in its entirety because "the opinions of Ms. Phillips' subordinates relative to her leadership skills are irrelevant in a pretext analysis." Motion p. 18. This is not the law. To the contrary, where a defendant's stated reason is poor performance, the Third Circuit specifically allows a plaintiff to rely on subordinate and co-worker testimony to demonstrate pretext. *See Sempier,* 45 F.3d at 731-732; *see also Lawrence v. Nat'l Westminster Bank,* 98 F.3d 61, 67 (3d Cir. 1996) (reversing summary judgment for employer, reasoning that plaintiff's reliance on "depositions of his subordinates, which cast [plaintiff] in a positive light" and portrayed plaintiff as "enthusiastic" and "very interested in his business" … "cast sufficient doubt on [defendant's] proffered reason [of poor performance] to create a material issue of fact."); *Colgan v. Fisher Sci. Co.*, 935 F.2d 1407, 1422 (3d Cir. 1991) (reversing summary judgment and admonishing district court for refusing to consider co-worker statements regarding plaintiff's performance in its pretext analysis, concluding co-worker statements raised genuine issue of material fact for purposes of pretext); *Gosnell v. Runyon*, 926 F. Supp. 493, 501-02 (M.D. Pa. 1995) (considering co-worker statement regarding plaintiff's good performance to refute defendant's stated reason of poor performance,

finding that discrepancy gave rise to credibility issue sufficient to preclude summary judgment); *Nagle v. Comprehensive Women's Health Servs., P.C.*, 2018 U.S. Dist. LEXIS 9722, at *31-32 (M.D. Pa. Jan. 19, 2018) (statements by co-workers exhibiting plaintiff's positive performance are "plainly relevant" to the issue of pretext and "go directly to the issue of whether defendant's stated reasons for firing [plaintiff] were pretextual and unworthy of credibility.").

Moreover, each and every defense witness deposed in this case testified that Plaintiff was a strong and respected leader within the Starbucks organization at all times prior to the arrests. PSF ¶ 8. Specifically, Plaintiff was known among Defendant's leadership as fostering "good relationships with her partners," accomplishing "noteworthy" community work, and remaining consistently engaged with the issues impacting her team. *Id*. ¶ 4. Ms. Hymes testified that Plaintiff "understood [Starbucks'] culture, was deeply immersed in connecting with [Starbucks'] partners," and "was a developer of talent." *Id*. ¶ 5. Plaintiff's performance on all objective performance indicators and metrics was "very good" and she was considered among the strongest RDOs under Mr. Hymes' purview. *Id*. ¶ 7. At no time during Plaintiff's nearly thirteen (13) year tenure (before or after the April 2018 arrests) was Plaintiff placed on a performance improvement plan, warned that her job performance was materially deficient, or advised that her job was in any way in jeopardy. *Id*. ¶ 9.

Defendant similarly urges this Court to ignore Plaintiff's testimony and past performance appraisals demonstrating her positive performance, contending that "[i]t does not matter whether Ms. Phillips disagrees with Starbucks' evaluation of her job performance." Motion p. 18. This, too, is not the law, as the Third Circuit explicitly permits an employment discrimination plaintiff to rely on her history of positive performance and her own self-evaluations to demonstrate pretext. *See Sempier,* 45 F.3d at 731-732; *see also Siegel v. Alpha Wire Corp.,* 894 F.2d 50, 55

(3d Cir. 1990) ("inconsistencies in performance evaluations prior and subsequent to an employee's termination supports an inference of pretext); *DeCecco v. UPMC*, 3 F. Supp. 3d 337, 377-78 (W.D. Pa. 2014) (past performance evaluations demonstrating plaintiff's positive performance sufficient to cast doubt on defendant's proffered legitimate nondiscriminatory reason of poor performance); *Nagle v. Comprehensive Women's Health Servs., P.C.*, 2018 U.S. Dist. LEXIS 9722, at *31-32 (M.D. Pa. Jan. 19, 2018) (plaintiff's declaration regarding positive performance "plainly relevant" to the issue of pretext and inconsistency between same and defendant's allegation of poor performance "defines a material factual dispute.").

Such evidence is particularly crucial where, as here, a longtime employee is terminated for poor performance after engaging in protected activity or changing circumstances make the employer's reliance on a protected trait more likely than before. *See Sempier*, 45 F.3d at 731 ("where [plaintiff] asserts not only that he performed well but that he never received any unfavorable criticism that his performance was poor or inadequate, the jury could conclude that [defendant's] failure to fault [plaintiff's] performance for the twenty years prior to the [retirement] negotiations leading to his discharge makes suspect its *post hoc* assertions of poor performance"); *Colgan*, 935 F.2d at 1422 ("most compelling circumstantial evidence" of age discrimination was that after plaintiff refused offer of early retirement, defendant administered "poor performance rating that was aberrational as compared to [plaintiff's] earlier ratings"); *Selvanathan v. Opportunities Industrialization Ctrs. Int'l*, 871 F. Supp. 2d 349, 363 (E.D. Pa. 2012) (describing employer's "unexplained change" in its perception of plaintiff's performance after she reached retirement age as "troubling"); *Martin v. Exelon Corp.*, 2016 U.S. Dist. LEXIS 17096, at *37 (E.D. Pa. Feb. 9, 2016) (denying summary judgment on plaintiff's retaliation claim

because "inconsistencies between the employer's reasons for termination and the employee's prior performance evaluations are evidence of pretext.").

### iv.  Defendant's Characterization Of Plaintiff As "Insubordinate" In Response To Her Race Discrimination Complaint Demonstrates Retaliatory Animus

As a threshold matter, Defendant's own witnesses testified inconsistently regarding Plaintiff's protected activity. Ms. Hymes testified that Plaintiff's objection to Mr. Trinsey's suspension rose to the level of "insubordination", while Mr. Pinto disputes that Plaintiff objected to Mr. Trinsey's suspension at all. PSF ¶¶ 47-49. Importantly, all relevant witnesses acknowledged that Plaintiff presented Mr. Trinsey with the "talking points" which Plaintiff was instructed to cover during Mr. Trinsey's suspension meeting "line by line", so the only conceivable "insubordinate" behavior of Plaintiff was the fact that she objected to the race discriminatory suspension of Mr. Trinsey at all. *Id*. ¶ 47.

The fact that one of Defendant's stated reasons for Plaintiff's termination – that she was "insubordinate" when she objected to the race discriminatory suspension of Mr. Trinsey – is a euphemism for "complaining employee" serves as compelling evidence of pretext. *See e.g.*, *Braddock*, 2016 U.S. Dist. LEXIS 39996, at *27-28 (denying summary judgment and holding that defendant's position that plaintiff was "insubordinate" when he complained of race discrimination served as pretext evidence); *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 699 (S.D.N.Y. 2011) ("[a] termination for 'disruptiveness,' then, could merely be code for a termination in retaliation for complaining of discrimination, and a reasonable jury could read that reason as mere pretext for a retaliatory motive."); *St. Michael*, 6 F. Supp. 2d at 823-24 (denying summary judgment and noting that "one task a jury may face is deciding whether 'aggressive' is a euphemism for "she complains about [] discrimination."); *Nettles*, 2015 U.S. Dist. LEXIS

36574, at *35-36 n.23 (denying summary judgment where defendant's stated reason for terminating complaining plaintiff was his "argumentative attitude", reasoning that this justification raised "genuine issues of material fact as to whether that reason was a pretext for unlawful retaliation or, worse, "code" for retaliation itself."); *Reiter v. Metro. Transp. Auth.*, 2002 U.S. Dist. LEXIS 18537, at *33-34 (S.D.N.Y. Sep. 30, 2002) (denying summary judgment where jury could conclude that defendant's stated reasons for terminating a complaining plaintiff were "simply euphemisms" for retaliation).

### B. Because The Most Important Facts In This Matter Are Unquestionably In Dispute – Namely, Whether Defendant Terminated Plaintiff Because Of Her Race And/Or Protected Activity – Summary Judgment Must Be Denied

The most important facts in this matter are unquestionably in dispute – namely, whether Plaintiff's race and/or protected activity played a role in Defendant's conduct. Plaintiff believes this to be true, while Defendant disagrees. As outlined above, the Third Circuit urges particular caution about granting summary judgment to an employer when intent is at issue, particularly in employment discrimination cases. That is because "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. It follows logically, then, that watching the witnesses testify at trial is critical to this analysis. Indeed, as the Third Circuit concluded, "[a] finding of discrimination is at bottom a determination of intent. In making that determination, the jury must perform its traditional function of assessing the [] credibility of the witnesses through observation of both direct testimony and cross-examination at trial. [] This is uniquely the role of the factfinder, not the court." *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1071-1072 (3d Cir. 1996).

At this summary judgment stage, the Court is required to draw every inference in Plaintiff's favor. *C.A.R.S.*, 527 F.3d at 362. As such, the Court must recognize that when Defendant's witnesses testify at trial (presumably) that its decisions were for non-discriminatory and non-retaliatory reasons, the jury may reject their testimony. Defendant's witnesses' statements and conduct on the witness-stand may evoke doubt or deception in the juror's minds; if the jury thinks that a decision-maker is lying when he or she says Defendant's decision was not motivated by Plaintiff's race or protected activity, the jury may on that basis alone conclude the presence of a civil rights violation. *See St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 510–11 (1993) ("[T]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case suffice to show intentional discrimination."). Only the jury should be tasked with weighing factual disputes and contradicting testimonies, and for deciding whether Defendant's witnesses answered questions honestly and credibly.

Here, there are ample facts that may impact a jury's view of witness credibility. For example, Defendant contends Plaintiff's termination was based on a determination that she was "incapable of leading her team" and an alleged "failure to perform the essential functions of her role" in the wake of the April 2018 arrests; however, Defendant has not produced a single document supporting either of these conclusions and relies, instead, on the testimony of its own witnesses. On the flip side, Plaintiff has produced documents demonstrating her strong performance during the weeks following the April 2018 arrests, confirmed by the testimony of several other witnesses. A jury is not required to believe Defendant's assessment of Plaintiff's performance and, in fact, is permitted to infer pretext based on the utter lack of documentation supporting same. By way of further example, Defendant asserts that the personnel changes

occurring on the heels of the April 2018 arrests which caused the separation of two (2) high-performing white employees were in no way related to race. A jury is not required to conclude that this was a coincidence. As Ms. Hymes testified, "[no]thing is a coincidence." Exhibit 6 (Hymes Tr.) 314:9-11.

Moreover, discovery in this case produced conflicting testimony among and between Defendant's witnesses regarding Plaintiff's performance in the aftermath of the April 2018 arrests, the content of her protected activity, and the reasons for Plaintiff's ultimate termination. Meanwhile, Plaintiff's allegations have remained steadfast throughout this litigation. A jury could reasonably disregard Defendant's version of events and, instead, credit Plaintiff's. These credibility determinations alone render summary judgment inappropriate.

## V.    **CONCLUSION**

As set forth above, Defendant falls woefully short of meeting its affirmative burden of demonstrating by admissible evidence that no reasonable jury could find in Plaintiff's favor. To the contrary, the record evidence demonstrates that in the wake of the April 2018 arrests, Defendant panicked and made personnel decisions based on race to rehabilitate its public image and protect its profits. The record evidence further demonstrates that when Plaintiff challenged Defendant's race discriminatory conduct, Defendant silenced her. Because a reasonable jury could easily conclude that Defendant discriminated against Plaintiff because of her race and retaliated against her because she complained of race discrimination occurring within Defendant's organization, Plaintiff respectfully requests that Defendant's Motion be Denied.

Respectfully submitted,

**CONSOLE MATTIACI LAW, LLC**

Dated: <u>December 23, 2021</u>    By:   <u>*/s/ Katherine C. Oeltjen*</u>
Stephen G. Console, Esquire
Katherine C. Oeltjen, Esquire
Holly W. Smith, Esquire
1525 Locust Street, Ninth Floor
Philadelphia, PA 19102
(215) 545-7676
*Attorneys for Plaintiff*

38