IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANNON PHILLIPS,<br><br>                    *Plaintiff*,<br><br>       v.<br><br>STARBUCKS CORPORATION<br>d/b/a STARBUCKS COFFEE<br>COMPANY<br><br>                    *Defendant.* | CIVIL ACTION NO.: 2:19-cv-19432<br><br>Hon. Joel H. Slomsky, U.S.D.J. |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

Plaintiff, Shannon Phillips ("Plaintiff" or "Ms. Phillips"), by and through her undersigned counsel, submits her present Pretrial Memorandum pursuant to Local Rule 16.1(c) and this Court's Sixth Amended Pretrial Scheduling Order ("Pretrial Scheduling Order") [Dkt. Ent. 109].

I. **FACTUAL CONTENTIONS**[1]

Plaintiff began her Starbucks career in 2005 as a District Manager. Amid her exemplary performance and with the endorsement of then-Partner Resources Manager, Paul Pinto ("Mr. Pinto"), Plaintiff ascended to the rank of Regional Director of Operations ("RDO") for Area 71, a geographic area encompassing approximately one hundred (100) stores across southern New Jersey, Delaware, Maryland, and Pennsylvania, including the City of Philadelphia. Plaintiff held this position until her termination in May 2018.

During her time at Starbucks, Plaintiff was widely regarded as an invaluable leader and among the very best RDOs reporting to Camille Hymes ("Ms. Hymes"), Defendant's Vice

---

[1] Plaintiff incorporates by reference all factual assertions contained within her Response to Defendant's Statement of Undisputed Material Facts and Statement of Affirmative Facts [Dkt. Ent. 79] submitted in support of her opposition to Defendant's Motion for Summary Judgment.

1

President of Operations. Plaintiff was commended for fostering "good relationships with her partners" and engaging in "noteworthy" community work. According to Ms. Hymes, Plaintiff "understood [Starbucks'] culture, was deeply immersed in connecting with [Starbucks'] partners," and "was a developer of talent." Among her subordinates, Plaintiff was regarded as "approachable", "genuine", and "really supportive." At no time during her nearly thirteen (13) years of employment – before or after the events of April 2018 – was Plaintiff issued a corrective action, warned that her performance was materially deficient, or advised that her job was in jeopardy.

On April 12, 2018, two (2) Black men – Donte Robinson ("Mr. Robinson") and Rashon Nelson ("Mr. Nelson") – were arrested by the Philadelphia Police at Defendant's 18th and Spruce retail location after the Store Manager, Holly Hylton ("Ms. Hylton"), called the police ("April 2018 arrests"). Ms. Hylton called the police pursuant to Defendant's "Safe and Welcoming" policy – a policy created and disseminated by Defendant to deter non-paying customers from congregating in its retail locations. Plaintiff played no role in creating Defendant's Safe and Welcoming policy and played no role in the April 2018 arrests. Defendant discontinued the Safe and Welcoming within the City of Philadelphia following the April 2018 arrests. However, no individual responsible for designing Defendant's Safe and Welcoming policy was disciplined.

During the days and weeks following the April 2018 arrests, Plaintiff worked tirelessly to lead her market and support her partners. Plaintiff worked around the clock and was "very, very present" in the Philadelphia market. Plaintiff's subordinates, Black and white, perceived her as being "compassionate", "100 percent" present, and intent on providing "whatever emotional support [they] needed" during Defendant's public relations crisis.

Plaintiff informed her supervisor, Ms. Hymes, of the arrests on April 12th – the day they occurred – but Ms. Hymes did not believe that the event would "blow up" or garner significant media attention and made no immediate plans to visit the Philadelphia market. It was only after a video of the April 2018 arrests surfaced and social media activity became "significant and concerning" that Defendant determined that a leadership presence was necessary. Amid an emerging realization that the April 2018 arrests were "turning into a big deal" placing Defendant's brand and bottom line at risk, Defendant's leadership descended upon the City of Philadelphia.

Following the April 2018 arrests, "race was definitely the topic of conversation" among Defendant's leadership, including in connection with "changes" that needed to be made within Defendant's organization. Defendant determined that a "strong message" needed to be sent to signal that it was taking the April 2018 arrests seriously to fix its ailing business. On May 2, 2018, after a settlement was reached with Mr. Robinson and Mr. Nelson, Defendant issued a public statement vowing that "Starbucks will continue to take actions that stem from this incident to repair and reaffirm our values and vision for the kind of company that we want to be." Then, as promised, Defendant began taking "action" – namely, by ridding its Philadelphia market of white leaders.

On May 7th, Defendant received a complaint from a Black Assistant Store Manager ("ASM") named Jaicee Huff ("Ms. Huff") regarding a "pay difference" between her salary and the salary of her colleague, who was white. Thereafter, Defendant initiated an investigation into Ms. Huff's District Manager, Ben Trinsey ("Mr. Trinsey") for perpetuating race-based pay disparities and decided to place Mr. Trinsey on suspension pending results of same. At the time of this decision, Defendant knew that any pay difference was out of Mr. Trinsey's control because, under Defendant's practices, it was Partner Resources, not the District Manager, who determined partner pay. In other words, Defendant knew that its allegation of race discrimination against Mr. Trinsey

3

was factually impossible but it suspended Mr. Trinsey anyway. Plaintiff was required to inform Mr. Trinsey of his suspension.

Meanwhile, during the days and weeks following the April 2018 arrests, Defendant received multiple allegations of misconduct and race discrimination in stores that fell under the purview of District Manager, Paul Sykes ("Mr. Sykes"). Mr. Sykes is Black and oversaw the 18th and Spruce retail location where the April 2018 arrests took place. Mr. Sykes, who was the most senior Black partner working within the Philadelphia market, was never counseled, coached, or disciplined in connection with the April 2018 arrests or subsequent allegations emerging from his stores. Mr. Sykes maintained his DM position well after Plaintiff's termination and Mr. Trinsey's suspension; he voluntarily resigned from the company.

On May 9th – less than a month after the April 2018 arrests and after thirteen (13) years of undisputedly stellar performance – Defendant terminated Plaintiff. The sole reason given to Plaintiff at the time of her termination was that the situation was "not recoverable." During this litigation, Defendant has claimed that Plaintiff was terminated because she "failed to perform the essential functions of her role" and she was "incapable of leading her team" through Starbucks' self-imposed public relations crisis. Defendant's stated reason is not supported by a single document and is belied by the testimony of both of the Philadelphia-based employees who reported to Plaintiff in the wake of the April 2018 arrests.

It is undisputed that in the month that followed the April 2018 arrests, Defendant took adverse employment action against three Philadelphia-based employees and that all three of them are white. It is undisputed that Defendant has never taken any adverse action against any Black employee in connection with the April 2018 arrests – including Mr. Sykes who oversaw the retail location where the arrests took place. Mr. Sykes himself believes that Plaintiff's race played a role

4

in Defendant's decisions to terminate Plaintiff, suspend Mr. Trinsey, and retain him, testifying: "I did find it interesting because it happened in my district, and I certainly didn't cause that, but it was in my district and it was my manager and I felt really bad with what happened with [Mr. Trinsey] and then what happened with [Plaintiff] because they were the furthest from it and I was the closest to it."

**This is not a coincidence.** Plaintiff was fired because she is white. Defendant's conduct violated the law – namely, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. §10:5-3, *et seq.* ("NJLAD").

## II.  ANTICIPATED TRIAL WITNESSES

Plaintiff intends to call the following individuals to provide testimony during her case-in-chief at the time of trial:

| NAME | AREA OF TESTIMONY |
| --- | --- |
| Shannon Phillips | Liability and Damages |
| Zeta Smith | Liability and Damages* |
| Paul Pinto | Liability |
| Camille Hymes | Liability and Damages* |
| Paul Sykes | Liability |
| Ben Trinsey | Liability |
| Nathalie Cioffi | Liability |
| Shannon Boldizsar | Liability |
| Ebony Johnson | Liability |
| Rachel Ruggeri | Damages* |

*In regard to punitive damages, Plaintiff intends to call Ms. Hymes, Ms. Smith, Ms. Ruggeri, and/or a witness identified by Starbucks who can testify to the net worth and financial condition of the company.

Plaintiff intends to call Stephen J. Scherf, CPA ("Mr. Scherf") to testify regarding his expert report and opinion as to Plaintiff's economic loss.[2] Mr. Scherf is preparing a supplemental expert report to reflect the time period from his initial June 4, 2021 report through the present. Mr. Scherf's supplemental report is expected to be available and produced to Defendant on or before Monday May 8th. Defendant engaged a counter-expert, Howard Silverstone, who is expected to testify at trial.

### III.   VIDEOTAPED TRIAL TESTIMONY AND DEPOSITION TESTIMONY

Plaintiff reserves the right to take a videotaped trial deposition for any witness outside the Court's subpoena power who will not be testifying live. Plaintiff further reserves her right to offer deposition testimony affirmatively at trial for impeachment and/or rebuttal purposes.

### IV.   DAMAGES

#### A. Economic Loss Damages

Plaintiff retained an economic loss expert in this matter. Mr. Scherf's expert report of June 4, 2021 is attached hereto as **Exhibit A**. As of June 4, 2021, Mr. Scherf calculated Plaintiff's back-pay losses to equal $739,758 and her future losses to equal $1,626,433 over a period of ten (10) years. Mr. Scherf is in the process of supplementing his report as set forth in Section II above.

---

[2] Mr. Scherf's initial expert report, including his curriculum *vitae*, is attached hereto as **Exhibit A**.

### B. Compensatory Damages

Plaintiff seeks compensation for the emotional distress that she has endured (and continues to endure) as a result of Defendant's discriminatory conduct under Title VII, Section 1981, and the NJLAD. Compensatory damages are uncapped under Section 1981 and the NJLAD.

### C. Punitive Damages

Defendant, including upper-management, acted with malice or reckless indifference to Plaintiff's civil rights. Defendant's conduct was especially egregious. Accordingly, Plaintiff seeks punitive damages under Title VII, Section 1981, and the NJLAD. Punitive damages are statutorily uncapped under Section 1981 and the NJLAD.[3]

### D. Attorneys' Fees, Costs, and Interest

If successful at trial, Plaintiff will seek an award of attorneys' fees, costs, and interest as permitted by law.

## V. STIPULATIONS

Per the Court's Pretrial Scheduling Order, the parties exchanged proposed stipulations on April 24, 2023. Plaintiff proposes the following stipulations:

- On May 9, 2018 and on every working day during the preceding twenty calendar weeks, Defendant employed more than fifteen (15) employees.

- Between April 12 and May 9, 2018, Camille Hymes was a member of Defendant's upper management.

---

[3] Given the size of Defendant's company, Plaintiff will be entitled to recover punitive damages up to the statutory cap – $300,000 – under Title VII.

- Between April 12 and May 9, 2018, Paul Pinto was a member of Defendant's upper management.

- Between April 12 and May 9, 2018, Nathalie Cioffi was a member of Defendant's upper management.

- Between April 12 and May 9, 2018, Zeta Smith was a member of Defendant's upper management.

- Starbucks Corporation's 2018 Form 10-K (PHILLIPS000787-965) accurately depicts Defendant's financial condition as of the date of filing with the Securities and Exchange Commission.

- Starbucks Corporation's 2019 Form 10-K (PHILLIPS000787-000965) accurately depicts Defendant's financial condition as of the date of filing with the Securities and Exchange Commission.

- Starbucks Corporation's 2020 Form 10-K (PHILLIPS001105-001275) accurately depicts Defendant's financial condition as of the date of filing with the Securities and Exchange Commission.

- Starbucks Corporation's 2022 Form 10-K (PHILLIPS001279-001378) accurately depicts Defendant's financial condition as of the date of filing with the Securities and Exchange Commission.

Consistent with the Court's Pretrial Scheduling Order, the parties will confer regarding their respective proposed stipulations in advance of the final pretrial conference and furnish the Court with a list of stipulations at that time.

## VI.  EVIDENTIARY OBJECTIONS

Per the Court's Pretrial Scheduling Order, the parties exchanged proposed exhibit lists on April 24, 2023. To streamline the case, Plaintiff has proposed that the parties submit an exhibit list with no duplicates and a running list of exhibit numbers. The parties are in the process of revising their exhibit list and will furnish the Court with a final Joint Exhibit List in the time contemplated by the Court's Pretrial Scheduling Order.  Consistent with the foregoing, Plaintiff anticipates that she may have additional objections and/or file additional motions *in limine* other than those identified below. Plaintiff reserves the right to object to any exhibit on admissibility, authenticity and/or hearsay grounds depending on the purpose for which it is being offered and the witness through which Defendant is seeking admission.

Plaintiff objects to Defendant's proposed exhibit TR-005 (Video of April 12, 2018 Arrest) on the following grounds: (1) it was not produced in discovery in violation of Fed. R. Civ. P. 26; (2) it is irrelevant under F.R.E. 401; and (3) the probative value of this document is outweighed by the risk of unfair prejudice in violation of FRE 403.

Plaintiff objects to Defendant's proposed exhibit TR-026 (STARBUCKS002677) on the following grounds: (1) it constitutes inadmissible hearsay prohibited by F.R.E. 801; (2) it is irrelevant under F.R.E. 401; (3) the probative value of this document is outweighed by the risk of unfair prejudice in violation of F.R.E. 403; and (4) it is an inadmissible settlement communication under FRE 408.

Plaintiff objects to Defendant's proposed exhibits TR-127 (Transcript of Deposition of Benjamin Trinsey), TR-128 (Video of Deposition of Benjamin Trinsey), TR-129 (Transcript of Deposition of Shannon Boldizsar), TR-130 (Video of Deposition of Shannon Boldizsar), TR-131 (Transcript of Deposition of Paul Sykes), TR-132 (Video of Deposition of Paul Sykes), TR-133

(Transcript of Deposition of Stephen J. Scherf), and TR-134 (Video of Deposition of Stephen J. Scherf) because they are improper trial exhibits and inadmissible under Fed. R. of Civ. P. 32, constitute inadmissible hearsay under F.R.E. 801, and are not otherwise permitted under the Federal Rules of Evidence.

Plaintiff objects to Defendant's proposed exhibits TR-135 (Transcript of Deposition of Jessica Vrooman) and TR-136 (Video of Deposition of Jessica Vrooman) on the following grounds: (1) they constitute inadmissible hearsay prohibited by FRE 801; and (2) the declarant is not a qualified testifying expert, rendering certain of her opinions inadmissible under F.R.E. 702.

Plaintiff will file a motion *in limine* seeking exclusion of these documents and any reference to same in the time contemplated by the Court's Pretrial Scheduling Order.

## VII.  ANTICIPATED LEGAL ISSUES

In the time contemplated by the Court's Pretrial Scheduling Order, Plaintiff will file a motion *in limine* seeking exclusion of TR-005, TR-026, TR-127, TR-128, TR-129, TR-130, TR-131, TR-132, TR-133, TR-134, TR-135, and TR-136 and any reference to same during trial. Plaintiff will also file a motion seeking to preclude Defendant's rebuttal expert, Howard Silverstone, from opining on Plaintiff's mitigation efforts and/or any other matter on which he is not qualified to testify under F.R.E. 702.

Plaintiff does not, at this time, anticipate any other significant legal issues. Plaintiff reserves her right to seek the Court's assistance in resolving additional legal issues, including, without limitation, legal issues brought to light within Defendant's pretrial memorandum and/or motion(s) *in limine*.

        Respectfully submitted,

        **CONSOLE MATTIACI LAW, LLC**

Dated: <u>May 1, 2023</u>       By:   <u>*/s/ Laura C. Mattiacci*</u>
        Laura C. Mattiacci, Esquire
        Katherine C. Oeltjen, Esquire
        Holly W. Smith, Esquire (*pro hac vice*)
        1525 Locust Street, Ninth Floor
        Philadelphia, PA 19102
        (215) 545-7676

        *Attorneys for Plaintiff, Shannon Phillips*