IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANNON PHILLIPS,<br><br>       *Plaintiff*,<br><br>v.<br><br>STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY<br><br>       *Defendant*. | CIVIL ACTION NO.: 2:19-cv-19432<br><br>Hon. Joel H. Slomsky, U.S.D.J. |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF HER OMNIBUS MOTION *IN LIMINE* TO PRECLUDE
DEFENDANT FROM OFFERING CERTAIN EVIDENCE AT TRIAL**

**I. INTRODUCTION[1]**

Plaintiff, Shannon Phillips, by and through her undersigned counsel, hereby moves this Court *in limine* for an Order precluding Defendant, Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks" or "Defendant"), from presenting the following at trial: (1) video evidence of the April 12, 2018 arrests (TR-005); (2) documentary or testimonial evidence related to Plaintiff's May 8, 2018 settlement demand (TR-026); (3) documentary or testimonial evidence from Defendant's economic loss expert on any topic for which he is not qualified to render an expert opinion – namely, Plaintiff's mitigation efforts; and (4) evidence related to Plaintiff's dismissed and/or withdrawn claims against Defendant. For the reasons set forth below, Plaintiff respectfully requests that this Court issue an Order in the form attached.

---

[1] Plaintiff incorporates by reference all factual assertions contained within her Pretrial Memorandum [Dkt. Ent. 117].

1

## II. STANDARD OF REVIEW

Courts have inherent power to grant motions *in limine* to "manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1994). "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione,* 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). The Court possesses discretion to grant motions *in limine* to preclude both evidence *and* arguments on specific issues. *See e.g.*, *Connearney v. Main Line Hasps., Inc.*, 2016 U.S. Dist. LEXIS 153745 (E.D. Pa., Nov. 4, 2016); *General Refractories Co. v. First State Ins. Co.*, 2013 U.S. Dist. LEXIS 138211 (E.D. Pa., Sep. 25, 2013). Evidence which is improper and inadmissible under the Federal Rules of Evidence is ripe for exclusion upon a motion *in limine*. *Tartaglione*, 228 F. Supp. 3d at 406.

"In determining whether to admit evidence, a court must make the threshold determination that the proffered evidence is relevant." *N. Am. Roofing & Sheet Metal Co., Inc. v. Bldg. & Constr. Trades Council of Phila. and Vicinity*, 2005 U.S. Dist. LEXIS 241, at *6 (E.D. Pa. Jan. 10, 2005). Fed. R. Evid. 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Irrelevant evidence is inadmissible. *See* Fed. R. Evid. 402; *see also Forrest v. Beloit Corp.,* 424 F.3d 344, 355 (3d Cir. 2005).

"Relevance alone does not ensure [] admissibility." *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343 (3d Cir. 2002). Even relevant evidence must be excluded if its "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See* Fed. R. Evid. 403. However, Federal Rule of Evidence 403 provides

that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit the evidence." *Coleman*, 306 F.3d at 1343. In undertaking this balance, "the proper equation places on one side the maximum reasonable probative force for the offered evidence, while the other side of the equation should include the likely prejudicial impact of the evidence." *Id.* at 1344 (quotation omitted). As such, "evidence may be excluded if its probative value is not worth the problems that its admission may cause." *Id.* at 1343. Specifically, "[u]nfair prejudice as used in [Rule 403] means that the evidence is so inflammatory that it will blind the jury to the true, rational facts, and will inflame their passion and prejudices to the degree that they will be swayed by their emotions, rather than by a dispassionate evaluation of the evidence." *Dittrich v. Seeds*, 2005 U.S. Dist. LEXIS 22078, at *43 (E.D. Pa. Sept. 28, 2005).

### III.   PLAINTIFF'S MOTIONS *IN LIMINE*

The Federal Rules of Evidence compel exclusion of (1) video evidence depicting the April 12, 2018 arrests (TR-005); (2) documentary or testimonial evidence related to Plaintiff's May 8, 2018 settlement demand (TR-026); (3) documentary or testimonial evidence from Defendant's economic loss expert on any topic for which he is not qualified to render an expert opinion – namely, Plaintiff's mitigation efforts; and (4) evidence related to Plaintiff's dismissed and/or withdrawn claims against Defendant.

### A. Defendant Should be Precluded from Introducing Video Evidence of the April 12, 2018 Arrests (TR-005)

Defendant seeks to introduce TR-005 – a 46-second video clip of the April 12, 2018 arrests ("arrest video") obtained from The Guardian's website "courtesy of Melissa Depino" (an unknown

person). <u>Defendant did not produce the arrest video during discovery; rather, the first time that this document was identified to Plaintiff was through the parties' April 24th trial document exchange</u>.

The Federal Rules of Evidence compel exclusion of the arrest video for <u>five</u> primary reasons: (1) Defendant violated the Federal Rules of Civil Procedure and this Court's discovery Order by producing this document nearly two (2) years after the close of fact discovery; (2) the video cannot be authenticated; (3) the contents of the video are irrelevant to any claim or defense at issue in this case; (4) any probative value of the arrest video is substantially outweighed by the danger of unfair prejudice to Plaintiff; and (5) even if somehow deemed relevant and not in violation of Rule 403, the video violates the rule of completeness.

***First***, by failing to produce the arrest video until just weeks before trial, Defendant violated Fed. R. Civ. P. 26(a)(1)(A) and this Court's discovery Order. Defendant should be precluded from utilizing the arrest video at trial as a sanction for violating the rules of discovery.

***Second***, the arrest video (TR-005) is incapable of being properly authenticated. Fed. R. Evid. 901 requires all evidence to be authenticated by way of "evidence sufficient to support a finding that the item is what the proponent claims it is." *Penn v. Detweiler*, 2020 U.S. Dist. LEXIS 38634, at *16 (M.D. Pa. Jan. 22, 2020) (quoting Fed. R. Evid. 901(a)). Fed. R. Evid. 901 applies with equal force to evidence obtained from social media sources. *See e.g.*, *United States v. Browne*, 834 F.3d 403, 65 V.I. 425 (3d. Cir. 2016); *Quagliarello v. Dewees*, 2011 U.S. Dist. LEXIS 86914, at *6 (E.D. Pa. Aug. 4, 2011). Video evidence may be authenticated by "testimony from individuals depicted in the video or testimony from individuals who created the video." *Id*. (citing *Vazquez v. City of Allentown*, 689 F. App'x 695, 700 (3d Cir. 2017)).

No individual depicted in the arrest video has been identified on either party's witness list. Likewise, no individual from The Guardian – the news agency who published the video – or

Melissa Depino – whoever she is – appears on either party's witness list. Accordingly, there is no way for Defendant to introduce the arrest video at trial without running afoul of Rule 901's authentication requirement. This fact alone compels exclusion of the arrest video. *See e.g.*, *Penn v. Detweiler*, 2020 U.S. Dist. LEXIS 38634, at *16; *Browne*, 834 F.3d at 403.

***Third***, the arrest video, which captures only 46 seconds of the April 12, 2018 arrests, is incomplete. Rule 106 provides: "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106. Rule 106 codifies the rule of completeness and guards against the potential for evidence to be misleading when taken out of context. *United States v. Sherman*, 293 F. App'x 158, 159-60 (3d Cir. 2008). Rule 106 counsels exclusion where a party "cherry picks" evidence which is favorable to its case while denying its adversary the opportunity to review the remainder of the evidence. *United States v. Yevakpor*, 419 F. Supp. 2d 242, 246-47 (N.D.N.Y. 2006)."

The arrest video was not produced or otherwise utilized by either party during discovery in this case; indeed, Defendant first identified the arrest video as a trial exhibit *vis a vis* the parties' April 24, 2023 informal exhibit list exchange. Defendant presumably possesses (or at one time possessed) a video depicting the arrests in their entirety, but the complete version has never been shared with Plaintiff. Permitting Defendant to present the arrest video to the jury when Plaintiff has not had the opportunity to review any aspect of the events that preceded or followed the 46-seconds shown in the arrest video would be grossly unfair to Plaintiff and would prevent the jury from evaluating the April 12, 2018 arrests in their full and proper context. Rule 106 requires exclusion of the arrest video at trial.

*Fourth*, the arrest video is not relevant to any claim or defense in this matter. The fact of and circumstances surrounding the April 12, 2018 arrests are not in dispute. It is also undisputed that not a single witness identified by either party was present for the arrests – let alone deemed responsible for the arrests taking place. Accordingly, the arrest video does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* Fed. R. Evid. 401.

*Fifth*, assuming *arguendo* that the arrest video was probative of any issue in this case, the low probative value of arrest video is substantially outweighed by the risk of unfair prejudice to Plaintiff. Although the events at issue in this case occurred during the several weeks following the events of April 12, 2018, this case is not about the arrests themselves. The April 12, 2018 arrests were and continue to be an emotional and polarizing topic within the Philadelphia region. Permitting Defendant to show the jury the arrest video runs the risk of inflaming the jury and misleading them into believing that Plaintiff – rather than *Defendant* – is responsible for the arrests having taken place.

Courts within this Circuit have excluded potentially inflammatory video evidence where, like here, the contents of the video have no bearing on any fact of consequence in the case. For example, in *In re Jacoby Airplane Crash Litig.*, a negligence action brought against an airplane manufacturer and air traffic controllers, the plaintiff sought to introduce videos and photographs from the crash site. 2007 U.S. Dist. LEXIS 118557, at *12-17 (D.N.J. June 14, 2007). The Court found that the contents of the videos and photographs "may have some relevance" but excluded the disputed evidence under Rule 403, reasoning showing graphic images of the crash site to the jury would be unfairly prejudicial and of minimal probative value. *Id.*; *see also United States v. Bey,* 2017 U.S. Dist. LEXIS 65644, at *15-20 (E.D. Pa. Apr. 28, 2017) (excluding criminal

defendant's homemade rap video over government's assertion that the video served as "background evidence", reasoning that the inflammatory nature of the video was unfairly prejudicial). Likewise, Rule 403 compels exclusion of the arrest video at trial.

### B. Defendant Should be Precluded from Introducing Documentary or Testimonial Evidence Related to Plaintiff's May 8th Settlement Demand (TR-026)

Defendant seeks to introduce TR-026 – a text message exchange between Plaintiff and Camille Hymes wherein Plaintiff conveys a settlement demand ("settlement discussion"). The settlement discussion and any reference to same should be excluded because it is irrelevant, prejudicial, and because it constitutes a confidential settlement communication which is facially prohibited by the Federal Rules of Evidence.

***First***, the settlement discussion which occurred *after* Defendant made the decision to terminate Plaintiff's employment has no bearing on any claim or defense in this matter and is wholly irrelevant to the question of whether Plaintiff's race played a factor in Plaintiff's termination. Accordingly, the settlement discussion contained at TR-026 is irrelevant under Fed. R. Evid. 401.

***Second***, assuming *arguendo* that the settlement discussion was relevant to any issue of consequence in this case, the probative value of this document is substantially outweighed by the risk of unfair prejudice to Plaintiff, rendering it inadmissible under Fed. R. Evid. 403.

***Third***, the settlement discussion constitutes a compromise negotiation prohibited under Fed. R. Evid. 408. Rule 408 provides that evidence of "accepting, promising to accept, or offering to accept [] valuable consideration in compromising or attempting to compromise the claim" *and* "a statement made during compromise negotiations about the claim" are inadmissible. *See* Fed. R. Evid. 408. The settlement discussion contained at TR-026 wherein Plaintiff demands a specific

sum of money and characterizes same as a "settlement proposal" is the exact sort of communication contemplated by Rule 408, compelling exclusion of TR-026 at trial.

### C. Defendant's Economic Loss Expert Should be Precluded from Opining on Issues Falling Outside the Scope of his Expertise

Rule 702 governs the admissibility of expert opinion testimony in federal court. *See* Fed. R. Evid. 702. The Third Circuit has articulated three major requirements for the admissibility of expert testimony under Rule 702: (1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). Unless expert testimony is rendered by a qualified expert, it must be excluded. *Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 272 (3d Cir. 1991). To qualify as an expert under Rule 702, the witness must have specialized knowledge regarding the area of testimony. *Betterbox Communs., Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 335 (3d Cir. 2002). Ultimately, the Court must be certain that the testifying expert possesses the level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

During expert discovery, Plaintiff retained Stephen Scherf, CPA/CFF ("Mr. Scherf") as an economic loss expert who prepared an expert report. Thereafter, Defendant retained a forensic and investigative accounting firm, Forensic Resolutions Inc., to prepare and submit a rebuttal report. Defendant's rebuttal report was authored by Howard M. Silverstone, MBE, CPA, CFF, FCA, CFE ("Mr. Silverstone"), and Jessica Vrooman, CPA ("Ms. Vrooman"). Defendant identified Mr. Silverstone as a trial witness and identified the rebuttal expert report as a trial exhibit (TR-023).[2]

---

[2] The transcript and videorecording of Ms. Vrooman's deposition were identified by Defendant as trial exhibits. Given that Ms. Vrooman is not testifying at trial, Plaintiff will object to the introduction of these materials under Fed. R. Evid. 801 and/or Fed. R. Civ. P. 32 to the extent that Defendant seeks to introduce same at trial.

During her deposition, Ms. Vrooman, the co-author of Defendant's rebuttal expert report, testified unequivocally that neither she nor Ms. Silverstone were vocational experts and that neither she nor Mr. Silverstone had ever offered an opinion as a vocational expert. Vrooman Tr. 16:21; 18:23-19:7. Ms. Vrooman further testified, unequivocally, that because she is not a vocational expert, she was not qualified to opine on whether Plaintiff's job search was sufficient *or* whether there was a diminution in Plaintiff's earning capacity. Vrooman Tr. 16:15-23. Mr. Silverstone's lack of qualification to testify on vocational matters, including the quality of Plaintiff's job search efforts, is further evidenced by his curriculum *vitae* which reflects no experience opining on issues of this nature.

Notwithstanding Ms. Vrooman and Mr. Silverstone's undisputed lack of vocational expertise, Defendant's rebuttal report contains multiple statements which imply that Plaintiff did not make adequate mitigation efforts and that the economic loss calculations contained in Mr. Scherf's report are inflated as a result of same (*e.g.*, "We question if Ms. Phillips' post-termination earnings were limited as a result of her not seeking employment with any other employer and solely accepting a position with Raymour."). Any and all statements contained within Defendant's rebuttal report regarding Plaintiff's mitigation efforts, and any and all similar statements by Mr. Silverstone at trial, are not based on "specialized knowledge", are not helpful to the trier of fact, and violate Fed. R. Evid. 702.

Furthermore, because Plaintiff's affirmative expert report only addressed Plaintiff's economic loss, any opinion from Defendant's rebuttal expert regarding Plaintiff's mitigation efforts are not a rebuttal, but an effort by Defendant to produce an untimely affirmative expert report. Plaintiff was, therefore, denied the opportunity to retain her own expert to rebut Defendant's backdoor "expert" opinion on her failure to mitigate.

Plaintiff does not, at this time, dispute Mr. Silverstone's qualification to render an opinion as to Plaintiff's economic loss. However, because Mr. Silverstone is not a vocational expert, this Court should preclude Mr. Silverstone from opining on Plaintiff's mitigation efforts at trial and should preclude Defendant from introducing any aspect of Mr. Silverstone's rebuttal report which offers any opinion or makes any reference to Plaintiff's job search efforts.

### D. Defendant Should be Precluded from Introducing Evidence of Plaintiff's Dismissed and/or Withdrawn Claims

Plaintiff's Second Amended Complaint included a retaliation and a failure to promote claim. On December 23, 2021, in her Opposition to Defendant's Motion for Summary Judgment, Plaintiff voluntarily dismissed her failure to promote claim [Dkt. Ent. 79]. On August 31, 2022, this Court dismissed Plaintiff's retaliation claim [Dkt. Ent. 93]. Because evidence related to Plaintiff's withdrawn and dismissed claims is not relevant to the claims or defenses at issue and any discussion of same would be unduly prejudicial to Plaintiff, this Court should preclude Defendant from referencing same at trial.

*First*, any reference to Plaintiff's decision not to pursue an independent failure to promote claim related to the TLA position is irrelevant to the jury's determination of whether Plaintiff was terminated because of her race. Likewise, any reference to Plaintiff's retaliation claims or the Court's dismissal of same is irrelevant to the jury's determination of whether Plaintiff was terminated because of her race. Accordingly, this information is irrelevant and should be excluded under Fed. R. Evid. 401.

*Second*, even if evidence related to Plaintiff's withdrawn and/or dismissed claims were somehow relevant, the minimal probative value of same is substantially outweighed by the risk of unfair prejudice to Plaintiff. If Defendant is permitted to argue, comment, or introduce questions relating to the fact that Plaintiff's failure to promote claim was voluntarily withdrawn *or* the fact

10

that Plaintiff's retaliation claim was dismissed by the Court, then the jury may improperly discount or ignore altogether evidence related to these claims when deliberating and reaching its verdict. This result would prejudice Plaintiff. Courts within this Circuit routinely preclude these same anticipated references to dismissed and/or withdrawn claims. *See Kimes v. Univ. of Scranton*, 2016 U.S. Dist. LEXIS 44274, at *5 (M.D. Pa. Apr. 1, 2016) ("[a]ny reference, inference, or suggestion to [] dismissed claims would be prejudicial to [parties], potentially confuse the jury, and would lead to limiting instructions and the waste of judicial resources."); *see also Beltz v. Univ. of Pittsburgh*, 2022 U.S. Dist. LEXIS 184717, at *1–2 (W.D. Pa. Oct. 10, 2022). This Court should, likewise, preclude Defendant from making reference to Plaintiff's withdrawn and/or dismissed claims under Fed. R. Evid. 403.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter the Proposed Order submitted herewith precluding Defendant from introducing the following evidence at trial: (1) video evidence depicting the April 12, 2018 arrests (TR-005); (2) documentary or testimonial evidence related to Plaintiff's (date) settlement demand (TR-026); (3) documentary or testimonial evidence from Defendant's economic loss expert on any topic for which he is not qualified to render an expert opinion – namely, Plaintiff's mitigation efforts; and (4) evidence related to Plaintiff's dismissed and/or withdrawn claims against Defendant.

|  |  | Respectfully submitted, |
|---|---|---|
|  |  | **CONSOLE MATTIACI LAW, LLC** |
| Dated: <u>May 15, 2023</u> | By: | <u>*/s/ Katherine C. Oeltjen*</u><br>Laura C. Mattiacci, Esquire<br>Katherine C. Oeltjen, Esquire<br>Holly W. Smith, Esquire (*pro hac vice*)<br>1525 Locust Street, Ninth Floor<br>Philadelphia, PA 19102<br>(215) 545-7676<br><br>*Attorneys for Plaintiff* |