**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHANNON PHILLIPS, | |
| *Plaintiff*, | CIVIL ACTION NO.: 2:19-cv-19432 |
| v. | |
| STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY | Hon. Joel H. Slomsky, U.S.D.J. |
| *Defendant.* | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Pursuant to the Court's Sixth Amended Scheduling Order [Dkt. Ent. 109], Plaintiff, Shannon Phillips, submits the following points for charge as to Liability and Damages. Plaintiff reserves the right to make changes to and/or supplement these instructions based upon a ruling by the Court or the discovery of any errors and/or omissions in these submissions.

Respectfully submitted,

**CONSOLE MATTIACI LAW, LLC**

Dated: <u>May 22, 2023</u>    By:    <u>*/s/ Laura C. Mattiacci*</u>
Laura C. Mattiacci, Esquire
Katherine C. Oeltjen, Esquire
Holly W. Smith, Esquire (*pro hac vice*)
1525 Locust Street, Ninth Floor
Philadelphia, PA 19102
(215) 545-7676

*Attorneys for Plaintiff, Shannon Phillips*

## INDEX OF PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

**INDEX OF PLAINTIFF'S PROPOSED JURY INSTRUCTIONS** ........................................ 2

*Jury Instruction #1 (NJ Model 2.21 – UNMODIFIED) (NJLAD – General Charge)* .............. 3

*Jury Instruction #2 (Third Circuit Model 5.0 – UNMODIFIED) (Title VII Introductory Instruction)* ........................................................................................................ 6

*Jury Instruction #3 (Third Circuit Model 5.1.1 – UNMODIFIED) (Title VII Disparate Treatment – Mixed-Motive)* ........................................................................................ 7

*Jury Instruction #4 (Third Circuit Model 5.1.2 – UNMODIFIED) (Title VII Disparate Treatment – Pretext and § 1981)* ................................................................................ 9

*Jury Instruction #5 (Title VII, § 1981, and NJLAD – Permissive Adverse Inference)* ............ 12

*Jury Instruction #6 (NJ Model 2.35 – UNMODIFIED) (Title VII, § 1981, and NJLAD – Compensatory Damages)* ........................................................................................... 13

*Jury Instruction #7 (Third Circuit Model 5.4.3 - UNMODIFIED) (Title VII, § 1981, and NJLAD – Back Pay)* ................................................................................................... 15

*Jury Instruction #8 (Third Circuit Model 5.4.4 - UNMODIFIED) (Title VII, § 1981, and NJLAD – Front Pay)* .................................................................................................. 16

*Jury Instruction #9 (Third Circuit Model 5.4.2 – MODIFIED to remove "malice" language) (Title VII and § 1981 – Punitive Damages)* ................................................................. 17

*Jury Instruction #10 (NJ Model 8.61 – MODIFIED to remove "malice" language) (NJLAD – Punitive Damages)* .................................................................................................. 19

*Jury Instruction #1 (NJ Model 2.21 – UNMODIFIED) (NJLAD – General Charge)*

Ms. Phillips claims that Starbucks unlawfully discriminated against her by terminating her employment because of her race. Starbucks denies these allegations and instead maintains that it terminated Ms. Phillips because of Ms. Phillips' performance. If the defendant did, in fact, terminate Ms. Phillips because of the her race, that would be unlawful under the New Jersey Law Against Discrimination.

It is Ms. Phillips' burden to prove that it is more likely than not that Starbucks engaged in intentional discrimination because of Ms. Phillips' race.  That is the ultimate issue you must decide: did Starbucks terminate Ms. Phillips' employment because of Ms. Phillips' race.  Ms. Phillips may do this directly, by proving that a discriminatory reason more likely than not motivated Starbucks' action, or indirectly, by proving that Starbucks' stated reason for its action is not the real reason for its action.

You may find that Starbucks had more than one reason or motivation for its actions. For example, you may find that Starbucks was motivated both by Ms. Phillips' race and by other, nondiscriminatory factors, such as Ms. Phillips' job performance.  To prevail, Ms. Phillips is not required to prove that her race was the only reason or motivation for Starbucks' actions. Rather, Ms. Phillips must only prove that her race played a role in the decision and that it made an actual difference in Starbucks' decision. If you find that Ms. Phillips' race did make an actual difference in Starbucks' decision, then you must enter judgment for Ms. Phillips. If, however, you find that Starbucks would have made the same decision regardless of Ms. Phillips' race, then you must enter judgment for Starbucks.

Because direct proof of intentional discrimination is often not available, Ms. Phillips is allowed to prove discrimination by circumstantial evidence.  In that regard you are to evaluate all of the indirect evidence of discrimination that you find was presented during the trial.

In particular, you should consider whether the explanation given by Starbucks for its actions was the real reason for its actions.  If you do not believe the reason given by Starbucks is the real reason Starbucks terminated Ms. Phillips, you may, but are not required to find that Ms. Phillips has proven her case of discrimination.  You are permitted to do so because, if you find Starbucks has not told the truth about why it acted, you may conclude that it is hiding the discrimination. However, while you are permitted to find discrimination based upon your disbelief of Starbucks' stated reasons, you are not required to do so.  This is because you may conclude that Starbucks' stated reason is not the real reason, but that the real reason is something other than illegal discrimination.

Let me give you an example of what I am talking about.  Assume that an employee claims plaintiff was discharged because of plaintiff's age and the employer claims plaintiff was discharged because of excessive absenteeism.  If you were to conclude that the employer's explanation is false and that it did not really discharge the employee because of excessive absenteeism, you would be permitted to find that the real reason was because of the employee's age.  However, you would not be required to find that the real reason was because of the employee's age, because you might find that the real reason had nothing to do with illegal discrimination. For example, you might find that the real reason was because the employer simply did not like the employee.

Ms. Phillips at all times bears the ultimate burden of convincing you that it is more likely than not that Starbucks engaged in intentional discrimination.  To decide whether Ms. Phillips has

proved intentional discrimination, you should consider all of the evidence presented by the parties, using the guidelines I gave you in the beginning of my instructions regarding evaluating evidence generally, such as weighing the credibility of witnesses. Keep in mind that in reaching your determination of whether Starbucks engaged in intentional discrimination, you are instructed that Starbucks' actions and business practices need not be fair, wise, reasonable, moral or even right, so long as Ms. Phillips' race was not a motivating factor for the termination.

I remind you that the ultimate issue you must decide is whether the defendant engaged in illegal race discrimination by terminating Ms. Phillips, and that Ms. Phillips has the burden to prove that discrimination occurred.

***Jury Instruction #2 (Third Circuit Model 5.0 – UNMODIFIED) (Title VII Introductory Instruction)***

In this case the Plaintiff, Ms. Phillips, makes claims under a Federal Civil Rights statute that prohibits employers from discriminating against an employee in the terms and conditions of employment because of the employee's race.

More specifically, Ms. Phillips claims that she was terminated by the defendant, Starbucks, because of her race.

Starbucks denies that Ms. Phillips was discriminated against in any way.

I will now instruct you more fully on the issues you must address in this case.

***Jury Instruction #3 (Third Circuit Model 5.1.1 – UNMODIFIED) (Title VII Disparate Treatment – Mixed-Motive)***

In this case, Ms. Phillips is alleging that one of the reasons Starbucks terminated her is because of her race. In order for Ms. Phillips to recover on this discrimination claim against Starbucks, Ms. Phillips must prove that Starbucks intentionally discriminated against her. This means that Ms. Phillips must prove that her race was a motivating factor in Starbucks' decision to terminate her.

To prevail on this claim, Ms. Phillips must prove both of the following by a preponderance of the evidence:

First: Starbucks terminated Ms. Phillips; and

Second: Ms. Phillips' race was a motivating factor in Starbucks' decision.

Although Ms. Phillips must prove that Starbucks acted with the intent to discriminate, Ms. Phillips is not required to prove that Starbucks acted with the particular intent to violate her federal civil rights.

In showing that Ms. Phillips' race was a motivating factor for Starbucks' actions, Ms. Phillips is not required to prove that her race was the sole motivation or even the primary motivation for Starbucks' decision. Ms. Phillips need only prove that her race played a motivating part in Starbucks' decision even though other factors may also have motivated Starbucks.

As used in this instruction, Ms. Phillips' race was a "motivating factor" if her race played a part in Starbucks' decision to terminate her.

**[For use where defendant sets forth a "same decision" affirmative defense:**

If you find that Starbucks' treatment of Ms. Phillips was motivated by both discriminatory and lawful reasons, you must decide whether Ms. Phillips is entitled to damages. Ms. Phillips is

not entitled to damages if Starbucks proves by a preponderance of the evidence that it would have treated Ms. Phillips the same regardless of Ms. Phillips' race.

***Jury Instruction #4 (Third Circuit Model 5.1.2 – UNMODIFIED) (Title VII Disparate Treatment – Pretext  and § 1981)***

I will now instruct you on another way Ms. Phillips can prove race discrimination. In order for Ms. Phillips to recover on this discrimination claim against Starbucks, Ms. Phillips must prove that Starbucks intentionally discriminated against her. This means that Ms. Phillips must prove that her race was a determinative factor in Starbucks' decision to terminate her.

To prevail on this claim, Ms. Phillips must prove both of the following by a preponderance of the evidence:

First: Starbucks terminated Ms. Phillips; and

Second: Ms. Phillips' race was a determinative factor in Starbucks' decision.

Although Ms. Phillips must prove that Starbucks acted with the intent to discriminate, Ms. Phillips is not required to prove that Starbucks acted with the particular intent to violate Ms. Phillips' federal civil rights. Moreover, Ms. Phillips is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

You should weigh all the evidence received in the case in deciding whether Starbucks intentionally discriminated against Ms. Phillips.

Starbucks has given a nondiscriminatory reason for its decision to terminate Ms. Phillips. If you believe Starbucks' stated reason and if you find that the termination would have occurred because of defendant's stated reason regardless of Ms. Phillips' race, then you must find for Starbucks. If you disbelieve Starbucks' stated reason for its conduct, then you may, but need not, find that Ms. Phillips has proved intentional discrimination. In determining whether Starbucks' stated reason for its actions was a pretext, or excuse, for discrimination, you may not question Starbucks' business judgment. You cannot find intentional discrimination simply because you

disagree with the business judgment of Starbucks or believe it is harsh or unreasonable. You are not to consider Starbucks' wisdom. However, you may consider whether Ms. Phillips has proven that Starbucks' reason is merely a cover-up for discrimination.  <u>Ms. Phillips does not have to prove that her race was the sole reason for Starbucks' decision to her termination</u>.

Ultimately, you must decide whether Ms. Phillips has proven that her race was a determinative factor in Starbucks' decision to terminate her. "Determinative factor" means that if not for Ms. Phillips' race, the termination would not have occurred.

***Jury Instruction #5 (Title VII, § 1981, and NJLAD – Permissive Adverse Inference)***

It is undisputed in this case that the surveillance video of the store on April 12, 2018 (both before and after the arrests) were captured on Starbucks surveillance cameras. It is undisputed that under the Court rules, that this surveillance footage was required to be produced by Starbucks . It is undisputed that Starbucks did not produce the surveillance footage of the arrests to Ms. Phillips.

It is undisputed in this case that Starbucks maintained a personnel file for Ms. Phillips and that Ms. Phillips' performance reviews were contained in that personnel file. It is undisputed that under the Court rules, Ms. Phillips' personnel file was required to be produced by Starbucks. It is undisputed that Starbucks did not produce Ms. Phillips' personnel file to Ms. Phillips. Starbucks claims that Ms. Phillips' personnel file was lost.

You have the right to conclude that Starbucks withheld the April 12th surveillance footage, and Ms. Phillips' personnel file because Starbucks believed that this evidence would be helpful to Ms. Phillips' case and detrimental to Starbucks' case.

The reason for this rule is that where you would normally expect a party to produce evidence but, without reasonable explanation, it fails to do so, it leaves a natural inference that the non-producing party fears exposure of facts which would be unfavorable to it.

Citation of Authority

Fed. R. Civ. P. 37(c)(1)(B); *Washington v. Pillia*, 832 F. App'x 795, 796 (3d Cir. 2021); *Orion Drilling Co., LLC v. EQT Prod. Co.*, 826 F. App'x 204, 217-18 (3d Cir. 2020); *Manning v. Safelite Fulfillment, Inc.*, 2021 U.S. Dist. LEXIS 151591, at *32-34 (D.N.J. Apr. 29, 2021).

***Jury Instruction #6 (NJ Model 2.35 – UNMODIFIED) (Title VII, § 1981, and NJLAD – Compensatory Damages)***

If you find for Ms. Phillips, she is entitled to recover fair and reasonable money damages for the full extent of the harm caused, no more and no less.

A plaintiff who is awarded a verdict is entitled to fair and reasonable compensation for any emotional distress she has suffered that was the proximate result of the defendant's unlawful conduct. Ms. Phillips is not seeking damages for emotional distress continuing into the future; rather, she is only seeking damages for the emotional distress she has suffered from the date of Starbucks' unlawful conduct through the date of your verdict. Emotional distress includes embarrassment, humiliation, indignity, and other mental anguish. The measure of damages is what a reasonable person would consider to be adequate and just under all the circumstances of the case to compensate Ms. Phillips for her emotional distress.

You should consider the nature, character, and seriousness of any emotional distress. You must also consider the duration of the emotional distress, as any award you make must cover the damages suffered by Ms. Phillips to the present time. Ms. Phillips has the burden of proving her damages through credible, competent evidence, although she does not have to offer any witnesses to corroborate her emotional distress; the distress need not be permanent; physical or psychological symptoms are not necessary; and plaintiff need not have obtained any type of professional treatment. Ms. Phillips' testimony standing alone is enough to support an award of emotional distress damages. On the other hand, you are free to disbelieve all or part of Ms. Phillips' testimony, and if you do, you should act accordingly by either reducing the amount of damages you award for emotional distress or by not warding any emotional distress damages at all.

The law does not provide you with any table, schedule or formula by which a person's emotional distress may be measured in terms of money. The amount is left to your sound

discretion.  You are to use your discretion to attempt to make plaintiff whole, so far as money can do so, based upon reason and sound judgment, without any passion, prejudice, bias or sympathy. You each know from your common experience the nature of emotional distress and you also know the nature and function of money.  The task of equating the two so as to arrive at a fair and reasonable award of damages requires a high order of human judgment.  For this reason, the law can provide no better yardstick for your guidance than your own impartial judgment and experience.

You are to exercise sound judgment as to what is fair, just and reasonable under all the circumstances.  You should consider all of the evidence presented by the parties on the subject of plaintiff's emotional distress.  After considering the evidence, you shall award a lump sum of money that will fairly and reasonably compensate Ms. Phillips for any emotional distress you find she has proven.

***Jury Instruction #7 (Third Circuit Model 5.4.3 - UNMODIFIED) (Title VII, § 1981, and NJLAD – Back Pay)***

If you find that Starbucks intentionally discriminated against Ms. Phillips in terminating her employment, then you must determine the amount of damages that Starbucks' actions have caused her. Ms. Phillips has the burden of proving damages by a preponderance of the evidence.

You may award as actual damages an amount that reasonably compensates Ms. Phillips for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that Ms. Phillips would have received from Starbucks had Ms. Phillips not been the subject of Starbucks' intentional discrimination.

Back pay damages, if any, apply from the time Ms. Phillips was terminated until the date of your verdict.

You must reduce any award by the amount of the expenses that Ms. Phillips would have incurred in making those earnings.

If you award back pay, you are instructed to deduct from the back pay figure whatever wages Ms. Phillips has obtained from other employment during this period. However, please note that you should not deduct social security benefits, unemployment compensation and pension benefits from an award of back pay.

*Jury Instruction #8 (Third Circuit Model 5.4.4 - UNMODIFIED) (Title VII, § 1981, and NJLAD – Front Pay)*

You may determine separately a monetary amount equal to the present value of any future wages and benefits that Ms. Phillips would reasonably have earned from Starbucks had Ms. Phillips not been terminated for the period from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits Ms. Phillips will receive from other employment during that time. Ms. Phillips has the burden of proving these damages by a preponderance of the evidence.

If you find that Ms. Phillips is entitled to recovery of future earnings from Starbucks, then you must reduce any award by the amount of the expenses that Ms. Phillips would have incurred in making those earnings.

You must also reduce any award to its present value by considering the interest that Ms. Phillips could earn on the amount of the award if she made a relatively risk-free investment. You must make this reduction because an award of an amount representing future loss of earnings is more valuable to Ms. Phillips if she receives it today than if it were received at the time in the future when it would have been earned. It is more valuable because Ms. Phillips can earn interest on it for the period of time between the date of the award and the date she would have earned the money. So you should decrease the amount of any award for loss of future earnings by the amount of interest that Ms. Phillips can earn on that amount in the future.

**Jury Instruction #9 (Third Circuit Model 5.4.2 – MODIFIED to remove "malice" language) (Title VII and § 1981 – Punitive Damages)**

Ms. Phillips claims the acts of Starbucks were done with ~~malice or~~ reckless indifference to Ms. Phillips' federally protected rights and that as a result there should be an award of what are called "punitive" damages. A jury may award punitive damages to punish a defendant, or to deter the defendant and others like the defendant from committing such conduct in the future. Where appropriate, the jury may award punitive damages even if the plaintiff suffered no actual injury, and so receives nominal rather than compensatory damages.

An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of Starbucks personally acted with ~~malice or~~ reckless indifference to Ms. Phillips' federally protected rights. ~~An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway.~~ An action is with reckless indifference if taken with knowledge that it may violate the law.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, ~~[and that Starbucks has not proved that it made a good-faith attempt to comply with the law],~~ then you may decide to award punitive damages, or you may decide not to award them.  I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages.  The purposes of punitive damages are to punish a defendant for a ~~malicious or~~ reckless disregard of federal rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both.

Thus, you may consider whether to award punitive damages to punish Starbucks. You should also consider whether actual damages standing alone are sufficient to deter or prevent Starbucks from again performing any wrongful acts it may have performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those Starbucks may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which Starbucks should be punished for its wrongful conduct, and the degree to which an award of one sum or another will deter Starbucks or others from committing similar wrongful acts in the future.

The extent to which a particular amount of money will adequately punish a defendant, and the extent to which a particular amount will adequately deter or prevent future misconduct, may depend upon the defendant's financial resources. Therefore, if you find that punitive damages should be awarded against Starbucks, you may consider the financial resources of Starbucks in fixing the amount of those damages.

***Jury Instruction #10 (NJ Model 8.61 – MODIFIED to remove "malice" language) (NJLAD – Punitive Damages)***

You will also consider the issue of punitive damages. Specifically, you must first decide whether to award punitive damages against Starbucks and, if you decide to do so, what amount must be awarded.

## 1. INTENT OF PUNITIVE DAMAGES

You may award punitive damages to Ms. Phillips only if you find that she has proved certain additional matters.

The purposes of punitive damages are different from the purposes of compensatory damages. Compensatory damages are intended to compensate Ms. Phillips for the actual injury or loss she suffered as a result of Starbucks' discriminatory conduct. In contrast, punitive damages are intended to punish a wrongdoer and to deter the wrongdoer from similar wrongful conduct in the future. Punitive damages are designed to require the wrongdoer to pay an amount of money that is sufficient to punish Starbucks for particular conduct and to deter that party from future discriminatory conduct. Punitive damages are not to be awarded as a routine matter in every case; they are to be awarded only in exceptional cases, to punish a party who/which has acted in an especially egregious or outrageous matter and to discourage that party from engaging in similar discriminatory conduct in the future. Therefore, Ms. Phillips is not entitled to punitive damages simply because you have found that Starbucks engaged in specific conduct or because you have awarded damages to compensate Ms. Phillips for her injury. You may award punitive damages to Ms. Phillips only if you find that she has proved certain additional matters.

To support an award of punitive damages here, you must find that Ms. Phillips has proved, by clear and convincing evidence, that the injury, loss, or harm suffered by her was the result of

Starbucks' acts or omissions and that ~~either (1) Starbucks' conduct was malicious or (2)~~ Starbucks acted in wanton and willful disregard of Ms. Phillips's rights. ~~Malicious conduct is intentional wrongdoing in the sense of an evil-minded act.~~ Willful or wanton conduct is a deliberate act or omission with knowledge of a high degree of probability of harm to another who foreseeably might be harmed by that act or omission and reckless indifference to the consequence of the act or omission.

The standard of "clear and convincing evidence", which I mentioned above, means evidence which leaves no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. This is different – and less – than proof beyond a reasonable doubt. This is also different – and more – than a preponderance of evidence to support an award of punitive damages.

In determining whether to award punitive damages, consider all relevant evidence, including but not limited to the following: (1) the likelihood, at the relevant time, that serious harm would arise from Starbucks' conduct; (2) Starbucks' awareness or reckless disregard of the likelihood that such serious harm would arise from its conduct; (3) consider the conduct of Starbucks upon learning that its initial conduct would likely cause harm; and (4) consider the duration of the conduct or any concealment of that conduct by Starbucks.

## 2. PUNITIVE DAMAGES AGAINST STARBUCKS

You must first decide whether an award of punitive damages is justified against Starbucks in this case. To award punitive damages against it, you must find that both of the following factors are present:

First, you must find that the discrimination was "especially egregious."  If you do not find that the discrimination was especially egregious, then you must not award punitive damages.  In a moment, I will define "especially egregious" behavior.

Second, if you do find that the discrimination was especially egregious; you must then also find that at least one of Starbucks' "upper management" employees actually participated in, or was willfully indifferent to, the wrongful conduct.

You cannot award punitive damages against Starbucks unless there was some involvement by a member of its upper management.

### "Especially Egregious" Conduct

"Especially egregious" conduct is conduct that was ~~motivated either by actual malice or that was~~ done with a willful and wanton disregard of the rights of the plaintiff.~~  "Actual malice" means that Camille Hymes, Zeta Smith, and/or Paul Pinto engaged in intentional wrongdoing in the sense of an evil minded act designed, intended and done specifically to injure Ms. Phillips.~~ "Willful and wanton disregard of the rights of the plaintiff" means that Camille Hymes, Zeta Smith, and/or Paul Pinto deliberately acted with knowledge of a high degree of probability of harm to Ms. Phillips, and reckless indifference to the consequences of that act.

In making your determination as to whether the discriminatory conduct of Camille Hymes, Zeta Smith, and/or Paul Pinto was especially egregious or outrageous, you must consider all of the evidence surrounding the wrongful conduct, including:

1.      the likelihood that serious harm would arise from the discrimination;

2.      Camille Hymes', Zeta Smith's, and/or Paul Pinto's awareness or reckless disregard of the likelihood that serious harm would arise;

3.      Camille Hymes', Zeta Smith's, and/or Paul Pinto's conduct after learning that their initial conduct would likely cause harm; and

4.      the duration of the wrongful conduct and any concealment of that conduct by Camille Hymes, Zeta Smith, and/or Paul Pinto.

You may not award punitive damages based solely on a finding of negligence or even gross negligence by Camille Hymes, Zeta Smith, and/or Paul Pinto. You may not award punitive damages solely because you have determined that discrimination occurred. Rather, as I have said, punitive damages are to be awarded only in those exceptional cases where the discrimination was especially egregious or outrageous.

## "Upper Management"

The second factor you must find is that at least one of Starbucks "upper management" employees was involved with the discrimination. In a moment I will define the kind of involvement that you must find occurred.  <u>The parties agree and I hereby instruct you that Camille Hymes, Zeta Smith, and Paul Pinto were part of the upper management of Starbucks. Thus, this requirement is satisfied.</u> You must then consider whether any of these upper management employees actually participated in, or were willfully indifferent to, the discrimination that occurred.

## "Upper Management"

The second factor you must find is that at least one of Starbucks' "upper management" employees was involved with the discrimination.  In a moment I will define the kind of involvement that you must find occurred.  As an initial matter, though, you must decide whether certain of Starbucks' employees were part of its "upper management".  Specifically, Ms. Phillips contends that Camille Hymes, Zeta Smith, and Paul Pinto were members of Starbucks' "upper management" who had some involvement with the wrongdoing at issue.

To decide whether those employees of Starbucks were part of its upper management, you must consider this: the purpose of defining "upper management" is to give employers the incentive to provide voluntary compliance programs and to insist on the effective enforcement of their programs. The employees who acted wrongfully must have had sufficient authority to make the imposition of punitive damages fair and reasonable.

Clearly, upper management includes a corporation's board of directors and its highest-level executive officers. Upper management will also include those employees responsible to formulate the corporation's anti-discrimination policies, provide compliance programs and insist on performance of such programs, and those employees to whom a corporation has delegated responsibility to execute its policies in the workplace, who set the atmosphere or control the day-to-day operations of the unit. This group may include heads of departments, regional managers, or compliance officers.

Not all managerial employees, however, constitute "upper level" management. To decide which employees below the highest levels of management are included in "upper management," you must analyze, weigh, and consider all of the surrounding facts and circumstances.

For an employee on the second tier of management to be considered a member of "upper management," the employee should have either (1) broad supervisory powers over the involved employees, including the power to hire, fire, promote and discipline, or (2) the delegated responsibility to execute the employer's policies to ensure a safe, productive, and discrimination-free workplace.

If you decide that none of the employees identified by Ms. Phillips as acting wrongfully were part of upper management of Starbucks, you cannot award punitive damages. If you decide that the employees identified by Ms. Phillips were part of the upper management of Starbucks,

you must then consider whether any of those upper management employees actually participated in, or were willfully indifferent to, the discrimination that occurred.

### "Actual Participation"

To find that upper management "actually participated" in wrongful conduct, you must find that upper management employees not only knew about the wrongful conduct but also engaged in affirmative acts to accomplish that wrongful conduct.  This factor would be satisfied, for example, if you find that Camille Hymes, Zeta Smith, and/or Paul Pinto is a member of Starbucks' upper management, or if you find that a member of upper management affirmatively assisted or otherwise participated directly in Camille Hymes', Zeta Smith's, and/or Paul Pinto's wrongdoing.

### "Willful Indifference"

To find "willful indifference" to wrongful conduct on the part of upper management, you must find that upper management employees knew about the wrongful conduct, but chose to disregard or ignore it rather than stop it.  In other words, you cannot award punitive damages against Starbucks simply because upper management employees may have been negligent in failing to learn of or reasonably respond to the discrimination; you must instead find that upper management employees actually knew about those allegations and consciously chose to ignore them.

In summary, to award punitive damages against Starbucks, you must find by clear and convincing evidence both that Camille Hymes, Zeta Smith, and/or Paul Pinto engaged in especially egregious conduct, and that the upper management of Starbucks either actively participated in the wrongful conduct or was willfully indifferent to it.

### 3. AMOUNT OF PUNITIVE DAMAGES

If you find that Ms. Phillips has proved that Starbucks has engaged in the type of wrongdoing that justifies awarding punitive damages, you must then decide the amount of punitive damages to award.  That amount must be based on your sound judgment as to what is fair and reasonable under all the circumstances.  As I earlier stated, punitive damages are not to be awarded to compensate Ms. Phillips for injuries, but to punish Starbucks and to deter Starbucks from similar future wrongful conduct.

There is no schedule or formula to calculate the amount of punitive damages. The amount of your award of punitive damages must bear some reasonable relationship to the actual injury inflicted and the cause of the injury.  You must use your sound discretion in deciding this issue.

In exercising your discretion, you must consider all relevant evidence surrounding the wrongful conduct, including:

1.	the likelihood, at the relevant time, that serious harm would arise from the conduct;

2.	Starbucks' awareness or reckless disregard of the likelihood that such serious harm would arise from the conduct;

3.	the conduct of Starbucks upon learning that its initial conduct would likely cause harm;

4.	the duration of the conduct or any concealment of it by Starbucks;

5.	the profitability, if any, of the discriminatory or harassing conduct to Starbucks;

6.	when the discriminatory was terminated; and

7.	Starbucks' financial condition and ability to pay the punitive damages award.

In addition, you may also consider:

1.	the nature of the wrongful conduct;

2.	the extent of harm inflicted;

3.     the intent of Starbucks;

4.     whether Starbucks had adequate policies, procedures, training or monitoring measures designed to prevent discrimination;

5.     whether Starbucks took sufficient steps after learning of the wrongful conduct to investigate and address the wrongful conduct; and

6.     any other mitigating or aggravating circumstances that you believe should reduce or increase the amount of the damages awarded.

After considering all these factors, you must decide (1) whether punitive damages should be awarded in this case; and (2) if you decide to award punitive damages, what the proper amount should be.