**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHANNON PHILLIPS, | CIVIL ACTION NO.: 2:19-cv-19432 |
| *Plaintiff*, | |
| v. | Hon. Joel H. Slomsky, U.S.D.J. |
| STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY | |
| *Defendant.* | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE*
TO EXCLUDE STATEMENTS OF NON-DECISIONMAKERS [Dkt. Ent. 119]**

**A.** **INTRODUCTION**

Plaintiff, Shannon Phillips ("Plaintiff"), by and through her undersigned counsel, hereby opposes Defendant, Starbucks Corporation d/b/a Starbucks Coffee Company's ("Starbucks" or "Defendant") "Motion *in Limine* to Exclude Statements of Non-Decisionmakers" [Dkt. Ent. 119]. Defendant's Motion seeks an Order precluding:

(1)   "the opinions of non-comparators ([Plaintiff's] subordinates) concerning Plaintiff's performance as a leader";

(2)   "statements of non-decisionmakers with respect to Starbucks' decision to terminate Plaintiff"; and,

(3)   "presentation of Mr. Trinsey's irrelevant 'me too' evidence for the reasons [sic]"[1]

---

[1] Defendant identifies Paul Sykes ("Mr. Sykes") and Ben Trinsey ("Mr. Trinsey") as the witnesses at issue. Mr. Sykes and Mr. Trinsey were the two District Managers overseeing the City of Philadelphia at the time of the April 2018 arrests and directly reported to Plaintiff for years leading up to her termination.

1

B.  **LEGAL ARGUMENT**

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. *Ridolfi v. State Farm Mut. Auto. Ins. Co.*, 2017 U.S. Dist. LEXIS 117362, at *2 (M.D. Pa. July 27, 2017). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). "However, courts should be careful before doing so." *Ridolfi*, 2017 U.S. Dist. LEXIS 117362, at *2. A motion *in limine* is appropriate for "evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose" but it is often "necessary to defer ruling until during trial, when the trial judge can better estimate the impact of the evidence on the jury." *Hologic, Inc. v. Minerva Surgical, Inc.*, 325 F. Supp. 3d 507, 521 (D. Del. 2018).

Under Federal Rule of Evidence 401 ("Rule 401"), "evidence is relevant is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"; "[t]herefore, it follows that evidence is irrelevant only when it has no tendency to prove the fact." *Id*. at *4. "Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant." *Id*. (citing *Spain v. Gallegos*, 26 F.3d 439, 452 (3d Cir. 1994). Rule 401's "quality of inclusion" is "embraced by the Federal Rules of Evidence" and "is further buttressed by Rule 402, which defines the admissibility of relevant evidence in sweeping terms" and "expressly provides that all '[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." *Id*. (citing *United States v. Sriyuth*, 98 F.3d 739, 745 (3d Cir. 1996)).

Federal Rule of Evidence 403 ("Rule 403") provides grounds for exclusion of potentially relevant but highly prejudicial evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* at *5 (quoting Fed. R. Evid. 403). "Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which favors the admission of relevant proof unless the relevance of that proof is substantially outweighed by some other factors which caution against admission." *Id*.

In the Rule 403 context, "[p]rejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed 'prejudicial.' However, **the fact that probative evidence helps one side prove its case obviously is not grounds for excluding it under Rule 403. Excluded evidence must be unfairly prejudicial, not just prejudicial."** *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002) (emphasis added and internal citations omitted). When the trial judge is in doubt, Rule 403 requires admission. *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343-1344 (3d Cir. 2002).

Federal Rule of Evidence 701 ("Rule 701") permits lay opinion testimony where it is "(a) rationally based on the witness's perception; (b) helpful to a clear understanding the witness's testimony or to the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "The modern trend favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Lauria v. AMTRAK*, 145 F.3d 593, 600-01 (3d Cir. 1998).

### A. Testimony from Mr. Sykes and Mr. Trinsey Regarding Plaintiff's Performance is Admissible

Defendant seeks to preclude Mr. Sykes and Mr. Trinsey from testifying about Plaintiff's job performance on the grounds that such testimony is irrelevant under Rule 401 and is unfairly prejudicial under Rule 403.

Mr. Sykes and Mr. Trinsey's testimony about the actions taken by Plaintiff and their opinion as to her leadership performance during this time is relevant to rebut Defendant's stated reason for terminating Plaintiff. According to Defendant's Interrogatory Answers, its "legitimate, nondiscriminatory reason" for terminating Plaintiff is:

> "As the Regional Director responsible for supporting the store where the arrests occurred, Ms. Phillips was expected to step up, support the partners in the market, and lead the market through the crisis. Ms. Phillips failed to do so, and her actions in the weeks after the arrests demonstrated she lacked the leadership skills and ability to guide the market and its partners through the crisis and toward recovery. Accordingly, Starbucks terminated Ms. Phillips' employment."

According to Defendant's Proposed Jury Instructions, its "legitimate, nondiscriminatory reason" for terminating Plaintiff is:

> "[B]ecause of her poor leadership and ability to be emotionally and physically present during a time of crisis caused by the arrests of two customers at the Starbucks store located at 18th and Spruce Street and the subsequent public outrage."

Regardless of which version of its legitimate, nondiscriminatory reason Starbucks goes with at trial, the undisputed fact is that the partners Plaintiff directly supported during the 28 days between the arrests and Plaintiff's termination were Mr. Sykes and Mr. Trinsey. They were present in the market with Plaintiff "every day"[2] following the arrests and have personal knowledge of her performance. Likewise, Mr. Sykes and Mr. Trinsey were both supervisory Starbucks employees

---

[2] *See* Deposition Transcript of Paul Sykes ("Sykes Tr.") 22:11-16 (attached hereto as Exhibit A).

with personal knowledge of Starbucks' performance management policies and standards for employee performance. None of Mr. Sykes or Mr. Trinsey's anticipated opinion testimony requires scientific, technical or specialized knowledge within the scope of Rule 702. This testimony should be admitted. *See Gucker v. United States Steel Corp.,* 2016 U.S. Dist. LEXIS 11519, at *8 (W.D. Pa. Jan. 31, 2016) (denying motion *in limine* to preclude coworker testimony regarding plaintiff's job performance under Rule 701, stating: "any witness may testify as to his own perceptions of [plaintiff's] work capabilities.").

Defendant has failed to show how the probative value of this evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. Defendant claims that this testimony should be excluded because it is unfairly prejudicial and it "would lead the jury into believing that [Mr. Sykes and Mr. Trinsey's] opinions had some bearing on the decisions made by Starbucks." Defendant misses the mark. Defendant is free to argue it never considered Mr. Sykes' or Mr. Trinsey's opinion when deciding to terminate Plaintiff for allegedly not providing them with adequate support, but that should not preclude Mr. Sykes and Mr. Trinsey from rebutting Defendant's assertion that they were somehow deprived of adequate support during this time. "The fact that probative evidence helps one side prove its case obviously is not grounds for excluding it under Rule 403." *Goodman,* 293 F.3d at 670. Defendant's argument to preclude this testimony under Rule 403 should be rejected.

In sum, Mr. Sykes' and Mr. Trinsey's anticipated testimony regarding Plaintiff's job performance is relevant under Rule 401 and Defendant has not shown that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. Defendant's Motion should be denied.

**B. Testimony from Mr. Sykes and Mr. Trinsey Regarding Defendant's Discriminatory Animus is Admissible**

Defendant seeks to preclude Mr. Sykes and Mr. Trinsey from testifying as to their belief that Plaintiff was terminated because she is white on the basis that such testimony is an inadmissible lay opinion under Rule 701.

During his deposition, Mr. Sykes, who is Black, essentially testified that he felt that Shannon was fired because she is White and that he was not fired because he is Black. He explained that the basis for his opinion is his firsthand experience of being part of meetings with the decision-makers and hearing the statements they were making, as well as the racial demographics and racially charged nature of the entire situation. He explained that as the District Manager, he was "closer to" the situation and direct responsible for the store where the arrests took place, so if anyone were to be fired it would be him – not Plaintiff, who was the Regional Manager and further removed from the store. Based on the conversations he had concerning race with decision-makers, and the racially charged nature of the public outrage, Mr. Sykes testified that he knew Starbucks was not going to fire him because he is Black – and they didn't.[3]

Mr. Sykes' testimony regarding his belief that Plaintiff's race played a role in her termination and that his own race played a role in his remaining employed following the arrests is admissible under Rule 701. This testimony is based on his personal knowledge and observations not only as a District Manager in the Philadelphia market where "race was definitely the topic of conversation",[4] but his participation in private discussions among Starbucks leadership about the company's desire to send a "strong message" and that "a message needed to be sent that leadership was being held accountable for what had occurred in the stores." Mr. Sykes' opinion that Starbucks

---

[3] Sykes Tr. 29:16-24.
[4] Sykes Tr. 35:9-17.

considered race in its personnel decisions following the arrests, including the decision to terminate Plaintiff, will assist the jury in determining the critical issue in this case – whether Defendant discriminated against Plaintiff because of her race.

Courts within and outside of the Third Circuit routinely reject Rule 701 arguments and permit lay witnesses to offer lay opinions regarding a defendant's discriminatory animus at trial. *See e.g.*, *Mikulan v. Allegheny Cty.*, 2017 U.S. Dist. LEXIS 83315, at *19-20 (W.D. Pa. May 31, 2017) (denying motion *in limine* and permitting third-party witnesses to testify at trial as to their beliefs that the plaintiff was terminated for discriminatory/retaliatory reasons "based on their perceptions and observations while working and attending regular meetings"); *Duran v. Cty. of Clinton*, 2019 U.S. Dist. LEXIS 111201, at *9 (M.D. Pa. July 3, 2019) (denying motion *in limine* and permitting witness to offer lay opinion that decisionmaker "acted with discriminatory animus toward [plaintiff's] disabilities"); *Haun v. Ideal Indus.*, 81 F.3d 541, 548 (5th Cir. 1996) (upholding trial court's decision to permit coworker's opinion that defendant was "deliberately phasing out older workers", noting that such testimony "helped the jury determine whether [defendant] discriminated."); *Carter v. Decisionone Corp.*, 122 F.3d 997, 1004-05 (11th Cir. 1997) (upholding trial court's decision to permit third-party witnesses to render lay opinions that plaintiff was discriminated against when witnesses' "opinions came at the conclusion of their testimony and was based on their perceptions of the reasons for the company's treatment of [plaintiff]."); *Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 482 F. Supp. 2d 861, 867-68 (E.D. Mich. 2007) (denying motion *in limine* and permitting plaintiff's coworker to offer opinion that decisionmaker was biased against overweight people based on observations of plaintiff and decisionmaker); *Stoe v. Garland*, 2021 U.S. Dist. LEXIS 173803, at *20-28 (D.D.C. Sep. 14, 2021)

(denying motion *in limine* and permitting coworker testimony that decisionmaker's treatment of women was motivated by gender bias).

In sum, Defendant has not met its affirmative burden of proving that opinion testimony from Mr. Sykes and Mr. Trinsey regarding Starbucks' race-based motivations would be inadmissible under Rule 701. Defendant's Motion should be denied insofar as it seeks to preclude this testimony.

## C. Testimony from Mr. Trinsey Regarding His Suspension and Separation from Starbucks is Admissible

Defendant seeks to preclude Mr. Trinsey from testifying about his suspension and separation from Starbucks and his belief that same was motivated by his race on the grounds that Mr. Trinsey's anticipated testimony is "irrelevant 'me too' evidence" precluded under Rule 401 and that it will confuse the jury, rendering it inadmissible under Rule 403. Both arguments fail.

At the time of the arrests, Mr. Trinsey, who is white, served as the District Manager overseeing around a dozen Starbucks stores in Philadelphia. Mr. Trinsey was not responsible for the 18th and Spruce location where the arrests occurred. On May 7, 2018, just 25 days after the arrests and 2 days before Plaintiff's termination, Defendant suspended Mr. Trinsey pending an investigation of a complaint of race discrimination concerning pay by one of Mr. Trinsey's Black subordinates. Defendant knew that the discrimination allegation against Mr. Trinsey was factually impossible because it was Partner Resources (a/k/a/ Human Resources), not the District Manager, who was responsible for determining partner pay.[5]  Mr. Trinsey testified that he believes that his race contributed to this bogus suspension and it was just a way to push him out.

---

[5] Notably, one of the examples of poor leadership offered by Defendant in its Motion for Summary Judgment was that Plaintiff "lacked awareness with respect to pay disparities in her market." *See* Defendant's Motion for Summary Judgment [70-1] at p. 2. This further bolsters the admissibility of evidence related to Mr. Trinsey's suspension and ultimate separation from Starbucks.

Evidence related to Mr. Trinsey's suspension and separation from Defendant is relevant under Rule 401. Following the arrests and in an attempt to repair its image as a company which discriminates against Black people, Starbucks took action to rid its Philadelphia leadership ranks of white employees, including Plaintiff. Evidence of Mr. Trinsey's suspension and separation from Defendant's company makes this fact more likely than it would be without such evidence. *See* Fed. R. Evid. 401. Even the case law cited by Defendant supports the relevance of this evidence: the decision to suspend Mr. Trinsey originated from the same decisionmakers, occurred two days (at most) before Plaintiff was terminated, and both Plaintiff and Mr. Trinsey assert they were used as scapegoats to quell ongoing public outrage related to the arrests. *See* Defendant's Motion p. 6 (citing *Bradford v. UPMC*, 2008 U.S. Dist. LEXIS 5790 (W.D. Pa. Jan. 18, 2008), which sets forth "similarity between the decision-makers, the time frame, and the type of action about which the co-workers offer to testify and the plaintiff's circumstance" as factors to be considered when determining relevance of so called "me too" evidence).

Evidence related to Mr. Trinsey's suspension and separation from Starbucks is probative for the same reasons it is relevant. Once again, Defendant has taken the position that evidence which supports Plaintiff's case – that Defendant made race-based personnel decisions following the April 2018 arrests – will "distract" the jury from *Defendant's* myopic theory of the case, "inject a confusing factor into the case", and is unfairly prejudicial. Defendant's vague concerns about juror confusion and prejudice are insufficient to support the preclusion of evidence related to Mr. Trinsey's suspension and separation under Rule 403.

Courts within the Third Circuit routinely permit plaintiffs to present evidence of similar discrimination toward other employees to demonstrate bias and/or pretext. *See e.g.*, *Yochum v. FJW Inv., Inc.*, 2016 U.S. Dist. LEXIS 119468, at *7 (W.D. Pa. Sep. 2, 2016) (denying motion *in*

*limine* and permitting testimony from coworkers who experienced similar religious discrimination, noting "even though such evidence is prejudicial to [defendant], it is not unduly so."); *Schilling v. Napleton's Ellwood City Chrysler*, 2015 U.S. Dist. LEXIS 146290, at *19-21 (W.D. Pa. Oct. 28, 2015) (denying motion *in limine* in age discrimination case and permitting testimony from coworker who was terminated 16 days after plaintiff by the same supervisor who also believed his termination was due to his age, "recogniz[ing] the prejudicial nature" of the evidence but concluding that same was outweighed by its probative value); *Kacian v. Brennan*, 2017 U.S. Dist. LEXIS 32629, at *24-25 (W.D. Pa. Mar. 8, 2017) (denying motion *in limine* and permitting testimony from coworker who was placed on administrative leave roughly four weeks after plaintiff's termination, reasoning that "a jury could find it probative of retaliatory animus.").

In sum, evidence related to Mr. Trinsey's suspension and separation from Starbucks and his belief that same was influenced by his race is relevant under Rule 401. While this evidence might be damaging to Starbucks' defense, the risk of prejudice or juror confusion does not substantially outweigh its probative value under Rule 403. Accordingly, Defendant's Motion should be denied insofar as it seeks to preclude Mr. Trinsey from testifying about his separation from Starbucks.

### D. <u>CONCLUSION</u>

As set forth above, the testimony of Mr. Sykes and Mr. Trinsey related to Plaintiff's performance, Defendant's discriminatory animus, and Mr. Trinsey's suspension and separation from Starbucks, is admissible under each of the Federal Rules of Evidence Defendant relies on in arguing its preclusion. Accordingly, Plaintiff respectfully requests that the Court deny Defendant's Motion *in Limine* in full and enter an Order in the form attached.

Respectfully submitted,

**CONSOLE MATTIACI LAW, LLC**

Dated: <u>May 22, 2023</u>          By:     <u>*/s/ Katherine C. Oeltjen, Esquire*</u>
Laura C. Mattiacci, Esquire
Katherine C. Oeltjen, Esquire
Holly W. Smith, Esquire (*pro hac vice*)
1525 Locust Street, Ninth Floor
Philadelphia, PA 19102
(215) 545-7676

*Attorneys for Plaintiff, Shannon Phillips*