**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SHANNON PHILLIPS, <br><br> *Plaintiff*, <br><br> v. <br><br> STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY <br><br> *Defendant.* | CIVIL ACTION NO.: 2:19-cv-19432 <br><br><br> Hon. Joel H. Slomsky, U.S.D.J. |

**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT
AND RENEWED MOTION *IN LIMINE* TO PRECLUDE DEFENDANT
FROM INTRODUCING THE 46-SECOND ARREST VIDEO [TR-005] AT TRIAL**

Pursuant to Fed. R. Civ. P. 37(c)(1)(B), Plaintiff, Shannon Phillips, by and through her undersigned counsel, hereby moves this Court for an Order that the jury will be charged with a permissive adverse inference instruction as follows:

> On the Friday evening before trial began, after the Court had closed for the day, Starbucks produced for the first time certain surveillance footage from its 18th and Spruce store from April 12, 2018, the day of the arrests. It is undisputed that Plaintiff requested this footage at the beginning of the case in 2020, but it was not produced until June 2, 2023. The surveillance footage is not time-stamped and was not produced in a continuous feed; rather, it was spliced into 24 separate clips.

> You have the right to conclude that Starbucks withheld the April 12th surveillance footage until one business day before trial and took steps to edit the surveillance footage from its true form because Starbucks believed that this evidence would be helpful to Ms. Phillips' case and detrimental to Starbucks' case.

> The reason for this rule is that where you would normally expect a party to produce evidence but, without reasonable explanation, it fails to do so, it leaves a natural inference that the non-producing party fears exposure of facts which would be unfavorable to it.

In support thereof, Plaintiff submits the following:

1.      On April 6, 2020 – more than three years ago – Plaintiff served Defendant with document requests seeking, *inter alia*, "[a]ny and all documents relating to the arrests of two men in or about April 2018 at Defendant's retail location at 18th and Spruce Street, Philadelphia, PA." *See* Defendant's Response to Document Request No. 14 (attached hereto as **Exhibit A**).

2.      Plaintiff's document requests defined "documents" as including recorded materials. *Id.*

3.      Defendant objected to Document Request No. 14 on relevance, proportionality, privacy, and privilege grounds and asserted that it was "harassing and designed to needlessly increase the cost of this litigation." *Id.*

4.      Defendant refused to produce documents in response to Document Request No. 14. *Id*.

5.      During this litigation, Defendant and defense witnesses repeatedly asserted that the two men were only in the store for two or three minutes prior to the Store Manager calling the police. For example, and without limitation:

    a.      During her deposition, Camille Hymes testified under oath that she had personally reviewed the videotape of the arrests and "noticed that the two men that were in the store were in the store for less than two minutes" before the Store Manager called the police. *See* Hymes Tr. 107:15-19; 147:4-6.

    b.      In support of its Motion for Summary Judgment, Defendant presented the following as an undisputed and **material** fact: "The Black customers were not even in the store for more than three minutes when Ms. Hylton called the police, having them arrested." *See* Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment [Dkt. Ent. 68-1] ¶ 11.

c.  Defendant's Pretrial Memorandum included the following proposed stipulation: "The Black customers were not even in the store for more than three minutes when Ms. Hylton called the police, who arrested them." *See* Defendant's Proposed Stipulations [Dkt. Ent. 116-1] ¶ 12.

6.  Despite asserting during discovery that documents related to the April 2018 arrests were not "relevant", on April 24, 2023, Defendant produced to Plaintiff ***for the first time*** a 46-second video clip of the arrests retrieved from the internet and indicated that it intended to use same as a trial exhibit.

7.  Notably, the 46-second arrest video does not depict a single Starbucks employee.

8.  The 46-second arrest video was responsive to several of Plaintiff's document requests, including, without limitation, a request for "[a]ll documents that Defendant intends to use at trial" (Document Request No. 26) and Document Request No. 14.

9.  Plaintiff filed a Motion *in Limine* seeking to preclude Defendant from introducing the 46-second arrest clip as an exhibit at trial on multiple grounds, including (1) Defendant could not properly authenticate the video because no witness to the arrests nor the individual who filmed the video was a trial witness, and (2) Defendant's use of the video violated the Rule of Completeness because Defendant deprived Plaintiff of surveillance footage of the arrests which would depict the entire event, not just the cherry-picked 46-seconds appearing in the clip. [Dkt. Ent. 120].

10.  On June 2, 2023, the Court denied Plaintiff's Motion *in Limine* to preclude without prejudice. [Dkt. Ent. 131].

11.  At 5:17 p.m. that same day – the Friday evening before trial began and after the Court had closed for the day – Defendant produced, for the first time, twenty-four (24) clips of

3

surveillance footage depicting the 18th and Spruce store on April 12, 2018 from six (6) vantage points within the store.

      12.    The surveillance videos are not continuous feeds; rather, they consist of four (4) separate videos from each of the six (6) vantage points:

| Store 17767 - Entry -2 1_640x480.mp4 | 2018-04-12T20_08_1...0Z_640x480 (1).mp4 |
| 9.5 MB, modified 5 minutes ago | 8.9 MB, modified 2 days ago |
| Store 17767 - Entry -2 2_640x480.mp4 | 2018-04-12T20_08_1...0Z_640x480 (2).mp4 |
| 10.6 MB, modified 5 minutes ago | 5.2 MB, modified 2 days ago |
| Store 17767 - Entry -2 3_640x480.mp4 | 2018-04-12T20_08_1...0Z_640x480 (3).mp4 |
| 5.1 MB, modified 17 minutes ago | 114 MB, modified 2 days ago |
| Store 17767 - Entry -2 4_640x480.mp4 | 2018-04-12T20_08_1...000Z_640x480.mp4 |
| 119 MB, modified 17 minutes ago | 9.5 MB, modified 2 days ago |
| Store 17767 - Entry 1 1_640x480.mp4 | 2018-04-12T20_08_1...0Z_640x480 (1).mp4 |
| 33.6 MB, modified 2 days ago | 4.6 MB, modified 2 days ago |
| Store 17767 - Entry 1 2_640x480.mp4 | 2018-04-12T20_08_1...0Z_640x480 (2).mp4 |
| 36.2 MB, modified 2 days ago | 6.2 MB, modified 17 minutes ago |
| Store 17767 - Entry 1 3_640x480.mp4 | 2018-04-12T20_08_1...0Z_640x480 (3).mp4 |
| 44 MB, modified 2 days ago | 85.7 MB, modified 17 minutes ago |
| Store 17767 - Entry 1 4_640x480.mp4 | 2018-04-12T20_08_1...000Z_640x480.mp4 |
| 86.6 MB, modified 2 days ago | 7.6 MB, modified 10 minutes ago |
| Store 17767 - POS 2_640x480 (1).mp4 | 2018-04-12T20_08_1...0Z_640x480 (1).mp4 |
| 8.9 MB, modified 2 days ago | 10.6 MB, modified 5 minutes ago |
| Store 17767 - POS 2_640x480.mp4 | 2018-04-12T20_08_1...0Z_640x480 (2).mp4 |
| 8.9 MB, modified 2 days ago | 5.1 MB, modified 5 minutes ago |
| Store 17767 - POS 3_640x480.mp4 | 2018-04-12T20_08_1...0Z_640x480 (3).mp4 |
| 5.2 MB, modified 2 days ago | 119.3 MB, modified 5 minutes ago |
| Store 17767 - POS 4_640x480.mp4 | 2018-04-12T20_08_1...000Z_640x480.mp4 |
| 113.9 MB, modified 2 days ago | 9.5 MB, modified 5 minutes ago |

      13.    The surveillance video clips vary in length, some as short as 25 seconds and the longest one being 16 minutes and 36 seconds.

14. The surveillance videos clips **do not contain date or timestamps**. It is impossible to know from the video who is doing what when.

15. More troubling, the surveillance videos appear to have been edited and spliced in certain places.

16. By way of illustration, four seconds into one of the video clips, there are two men sitting at a table in the center of the frame and there is a table off to the left side covered in straws:



17. Five seconds into the same video clip – *i.e.*, one second later– the two men are no longer sitting at the table in the middle of the frame and the straws have been cleaned off the table on the left side, yet there is no video of the men leaving or the straws being cleared in this clip:



18.     It is impossible for what is depicted in the video above to happen – i.e., men and straws instantly disappearing.

19.     It is not possible to know how long the men were in the store before 911 was called from the video clips produced.

20.     Irregularities like those depicted in the foregoing paragraphs are pervasive throughout the twenty-four (24) surveillance video clips produced by Defendant.

21.     After receiving the surveillance videos from Defendant on June 2nd, Plaintiff's counsel asked Defendant to provide the full, continuous video with timestamps and asked Defendant to identify the custodian of the surveillance videos. *See* June 2-3 email exchange (attached hereto as **Exhibit B**).

22.     In response, Defendant's counsel stated: "[t]his is the only version of the video that has been provided by our client contact." *Id*.

23.     On June 3rd, Plaintiff's counsel sent a follow-up email stating: "Please provide an answer to my question below regarding who the custodian is for the 24 clips Defendant sent to us on Friday night, June 2nd at 5:17pm. Also, please provide an index for these 24 video clips, setting for what each clip purports to show and the time range of the clip (date and times) and how that was determined." *Id*.

24.     In response, Defendant's counsel stated: "Robin Richards, Starbucks' paralegal, provided us the videos she obtained directly from Starbucks' security department. We have not spoken to the personnel for the security department that provided the videos. Once we do, we will pass along that information." *Id*.

25.     As of today – the day before trial – Defendant still has not provided Plaintiff with the name of the custodian of the surveillance videos, a date and time-stamped copy of the videos, or a continuous video recording.

26.     As of today – the day before trial – Defendant has not provided Plaintiff with metadata for the surveillance videos which could enable her to determine when and my who the surveillance footage was edited.

27.     The jury should hear about Defendant's attempts to conceal the surveillance footage and producing same to Plaintiff after the close of business on the last business day before trial. Fed. R. Civ. P. 37(c)(1)(B) provides: "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. ***In addition to or instead of this sanction, the court, on motion and after giving***

*an opportunity to be heard … may inform the jury of the party's failure*." (emphasis added). This provision exists as an alternative to the automatic sanction precluding a party from using information it withheld without substantial justification, and its inclusion is manifest: "[b]locking the use of information is, of course, no sanction when the withheld information is unfavorable to the party that failed to disclose it." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326 (D. Ariz. 2022).

28.     The jury should also be permitted to receive information about Defendant's misrepresentations to this Court regarding the length of time that the two men were in the store prior to the Store Manager calling the police. *See Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006) (sanctioning party who engaged in "unabated discovery abuses and lack of candor" under Fed. R. Civ. P. 37, noting that refraining from doing so would be "unfair to the parties who conduct themselves according to the rules.").

29.     The jury should be permitted to infer that Defendant withheld surveillance footage of the April 12, 2018 arrests because it knew that this evidence would reveal its self-serving narrative of the men only being in the store for "two" or "three" minutes prior to the Store Manager calling the police to be false, thereby harming its defense: "When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995).

30.     The jury should be informed that they are permitted to consider the fact that Defendant withheld the surveillance footage in full for more than three years and subsequently produced heavily edited surveillance footage intended to make it appear that the events depicted on the videos occurred over a shorter period of time to align with its false narrative surrounding

8

the arrests when awarding punitive damages. *See Schatzman v. Martin Newark Dealership, Inc*., 158 F. Supp. 2d 392 (D. Del. 2001) (finding that an employer's intentional withholding of documents was a relevant consideration for the jury on the issue of punitive damages).

31.     Defendant's bad faith is self-evident. Pursuant to Fed. R. Civ. P. 37(c)(1)(B) and this Court's inherent power to fashion and impose sanctions it deems appropriate, the jury should be charged with a permissive adverse inference instruction permitting them to infer that Defendant withheld the surveillance footage because it knew that it would be harmful to their defense. "Any lesser sanction would, in effect, reward [Defendants] for the gamble [they] took by [withholding] and tempt others to do the same." *Greatbatch Ltd. v. AVX Corp*., 179 F. Supp. 3d 370, 379 (D. Del. 2016).

WHEREFORE, Plaintiff respectfully requests that this Court grant her present Motion for Sanctions and issue an Order in the form attached hereto.

Plaintiff further renews her Motion *in Limine* to Preclude Defendant from Introducing TR-005 at trial. In support thereof and in addition to the statements set forth above, Plaintiff submits the following:

32.     On May 15, 2023, Plaintiff moved *in limine* for an Order precluding Defendant from introducing the 46-second arrest video (TR-005) at trial.

33.      Plaintiff moved for exclusion of TR-005, in part, under Fed. R. Evid. 901 on the basis that the video cannot be properly authenticated because neither the individual who shot the arrest video, any individual depicted in the arrest video, or any individual who was physically present during the arrests would be testifying at trial.

34.     In opposition, Defendant asserted that TR-005 would be authenticated through "Starbucks' witness testimony" – specifically, "the testimony of several witnesses at trial who will testify that they viewed the video and that the video accurately depicts the video that they saw of the arrests" and "therefore, [TR-005] is the best evidence of what occurred during the arrests."

35.     On June 2, 2023, the Court denied Plaintiff's Motion without prejudice [Dkt. Ent. 131]. A little more than an hour later, Defendant produced the surveillance footage to Plaintiff.

36.     Upon reviewing the surveillance footage, it is even more apparent that no defense witness will be able to authenticate TR-005.

37.     None of the 24 surveillance clips produced by Defendant depict any interaction between the Store Manager and the two men who were arrested or the arrests themselves. In fact, aside from depicting the two men walk into the store and eventually, in a separate clip, be walked out of the store by the police, the surveillance footage produced by Defendant does not depict the two men who were arrested at all.

38.     The surveillance footage produced by Defendant contains no audio, foreclosing the ability of any defense witness to authenticate TR-005 by sound.

39.     Defendant's argument that TR-005 is the "best evidence of what occurred during the arrests" is rendered moot by its belated production of the surveillance footage. There is no need to introduce TR-005 which is incapable of being properly authenticated when the actual surveillance footage is now in evidence. Defendant's surveillance footage is the "best evidence" of what occurred on April 12, 2018 and is more than sufficient to provide "background evidence" about the events leading up to Plaintiff's termination.

40.    The audio of TR-005 which includes statements of customers and police officers depicted in the video – none of whom are testifying at trial – is hearsay and does not fall within any hearsay exception. The audio portions of TR-005 should be excluded under Fed. R. Evid. 801.

41.    Defendant has produced several different versions of TR-005 to Plaintiff since it was initially disclosed as a trial exhibit on April 24th, including a version which includes closed captioning. Plaintiff does not believe that the version containing closed captioning is the version of the video that Defendant presently intends to utilize at trial. However, to the extent that Defendant does seek to introduce an iteration of TR-005 which includes closed captioning, same should be excluded under Fed. R. Evid. 801 because those statements of customers and police officers are hearsay and do not fall within any hearsay exception.

WHEREFORE, Plaintiff respectfully requests that this Court grant her present Renewed Motion *in Limine* to Preclude Defendant from Introducing TR-005 at Trial and issue an Order in the form attached hereto.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

By:    /s/ Laura C. Mattiacci
        Laura C. Mattiacci, Esq.
        Katherine C. Oeltjen, Esq.
        Holly W. Smith, Esq. (*admitted pro hac vice*)
        1525 Locust Street, Ninth Floor
        Philadelphia, PA 19102
        (215) 545-7676

Dated: June 4, 2023                      *Attorneys for Plaintiff, Shannon Phillips*