# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANNON PHILLIPS, | Civil Action |
| Plaintiffs, | No. 1:19-cv-19432 |
| v. | |
| STARBUCKS CORPORATION D/B/A STARBUCKS COFFEE COMPANY, | |
| Defendants. | |

## ORDER

AND NOW this _____ day of June, 2023, upon consideration of Plaintiffs' June 4, 2023 Motion for Sanctions and Renewed Motion in *Limine* (ECF 134) and Defendant Starbucks Corporation's Response to Plaintiffs' June 4, 2023 Motion for Sanctions and Renewed Motion in *Limine*, it is **ORDERED** that the Motion is **DENIED**. As a result of this Order, Defendant Starbucks Corporation is permitted to use the videos of the arrest and timestamped security footage during trial and the jury will not be instructed with adverse inference instruction.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANNON PHILLIPS,<br><br>       Plaintiffs,<br><br>    v.<br><br>STARBUCKS CORPORATION D/B/A STARBUCKS COFFEE COMPANY,<br><br>       Defendants. | Civil Action<br><br>No. 1:19-cv-19432 |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SANCTIONS AND RENEWED MOTION IN *LIMINE***

Plaintiff filed a motion for sanctions on the eve of trial regarding videos that were first put into contention in this case by Plaintiff during the parties' final pre-trial conference on Monday, May 29, 2023. Following the pre-trial conference, Defendant's counsel worked with Starbucks to locate the security footage from April 12, 2018. On Friday June 2, 2023, Defendant's counsel received non-timestamped footage and produced it to Plaintiff – as requested. When Plaintiff requested that "full, continuous videos with timestamps on the video" be provided "asap," Defendant's counsel assured Plaintiff, on Saturday June 3rd, that they would pass along the information as soon as it became available. *See* Plaintiff's Motion, at Ex. B. On Tuesday, June 6th, Defendants were able to retrieve a timestamped copy and immediately produced a copy that same day. *See* Exhibit 1, attached hereto (K. Princivalle June 6, 2023 Email).

It is notable that Plaintiff never sent a deficiency letter concerning the security videos or moved to compel the videos during discovery – which would be the appropriate time to raise a dispute concerning documentary evidence. Instead, Plaintiff chose to file a motion for sanctions

with the Court in addition to renewing their Motion in *Limine* to preclude the jury from viewing videos that have been publicly available to Plaintiff for over five years.

The timestamped security footage cures Plaintiff's woes regarding the videos produced on June 2nd. The videos provided by GSOC depict the store on April 12, 2018 for the "full, continuous" and relevant timeframe of 4:00 PM ET to 6:00 PM ET. The videos make it "possible to know how long the men were in the store before 911 was called" (Plaintiff's Motion, at ¶ 19), as the videos clearly demonstrate the 2 minutes and 55 seconds Donte Robinson and Rashon Nelson were in the store before the police were called by Holly Hylton.

Defendant has never contended that the April 12th arrests were the reason for Plaintiff's termination. Indeed, the quick timing of events were never in contention until Plaintiff admitted evidence that incorrectly states the men were in the store for ***twenty*** minutes prior to Ms. Hylton calling the police. *See* Defendant's Motion for Summary Judgment (ECF 68-2), at 1 ("Mr. Robinson and Mr. Nelson were in the store for approximately three minutes when the Store Manager, Holly Hylton called the police"); Exhibit 2, attached hereto (January 29, 2021 Deposition of Camille Hymes), at 77:1-12 ("Two men that were African American were arrested in our store. Within two minutes of arriving at the store, the police were called. And as a result of that call, they were subsequently arrested."). If the Court were to omit this evidence, Defendant will be unduly prejudiced by not being able to show the jury the most accurate information regarding the timing of the April 12th incidents as they occurred. Fed. R. Evidence 1002; *see Rodriguez v. City of New Brunswick,* No. CV 12-4722(FLW), 2017 WL 6442097, *2 n.2 (D.N.J. Dec. 18, 2017) ("surveillance videos are the best evidence of what occurred").

Further, because the timing of the arrests as well as the security videos were not relevant to Plaintiff's claims until Plaintiff herself put the timing issue into contention, sanctions are wholly

unwarranted here. The moment Plaintiff made the security videos relevant at the final pre-trial conference, Defendant started working towards collecting and producing those videos. Defendant's conduct has not been willful or in bad faith, but rather a production in good faith to Plaintiff's last minute contentions and requests. *See Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, CIV.A. 09-3125 FLW, 2011 WL 4962221, at *7-8 (D.N.J. Oct. 18, 2011) (declining to award sanctions where the party "may be responsible for the late supplementation at issue" but there was "no indication that [it] was willful or in bad faith" even where the requesting party made multiple requests for the information). Finally, Plaintiff's cases are not applicable where spoilation is clearly not an issue – the videos (timestamped and not) were saved according to Defendant's litigation hold.

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's motion for sanctions and renewed motion in *limine*.

Dated: June 7, 2023

Respectfully submitted,

*/s/ Tara Param*

Richard R. Harris (*admitted pro hac vice*)
Tara Param (*admitted pro hac vice*)
**HOLLAND & KNIGHT**
2929 Arch Street
Suite 800
Philadelphia, PA 19104
Phone 215.252.9594
Fax 215.867.6070
Mobile 917.309.5752
richard.harris@hklaw.com
tara.param@hklaw.com

*Attorneys for Defendant,
Starbucks Corporation d/b/a Starbucks Coffee Company*

3

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 7th day of June 2023, the foregoing document was submitted electronically to Chambers as well as counsel from Console Mattiacci Law: Laura C. Mattiacci, Esq., Katherine C. Oeltjen, Esq., and Holly W. Smith, Esq. via email as well as filed using the United States District Court for the District of New Jersey ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

                                            */s/ Tara Param*
                                            Tara Param

# EXHIBIT 1

| | |
|---|---|
| **From:** | Princivalle, Katie (PHL - X49583) |
| **To:** | mattiacci; hollysmith; oeltjen |
| **Cc:** | Harris, Richard (PHL - X49594); Param, Tara S (PHL - X49556) |
| **Bcc:** | Cox, Nancy (PHL - X46886) |
| **Subject:** | Phillips v. Starbucks |
| **Date:** | Tuesday, June 6, 2023 9:23:47 PM |
| **Attachments:** | image001.png |

Good evening,

Attached in the OneDrive link please find timestamped security videos from April 12, 2018, which we just received today from GSOC.

📁 Phillips v. Starbucks - Security Video Timestamped

Please let me know if you have any access issues.

Thank you,
Katie


**Kathleen Princivalle | Holland & Knight**
she | her | hers
Associate
Holland & Knight LLP
2929 Arch Street, Suite 800 | Philadelphia, Pennsylvania 19104
Phone 215.252.9583 | Fax 215.867.6070
kathleen.princivalle@hklaw.com | www.hklaw.com

# EXHIBIT 2

# In The Matter Of:

*SHANNON PHILLIPS v.*

*STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY*

---

*CAMILLE HYMES*

*January 29, 2021*

---

*Terry Burke Reporting*

*Registered Professional Reporters*

*terryburkermr@gmail.com*

*(215) 205-9079*

Min-U-Script® with Word Index

Page 77

1  Q. Okay. So now we turn to April 12th,
2  and this again may seem like an easy
3  question, but did something happen on
4  April 12th, 2018, in the store for which
5  Shannon was responsible?
6  A. Yes.
7  Q. And what occurred?
8  A. Two men that were African American
9  were arrested in our store. Within two
10 minutes of arriving at the store, the police
11 were called. And as a result of that call,
12 they were subsequently arrested.
13 Q. And that store is the store located
14 where?
15 A. At 18th and Spruce.
16 Q. In the City of Philadelphia; correct?
17 A. Yes.
18 Q. And to your knowledge, did Miss Phillips
19 have any involvement with the telephone call
20 to the police?
21 A. No.
22 Q. And did you, were you ever of the
23 opinion that Ms. Phillips had had any
24 involvement in those gentlemen being

Page 78

1  arrested?
2  A. No.
3  Q. Do you know their names?
4  A. Donte and Rashon.
5  Q. Do you know their last names?
6  A. Donte, I believe it is Robinson, and
7  I don't recall the last name of Rashon. And
8  it could be in the other direction.
9  Q. Okay. But you are confident on your
10 first name?
11 A. Always referred to them as Donte and
12 Rashon.
13 Q. And have you ever met them?
14 A. Yes.
15 Q. And how many times have you met them?
16 A. Once or twice.
17 Q. And what led to you meeting them?
18 A. We had an event in Philadelphia which
19 was called "Hire Philly" where we were
20 supporting employment for the young men and
21 women in Philadelphia. So we had a job fair.
22 And I believe -- in another instance he
23 actually came down to DC to visit our
24 community store, Donte came down to our store

Page 79

1  to visit our community store to see what we
2  were doing in DC, I believe.
3  Q. And do you know anything about what
4  either of them do professionally?
5  A. I know that they are entrepreneurs,
6  so they are looking to develop programs in
7  support of their communities.
8  Q. And then my last question about
9  Mr. Donte and Mr. Rashon is, do you know if
10 they are, are they Philly locals, do they
11 live in Philadelphia?
12 A. Where they currently -- I'm sorry,
13 are you asking me where they currently
14 reside?
15 Q. I am asking if you knew. Were they
16 from Philadelphia or were they from somewhere
17 else?
18 A. I'm sorry, I don't know where they
19 currently reside.
20 Q. At the time they were arrested, do
21 you know if they were living in the City of
22 Philadelphia?
23 A. I don't know where they resided at
24 the time of their arrest.

Page 80

1  Q. Okay.
2     Okay, and so how did you first
3  learn that individuals had been arrested out
4  of the Spruce Street store?
5  A. I received a call from John Kelly.
6  Q. Who is John Kelly?
7  A. He was the senior vice president of
8  public affairs.
9  Q. And he is the first person who told
10 you about the arrests?
11 A. Yes.
12 Q. And what day did Mr. Kelly call you?
13 A. I believe it was Saturday morning.
14 Q. Isn't it true that --
15 A. It might have been Friday. I know
16 that after the arrest time had lapsed and
17 there was -- it was probably Saturday
18 morning. I'm guessing it was Saturday
19 morning, but I don't recall. I'm pretty sure
20 it was Saturday morning.
21 Q. Isn't it true that Miss Phillips
22 called you Thursday night?
23 A. I don't recall.
24 Q. Is it possible she called you