## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHANNON PHILLIPS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:19-cv-19432 |
| | : | |
| v. | : | |
| | : | Hon. Joel H. Slomsky, U.S.D.J. |
| STARBUCKS CORPORATION d/b/a | : | |
| STARBUCKS COFFEE COMPANY, | : | |
| | : | ORAL ARGUMENT REQUESTED |
| Defendant. | : | |
| | : | |
| | : | **FILED VIA ECF** |

---

## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(a)

---

Richard R. Harris (*admitted pro hac vice*)
Tara Param (*admitted pro hac vice*)
**HOLLAND & KNIGHT**
2929 Arch Street
Suite 800
Philadelphia, PA 19104
Phone 215.252.9594
Fax 215.867.6070
Mobile 917.309.5752
richard.harris@hklaw.com
tara.param@hklaw.com

*Attorneys for Defendant,*
*Starbucks Corporation d/b/a Starbucks*
*Coffee Company*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHANNON PHILLIPS, | : |
| | : |
| Plaintiff, | :    Civil Action No. 1:19-cv-19432 |
| | : |
| v. | : |
| | :    Hon. Joel H. Slomsky, U.S.D.J. |
| STARBUCKS CORPORATION d/b/a | : |
| STARBUCKS COFFEE COMPANY, | : |
| | : |
| Defendant. | : |
| | : |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 50(a)**

      Defendant Starbucks Corporation d/b/a Starbucks Coffee Company, by and through its attorneys, Holland & Knight LLP, hereby moves for entry of judgment as a matter of law in its favor pursuant to Rule 50 of the Federal Rules of Civil Procedure.  In support thereof, Defendant relies on the accompanying Memorandum of Law and requests oral argument thereto.

                                                      Respectfully submitted,

                                              /s/ Richard Harris

Dated: June 9, 2023                     Richard R. Harris (*admitted pro hac vice*)
                                    Tara Param (*admitted pro hac vice*)
                                    **HOLLAND & KNIGHT**
                                      2929 Arch Street
                                      Suite 800
                                      Philadelphia, PA 19104
                                      Phone 215.252.9594
                                      Fax 215.867.6070
                                      Mobile 917.309.5752
                                      richard.harris@hklaw.com
                                      tara.param@hklaw.com

                                      *Attorneys for Defendant,*
                                      *Starbucks Corporation d/b/a Starbucks*
                                      *Coffee Company*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| SHANNON PHILLIPS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:19-cv-19432 |
| | : | |
| v. | : | |
| | : | Hon. Joel H. Slomsky, U.S.D.J. |
| STARBUCKS CORPORATION d/b/a | : | |
| STARBUCKS COFFEE COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**DEFENDANT STARBUCKS' MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR JUDGMENT AS A MATTER OF LAW**

## I.   INTRODUCTION

In the midst of a crisis, a great leader cannot hide behind others in hopes that their reputation for leading in times of non-crisis will carry them through. Rather, a true leader demonstrates "the willingness to step up, put [themself] out there, and lean into courage." Brenee Brown, Dare to Lead, 2018.  Leaders are expected to assess the situation and establish creative and strategic solutions beyond the tactical day-to-day operations. Leaders especially do not cower in the corner, but instead rise to meet their challenge.

On April 12, 2018, two Black men – Donte Robinson and Rashon Nelson – were arrested at the Starbucks store located at 18th and Spruce Street in Philadelphia while waiting for a business meeting. Mr. Robinson and Mr. Nelson were in the store for approximately three minutes when the Store Manager, Holly Hylton called the police. Once the police arrived at the store, the men were arrested. The crisis that followed was unlike anything Starbucks had ever faced before. The arrests garnered significant national media attention and resulted in an emotional outpour from the City of Philadelphia as well as outrage from partners who reported to Ms. Phillips. In stark contrast

to this emotional response, Ms. Phillips, who served as Regional District Manager, overseeing the Philadelphia market, had no response. During this time of crisis, Starbucks' Philadelphia market needed a leader who could perform. Ms. Phillips failed in every aspect of that role. Indeed, Ms. Phillips could not see (and still cannot see to this day) why Ms. Hylton should not have called the police on two Black men for doing absolutely nothing. Rather, Ms. Phillips is satisfied that Ms. Hylton "probably thought she was doing the right thing" and simply followed Starbucks' policy. Instead of exhibiting outrage as a response to the arrests, Ms. Phillips now somehow attempts to transform herself into the victim by stating Starbucks terminated her because she is White. Ms. Phillips' cannot see beyond herself. During a time where Starbucks employees were desperately seeking strong and reliable leadership, Ms. Phillips:

- **Provided no solutions nor insight to the needs of the market** (Trial Tr. (June 8, 2023), at 523:13-16; 525:23-526:8 ("I would have expected to see summaries of partner sentiment, patterns on unusual incidences throughout the market. I would have liked to have seen solution-based summaries of how to activate"));

- **Appeared overwhelmed, frozen, and lacked awareness of how critical the situation was for Starbucks and its partners** (Trial Tr. (June 8, 2023), at 527:6-12 ("There was a disconnect in owning some of the challenges that our partners were facing and how to address those, so the strategy was absent because there was an absence of acknowledgement and ownership, so just the fundamentals were missing"); Trial Tr. (June 6, 2023), at 149:22-150:9 ("I had never seen her so stuck and frozen"));

- **Did not attend scheduled meetings, showed up late or was mentally absent** (Trial Tr. (June 8, 2023), at 462:9-18 (); 577:6-15 ("at that point, it started building on itself. So there were examples of lateness. There was examples of on the stand-up calls that were

occurring, that not taking a leadership position. There were examples of, you know, general

follow-up of what was going on, wanting specifics, not getting them."));

- **Was sometimes unreachable by her team** (Trial Tr. (June 8, 2023), at 570:2-9 ("There

  was a lack of responsiveness with her team."));

- **Appeared disengaged and stood in the corner at meetings where she was expected to**

  **lead or where Starbucks' executive leadership was present** (Trial Tr. (June 8, 2023),

  567:1-13 ("we had Howard Schultz that next day or the following day, and she was late.");

  586:18-587:20 ("there was a virtual roundtable with shift supervisors, there may have been

  some store managers. It was probably 15 people. And the COO, Roz Brewer; the president

  – US president, Rossann; some other people from headquarters . . . she came in probably

  halfway through that virtual meeting, where her team was sharing what was going on, how

  they were feeling, et cetera. So everyone saw her enter late and then proceed to sit in the

  back"); 516:10-17 ("there was an absence of Shannon in those conversations. There were

  conference calls, literally, with executives to which you would expect the regional director

  to lead the conversation to which I would have to step-in in her absence. We would be

  waiting on the call for Shannon to show up, and she was absent.")).

Ms. Phillips' failure to lead her team during the crisis was her downfall. She was expected

to lead her market through a crisis by demonstrating to her supervisors what the needs of the market

were, and engaging partners to determine what needed to change moving forward. Instead, she

froze. This utter lack of leadership in a time of crisis is the ***only*** reason Ms. Phillips was terminated,

and Ms. Phillips has not been able to demonstrate any evidence to the contrary, most especially

evidence of racial animus. For the following reasons, Ms. Phillips' claims of reverse-race

discrimination fail, and this Court must enter judgment as a matter of law in Starbucks' favor on

Ms. Phillips' claims.

## II.    <u>ARGUMENT</u>

Upon conclusion of a party's case, Rule 50 allows a party to move for Judgment as a

Matter of Law:

> **(a) Judgment as a Matter of Law.**
>
> **(1) *In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> **(A)** resolve the issue against the party; and
>
> **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
>
> **(2) *Motion.*** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Fed. R. Civ. P. 50

The standard for granting a motion for a directed verdict is the same as that for granting

summary judgment under Rule 56.  *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001).

A directed verdict must be granted "if, under the governing law, there can be but one reasonable

conclusion as to the verdict."  *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 250 (1986). For the

reasons set forth herein, Starbucks respectfully submits that it is appropriate and necessary based

on the evidence of the record and applicable law for the Court to grant a directed verdict in favor

of Starbucks in respect to Plaintiff's claims for reverse-race discrimination.

**A.    Ms. Phillips Has Presented No Evidence to Prove Her Claims of Reverse-Race Discrimination Claims Under NJLAD**

Ms. Phillips alleges that Starbucks discriminated against her on the basis of her race (White) by terminating her employment, in violation of New Jersey Law Against Discrimination ("NJLAD"). In order to establish a *prima facie* case of racial discrimination under the NJLAD, Ms. Phillips must establish that (1) she belongs to a protected group; (2) she was performing her duties at a level that met her employer's legitimate expectations; (3) she was nevertheless terminated; and (4) the employer sought someone to perform the same work after she left. *Chirino v. City of Hoboken*, No. A-5576-16T1, 2019 WL 3852543, at *5 (N.J. Super. Ct. App. Div. Aug. 16, 2019) (citing *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 450 (2005)). In a case of reverse-race discrimination, Ms. Phillips must demonstrate that Starbucks is an "'unusual employer' who discriminates against Caucasians." *Bento v. Plainfield Pub. Sch. Dist.*, No. A-2127-20, 2022 WL 17332215, at *5 (N.J. Super. Ct. App. Div. Nov. 30, 2022) (affirming summary judgment against plaintiff's reverse racial discrimination claims because the plaintiff failed to show the employer was unusual). Ms. Phillips has presented no evidence that Starbucks is the "unusual" employer who discriminates against Caucasians, as such her claims must fail under NJLAD. *See* Trial Tr. (June 7, 2023), at 446:14-447:22 (excerpted *infra* Section II.C)

**B.    Ms. Phillips Has Presented No Evidence to Prove Her Claims of Reverse-Race Discrimination Claims Under Title VII and Section 1981g**

Ms. Phillips alleges that Starbucks discriminated against her on the basis of her race (White) by terminating her employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). Ms. Phillips' claims under Title VII and Section 1981 are subject to the well-known burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993), and its

5

progeny.[1] *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989), *overruled on other grounds by* 42 U.S.C. § 1981(b); *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 499 (3d Cir. 1999); N.J.S.A. § 10:5-3. Under this formulation, a plaintiff must first establish a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802. If they are able to do so, the burden shifts to Starbucks to articulate legitimate, non-discriminatory reasons for its actions. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Once Starbucks meets that burden, Ms. Phillips must then show that the reasons offered by Starbucks for her termination amount to a pretext for intentional discrimination. *Id.* The ultimate burden of proof always remains with Ms. Phillips to show that Starbucks intentionally discriminated against her because of her race. *Id.*; *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 136 (3d Cir. 1997).

As discussed below, there is no evidence—direct or circumstantial—from which the jury could reasonably conclude that Starbucks terminated Ms. Phillips' employment due to reverse discrimination. Accordingly, Starbucks is entitled to judgment as a matter of law.

### 1.   Ms. Phillips Has Not Proven That Her Race Motivated Starbucks' Decision To Terminate Her Employment

Ms. Phillips has not established a *prima facie* case of discrimination. To do so, she must have shown that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the circumstances raise an inference of unlawful discrimination. *Bond v. City of Bethlehem*, 505 F. App'x 163, 165 (3d Cir. 2012). "The central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race . . . ." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (internal quotations omitted).

---

[1] Claims under Title VII, the NJLAD, and § 1981 are governed under the same legal framework and analyzed co-extensively.  See Ali v. Woodbridge Twp. Sch. Dist., 957 F.3d 174, 180 (3d Cir. 2020) ("Claims brought under NJLAD and § 1981 are analyzed under the same framework."); Castleberry v. STI Group, 863 F.3d 259, 263 (3d Cir. 2017) ("[§ 1981] claims are subject to the same analysis as discrimination claims under Title VII . . . .").

First, Ms. Phillips is Caucasian, so she is alleging "reverse discrimination."  Where a non-protected class is the target of alleged discrimination, Ms. Phillips is not required to establish the first element of a *prima facie* case. *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 517 (E.D. Pa. 2012). The Third Circuit has adopted a modified *McDonnell Douglas* standard in reverse discrimination cases. *Iadimarco v. Runyon*, 190 F.3d 151 at 163 (3d Cir. 1999). To establish a *prima face* case of reverse discrimination, the plaintiff must show (1) she was qualified for the job which she held; (2) despite her qualifications, she was terminated by her employer; and (3) sufficient evidence to allow a reasonable fact finder to conclude, given the totality of circumstances, that the employer treated her less favorably because of her race. *See Mosca v. Cole*, 384 F. Supp. 2d 757, 765 (D.N.J. 2005), *aff'd* 217 F. App'x 158 (3d Cir. 2007); *see also Iadimarco*, 190 F.3d at 163.

Here, Ms. Phillips' *prima facie* case fails at the third element. Ms. Phillips has not presented any evidence that the adverse action she alleges – her termination – raise an inference of unlawful discrimination. Ms. Phillips supports her discrimination claims solely on two fabricated assertions: (1) Starbucks "took steps to punish white employees who had not been involved in the arrests, but who worked in and around the city of Philadelphia, in an effort to convince the community that it had properly responded to the incident"; and (2) "Plaintiff's race was a motivating and/or determinative factor in [Starbucks'] discriminatory treatment of Plaintiff . . . ." (Second Am. Complaint, Introduction.). However, there is no evidence to support either theory.

        **a.**      ***Ms. Phillips Was Not Discriminated Against – Therefore, She Cannot Make Out A Prima Facie Case of Race Discrimination***

Ms. Phillips admits she was replaced by a white male and white female – Marcus Eckensberger and Linda Johnson. Trial Tr. (June 6, 2023), at 362:16-363:11.  Courts uniformly

hold that when a plaintiff is replaced by someone of the same race or in the same protected class (or a plaintiff is unable to show otherwise) – as here – her *prima facie* case fails. *See Allia v. Target Corp.*, No. CIVA07-4130 NLHAMD, 2010 WL 1050043, at *5 (D.N.J. Mar. 17, 2010) ("The third element of a *prima facie* case of "reverse" race discrimination requires sufficient evidence to allow a reasonable fact finder to conclude, given the totality of circumstances, that the employer treated plaintiff less favorably because of her race. Plaintiff has not provided any evidence that Target's decision to terminate her from the Gloucester store was in any way related to plaintiff being white. Plaintiff has not demonstrated that she was replaced by a person of a minority race, that a minority employee of her same status was treated more favorably, or that race was ever an issue in the Gloucester store during her six months as the top HR executive there."); *Preston v. Vanguard Group, Inc.*, No. 14-7243, 2015 WL 7717296, at **11-12 (E.D. Pa. Nov. 30, 2015) (granting summary judgment on §1981 discrimination claim where plaintiff had no evidence of discrimination other than her own subjective beliefs and could not show she was replaced by someone outside her protected class); *Boykins v. CLBW Assocs.*, No. CIV. A. 11-6126, 2013 WL 6506309, at *8 (E.D. Pa. Dec. 11, 2013) (holding African-American plaintiff failed to establish *prima facie* case of race discrimination to overcome employer's motion for summary judgment because plaintiff ultimately was replaced by another African-American employee). For this reason alone, this Court should enter judgment as a matter of law in Starbucks' favor on Ms. Phillips' race discrimination claims.

Indeed, the evidence demonstrates that not only was Ms. Phillips replaced by two white employees, but also at least one replacement, Mr. Eckensberger, was selected to replace Ms. Phillips ***prior to*** her separation from Starbucks. *See* Joint Trial Ex. 90 ("get Marcus in as quickly as possible based on his experience in crisis situations.").

8

> ### b.  Ms. Phillips Cannot Establish That Similarly Situated Non-White Employees Were Treated More Favorably Than Her

Ms. Phillips has provided evidence of no similarly-situated employees. There is also no evidence that Starbucks treated similarly-situated employees outside of Ms. Phillips' protected class more favorably than it treated her. It is well settled that, to establish that Starbucks treated a similarly-situated employee outside their protected class more favorably, Ms. Phillips must show that her situation and that of her putative comparator was similar in all relevant respects. *See Opsonic v. Norfolk S. Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009). To meet this standard, "the comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second guessing employers' reasonable decisions and confusing apples with oranges." *Mathews v. Hermann*, Civil Action No. 07-01318, 2008 U.S. Dist. LEXIS 35726, *27 (E.D. Pa. Apr. 30, 2008) (quoting *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)).

"[T]o be considered similarly situated, comparator employees must be similarly situated in *all relevant respects*." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) (emphasis added). That determination "takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Id*.  Critically, "employers are permitted to hold employees in leadership positions to higher standards and such higher-ranked employees are not 'similarly situated' to their subordinates." *Outten v. Genesis Health Care, LLC*, Civ. A. No. 13-4708, 2014 WL 3964918, at *7 (E.D. Pa. Aug. 12, 2014).

The only non-White employee Ms. Phillips claims was treated more favorably than her is District Manager Paul Sykes, who is Black. Trial Tr. (June 7, 2023), at 264:21-24. Ms. Phillips claims that Starbucks treated Mr. Sykes more favorably than her because he is Black by not terminating his employment after the two Black men were arrested at the store within his District.

9

However, Mr. Sykes is not a suitable comparator because he is not similarly situated to Ms. Phillips. Mr. Sykes testified as to the wide delta between Ms. Phillips' duties compared to his own, stating that he oversaw approximately 240 employees and managed a budget of around $13 to $15 million, whereas Ms. Phillips oversaw approximately 2000 employees and a budget between $125 to $150 million. Trial Tr. (June 8, 2023), at 639:18-641:16.  Further, Mr. Sykes testified that as a Regional Director, Ms. Phillips would have greater sight lines with Starbucks leadership and that "she would have a broader perspective in terms of what she would see across the enterprise than [himself]." *Id.* at 641:21-642:8.

Most importantly, Ms. Phillips as a Regional Director directly *supervised* Mr. Sykes, a District Manager—therefore, he cannot be her comparator. Trial Tr. (June 7, 2023), at 307:9-12. *See Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 306 (3d Cir. 2004) (holding "the eight vice presidents/branch managers whom [the plaintiff] directly supervised" were not similarly situated to the plaintiff; *Braddock v. SEPTA*, Civ. A. No. 13-06171, 2014 WL 6698306, at *4 (E.D. Pa. Nov. 25, 2014) (holding that plaintiff's putative comparators "were not similarly situated to plaintiff because they were his own subordinates."); *Osuala v. Community College of Phila*., No. CIV. A. 00-98, 2000 WL 1146623, at *7 (E.D. Pa. Aug. 15, 2000), *aff'd*, 259 F. 3d 717 (3d Cir. 2001) (holding "[a]llegations about the failure of [employer] to discipline [plaintiff's subordinates] are inapposite" because employees cannot be similarly situated to their supervisors), *aff'd*, 259 F.3d 717 (3d Cir. 2001).

Even if the Court were to find that Mr. Sykes were a similarly situated employee, Ms. Phillips cannot prove that he was treated more fairly as a result of his race as Mr. Sykes was also separated from the company shortly after the April 12th incident. Trial Tr. (June 8, 2023), at 638:20-639:9 ("Q. When you left in June of 2018, you received a package, did you not? A. I did,

10

yes. Q. And that's a severance package? A. Yes."). As such, Ms. Phillips fails to meet her burden in providing comparator evidence.

**C.**      **Ms. Phillips Fails To Present Any Evidence That Starbucks Had An Agenda To Get Rid Of White People – This Allegation Is Fabricated And Insulting.**

There is also no evidence that race played any role in the decision to terminate Ms. Phillips' employment. First, there is no evidence that Camille Hymes (Black), Regional Vice President of Operations – who was involved in the decision to terminate Ms. Phillips' employment – displayed any discriminatory animus towards White people, particularly given that Starbucks replaced Ms. Phillips with another White Regional Director. As Ms. Hymes testified:

> A. As I mentioned at the very top of this testimony, the decisions that I made were based on behavior. Based on behavior of whether or not these leaders specifically could manage our partners through a crisis, if they were making the proper decisions, had ownership and accountability, that they were able to address the partners' needs and that they were actually showing up in the way in which our partners were asking. And in all three of those instances, color of skin had nothing to do with it. And as we sit here today, five years later, again, there is a lack of accountability in terms of what was going on in that market and the conversation today is about the color of someone's skin. It is offensive.
>
> Q. Okay. How about with the higher-ups in Starbucks that you were talking to? You identified Zeta, Rossann, Frisch, Nathalie, Paul Pinto. When you're having these conversations with them about firing Shannon in this climate, the idea she was white and being fired in the aftermath of April 12th, was never something that was ever discussed?
>
> A. A hundred percent, her race was never a part of the conversation. Whether or not it would be a risk to the organization or not, it was behavior. The conversation around race never came up. was behavior. The conversation around race never came up. For Paul or anyone else I. lead 15,000 partners. The leaders that were at Shannon's level, I had six directors. Jen Pivarnik, white female. Shannon Phillips, white female. Marcus Eckensberger, white male. TJ Wolfersberger, white male. Phillip Laws, black male. I'm missing one. I think that's all of them. When Shannon was separated, terminated, however you would like to phrase it, the replacement for Shannon were two white Americans.
>
> Trial Tr.(June 7, 2023), at 446:-447:22.

11

There is absolutely no evidence that Starbucks had any discriminatory animus towards White people. The fact that Ms. Phillips disagrees with Starbucks' decision to terminate her employment is not enough to establish a claim of reverse-race discrimination. *See Sauchelli v. U.S. Postal Serv*, 407 F. App'x 610 (3d Cir. 2011). Starbucks had a legitimate, nondiscriminatory reason for its employment actions with respect to Ms. Phillips, *i.e.*, her complete failure to lead, which had nothing to do with her race.

### D. Starbucks Had A Legitimate, Non-Discriminatory Reason For Its Employment Actions Towards Ms. Phillips

Even if Ms. Phillips could establish a *prima facie* case of race discrimination and retaliation (which she did not), her claims fail because there is no genuine issue that: Starbucks terminated Ms. Phillips' employment because of her failure to lead her region following the arrests of two black men at the Starbucks store on 18th and Spruce, as required by her position as Regional Director. Trial Tr. (June 8, 2023), at 599:5-17 ("It was lack of leadership, and you're overseeing $100 - $150 million portfolio, you need to rise to the occasion.").

If Ms. Phillips succeeds in establishing a *prima facie* case of discrimination and retaliation under the Title VII, Section 1981 and the NJLAD, the burden then shifts to Starbucks to articulate a legitimate, non-discriminatory reason for its termination of Ms. Phillips' employment. *See Fuentes v. Perskie*, 32 F.3d at 763 (3d Cir. 1994). The employer's burden at this stage is relatively light in that it is satisfied if the employer articulates any reason for the action taken. *See Boykins v. Lucent Tech., Inc.*, 78 F. Supp. 2d 402, 409 (E.D. Pa. 2000), *aff'd*, 29 F. App'x 100 (3d Cir. 2002). Once an employer has demonstrated a legitimate reason for the employment action, the burden returns to the plaintiff, who must ultimately prove that the employer's proffered reason is a pretext for discrimination. *See Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 136 (3d Cir. 1997).

Starbucks terminated Ms. Phillips' employment because she failed to perform the essential functions of her role as Regional Director, and was unable to demonstrate strong leadership, which was more important than ever following the April 2018 arrests. *See* Section I, *supra*. As Regional Director, Ms. Phillips was expected to play a key role in leading those changes. Trial Tr. (June 8, 2023), at 523:1-6; 546:1-4 ("I expected her to have solutions for her market specifically. . . . The one that she was in charge of leading."); 584:20-585: ("she should have been helping to create the agenda, opening up the call, setting up the expectations and running the call, facilitating the call. ***Not that she had to know all the information, but she should be facilitating her team and the group on the call that was in support of this crisis. That's her role as a regional director***."). Nevertheless, Mr. Pinto, Vice President of Partner Resources (who is White), noted that Ms. Phillips was neither physically nor emotionally present. Trial Tr. (June 6, 2023), at 149:22-150:9 ("I had never seen her so stuck and frozen").

Ms. Hymes testified that Ms. Phillips was overwhelmed, and the partners in the Philadelphia region did not trust Ms. Phillips to lead them through the crisis. *See, e.g.*, Trial Tr. (June 7, 2023), at 409:25-410:6 ("Shannon and I were having conversations because of the way she was showing up in the market, so it wasn't I wanted her out. In fact, the conversation evolved when ***Shannon said: I'm not built for this. I can't do this. This is too complicated for me.*** And so based on those conversations, very shortly after the incident, we started to talk about how to explore options.")  Ms. Hymes noticed that Ms. Phillips appeared disengaged and stood in the corner at meetings where she was expected to lead or where Starbucks' executive leadership was present. *Id.* at 410:18-411:3 ("the day in which we had a broadcast with partners, and Shannon was to -- to lead the conversation with our partners. I think it was at the 34th Street store. And she showed up late. She remained in the corner. Other leaders had asked if they could assist to initiate

the conversation because ***Shannon was not literally present, even though physically, not mentally in the room with our partners during that time***.”). Most importantly, Ms. Phillips never took accountability, responsibility, nor initiative to solve the issues in the market. *Id.* at 421:21-422: (“When there are open complaints in your market, our partners are sharing that there are complaints, as a leader you’re responsible for closing open complaints in a timely manner. So the responsibility ultimately lies with the leader. That’s why we’re still here today five years later talking about accountability. Accountability begins and ends with the leader. So whether it is a complaint from a partner or a complaint from a customer, closure is essential.”).

Starbucks terminated Ms. Phillips’ employment because of her complete failure to lead her team and perform the duties of her role as Regional Director. Ms. Phillips’ termination had absolutely nothing to do with her race. For these reasons, Ms. Phillips’ termination was for the legitimate, non-discriminatory reasons.

    **E.**    **Ms. Phillips Has Not Shown That Starbuck’s Proffered Reason For Discharge Is Pretext For Discrimination**

Starbucks having met its burden of articulating a legitimate, non-discriminatory reason for the challenged employment decisions, the burden shifts to Ms. Phillips to prove that this reason is pretextual, and that race was the true reason for the termination decisions or for a complaint of discrimination.

To show pretext, a plaintiff must “demonstrate that the proffered reason was not the true reason for the employment decision. . . . [The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer’s proffered explanation is unworthy of credence.” *Tex. Dep’t of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Thus, after an employer has articulated a legitimate non-discriminatory reason for its actions, a plaintiff must

"point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.  Stated differently, "[Ms. Phillips'] evidence rebutting [Starbucks'] proffered legitimate reason[ ] must allow a fact-finder to infer that . . . [Starbucks'] proffered non-discriminatory reason [ ] was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir.), order clarified, 543 F. 3d 178 (3d Cir. 2008).

Ms. Phillips has no evidence to cast doubt on Starbucks' reason for discharging her. Instead, Ms. Phillips provided evidence of (1) her own disagreement with Starbucks' decision; and (2) the testimony of her subordinate District Manager and friend, Mr. Sykes, who believed Ms. Phillips was doing an effective job. As a matter of law, however, neither reason establishes that Starbucks' employment decisions with respect to Ms. Phillips have anything to do with her race.

At the pretext stage, the Court's analysis "centers on the employer's beliefs and, to be blunt about it, not reality as it exists outside the decision maker's head." *Ma v. Westinghouse Elec. Co.*, LLC, 559 F. App'x 165, 170 (3d Cir. 2014). ***It does not matter whether Ms. Phillips disagrees with Starbucks' evaluation of her job performance.*** See *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3rd Cir. 1991) ("[T]he fact that an employee disagrees with an employer's evaluation [of her performance] does not prove pretext."); *Fatzinger v. Lehigh Valley Hosp.*, 130 F. Supp. 2d 674, 679 (E.D. Pa. 2001) ("[I]t is well-established that neither a simple denial of the charges against her, nor her own rosier perception of her performance, saves Plaintiff").

Likewise, the opinions of Ms. Phillips' subordinates relative to her leadership skills are irrelevant in a pretext analysis because what matters is the perception of the decision-maker. *See*

*Martin v. Health Care & Ret. Corp.*, 67 F. App'x 109, 114 (3d Cir. 2003) (co-workers' opinions that the plaintiff performed her job well did not demonstrate that the decision-makers were lying when they said they thought she performed poorly, and thus, were insufficient to prove pretext); *Acampora v. Konica Business Machines USA, Inc.*, No. CIV.A. 95–3936, 1997 WL 214800 at *7 (E.D. Pa. 1997) (co-worker's belief regarding plaintiff's performance is not indicative of pretext; the focus is on the perception of the decision-maker); *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) ("[P]retext is not shown by evidence that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.").

Additionally, it does not matter whether the decision to terminate Ms. Phillips was the "best" decision, only that the decision to terminate her was not based on race. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (stating that the analysis is "not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [an unlawful one].")*; Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[Courts] do not sit as a super-personnel department that reexamine[] an entity's business decisions. . . . Rather, [a court's] inquiry is limited to whether the employer gave an honest explanation of its behavior."). As discussed above, Starbucks had ample reasons for terminating Ms. Phillips' employment – her ineffectiveness in leading her team as Regional Director following the April 2018 arrests. Ms. Phillips essentially takes issue with Starbucks' evaluation of its business decisions and practices. *Billet*, 940 F.2d at 825 ("An employee's disagreement with an employer's evaluation of one's qualifications, or disagreement with the employer's evaluation of its own needs or proper business decisions, is not enough to prove pretext."). "[A] company has the right to make business judgments on employee status, particularly when the decision involves

16

subjective factors deemed essential to certain positions." *Id.; see Bloch v. Mack Trucks, Inc.*, 240 F. Supp. 3d 365, 375 (E.D. Pa. 2017) ("[C]hallenges to the adequacy of an investigation insufficient to establish pretext.").

Ms. Phillips attempts to distract from Starbucks' legitimate decisions by suggesting that its decisions were a ploy to weed out White employees following the April 2018 incident. However, there is no evidence to suggest this is the case other than Ms. Phillips' own speculations. Moreover, as explained above, Starbucks ultimately replaced Ms. Phillips with other White employees— which was decided ***before*** Ms. Phillips was terminated. Further, employees both White (for example, Mr. Pinto) and Black (for example, Ms. Hymes) observed that Ms. Phillips appeared physically and emotionally detached and demonstrated leadership that was frozen following the April 2018 crisis.

### F.   Ms. Phillips Is Not Entitled To Punitive Damages

To recover punitive damages for a Title VII or 1981 claim, Ms. Phillips must demonstrate that Starbucks "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Ridley v. Costco Wholesale Corp.,* 217 Fed. Appx. 130, 137 (3d Cir. 2007) (quoting 42 U.S.C. § 1981a(b)(1)). An employer, however, "may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'" *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545, 119 S. Ct. 2118, 2129, 144 L. Ed. 2d 494 (1999) (citation omitted). Under NJLAD, "punitive damages should only be awarded … in exceptional cases" as the "defendant's conduct must have been wantonly reckless or malicious" in order to support a punitive damages award. *Weiss v. Parker Hannifan Corp.*, 747 F. Supp. 1118, 1135-36 (D.N.J. 1990). Here, Ms. Phillips has shown no discriminatory practice, let alone malicious discrimination on the part of Starbucks. In fact, Mr.

17

Pinto and Ms. Hymes both testified that they sought to help Ms. Phillips and find solutions before termination became the only path forward. Trial Tr. (June 6, 2023), at 177:2-10 ("We could have, but when we tried to have that conversation, she just sat very closed, would not respond and wouldn't engage in dialogue. It's hard to have a conversation about different avenues or possibilities with someone that's not responding."); Trial Tr. (June 8, 2023), at 418:13-414:2 ("I cared very deeply about the experience that Shannon was going through. She was struggling. It was difficult. It was painful. I think she felt deeply for our partners. I strongly believed that we were going to do everything possible to make it a success for a turnaround, but I just didn't see evidence of that as we continued to move through the timeline. It was unfortunate, it was heartbreaking to have to deliver and have the conversation with Shannon that it was just not going to work. Having her to rebuild trust with a team that didn't trust her, to have her go through repairing the market when there was a lack of ownership and a focus on other things aside from what was happening in front of us.").  Therefore, Plaintiff is not entitled to punitive damages.

## III.    <u>CONCLUSION</u>

For all the foregoing reasons, Starbucks respectfully requests that the Court grant judgment as a matter of law in its favor o as to all of Ms. Phillip's remaining claims.

Dated: June 9, 2023                                Respectfully submitted,

                                                   *s/ Tara Param*
                                                   Richard R. Harris (*admitted pro hac vice*)
                                                   Tara Param (*admitted pro hac vice*)
                                                   **HOLLAND & KNIGHT**
                                                   2929 Arch Street, Suite 800
                                                   Philadelphia, PA 19104
                                                   Phone 215.252.9594
                                                   Fax 215.867.6070
                                                   Mobile 917.309.5752
                                                   richard.harris@hklaw.com
                                                   tara.param@hklaw.com

                                                   *Attorneys for Defendant,*
                                                   *Starbucks Corporation d/b/a*
                                                   *Starbucks Coffee Company*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| SHANNON PHILLIPS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:19-cv-19432 |
| | : | |
| v. | : | |
| | : | Hon. Joel H. Slomsky, U.S.D.J. |
| STARBUCKS CORPORATION d/b/a | : | |
| STARBUCKS COFFEE COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**ORDER**

AND NOW this _____ day of June, 2023, upon consideration of Defendant's Motion for Judgment as a Matter of Law and oral argument related thereto, it is **ORDERED** that the Motion is **GRANTED**, and the Clerk of the Court shall enter judgment for Defendant on each of Plaintiff's claims.

**SO ORDERED.**


Dated:                                       _____

                                             Honorable Joel H. Slomsky, USDJ

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on this 9th day of June 2023, the foregoing document was filed using the United States District Court for the District of New Jersey ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.


*s/ Tara Param*         
Tara Param