# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHANNON PHILLIPS, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:19-cv-19432 |
| | : | |
| v. | : | |
| | : | Hon. Joel H. Slomsky, U.S.D.J. |
| STARBUCKS CORPORATION d/b/a | : | |
| STARBUCKS COFFEE COMPANY, | : | **FILED VIA ECF** |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## <u>MOTION FOR A NEW TRIAL, OR IN THE ALTERNATIVE, TO REMIT DAMAGES</u>

# TABLE OF CONTENTS

**Page**

I.  ONCE THE BELL IS RUNG, IT CANNOT BE UN-RUNG ............................................1

II. ARGUMENT ..............................................................................................................6

    A.  Legal Standard ..................................................................................................6

    B.  The Jury Erred By Awarding Punitive Damages, Warranting a New Trial ...........7

        1.  It Was An Error Of Law To Award Ms. Phillips Double Damages ............7

        2.  The Jury Should Not Have Been Instructed on Punitive Damages .............7

        3.  The Punitive Damages Award Is Against The Weight Of The
            Evidence And Is Unconstitutional .................................................................8

            a.  Starbucks' Conduct Was Not Reprehensible as a Matter of
                Law ............................................................................................................10

            b.  The Punitive Damages Award Is Not Proportional To The
                Purported Harm Suffered By Ms. Phillips.................................13

            c.  The Punitive Damages Award Is Not Consistent With Civil
                Penalties In Similar Cases...........................................................16

    C.  The Court Should Not Have Allowed Mr. Sykes To Testify About Matters
        That He Had No Personal Knowledge....................................................................17

        1.  As A Non-Decisionmaker, Mr. Sykes' Testimony Regarding Ms.
            Phillip's Termination Was Speculative And, Therefore, Inadmissible .....18

        2.  Mr. Sykes' Testimony Is Also Inadmissible Under Rules 402 and 403....20

    D.  The Jury Should Have Received An Instruction On Comparator Evidence..........21

        1.  Mr. Sykes and Mr. Trinsey Are Not Similarly Situated to Ms. Phillips....22

        2.  Failing to Provide a Comparator Instruction Greatly Prejudiced
            Starbucks..........................................................................................................24

    E.  The Cumulative Effect Of All These Errors Requires That Starbucks Receive
        A New Trial .............................................................................................................25

    F.  The Reverse Race Discrimination Verdict Is Against The Manifest Weight
        Of The Evidence .....................................................................................................25

        1.  Ms. Phillips Brought A Disparate Treatment Case Based On
            Circumstantial Evidence Case .....................................................................26

            a.  There Is No Direct Evidence Of Discrimination ...........................26

            b.  Ms. Phillips Failed to Offer Circumstantial Evidence Of
                Reverse Race Discrimination.......................................................29

vi

c.      Because Ms. Phillips Was Ultimately Replaced By Two White Employees, There Is Not Even an Inference of Racial Discrimination.................................................................................30

2.      The Great Weight Of The Evidence Demonstrated That Starbucks Terminated Ms. Phillips Because Of Her Lack Of Strategic Leadership Skills Required To Lead Starbucks Through The Crisis ........31

3.      Ms. Phillips Lacked Any Evidence Supporting Her Theory Of The Case – That Ms. Phillips Was A "Scapegoat," "Fall Guy," or "Sacrificial Lamb" Much Less that Doing So Constitutes Race Discrimination..............................................................................................33

III.    CONCLUSION...............................................................................................36

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Abdul-Latif v. Cnty. of Lancaster*,
  990 F. Supp. 2d 517, 526 (E.D. Pa. 2014) ............................................................22

*Allia v. Target Corp.*,
  No. CIVA07-4130 NLHAMD, 2010 WL 1050043, at *5 (D.N.J. Mar. 17,
  2010) ..................................................................................................................31

*Asplundh Mfg. Div. v. Benton Harbor Eng'g*,
  57 F.3d 1190 (3d Cir. 1995)................................................................................18

*Baines v. Corecare Behavioral Health Mgmt., Inc.*,
  No. CV 21-2419, 2023 WL 1102339 (E.D. Pa. Jan. 30, 2023) ............................19

*Baker v. Nat'l State Bank*,
  801 A.2d 1158 (N.J. Super. 2002) ......................................................................16

*In re Bayside Prison Litig.*,
  331 F. App'x 987 (3d Cir. 2009) ...................................................................8, 9, 15

*Blakey v. Cont'l Airlines, Inc.*,
  992 F. Supp. 731 (D.N.J. 1998) ......................................................................8, 16

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996)............................................................................9, 10, 14, 15

*Boykins v. CLBW Assocs.*,
  No. CIV. A. 11-6126, 2013 WL 6506309 (E.D. Pa. Dec. 11, 2013)................31, 32

*Braddock v. SEPTA*,
  Civ. A. No. 13-06171, 2014 WL 6698306 (E.D. Pa. Nov. 25, 2014).....................24

*Catalane v. Gilian Instrument Corp.*,
  638 A.2d 1341 (N.J. Super. 1994) ......................................................................17

*CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*,
  499 F.3d 184 (3d Cir. 2007)...........................................................................9, 10, 14

*Conkwright v. Westinghouse Elec. Corp.*,
  933 F.2d 231 (4th Cir. 1991) ..............................................................................20

*DeJarnette v. Corning Inc.*,
  133 F.3d 293 (4th Cir. 1998) ..............................................................................20

*Donlin v. Philips Lighting N. Am. Corp.*,
  581 F.3d 73, 79 (3d Cir. 2009)............................................................25

*Evans v. Port Auth. of N.Y. & N.J.*,
  273 F.3d 346 (3d Cir. 2001)..................................................................9

*Fakete v. Aetna, Inc.*,
  308 F.3d 335 (3d Cir. 2002)................................................................28

*Glanzman v. Metro. Mgmt. Corp.*,
  391 F.3d 506, 512 (3d Cir. 2004)........................................................28

*Gov't of the V.I. v. Knight*,
  989 F.2d 619, 629 (3d Cir. 2003)........................................................18

*Greene v. Virgin Islands Water & Power Auth.*,
  557 F. App'x 189 (3d Cir. 2014).........................................................23

*Gumbs v. Pueblo Int'l, Inc.*,
  823 F.2d 768, 773 (3d Cir. 1987)........................................................17

*Henson v. U.S. Foodservice, Inc.*,
  588 F. App'x 121 (3d Cir. 2014)....................................................22, 28

*Henson v. U.S. Foodservice*,
  No. CIV. 11-1809 JBS/KMW, 2013 WL 6080359, at *7 (D.N.J. Nov. 19,
  2013) .............................................................................................22, 28

*Hester v. BIC Corp.*,
  225 F.3d 178 (2d Cir. 2000)................................................................20

*Hirst v. Inverness Hotel Corp.*,
  544 F.3d 221 (3d Cir. 2008)..........................................................19, 20

*Hurley v. Atlantic City Police Dept.*,
  933 F.Supp. 396 (D.N.J. 1996) ....................................................7, 9, 17

*Inter Medical Supplies, Ltd. v. EBI Medical Systems, Inc.*,
  181 F.3d 446 (3d Cir. 1999)..........................................................10, 15

*Jackson v. Consolidated Rail Corp.*,
  538 A.2d 1310 (N.J. Super. 1988) .......................................................17

*Jacobs v. Gen. Elec. Co.*,
  275 Conn. 395, 880 A.2d 151 (2005) ..................................................19

*Jurinko v. Med. Protective Co.*,
  305 F. App'x 13 (3d Cir. 2008) .......................................................9, 14

*Kazan v. Wolinski*,
    721 F.2d 911 (3d Cir. 1983) ....................................................................................7

*Kim-Foraker v. Allstate Ins. Co.*,
    834 F. Supp. 2d 267 (E.D. Pa. 2011) ......................................................................27

*Larochelle v. Wilmac Corp.*,
    210 F. Supp. 3d 658 (E.D. Pa. 2016), No. 12-CV-5567, 2016 WL 6135577
    (E.D. Pa. Oct. 21, 2016) .........................................................................................30

*Levinson v. Prentice-Hall, Inc.*,
    868 F.2d 558 (3d Cir. 1989) ..................................................................................15

*Lightning Lube, Inc. v. Witco Corp.*,
    802 F. Supp. 1180 (D.N.J. 1992) .............................................................................6

*Lightning Lube, Inc. v. Witco Corp.*,
    802 F. Supp. 1180 (D.N.J. 1992) .............................................................................6

*Lyles v. Flagship Resort Dev. Corp.*,
    371 F. Supp. 2d 597 (D.N.J. 2005) ......................................................................6, 7

*Maietta v. United Parcel Serv., Inc.*,
    749 F. Supp. 1344, 1372 (D.N.J. 1990) ................................................................31

*Maiorino v. Schering-Plough Corp.*,
    695 A.2d 353 (N.J. Super. 1997) ...........................................................................16

*Mathews v. Hermann*,
    Civil Action No. 07-01318, 2008 U.S. Dist. LEXIS 35726 (E.D. Pa. Apr. 30,
    2008) .......................................................................................................................23

*McCrary v. New Jersey Transit Rail Operations, Inc.*,
    No. CIV.A. 05-88 (DMC), 2008 WL 2885872 (D.N.J. July 23, 2008) ..................18

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) .......................................22, 27

*McDonough Power Equipment, Inc. v. Greenwood*,
    464 U.S. 548 (1984) .................................................................................................4

*Mercado v. Wells Fargo*,
    No. CV 15-4086, 2017 WL 4862417 (D.N.J. Oct. 27, 2017) .................................31

*Miller v. Tyco Elecs., Ltd.*,
    No. 1:10-CV-2479, 2012 WL 5509710 (M.D. Pa. Nov. 14, 2012) ........................19

*Monaco v. Am. Gen. Assur. Co.*,
  359 F.3d 296 (3d Cir. 2004).....................................................................................24

*Montgomery Ward & Co. v. Duncan*,
  311 U.S. 243, 251 (1940)............................................................................................7

*Moussa v. Commonwealth of Pennsylvania Dep't of Pub. Welfare*,
  289 F. Supp. 2d 639 (W.D. Pa. 2003)..................................................................22, 25

*Opsonic v. Norfolk S. Corp.*,
  335 F. App'x 220 (3d Cir. 2009) ..........................................................................23, 30

*Osuala v. Community College of Phila.*,
  No. CIV. A. 00-98, 2000 WL 1146623, at *7 (E.D. Pa. Aug. 15, 2000)...............24

*Outten v. Genesis Health Care, LLC*,
  Civ. A. No. 13-4708, 2014 WL 3964918 (E.D. Pa. Aug. 12, 2014).................23, 24

*Overpeck v. Chicago Pneumatic  Tool Co.*,
  634 F. Supp. 638, 639 (E.D. Pa. 1986) .....................................................................6

*Phillips v. Starbucks Corp.*,
  624 F. Supp. 3d 530 (D.N.J. 2022) ......................................................................22, 29

*Pierce v. PECO Energy Co.*,
  No. CV 19-4073, 2021 WL 4458955 (E.D. Pa. Sept. 29, 2021) .............................22

*Ponzini v. Monroe Cnty.*,
  789 F. App'x 313 (3d Cir. 2019)...............................................................................25

*Preston v. Vanguard Group, Inc.*,
  No. 14-7243, 2015 WL 7717296 (E.D. Pa. Nov. 30, 2015) ....................................31

*Price Waterhouse v. Hopkins*,
  490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)..........................................27

*Pritchett v. State*,
  256 A.3d 999 (2021) ..................................................................................................10

*Randolph v. Collectramatic, Inc.*,
  590 F.2d 844 (10th Cir. 1979) ..................................................................................17

*Reeves v. Sanderson Plumbing Prod., Inc.*,
  530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)..........................................27

*Repa v. Napierkowski*,
  No. 22-2537, 2023 WL 3034603 (3d Cir. Apr. 21, 2023) ...................................6, 25

*Rodriguez v. City of New Brunswick*,
  No. CV 12-4722(FLW), 2017 WL 6442097 (D.N.J. Dec. 18, 2017) ......................................4

*Saffos v. Avaya Inc.*,
  16 A.3d 1076 (N.J. Super. 2011) ...........................................................................................16

*Silvera v. Orange County Sch. Bd.*,
  244 F.3d 1253, 1259 (11th Cir. 2001) ...................................................................................23

*Spence v. Board of Educ. of Christina School Dist.*,
  806 F.2d 1198 (3d Cir. 1986) ..............................................................................................7, 9

*Starceski v. Westinghouse Elec. Corp.*,
  54 F.3d 1089, 1097 (3d Cir. 1995) .........................................................................................28

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ....................................................................................................... *passim*

*Thomas v. Ethicon, Inc.*,
  No. CIV. A. 93-3836, 1994 WL 171345 (E.D. Pa. May 5, 1994) ..........................................31

*Twp. of Bordentown, New Jersey v. FERC*,
  903 F.3d 234 (3d Cir. 2018) ...................................................................................................26

*United States v. Fulton*,
  837 F.3d 281 (3d Cir. 2016) .............................................................................................18, 19

*United States v. Rea*,
  958 F.2d 1206 (2d Cir. 1992) .................................................................................................18

*van de Kamp v. Transdermal Specialties, Inc.*,
  No. 16-CV-02768, 2018 WL 6614823 (E.D. Pa. Dec. 17, 2018) ..........................................18

*Varughese v. Robert Wood Johnson Med. Sch.*,
  No. CV1602828FLWLHG, 2017 WL 4270523 (D.N.J. Sept. 26, 2017) ..........................28, 30

*Village of Freeport v. Barrella*
  814 F.3d 594, 611-13, 617 (2d Cir. 2016) .............................................................................20

*Wade v. Colaner*,
  No. CIV.A. 06-3715-FLW, 2010 WL 5479629 (D.N.J. Dec. 28, 2010) ................................15

*Watson v. Fort Worth Bank & Trust*,
  487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) ........................................................27

*White v. Camden City Bd. of Educ.*,
  251 F. Supp. 2d 1242, 1246 (D.N.J. 2003) ............................................................................28

*Wilcher v. Postmaster Gen.*,
   441 F. App'x 879 (3d Cir. 2011) ........................................................23

*Williams v. ConAgra Poultry Co.*,
   378 F.3d 790, 799 (8th Cir. 2004) ....................................................14

*Williams v. Greyhound Lines Inc.*,
   No. CIV. A. 97-6997, 1998 WL 551981, at *4 (E.D. Pa. Aug. 11, 1998)............................31

*Williams v. Martin Marietta Alumina, Inc.*,
   817 F.2d 1030 (3d Cir. 1987)..........................................................7, 9

*Willow Inn, Inc. v. Public Service Mutual Ins. Co.*,
   399 F.3d 224, 230 (3d Cir. 2005).......................................................8

*Wood v. Devs. Diversified Realty Corp.*,
   No. CIV.A. 04-CV-5563, 2006 WL 456303 (E.D. Pa. Feb. 23, 2006) ...................19

**Statutes**

Fed. R. Civ. P. 50(b) ..................................................................1

Fed. R. Civ. P. 59 ...................................................................1, 6

Fed. R. Evid. 402 ....................................................................21

Fed. R. Evid. 403 ....................................................................21

Fed. R. Evid. 602 ...........................................................17, 19, 21

Fed. R. Evid. 701 ...........................................................18, 19, 21

Fed. R. Evid. 702 ....................................................................18

Fed. R. Evid. 1002 ....................................................................4

Rule 59(e)..............................................................................8

**Other Authorities**

Due Process Clause of the Fourteenth Amendment ....................................8

THE PHILADELPHIA INQUIRER (May 29, 2018)...........................................36

I.      **ONCE THE BELL IS RUNG, IT CANNOT BE UN-RUNG**

This trial was devoid of any evidence demonstrating that Plaintiff, Shannon Phillips ("Ms. Phillips") was discriminated against on the basis of her race. To the contrary, she lost her job at Starbucks because she failed to demonstrate the strategic leadership skills necessary to lead her team through a crisis. When questioned about her leadership gap, Ms. Phillips stated, "***I'm not built for this. I can't do this. This is too complicated for me.***" Hymes, Trial Tr. (June 7, 2023), at 409:25-410:6.[1] Ms. Phillips was replaced by a White Regional Director because of his "experience in crisis situations."  *See* Joint Trial Ex. 90.

Ms. Phillips' entire theory of her case was that she was a "scape goat . . . sacrificial lamb . . . fall guy" following the arrests of Rashon Nelson and Donte Robinson at Starbucks' 18th and Spruce Street Store. Trial Tr. (June 9, 2023), at 763:20-21. At trial, this theory collapsed when Ms. Phillips admitted on the stand that her termination was not publicized and no one knew who Ms. Phillips was:

> "Q. It wasn't public knowledge as to who you were, Ms. Phillips, was it?
>
> A: That's correct."
>
> Phillips, Trial Tr. (June 7, 2023), at 387:18-20.

As Ms. Phillips testified, "[i]nitially, there was support for [the Store Manager], and then the riots and protests start, and people were screaming: Fire the manager, fire the manager, fire the manager." referring to the store manager who called the police. Phillips, Trial Tr. (June 7, 2023), at 333:20-22. The public was not calling for the termination of Ms. Phillips. That is because the public did not even know who she was, but was well aware of the identity of the store manager

---

[1] For ease of reference, the trial transcript will be cited as: "[Last Name of the Testifying Witness], Trial Tr. (Date of Testimony), at [Page]:[Line]".  Full copies of the Trial Transcripts have been included as exhibits at the end of this document.

who called the police, which led to the public's outrage.  The store manager exited the Company shortly thereafter and was replaced by a White store manager.

Notwithstanding these facts, the case went awry and the jury incorrectly awarded Ms. Phillips an astronomical and legally unjustified award.  Now, Starbucks respectfully requests that this Court remedy this mistake and grant it a new trial because the jury's verdict of $25,600,000, including $25 million in punitive damages, in favor of Ms. Phillips went against the clear weight of the evidence, contradicted legal precedent, and resulted in a miscarriage of justice.

***How did we get here?***  Before addressing the series of legal errors that require a new trial, a review of the key facts which led to Ms. Phillips losing her position at Starbucks is instructive.  As discussed in detail below, there is absolutely no credible evidence that supports a finding that Ms. Philips was terminated from her position due to reverse race discrimination.  There is, however, extensive and consistent evidence presented by several witnesses which establishes that Ms. Philips lost her position because she was simply unable to provide the strategic leadership that was required of her to lead her team through a crisis.  This incident occurred on April 12, 2018, when two Black men – Donte Robinson and Rashon Nelson – were arrested at the Starbucks store located at 18th and Spruce Street in Philadelphia while waiting for a business meeting. Mr. Robinson and Mr. Nelson were in the store for ***approximately three minutes*** when the White Store Manager called the police.[2] Once the police arrived at the store, the men were arrested. The crisis that followed was unlike anything Starbucks had ever faced. The arrests garnered significant national media attention and resulted in an emotional outpour from the City of Philadelphia as well

---

[2] This short period of time, 3 minutes, is important because the Court wrongly permitted Plaintiff to argue during their opening that 20 minutes passed before the police were called. This misstatement should not have been allowed because it made the underlying incident seem less problematic and severely prejudiced Starbucks' position from the very outset of this trial.

as outrage from partners (*i.e.*, Starbucks employees). In stark contrast to this emotional response, Ms. Phillips, who served as Regional Director, overseeing the Philadelphia market, had no response.

During this time of crisis, Starbucks' Philadelphia market needed a specific type of strategic leadership. The market needed someone who could face and move through these challenges to help make Starbucks a better (and safer) place for both its partners and customers. The record is clear that Ms. Philips was simply unable to meet these needs; the common, everyday work that she previously provided would not suffice. Starbucks needed strategic leadership. However, Ms. Phillips simply could not meet the task, and she failed by not even attempting to face the challenges ahead.

Ms. Phillips unfortunately become overwhelmed by the challenges presented and her inability and then failure to lead her team during the crisis led to the proper termination of her employment. For example, she froze under pressure, missed meetings, and simply could not provide the strategic leadership that Starbucks needed to handle this national crisis. These inabilities were the ***only*** reason Ms. Phillips was terminated. There is no support for any finding of reverse discrimination in this case much less any support for the clearly erroneous run-away award of $25,600,000, including $25 million in punitive damages.

***So what led to this improper result?*** During the trial, a number of reversible errors occurred that contaminated the case, obstructed the jury from reaching a reasonable outcome and prevented Starbucks from having a fair trial. These errors began at the outset, during jury selection, when the Court did not strike jurors for cause that articulated a personal bias against Starbucks that went beyond mere "hints" of bias. Specifically, during *voir dire*, several jurors

stated outright that they either did not like Starbucks or thought Starbucks was "too political"  *See, e.g.*, Trial Tr. (June 5, 2023), at 75:9-23 ("I feel like they're a little politicized").[3]

The errors continued during Opening Arguments, when Ms. Phillips' counsel made ***false material misrepresentations*** concerning the events surrounding the arrests of Mr. Robinson and Mr. Nelson. These distortions were allowed to pollute the jury pool when this Court refused to allow Starbucks to introduce the video surveillance footage showing that Mr. Robinson and Mr. Nelson were in the store for ***less than three minutes*** into evidence.[4] Despite reviewing the video prior to trial, Ms. Phillips counsel stated that the men were in the store for ***20 minutes*** and refused to leave or made a purchase.  Trial Tr. (June 6, 2023), 33:8-34:6 (emphasis added).  This error was unduly prejudicial to Starbucks.

*Unfortunately, these reversable errors continued* after jury selection and openings throughout the trial and with the jury charge.  The Court erred with its jury charge regarding punitive damages; by allowing lay opinion testimony and failing to provide a comparative evidence instruction:

    1.    <u>**Unsupported Punitive Damages Instruction.**</u>  The jury incorrectly received a punitive damages instruction. Punitive damages were not warranted in this matter,

---

[3] This included comments that Starbucks is "too political," which strikes at the heart of Ms. Phillips' theory – that Starbucks fired her to curry favor with public perception. Allowing a juror who held that view to serve was highly prejudicial and tainted the trial outcome. When a juror displays a "hint" of bias, the use of a peremptory challenge is appropriate. *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554 (1984).  The jurors in this trial, however, displayed actual bias, which should have resulted in an exclusion for cause. *Id.* ("Demonstrated bias in the responses to questions on *voir dire* may result in a juror being excused for cause . . .").  These jurors' non-exclusion necessitated Starbucks to exhaust its peremptory challenges on jurors that should have been excused for cause.

[4] The video is the best evidence of what occurred during the arrests. Fed. R. Evid. 1002; *see Rodriguez v. City of New Brunswick*, No. CV 12-4722(FLW), 2017 WL 6442097, at *2 n.3 (D.N.J. Dec. 18, 2017) ("surveillance videos are the best evidence of what occurred").

since there was no evidence of malice or reckless indifference on the part of Starbucks supporting an award of punitive damages. The instruction constitutes a basis for a new trial. Or, in the alternative, the award of punitive should be vacated because an award of punitive damages ***forty-one (41)*** times the compensatory damages award is unconstitutional.

2.     **Mr. Sykes Lacked Personal Knowledge Into Ms. Phillips' Termination Decision and Was Permitted to Testify about his Opinion as to the Reasons for Ms. Phillips' Separation of Employment.**

Paul Sykes ("Mr. Sykes"), Plaintiff's subordinate and ***star witness*** admitted he had no personal knowledge surrounding the decision to terminate Ms. Phillips' employment: "I was never contacted for any feedback or asked my opinion about [Ms. Phillips'] performance." (Sykes, Trial Tr. June 8, 2023, at 644:5-13; 646:9-18 ("Anything that was specific to [Ms. Phillips], though, [President of Retail of North America, Rossann Williams] didn't talk to me about that.")). However, at trial, the Court allowed him to provide speculative and unfounded opinion testimony concerning the reasons that Starbucks terminated Ms. Phillips' employment. This was an error of law which misled the jury to believe that Mr. Sykes' unsupported opinion testimony constituted direct (or any other) evidence of discrimination. It does not.

3.     **The Court Failed To Provide A Comparative Evidence Instruction.** Given Mr. Sykes' role as a subordinate, the Court erred by failing to instruct the jury on comparator evidence even though Ms. Phillips sought to draw a comparison to prove discrimination.

***Unring the bell.*** Given these manifest errors of law, Starbucks did not receive a fair trial. The bell cannot be un-rung and these errors continue to taint the June 5, 2023 trial. Each individual error alone poisoned the well. However, the cumulative effect of all of these errors came to a head when the jury improperly awarded Ms. Phillips $25,600,000. At this juncture, a new trial is needed.

## II.    ARGUMENT

### A.    Legal Standard

Under Federal Rule of Civil Procedure 59, "[t]he Court may 'grant a new trial on all or some of the issues . . . after a jury trial, for any reasons for which a new trial has heretofore been granted in an action at law in federal court.'" Fed. R. Civ. P. 59(a)(1)(A). The decision to grant a new trial is in the trial court's discretion when necessary to prevent manifest injustice. *Lyles v. Flagship Resort Dev. Corp.*, 371 F. Supp. 2d 597, 602 (D.N.J. 2005). Indeed, "[w]hen a trial judge is convinced that there has been a miscarriage of justice, it is his or her ***duty*** to set aside the verdict." *Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180 (D.N.J. 1992), *aff'd*, 4 F.3d 1153 (3d Cir. 1993) (emphasis added) (citing *Overpeck v. Chicago Pneumatic  Tool Co.*, 634 F. Supp. 638, 639 (E.D. Pa. 1986), *aff'd*, 823 F.2d 751 (3d Cir. 1987)).

Courts in this Circuit have interpreted this rule to require a new trial where the verdict is against the clear weight of the evidence, the damage award was excessive, the trial was unfair and/or substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions. *Lyles*, 371 F. Supp. 2d at 602; *Repa v. Napierkowski*, No. 22-2537, 2023 WL 3034603, at *1 (3d Cir. Apr. 21, 2023) ("Inappropriately admitted evidence improper jury instructions, and a verdict against the weight of the evidence are all acceptable grounds for a new trial.") (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). Further, "[u]nlike with a motion for judgment as a matter of law, the court is allowed to consider the credibility of the witnesses and weigh the evidence." *Lyles*, 371 F. Supp. 2d at 602 (citing *Lightning Lube*, 802

F. Supp. at 1185). As a result, "the standard for granting a new trial is substantially less demanding than that for a judgment as a matter of law." *Id.* at 601-02 (citing 9 Charles Wright & Arthur Miller, *Federal Practice & Procedure* § 2531 at 575-76 (1971)).

In the alternative, as to damages, a "remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Spence v. Board of Educ. of Christina School Dist.,* 806 F.2d 1198, 1201 (3d Cir. 1986) (citing *Kazan v. Wolinski,* 721 F.2d 911 (3d Cir. 1983)) (affirming that "the evidence was too speculative to support a $22,060 award of emotional distress damages"); *Hurley v. Atlantic City Police Dept.,* 933 F.Supp. 396, 423 (D.N.J. 1996) ("A remittitur is in order when a trial judge concludes that a jury verdict is 'clearly unsupported' by the evidence and exceeds the amount needed to make the plaintiff whole, *i.e.*, to remedy the effect of the employer's discrimination.") (citations omitted). Courts have reduced jury awards when the damages award is so large as to seem improbable, even though it may still be possible. *Spence*, 806 F.2d at 1201. Thus, it is the court's responsibility to "review a damage award to determine if it is rationally based" and to order remittitur where it is not. *Williams v. Martin Marietta Alumina, Inc.*, 817 F.2d 1030, 1038 (3d Cir. 1987).

**B.     The Jury Erred By Awarding Punitive Damages, Warranting a New Trial**

**1.     It Was An Error Of Law To Award Ms. Phillips Double Damages**

As an initial matter, as outlined in Starbucks' Motion to Vacate Double Damages (filed concurrently with this Motion), the jury impermissibly awarded Ms. Phillips double damages by allowing her to recover damages for the same alleged conduct on both her Federal and State law claims. Therefore, at a minimum and under well-settled law prohibiting duplicative recovery, her damages award should be halved.

**2.     The Jury Should Not Have Been Instructed on Punitive Damages**

Similarly, for the reasons briefed in Starbucks' Renewed Motion for Judgment as a Matter of Law (filed concurrently with this Motion), the jury should not have been instructed on punitive damages. There is absolutely no evidence that Starbucks engaged in malice or reckless indifference to Ms. Phillips' federally protected rights that require the jury to receive an instruction on awarding punitive damages. As such, doing so constituted an prejudicial error of law and significantly harmed Starbucks, as $25 million in punitive damages would not have been awarded but-for the Court's instruction.

### 3.    The Punitive Damages Award Is Against The Weight Of The Evidence And Is Unconstitutional

Ms. Phillips' punitive damages award of $25,000,000 provides Starbucks the basis for remittitur pursuant to Rule 59(e) because it is grossly excessive in light of the evidence presented at trial and it is so excessive that it violates the Due Process Clause of the Fourteenth Amendment.

Punitive damages may be vacated where the Court determines that "the award is so 'grossly disproportional' to the defendant's conduct as to amount to a constitutional violation." *In re Bayside Prison Litig.*, 331 F. App'x 987, 992-93 (3d Cir. 2009) (quoting *Willow Inn, Inc. v. Public Service Mutual Ins. Co.*, 399 F.3d 224, 230 (3d Cir. 2005); *Blakey v. Cont'l Airlines, Inc.*, 992 F. Supp. 731, 734-35 (D.N.J. 1998) (internal citation omitted). "A remittitur is in order when a trial judge concludes that a jury verdict is 'clearly unsupported' by the evidence and exceeds the amount needed to make the plaintiff whole, i.e., to remedy the effect of the employer's discrimination." *Hurley*, 933 F.Supp. at 423 (citation omitted). "The use of remittitur is committed to [the court's] sound discretion." *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 354 (3d Cir. 2001).   Remittitur of a verdict is warranted where the jury verdict is clearly unsupported by the evidence and exceeds the amount needed to make a plaintiff whole. *Hurley*, 933 F. Supp. at 423. Courts have reduced jury awards when the damages award is so large as to seem improbable, even

though it may still be possible. *Spence v. Board of Educ. Of Christina School Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986). It is the court's responsibility to "review a damage award to determine if it is rationally based" and to order remittitur where it is not. *Williams v. Martin Marietta Alumina, Inc.*, 817 F.2d 1030, 1038 (3d Cir. 1987).

The U.S. Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) concluded that excessive punitive damages awards violate constitutional due process. Relying on *Gore*, the *Campbell* Court held that awards exceeding a single-digit ratio (*i.e.*, 10:1) generally will not satisfy due process, and further opined that even awards exceeding a 4:1 ratio come close to exceeding the line of constitutional impropriety. *Campbell*, 538 U.S. at 425-26. The Third Circuit has applied the standards from *Gore* and *Campbell* in numerous cases. *See, e.g.*, *Jurinko v. Med. Protective Co.*, 305 F. App'x 13, 27–29 (3d Cir. 2008) (remitting punitive damage award from 3.13:1 to 1:1 due to large compensatory damage award); *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 192 (3d Cir. 2007) (remitting punitive damages award from 18:1 to less than 7:1); *In re Bayside Prison Litig.*, 331 F. App'x 987, 993 (3d Cir. 2009) (vacating a 4.5:1 punitive damages award of $200,000); *Inter Medical Supplies, Ltd. v. EBI Medical Systems, Inc.*, 181 F.3d 446, 468 (3d Cir. 1999) (reducing an already remitted punitive damage award from $50 million to $1 million (where the jury awarded over $100 million)). Likewise, the New Jersey Supreme Court expressly adopted the *Gore* standard and has also applied *Campbell* when analyzing NJLAD cases. *See Pritchett v. State*, 256 A.3d 999, 1004, 1015 (2021).

Most importantly, the *Campbell* Court enunciated three "guideposts" for courts to consider when determining whether a punitive damages award is unconstitutionally excessive: "(1) the degree of reprehensibility of the conduct; (2) the disparity between the harm or potential harm

suffered by the plaintiff and its punitive damages award; and (3) the differences between this remedy and the civil penalties authorized or imposed in comparable cases." 538 U.S. at 418 (citing *Gore*, 532 U.S. at 575). Starbucks addresses each guidepost in turn.

   **a.**  **Starbucks' Conduct Was Not Reprehensible as a Matter of Law**

  First, in analyzing the reprehensibility factor, which is considered the "most important indicium of the reasonableness," courts analyze whether:

> (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*CGB Occupational*, 499 F.3d at 190 (quoting *Campbell*, 538 U.S. at 419). Courts are cautioned that cases involving primarily economic damages are subject to greater scrutiny. *Id.* (stating that that economic injuries are "less worthy of large punitive damages awards" compared to physical injuries) (citation omitted).

  Ms. Phillips failed to present any evidence at trial evidencing reprehensible conduct on the part of Starbucks. Ms. Phillips did not allege that she suffered any physical, as opposed to economic harm. As demonstrated below, Ms. Phillips presented no evidence (direct or circumstantial) regarding reverse race discrimination, as such, Ms. Phillips' action relates to the alleged harm caused solely by the termination of her employment, making her purported harm entirely economic.

  Further, Ms. Phillips has offered ZERO evidence of actual malice on the part of anyone involved in the decision to terminate her employment. Specifically, there is no evidence that Ms. Hymes, the decision-maker in Ms. Phillips' termination, harbored a racial bias nor actual malice with respect to Ms. Phillips. Hymes, Trial Tr. (June 7, 2023), at 444:3-6 ("It is actually offensive that that's a question, because the decisions that are made for all 15,000 partners are based on the

behaviors of a partner. It is not based on race."); 444:24-25 ("Never crossed my mind that her skin – whatever is on her skin was – would be a factor in her performance"); 446:10-447:3 ("As I mentioned at the very top of this testimony, the decisions that I made were based on behavior … and in all three of those instances, color of skin had nothing to do with it"); 445:3-9 ("if you want to check my DNA, I am half white and I'm half black. So my evaluation is very balanced. If you're getting to a point where I, as whatever color that I am, evaluating Shannon as to whatever color she is, it's absurd and offensive to think that someone would be fired because of the color of their skin, specifically in this situation.").

Moreover, there was no evidence, nor even speculation, that any Starbucks employee used any racial epithets directed at White employees. Such an utterance might indicate that there was evidence of intentional race discrimination. And, by extension, a rational jury *might* be able to infer at least some level of malice needed to sustain a punitive damages award where clear racial discrimination permeated. Still, even then, to support an award, Ms. Phillips had to present evidence that the intentional malice permeated throughout the Starbucks' organization, not just by and through a single employee. However, Ms. Phillips introduced no evidence that even a single Starbucks employee maintained any level of intentional malice, which is necessary to maintain a punitive damages award. Instead of producing tangible evidence of any alleged malice, Ms. Phillips relied on pieces of circumstantial evidence – or better described as circumstantial *speculation* – which no rational jury could use to support a punitive damages award. There is no single piece of evidence establishing the requisite level of intent nor malice to sustain a punitive damages award.

To the contrary, the record evidence demonstrates that Starbucks terminated Ms. Phillips' employment because she failed to perform the essential functions of her role as Regional Director,

and was unable to demonstrate the strong and strategic leadership required of her. Hymes, Trial Tr. (June 8, 2023), at 523:1-6; 546:1-4 ("I expected her to have solutions for her market specifically. . . . The one that she was in charge of leading."); 584:20-585: ("she should have been helping to create the agenda, opening up the call, setting up the expectations and running the call, facilitating the call. Not that she had to know all the information, but she should be facilitating her team and the group on the call that was in support of this crisis. That's her role as a regional director."). Both Ms. Hymes and Mr. Pinto, former Vice President of Partner Resources (who is White), noted that Ms. Phillips was neither physically nor emotionally present. *See* Pinto, Trial Tr. (June 6, 2023), at 149:22-150:9 ("I had never seen her so stuck and frozen"); *see also* Hymes, Trial Tr. (June 7, 2023), at 409:25-410:6 ("Shannon and I were having conversations because of the way she was showing up in the market, so it wasn't I wanted her out. ***In fact, the conversation evolved when Shannon said: I'm not built for this. I can't do this. This is too complicated for me.*** And so based on those conversations, very shortly after the incident, we started to talk about how to explore options."); 410:18-411:3 ("the day in which we had a broadcast with partners, and Shannon was to -- to lead the conversation with our partners. I think it was at the 34th Street store. And she showed up late. She remained in the corner. Most importantly, Ms. Phillips never took accountability, responsibility, or initiative to solve the issues in the market."); 421:21-422: ("When there are open complaints in your market, our partners are sharing that there are complaints, as a leader you're responsible for closing open complaints in a timely manner. So, the responsibility ultimately lies with the leader").

Clearly, it was not malice, but a genuine failure to perform her duties that resulted in Ms. Phillips' termination. In fact, prior to the April 2018 crisis, when she was not required to show the strategic leadership skills necessary to address a crisis, Ms. Hymes recognized that Ms. Phillips

was a strong performer. Hymes, Trial Tr. (June 7, 2023), at 391:3-6 (" Q. You'd agree with me that up until 2018, so from 2014 to 2018, when you were directly supervising her, that you considered her a strong performer. Correct? A. I did."). This demonstrated that she had no malice or animus towards Ms. Phillips. Other than speculative testimony by a subordinate, non-decision-maker, and some emails by some other subordinates (which should not have been admitted because, as non-decisionmakers, they are not relevant under the business judgment rule), there is no evidence rebutting the legitimate, non-discriminatory reason for Ms. Phillip's separation, let alone evidence supporting any finding of punitive damages in the amount awarded by this jury. Accordingly, the sub-factors regarding reprehensibility weigh in favor of Starbucks and this Court should remit the award.

### b. The Punitive Damages Award Is Not Proportional To The Purported Harm Suffered By Ms. Phillips

Second, the jury award, amounting to a more than *41:1 ratio* between the punitive and compensatory damages, is not proportional to the purported harm Ms. Phillips' suffered, is unconstitutional and so grossly excessive that it must shock the judicial conscience.[1] *See CGB Occupational Therapy, Inc.*, 499 F.3d at 192 ("a double-digit ratio of over 18:1, … immediately 'alerts the court [ ] to the need for special justification.'") (quoting *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 799 (8th Cir. 2004)). Moreover, when compensatory damages are substantial, a lesser ratio can reach the outermost limit of the due process guarantee. *Jurinko v. Med. Protective Co.*, 305 F. App'x 13, 27– 29 (3d Cir. 2008) (citing *Campbell*, 538 U.S. at 425). The constitutional limits set forth in *Gore* and *Campbell* hold true even where *all* the reprehensibility factors are

---

[1] The improper duplicative award does not change the ratio because the amounts awarded were the same.

13

present – though, here, there is no evidence of reprehensibility on the part of Starbucks. *See Campbell*, 538 U.S. at 410.

Additionally, while the jury is permitted to consider the financial state of the defendant, the *Campbell* Court held that the "wealth of a defendant cannot justify an *otherwise* unconstitutional punitive damages award." *Campbell,* 538 U.S. at 427 (emphasis added) (citing *Gore*, 517 U.S. at 585). Thus, the fact that a defendant is a wealthy corporation does not mean that a court is free to disregard the *Campbell/Gore* analysis when determining whether an award is unconstitutional or grossly excessive. Especially here where the only evidence Ms. Phillips presented to support her claim for damages was Starbucks' net worth of $112 billion. Undoubtedly this number impacted the jury in reaching its award of punitive damages given the 41:1 ratio of punitive to compensatory damages.

Third Circuit caselaw provides further guidance for the acceptable ratio of punitive and compensatory damages. In *In re Bayside Prison Litig.*, 331 F. App'x 987, 993 (3d Cir. 2009), the Third Circuit noted that "[w]here compensatory relief is substantial, a large ratio of punitive to compensatory damages is especially likely to be excessive." *Id.* The court further held that ratios of 1:1 and 2:1 comport with constitutional requirements, and found in that case, the ratio of 4.5:1 was too high. *Id.* As such, the court vacated a punitive damages award of $200,000 (when the compensatory damages award was $45,000) and remanded to the district court. *Id.* at 994.

In *Inter Medical Supplies, Ltd.*, 181 F.3d at 446, 468, the court determined that a punitive damages award of $50 million, which was already reduced from $100.6 million following a remittitur, was still excessive. *Id.* at 467. There, the plaintiff was awarded $48 million in compensatory damages. *Id.* at 453. Relying on the guideposts from *Campbell*, rather than the jury's

own subjective determination, the court further reduced the punitive damages to $1 million. *Id*. at 470.

In *Wade v. Colaner*, No. CIV.A. 06-3715-FLW, 2010 WL 5479629, at *30-32 (D.N.J. Dec. 28, 2010), the court found that $4.5 million in punitive damages, when compared to the $500,000 in compensatory damages (a ratio of 9:1) was unconstitutional. While the 9:1 ratio was a single-digit ratio, the court determined that the award still crossed "the line into constitutional impropriety." *Id*. at *31. The court ultimate reduced the punitive damages award to $2 million (a ratio of 4:1). *Id*. at *32.

The foregoing cases are also consistent with Third Circuit rulings that predate *Gore* and *Campbell*. *See, e.g.*, *Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558, 565 (3d Cir. 1989) (finding that punitive damages constituting a ratio of 8.9:1 compared to compensatory damages was too high and remanding the case for a new trial to ensure the jury was instructed that the punitive damages must be "reasonably related" to the compensatory damages)..[2]

In light of the fact that the degree of reprehensibility factors weigh in favor of Starbucks and the fact that Ms. Phillips received a substantial compensatory damages award for the total amount of her alleged damages, the Court should vacate, or at minimum substantially remit the punitive damages award. If the Court chooses to remit the punitive award, that reduction should take into account other necessary reductions based on the improper duplicative award and the excessiveness of the compensatory damages award. In other words, the Court must first make the

---

[2] New Jersey courts interpreting the NJLAD have reached similar conclusions. *See, e.g.*, *Saffos v. Avaya Inc.*, 16 A.3d 1076, 1090-91 (N.J. Super. 2011) (holding that the 5:1 ratio was sufficient in a LAD age discrimination where the employer (worth $4 billion) targeted older employees for elimination); *Baker v. Nat'l State Bank*, 801 A.2d 1158, 1166 (N.J. Super. 2002)(affirming the remittitur of a punitive award from a 14:1 ratio to a 6:1 ratio); *Maiorino v. Schering-Plough Corp.*, 695 A.2d 353, 371 (N.J. Super. 1997) (remanding the case for a new trial where the ratio of punitive to compensatory damages was more than 18:1).

appropriate reductions to the award based on those arguments and then assess the further reductions based on the arguments in this section of the brief.

### c.   The Punitive Damages Award Is Not Consistent With Civil Penalties In Similar Cases

The last *Campbell* factor requires that the court consider the difference between the punitive damages awarded and the civil penalties. As demonstrated in the Section above, the weight of the caselaw demonstrates that the jury's astronomical award, let alone ratio, is not consistent with similar penalties. As such, Starbucks requests that the Court either grant a new trial, vacate punitive damages entirely, or, at minimum, remit the punitive damages so as not to violate Starbucks' Constitutional Due Process rights. *See Blakey*, 992 F. Supp. at 738, 742 (D.N.J. 1998) ("A jury has very broad discretion in measuring damages; nevertheless, a jury may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket. There must be a rational relationship between the specific injury sustained and the amount awarded.") (citing *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 773 (3d Cir. 1987)). Here, the jury's verdict cannot be supported by the record evidence in this case, especially when compared to other cases in this Circuit. The amount is so disproportionate to the alleged injury as to shock the judicial conscience and constitute a manifest injustice.[3]

---

[3] This Court should reduce the award of $600,000 in compensatory damages (or $300,000 after accounting for Ms. Phillips' impermissible double recovery) for Ms. Phillips because the record evidence does not support this award. Ms. Phillips offered little to no evidence demonstrating mental or emotional distress that would support an award of compensatory damages. *See, e.g.*, *Jackson v. Consolidated Rail Corp.*, 538 A.2d 1310 (N.J. Super. 1988) (ordering a new trial where the jury awarded $600,000 in compensatory damages for racial discrimination); *Catalane v. Gilian Instrument Corp.*, 638 A.2d 1341, 1353 (N.J. Super. 1994) (ordering a new trial because $250,000 emotional distress damages in an age discrimination case "shocked the conscience of the court"); *Hurley*, 933 F. Supp. at 423 ("Awards for emotional distress in discrimination cases under §1983, §1981 and Title VII rarely come close to $575,000 and typically are for less than $50,000.").

16

## C.     The Court Should Not Have Allowed Mr. Sykes To Testify About Matters That He Had No Personal Knowledge

This Court erred by allowing Mr. Sykes – Ms. Phillips' former subordinate – to offer his entirely speculative and unfounded opinion testimony concerning the reasons that Starbucks terminated Ms. Phillips' employment. He had no involvement in the decision to terminate Ms. Phillips' employment and, therefore, had no first hand, personal knowledge of the decision-making process. As such, he lacked any permissible basis to offer an opinion.

Federal Rule of Evidence 602 provides: "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; *see also Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 847–48 (10th Cir. 1979) ("There is uniformity among the courts that the testimony of witnesses . . . is admissible if predicated upon concrete facts within their own observation and recollection that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts."). For a lay witness to have personal knowledge concerning the matter it is testifying about, courts consider: "what the person was told directly, what he was in a position to see or hear, what statements he himself made to others, conduct in which he engaged, and what his background and experience were." *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992).

Lay opinion testimony is greatly restricted and is only admissible if it is:

(a) Rationally based on the witness's perception;

(b) Helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) Not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid 701 *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1202 n.16 (3d Cir.

1995) ("[T]he opinion of a lay witness must be based on his or her personal firsthand perception.").

As such, when a witness does not "meet any one of the three foundational requirements, it should

not be admitted." *van de Kamp v. Transdermal Specialties, Inc.*, No. 16-CV-02768, 2018 WL

6614823 at *2 (E.D. Pa. Dec. 17, 2018) (citing *United States v. Fulton*, 837 F.3d 281, 291 (3d Cir.

2016)); *see also McCrary v. New Jersey Transit Rail Operations, Inc.*, No. CIV.A. 05-88 (DMC),

2008 WL 2885872, at *5 (D.N.J. July 23, 2008) (citing *Gov't of the V.I. v. Knight*, 989 F.2d 619,

629 (3d Cir. 2003)). These foundational requirements are carefully designed to exclude lay opinion

testimony that 'amounts to little more than choosing up sides, or that merely tells the jury what

result to reach.'" *United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016)*.* Importantly, opinion

evidence must be barred "when its primary value is to dictate a certain conclusion." *Id.*

### 1.     As A Non-Decisionmaker, Mr. Sykes' Testimony Regarding Ms. Phillip's Termination Was Speculative And, Therefore, Inadmissible

It was a harmful error and abuse of discretion to allow Mr. Sykes to offer his opinion

testimony, which amounted to unsupported speculation concerning his separation and Ms.

Phillips' separation. *See Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 228 (3d Cir. 2008) (granting

a motion for a new trial where the "verdict turned on the very issue as to which [the witness] was

permitted to give improper lay opinion testimony" because "the jury quite possibly could have

believed that [witness's] opinion was 'evidence' relevant to its inquiry and may have relied on the

opinion in reaching its verdict.").

Rules 602 and 701 work to prevent a lay witness' speculative testimony. *See, e.g.*, *Wood

v. Devs. Diversified Realty Corp.*, No. CIV.A. 04-CV-5563, 2006 WL 456303, at *2 (E.D. Pa. Feb.

23, 2006) (prohibiting a non-eyewitness to testify as to his opinion of how an incident occurred

because it is "mere speculation"); *see, e.g. Jacobs v. Gen. Elec. Co.,* 275 Conn. 395, 405, 880 A.2d

151, 158–59 (2005) (Holding that opinion testimony of two employees who were not part of the

termination decision of plaintiff was mere speculation); *Baines v. Corecare Behavioral Health Mgmt., Inc.*, No. CV 21-2419, 2023 WL 1102339 (E.D. Pa. Jan. 30, 2023) (finding Plaintiff's own testimony that her belief in discrimination was her belief that she was "older" amounted to speculation and was "insufficient to meet the first and second prongs of the Rule 701 test"); *Miller v. Tyco Elecs., Ltd.*, No. 1:10-CV-2479, 2012 WL 5509710, at *6 (M.D. Pa. Nov. 14, 2012) (finding a witness's testimony to his belief as to why the Plaintiff was terminated were "inadmissible lay opinions" because were not "based on his own perceptions"); *see, e.g., Miller v. Tyco Elecs., Ltd.*, No. 1:10-CV-2479, 2012 WL 5509710, at *6 (M.D. Pa. Nov. 14, 2012) (finding a witness's testimony to his belief as to why the Plaintiff was terminated were "inadmissible lay opinions" because were not "based on his own perceptions"); *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("'It is the ***perception of the decision maker which is relevant***,' not the self-assessment of the plaintiff.") (emphasis added); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 235 (4th Cir. 1991) ("That plaintiff's coworkers "may have thought that [she] did a good job, or that [she] did not 'deserve' [to be discharged], is close to irrelevant.").

In *Village of Freeport v. Barrella*, the Second Circuit ordered a new trial because the district court impermissibly allowed the jury to hear non-decisionmakers' speculative testimony. 814 F.3d 594, 611-13, 617 (2d Cir. 2016). There, a White police officer sued the Village of Freeport and its former mayor under Section 1981, Title VII and the New York State Human Rights, alleging racial discrimination. *Id*. at 599. In support of his position, plaintiff relied on lay opinion testimony of non-decisionmakers who "speculated as to [defendant's] reasons for not appointing [plaintiff]." *Id.* The Second Circuit found this testimony to be "an abuse of discretion" because the witnesses testified that the decisions were based on race, even though they had no personal knowledge to the decisions or processes.  *Id*. at 612; *see also Hester v. BIC Corp.*, 225

F.3d 178, 179 (2d Cir. 2000) (finding reversible error where the district court allowed four employees to testify to a termination decision they did not have firsthand knowledge of); *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 228 (3d Cir. 2008) (granting a motion for a new trial where the "verdict turned on the very issue as to which [the witness] was permitted to give improper lay opinion testimony" because "the jury quite possibly could have believed that [witness's] opinion was 'evidence' relevant to its inquiry and may have relied on the opinion in reaching its verdict.").

At trial, Mr. Sykes testified that he did ***not*** have any first-hand knowledge of Starbucks' decision to terminate Ms. Phillips's employment. He did not participate nor was he present in any manner in the decision to terminate Ms. Phillips' employment. Sykes, Trial Tr. (June 8, 2023), at 644:5-8 ("I was never contacted for any feedback or asked my opinion about [Ms. Phillips'] performance. So only in those incidents would I have provided feedback, but that never happened."); 644:17-18 ("Anything that was specific to Shannon, though, [former-President of Retail for North America, Rossann Williams] didn't talk to me about that."). Therefore, the introduction of Mr. Sykes' opinion testimony misled the jury because it led them to the mistaken assumption that his opinions arose from some special insight into the decisions made by Starbucks – which they did not. The introduction of Mr. Sykes' testimony as a non-decision-maker about his opinion of Ms. Phillips' termination only served to confuse the issue, misled the jury, and was unduly prejudicial to Starbucks. Therefore, it was an error of law to allow him to offer his prejudicial speculative testimony concerning the decision to terminate Ms. Phillips.

### 2.    Mr. Sykes' Testimony Is Also Inadmissible Under Rules 402 and 403

As argued in Starbucks' motion in *limine* (ECF 119-1), Mr. Sykes' testimony should have also been excluded under Fed. R. Evid. 402 and 403 due to the high likelihood that his testimony as to Ms. Phillips' termination would confuse the jury, which clearly happened during the trial. Not only did the Court permit Ms. Phillips' counsel to question Mr. Sykes regarding a decision he

was not present for nor had any insight into, but counsel also replayed lengthy amounts of his testimony during closing arguments in order to confuse the jury that his beliefs as to her termination were somehow evidence of discrimination.  As such, even if the Court agrees that the proper foundation was laid for Mr. Sykes' lay opinion, his testimony as to Ms. Phillips' termination should have been barred under Fed R. Evid. 602 and 701 as speculative, but also under Fed. R. Evid. 403 given the prejudicial nature of the testimony.

For the foregoing reasons, the admission of Mr. Sykes' improper opinion testimony was a prejudicial error of law that requires that Starbucks receive a new trial.

### D.    The Jury Should Have Received An Instruction On Comparator Evidence

As this Court recognized when it denied Starbucks' summary judgment motion, "whether comparators are similarly situated is generally a question of fact for the jury." *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 542 (D.N.J. 2022) (quoting *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014)). As such, the Court erred by failing to provide the jury an instruction on comparator evidence.  By failing to do so, it misled the jury into believing that Mr. Sykes and former-DM Ben Trinsey ("Mr. Trinsey") are appropriate comparators – despite the fact that neither were similarly situated to Ms. Phillips. *See, e.g.*, *Moussa v. Commonwealth of Pennsylvania Dep't of Pub. Welfare*, 289 F. Supp. 2d 639, 663-64 (W.D. Pa. 2003) (granting a motion for a new trial where the comparator instruction was "too vague, failed to identify any appropriate comparators, and allowed the jury to consider evidence relative to improper comparators.").

Ms. Phillips brought a disparate treatment case based on circumstantial evidence. Given the absence of direct evidence supporting her claims (such as statements by decision-makers expressing a discriminatory motive), Ms. Phillips had to introduce circumstantial evidence demonstrating that "but for" her race, her employment would not have been terminated. *See*

21

*Henson v. U.S. Foodservice,* No. CIV. 11-1809 JBS/KMW, 2013 WL 6080359, at *7 (D.N.J. Nov. 19, 2013), *aff'd sub nom. Henson v. U.S. Foodservice, Inc.*, 588 F. App'x 121 (3d Cir. 2014) (explaining that absent direct evidence, the plaintiff must present circumstantial evidence that satisfies *McDonnell Douglas*); *Pierce v. PECO Energy Co.*, No. CV 19-4073, 2021 WL 4458955, at *4 (E.D. Pa. Sept. 29, 2021) (same). In an attempt to meet her burden, Ms. Phillips relied on evidence put forth by her ***star witness*** – Mr. Sykes – that his purported resignation (or forced departure that included a $50K severance) and the termination of Mr. Trinsey are evidence supporting her claims (i.e. comparator evidence). Ms. Phillips relied on Mr. Sykes to support her false claim that purported similarly situated employees outside of her protected class were treated more favorably. *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014). It was improper for Ms. Phillips to rely on the claim that Mr. Sykes was not terminated following the arrests of Mr. Nelson and Mr. Robinson, but Mr. Trinsey was terminated, as evidence supporting her reverse race discrimination claim. Mr. Sykes and Mr. Trinsey – as Ms. Phillips' subordinates – are not similarly situated to Ms. Phillips.

### 1.      Mr. Sykes and Mr. Trinsey Are Not Similarly Situated to Ms. Phillips

It is well settled that, to establish that Starbucks treated a similarly-situated employee outside of their protected class more favorably, Ms. Phillips must show that her situation and that of her putative comparator was similar in all relevant respects. *See Opsonic v. Norfolk S. Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009). To meet this standard, "the comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second guessing employers' reasonable decisions and confusing apples with oranges." *Mathews v. Hermann*, Civil Action No. 07-01318, 2008 U.S. Dist. LEXIS 35726, *27 (E.D. Pa. Apr. 30, 2008) (quoting *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)). That determination "takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers,

and the nature of the misconduct engaged in." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). Critically, "employers are permitted to hold employees in leadership positions to higher standards and such ***higher-ranked employees are not 'similarly situated' to their subordinates.***" *Outten v. Genesis Health Care, LLC*, Civ. A. No. 13-4708, 2014 WL 3964918, at *7 (E.D. Pa. Aug. 12, 2014) (emphasis added) (citing *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 306 (3d Cir. 2004)).

At trial, Mr. Sykes testified about the vast differences between Ms. Phillips' duties compared to his own. He testified that he oversaw approximately 240 employees and managed a budget of around $13 to $15 million. Sykes, Trial Tr. (June 8, 2023), at 639:18-641:16. Meanwhile, Ms. Phillips oversaw approximately 2,000 employees and a budget between $125 to $150 million. *Id.* Further, Mr. Sykes testified that as a Regional Director, Ms. Phillips would have more direct sight lines with Starbucks leadership and that "she would have a broader perspective in terms of what she would see across the enterprise than [himself]." *Id.* at 641:21-642:8. Most importantly, Ms. Phillips as a Regional Director ***directly supervised*** Mr. Sykes—therefore, he cannot be her comparator. Phillips, Trial Tr. (June 7, 2023), at 307:9-12. *See, e.g.*, *Monaco*, 359 F.3d at 306 (holding "the eight vice presidents/branch managers whom [the plaintiff] directly supervised" were not similarly situated to the plaintiff); *Braddock v. SEPTA*, Civ. A. No. 13-06171, 2014 WL 6698306, at *4 (E.D. Pa. Nov. 25, 2014) (holding that plaintiff's putative comparators "were not similarly situated to plaintiff because they were his own subordinates."); *Osuala v. Community College of Phila.*, No. CIV. A. 00-98, 2000 WL 1146623, at *7 (E.D. Pa. Aug. 15, 2000), *aff'd,* 259 F. 3d 717 (3d Cir. 2001) (holding "[a]llegations about the failure of [employer] to discipline [plaintiff's subordinates] are inapposite" because employees cannot be similarly situated to their supervisors), *aff'd*, 259 F.3d 717 (3d Cir. 2001).

23

Moreover, even if the Court were to find that Mr. Sykes was a comparator – which he is not – Ms. Phillips cannot prove that he was treated more fairly as a result of his race. Although Mr. Sykes denies that he was terminated, he admits that he separated from Starbucks only ***two months*** after the arrests of Mr. Nelson and Mr. Robinson. Sykes, Trial Tr. (June 8, 2023), at 638:20-639:9 ("Q. When you left in June of 2018, you received a package did you not? A. I did, yes. Q. And that's a severance package? A. Yes."). Mr. Sykes also admits that Starbucks gave him a $50,000 severance package when he left the company. *Id.* at 638:20-639:9. Therefore, Mr. Sykes met the same fate as Ms. Phillips just a few weeks later, and he was separated from Starbucks despite being a Black employee.

As such, this Court erred by failing to provide a jury instruction educating the jury on whether, under the law, Mr. Sykes and Mr. Trinsey may be treated as a comparator – which they should not have been.

### 2.    Failing to Provide a Comparator Instruction Greatly Prejudiced Starbucks

In the Third Circuit, "improper jury instructions … [is an] acceptable ground[] for a new trial." *Repa v. Napierkowski*, No. 22-2537, 2023 WL 3034603, at *1 (3d Cir. Apr. 21, 2023). A new trial is warranted where "the instructions, *taken as a whole*, 'fail[ ] to 'fairly and adequately' present the issues in the case without confusing or misleading the jury." *Ponzini v. Monroe Cnty.*, 789 F. App'x 313, 316 (3d Cir. 2019) (emphasis in original) (quoting *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 79 (3d Cir. 2009)). An error in the jury instruction is only considered harmless where, "there is a 'high probability' that the discretionary error did not contribute to the verdict." *Id.* at 317. *See, e.g., Moussa*, 289 F. Supp. 2d at 663-64  (granting a motion for a new trial where the comparator instruction was "too vague, failed to identify any appropriate comparators, and allowed the jury to consider evidence relative to improper comparators.").

24

Here, by failing to provide the jury an instruction on what constitutes comparator evidence, the jury was misled into believing that Mr. Sykes and Mr. Trinsey were comparators – even though neither are similarly situated to Ms. Phillips. There is no way for a jury to be aware of the legal limitations courts have placed on comparator evidence unless the court educates them on these legal limitations through its jury instructions. This failure to include the comparator evidence instruction was an error of law because it confused the jury and led to the mistaken assumption that Mr. Sykes and Mr. Trinsey's separations should be treated as circumstantial evidence in support of Ms. Phillips' claims – which they should not have been. Accordingly, Starbucks should be granted a new trial.

### E.    The Cumulative Effect Of All These Errors Requires That Starbucks Receive A New Trial

Although the errors discussed above individually warrant a new trial, the cumulative effect the errors even more severely prejudiced Starbucks, impaired and prevented Starbucks from presenting an adequate defense, and requires that Starbucks receive a new trial. *See, e.g. Twp. of Bordentown, New Jersey v. FERC*, 903 F.3d 234 (3d Cir. 2018).  In addition to these errors, the Court may also grant a new trial because the manifest weight of the evidence demonstrate no reverse racism occurred, as argued in detail below.

### F.    The Reverse Race Discrimination Verdict Is Against The Manifest Weight Of The Evidence

As Starbucks sets out in detail in its Renewed Motion for Judgment as a Matter of Law, there is a complete absence of evidence – both circumstantial and direct – of reverse race discrimination to support the jury's verdict. Even if the Court finds *some* evidence to support the verdict, the jury's finding nevertheless is against the great weight of the evidence. Much of the following tracks Starbucks' argument as to judgment as a matter of law. The point here is not to

be repetitive but to ask the Court to view the evidence and arguments through the standard for a new trial even if it declines to grant judgment as a matter of law.

> **1.      Ms. Phillips Brought A Disparate Treatment Case Based On Circumstantial Evidence Case**

Individual disparate treatment cases generally occur where an employer has "treated [a] particular person less favorably than others because of" a protected trait. *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 985–986, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988); *Kim-Foraker v. Allstate Ins. Co.*, 834 F. Supp. 2d 267, 276 (E.D. Pa. 2011). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

Ms. Phillips must sustain her individual disparate treatment claims by presenting either: (a) direct evidence of discrimination; (b) circumstantial evidence of discrimination under the pretext framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or (c) direct or circumstantial evidence under the mixed motive framework set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *Kim-Foraker v. Allstate Ins. Co.*, 834 F. Supp. 2d 267, 276 (E.D. Pa. 2011).

As demonstrated below, Ms. Phillips' claims can ***only*** be analyzed under the second prong – purporting to provide circumstantial evidence under a pretext theory – because there is ***no*** direct evidence of discrimination. Moreover, at trial, Ms. Phillips presented no circumstantial evidence (or any evidence) of discrimination.

> *a.      There Is No Direct Evidence Of Discrimination*

Ms. Phillips failed to offer any direct evidence of discrimination at trial. No decisionmaker displayed any outward discriminatory animus to Ms. Phillips because she is White.  Therefore, a

rational juror could not – and should not – have directly connected the decision to terminate Ms. Phillips to her race.

Direct evidence is "evidence of discriminatory attitudes about . . . race that were causally related to the decision to fire Plaintiff." *Henson v. U.S. Foodservice*, No. CIV. 11-1809 JBS/KMW, 2013 WL 6080359, at *7 (D.N.J. Nov. 19, 2013), *aff'd sub nom. Henson v. U.S. Foodservice, Inc.*, 588 F. App'x 121 (3d Cir. 2014) (internal quotation omitted) (quoting *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 512 (3d Cir. 2004)). Direct evidence of discrimination includes "statements or actions **by plaintiff's supervisors** suggesting racial animus." *Varughese v. Robert Wood Johnson Med. Sch.*, No. CV1602828FLWLHG, 2017 WL 4270523, at *6 (D.N.J. Sept. 26, 2017) (citations omitted) (emphasis added). Indeed, "proving discrimination using direct evidence presents a 'high hurdle,' and requires a plaintiff to present evidence that decision-makers placed substantial negative reliance on an illegitimate criterion . . . in reaching their decision." *White v. Camden City Bd. of Educ.*, 251 F. Supp. 2d 1242, 1246 (D.N.J. 2003), *aff'd*, 90 F. App'x 437 (3d Cir. 2004). "Such evidence 'leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it' when [they] made the challenged employment decision." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338–39 (3d Cir. 2002) (quoting *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1097 (3d Cir. 1995)).

Here, the record is devoid of evidence demonstrating that the decision-makers had a racially discriminatory animus or bias towards White employees. At trial, the decision-makers testified consistently that they did not consider race in making the decision to terminate Ms. Phillips's employment. Camille Hymes (Black), Regional Vice President of Operations – who was involved in the decision to terminate Ms. Phillips' employment and was Ms. Phillips' supervisor – testified at trial:

A. As I mentioned at the very top of this testimony, the decisions that I made were based on behavior. Based on behavior of whether or not these leaders specifically could manage our partners through a crisis, if they were making the proper decisions, had ownership and accountability, that they were able to address the partners' needs and that they were actually showing up in the way in which our partners were asking. And in all three of those instances, color of skin had nothing to do with it. And as we sit here today, five years later, again, there is a lack of accountability in terms of what was going on in that market and the conversation today is about the color of someone's skin. It is offensive.

Q. Okay. How about with the higher-ups in Starbucks that you were talking to? You identified Zeta, Rossann, Frisch, Nathalie, Paul Pinto. When you're having these conversations with them about firing Shannon in this climate, the idea she was white and being fired in the aftermath of April 12th, was never something that was ever discussed?

A. A hundred percent, her race was never a part of the conversation. Whether or not it would be a risk to the organization or not, it was behavior. The conversation around race never came up. For Paul or anyone else. I lead 15,000 partners. The leaders that were at Shannon's level, I had six directors. Jen Pivarnik, white female. Shannon Phillips, white female. Marcus Eckensberger, white male. TJ Wolfersberger, white male. Phillip Laws, black male. I'm missing one. I think that's all of them. When Shannon was separated, terminated, however you would like to phrase it, the replacement for Shannon were two white Americans.

Trial Tr. (June 7, 2023), at 446:-447:22.

However, the Court incorrectly held that Mr. Sykes' speculative opinion testimony concerning matters he had no personal knowledge of constituted direct evidence. Trial Tr. (June 9, 2023), at 676:11-13 ("with Mr. Sykes's testimony, perhaps, [there is] direct evidence of race discrimination.").[4] As expounded upon above in Section II.C, Mr. Sykes was not involved in the termination decision-making process. Therefore, his testimony cannot constitute direct evidence because it does not show discriminatory animus by those making the separation decision. *See*

---

[4] Notably, during the summary judgement stage, this Court recognized that there was no direct evidence in this case and analyzed Ms. Phillips' claims entirely under the burden-shifting framework established in *McDonnell Douglas*. *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 539 (D.N.J. 2022). The evidence presented at the summary judgment stage and trial has not changed, and just as in the summary judgment stage, Ms. Phillips has presented no direct evidence of discrimination.

Sykes, Trial Tr. (June 8, 2023), at 643:6-644:8 ("I was never contacted for any feedback or asked my opinion about her performance. …Q. Understood. Because they had not asked you specific feedback about her performance, but you do not have visibility into what kind of feedback they were getting above you. Correct? A. That's correct, yes."). As a non-decisionmaker, his statements purporting to suggest racial animus should be entirely disregarded because he was not Ms. Phillips' supervisor. *See Varughese*, No. CV1602828FLWLHG, 2017 WL 4270523, at *6.

As such, his testimony was based on nothing more than speculation and his completely unfounded personal beliefs, which does not constitute direct evidence of discrimination.

> **b.**   ***Ms. Phillips Failed to Offer Circumstantial Evidence Of Reverse Race Discrimination***

At trial, Ms. Phillips also failed to offer circumstantial evidence to support her reverse race discrimination claim. In the absence of any other evidence that could constitute circumstantial evidence, Ms. Phillips needed to prove she was treated differently than "similarly situated employees." *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658 (E.D. Pa. 2016), *clarified on denial of reconsideration*, No. 12-CV-5567, 2016 WL 6135577 (E.D. Pa. Oct. 21, 2016), *aff'd*, 769 F. App'x 57 (3d Cir. 2019), *and aff'd*, 769 F. App'x 57 (3d Cir. 2019). The only circumstantial evidence Ms. Phillips' provided was the Starbucks' treatment of Mr. Sykes (Black) and Mr. Trinsey (White), which as explained at length above in Section II.D, was improper and caused confusion to the jury. In order to use the departures of Mr. Sykes and/or Mr. Trinsey as evidence to support Ms. Phillips' claims, she had to show that they are comparators – that they are similarly situated to Ms. Phillips. *See Opsonic v. Norfolk S. Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009) (finding that "purported comparators could not be used for the purpose of demonstrating pretext because those employees were not similarly situated to [Plaintiff]. While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant

respects.'"). However, Ms. Phillips cannot do so because they are Ms. Phillips' subordinates who ultimately met the same fate as Ms. Phillips: separation from Starbucks. Accordingly, Ms. Phillips offered no circumstantial evidence to support her reverse race discrimination claim.

> **c.     Because Ms. Phillips Was Ultimately Replaced By Two White Employees, There Is Not Even an Inference of Racial Discrimination**

Finally, the evidence presented at trial was that the individuals who replaced Ms. Phillips – Mr. Eckensberger (White) and Linda Johnson (White) – are the ***same race*** as Ms. Phillips (White).

***Categorically***, where a plaintiff is the same race as their replacement, courts have held that no racial animus existed.[5] *See Allia v. Target Corp.*, No. CIVA07-4130 NLHAMD, 2010 WL 1050043, at *5 (D.N.J. Mar. 17, 2010) (granting summary judgment where plaintiff was replaced by someone of the same race); *Preston v. Vanguard Group, Inc.*, No. 14-7243, 2015 WL 7717296, at *11-12 (E.D. Pa. Nov. 30, 2015) (granting summary judgment on §1981 discrimination claim where plaintiff had no evidence of discrimination other than her own subjective beliefs and could

---

[5] Starbucks has found over ***seventy (70) cases*** where courts found a lack of racial animus where a plaintiff alleging race discrimination was replaced by someone of the same race. In all of these cases, the Court granted summary judgment, even under the summary judgment standard where all inferences should be made in favor of the nonmoving party. *See, e.g. Mercado v. Wells Fargo*, No. CV 15-4086 (KM-MAH), 2017 WL 4862417, at *8 (D.N.J. Oct. 27, 2017) (granting summary judgment where "[a]ll three plaintiffs were replaced, and their replacements were of precisely the same racial/ethnic mix as the plaintiffs."); *Williams v. Greyhound Lines Inc.*, No. CIV. A. 97-6997, 1998 WL 551981, at *4 (E.D. Pa. Aug. 11, 1998), *aff'd*, 203 F.3d 818 (3d Cir. 1999) (granting summary judgment on a race discrimination claim, where employee was replaced by another African-American male); *Thomas v. Ethicon, Inc.,* No. CIV. A. 93-3836, 1994 WL 171345, at *6 (E.D. Pa. May 5, 1994) ("Because plaintiff's replacement was another [B]lack [employee], he has no evidence tending to show that non-members of a protected class were treated more favorably than he was."); *Boykins v. CLBW Assocs.*, No. CIV. A. 11-6126, 2013 WL 6506309, at *8 (E.D. Pa. Dec. 11, 2013) (same); *Maietta v. United Parcel Serv., Inc.*, 749 F. Supp. 1344, 1372 (D.N.J. 1990), aff'd, 932 F.2d 960 (3d Cir. 1991) (granting summary judgment where employer stated they hired another Italian male to replace Plaintiff).

not show she was replaced by someone outside her protected class); *Boykins v. CLBW Assocs.*, No. CIV. A. 11-6126, 2013 WL 6506309, at *8 (E.D. Pa. Dec. 11, 2013) (holding African-American plaintiff failed to establish *prima facie* case of race discrimination to overcome employer's motion for summary judgment because plaintiff ultimately was replaced by another African-American employee).

At trial, Ms. Phillips admitted that Starbucks replaced her with a White male and White female – Mr. Eckensberger and Ms. Johnson. Phillips, Trial Tr. (June 6, 2023), at 362:16-363:11.  Not only did the evidence at trial demonstrate that Starbucks replaced Ms. Phillips by individuals of the same race, the evidence also demonstrated that these individuals – in particular, Mr. Eckensberger – were selected specifically because of their skills in handling crisis situations. *See* Joint Trial Ex. 90 ("get Marcus in as quickly as possible based on his experience in crisis situations."). Mr. Eckensberger demonstrated the crisis management skills were the very skills that the decision-makers continue to maintain that Ms. Phillips lacked in her leadership following the April 2018 crisis.

     **2.**     **The Great Weight Of The Evidence Demonstrated That Starbucks Terminated Ms. Phillips' Employment Because Of Her Lack Of Strategic Leadership Skills Required To Lead Starbucks Through The Crisis**

The manifest weight of the evidence presented at trial demonstrated that Starbucks terminated Ms. Phillips' employment because of her lack of strategic leadership skills, which were necessary to lead Starbucks through the crisis following the arrests of Mr. Nelson and Mr. Robinson.

At trial, each and every Starbucks decision-maker (all of whom no longer work for Starbucks and, thus, had no arguable bias in favor of Starbucks) testified consistently that Starbucks terminated Ms. Phillips' employment because she failed to demonstrate the strong and

strategic leadership required of a Regional Director following the April 2018 arrests. As Regional Director, Ms. Phillips was expected to play a key role in leading those changes. Hymes, Trial Tr. (June 8, 2023), at 523:1-6; 546:1-4 ("I expected her to have solutions for her market specifically. . . . The one that she was in charge of leading."); 584:20-585: ("she should have been helping to create the agenda, opening up the call, setting up the expectations and running the call, facilitating the call. ***Not that she had to know all the information, but she should be facilitating her team and the group on the call that was in support of this crisis. That's her role as a regional director***.").

Nevertheless, Mr. Pinto noted that Ms. Phillips was neither physically nor emotionally present. Pinto, Trial Tr. (June 6, 2023), at 149:22-150:9 ("I had never seen her so stuck and frozen"). Ms. Hymes also testified that Ms. Phillips was overwhelmed, and the partners in the Philadelphia region did not trust Ms. Phillips to lead them through the crisis. Hymes, Trial Tr. (June 7, 2023), at 409:25-410:6 ("Shannon and I were having conversations because of the way she was showing up in the market, so it wasn't I wanted her out. In fact, the conversation evolved when ***Shannon said: I'm not built for this. I can't do this. This is too complicated for me.*** And so based on those conversations, very shortly after the incident, we started to talk about how to explore options."). Ms. Hymes also noticed that Ms. Phillips appeared disengaged and stood in the corner at meetings where she was expected to lead or where Starbucks' executive leadership was present. *Id.* at 410:18-411:3 ("the day in which we had a broadcast with partners, and Shannon was to -- to lead the conversation with our partners. I think it was at the 34th Street store. And she showed up late. She remained in the corner. Other leaders had asked if they could assist to initiate the conversation because ***Shannon was not literally present, even though physically, not mentally in the room with our partners during that time***."). Most importantly, Ms. Phillips never took

accountability, responsibility, nor initiative to solve the issues in the market. *Id.* at 421:21-422: ("When there are open complaints in your market, our partners are sharing that there are complaints, as a leader you're responsible for closing open complaints in a timely manner. So the responsibility ultimately lies with the leader. That's why we're still here today five years later talking about accountability. Accountability begins and ends with the leader. So whether it is a complaint from a partner or a complaint from a customer, closure is essential.").

Therefore, the great weight of the evidence demonstrated that Starbucks terminated Ms. Phillips for her lack of strategic leadership skills during a crisis situation.

### 3. Ms. Phillips Lacked Any Evidence Supporting Her Theory Of The Case – That Ms. Phillips Was A "Scapegoat," "Fall Guy," or "Sacrificial Lamb" Much Less that Doing So Constitutes Race Discrimination

No record evidence exists to support Ms. Phillips' theory of her case – that she was a "scape goat . . . sacrificial lamb . . . fall guy" following the arrests of Mr. Nelson and Mr. Robinson at Starbucks' 18th and Spruce Street Store. Trial Tr. (June 9, 2023), at 763:20-21.

Ms. Phillips claimed to be a scapegoat; yet other White DMs in the Philadelphia market kept their jobs. The evidence presented at trial directly contradicted Ms. Phillips' claim that she was a scapegoat because all of the White managers in the Philadelphia Market were terminated after Mr. Nelson and Mr. Robinson's arrests. Mr. Eckensberger testified that *another White DM in the Philadelphia market – Michael Lamborn – was not fired*. Eckensberger, Trial Tr. (June 9, 2023), at 712:16-24. Moreover, although Mr. Sykes testified that he was not fired even though he was the DM over the 18th and Spruce Street Store, he also admitted that he received a $50,000 severance package when he left Starbucks only *two months* after the April 2018 arrests. Thus, putting the question to rest as to whether he "voluntarily" resigned. *Compare* Sykes, Trial Tr. (June 8, 2023), 625:21-626:4 *with id.* at 638:25-639:9. Consequently, Ms. Phillips' claim that all White

leaders in the Philadelphia market were terminated following the arrests, whereas the Black leaders were not, proved completely false at trial.

Ms. Phillips incorrectly and speculatively asserts that "sacrificing" her because of the media controversy constitutes evidence of race discrimination simply because she is White. But even accepting that incorrect premise, Ms. Phillips' theory fell flat when she admitted on the stand that her termination was not publicized and no one knew who Ms. Phillips was:

> "Q. It wasn't public knowledge as to who you were, Ms. Phillips, was it?
>
> A: That's correct."

Phillips, Trial Tr. (June 7, 2023), at 387:18-20.

Ms. Phillips claimed she was a scapegoat; yet it was the store manager ("SM") who called the police, not Ms. Phillips, and it was the SM who was front and center in the media. As Phillips herself testified the public was chanting, "fire the manager, fire the manager, fire the manager," referring to the SM. Phillips, Trial Tr. (June 7, 2023), at 333:20-22. That was the accountability they were seeking—not Ms. Phillips'. If, believing what Ms. Phillips said, there had to be a scapegoat, it was the SM. That was who the public was calling to terminate – not Ms. Phillips. According to Ms. Phillips' own theory, the public got what they wanted – their scapegoat was terminated – the SM. So there would be no need to terminate Ms. Phillips' employment. There was no evidence that anyone in the public called for Ms. Phillips' termination, or even knew who she was. Ms. Hymes summed it up clearly –

> [Ms. Phillip's] focus was primarily on the image of Shannon, what was going to happen to Shannon, and not what was going on with the partners who were in extreme distress. That was a lack of ownership and accountability. There was a victimization mentality that was happening, and it had to be addressed directly, one on one, in person. That was the conversation.

Hymes, Trial Tr. (June 7, 2023), at 412:18-23.

> [Ms. Phillips] was in denial. . . . . there was a separation of ownership and accountability. And so instead of focusing in on the partners and the critical dimensions and the aspects of the partners, it was about her and what -- whether or not her brand was damaged, whether or not there was an opportunity for her to go into a different role. And so when we had all of those conversations, it seemed as if when we were having the separation conversation, that she was very much aware that that conversation was going to happen.

Hymes, Trial Tr. (June 7, 2023), at 437:24-438:10.

> In fact, there was a diversion. There was a persona of victimization of Shannon Phillips and there was not an acknowledgement of the responsibility that was -- that should have been taken when our partners were expressing concern. There were diversions to the concerns. There was an absence of physical presence when those concerns were being expressed.

Hymes, Trial Tr. (June 8, 2023), at 474:5-12.

If Ms. Phillips was a scapegoat for the arrests, then Starbucks would have stated publicly that it terminated her employment. Rather, Starbucks chose to publicize Ms. Phillips' replacement – Mr. Eckensberger (the White Regional Manager who replaced Ms. Phillips). It was Mr. Eckensberger's face that was posted on the front page of the Philadelphia Inquirer the day after Starbucks shutdown 8,000 stores for unconscious bias training.[6] Eckensberger, Trial Tr. (June 9, 2018), at 708:4-14. If Ms. Phillips' termination were part of a "scapegoat" strategy to curry public favor after the incident and that doing so was part of a racially motivated plot, it is non-sensical that Starbucks would highly publicize her White replacement – making him the face of Starbucks' implicit bias training – while leaving her termination confidential. Tellingly, after receiving this testimony at trial, Ms. Phillips' counsel decided to change her case theory during the rebuttal to her closing argument. She now claims that Ms. Phillips was an ***internal*** scapegoat. Trial Tr. (June 9, 2023), 813:8-15. Even still, despite this bottom of the ninth switch, there was no evidence

---

[6] Patricia Madej & Michael Boren, "Starbucks closes stores for anti-racial bias training: Recap" THE PHILADELPHIA INQUIRER (May 29, 2018), https://www.inquirer.com/philly/news/starbucks-stores-closed-racial-bias-training-20180529.html.

presented at trial to support this theory. Starbucks sent out internal releases concerning Mr. Nelson and Mr. Robinson's arrests and Starbucks' response.  None of these releases ever mentioned Ms. Phillips name nor her separation. As such, Ms. Phillips lacks evidence to support the theory that she was a scapegoat – internally or externally.

Ms. Phillips failed to meet her burden to demonstrate any race discrimination. Even if the Court disagrees and denies judgment as a matter of law, the jury's verdict nevertheless is against the weight of the evidence. Therefore, the Court alternatively should grant a new trial.

## III.    CONCLUSION

For the foregoing reasons, Starbucks respectfully requests that the Court grant Starbucks' request for a new trial or, alternatively, to substantially remit the excessive damages award.

Respectfully submitted,

/s/ Richard R. Harris

Richard R. Harris (admitted *pro hac vice*)
Tara Param (NJ Bar ID: 394042023)
Kathleen Princivalle (NJ Bar ID 397722022)
HOLLAND & KNIGHT
2929 Arch Street
Suite 800
Philadelphia, PA 19104
Phone 215.252.9594
Fax 215.867.6070
Mobile 917.309.5752
richard.harris@hklaw.com

Dated: July 13, 2023

tara.param@hklaw.com

*Attorneys for Defendant,*
*Starbucks Corporation d/b/a*
*Starbucks Coffee Company*

36