**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

SHANNON PHILLIPS,                                  :
                                                   :
            Plaintiff,                             :        Civil Action No. 1:19-cv-19432
                                                   :
    v.                                             :
                                                   :        Hon. Joel H. Slomsky, U.S.D.J.
STARBUCKS CORPORATION d/b/a                        :
STARBUCKS COFFEE COMPANY,                          :        **FILED VIA ECF**
                                                   :
            Defendant.                             :
                                                   :

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**REQUEST FOR ECONOMIC LOSS DAMAGES**

Pursuant to this Court's Order dated July 27, 2023 (Dkt No. 173), Defendant Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks"), by and through its attorneys, respectfully submits this Memorandum of Law in Opposition to Ms. Phillips' request for economic loss damages.

## TABLE OF CONTENTS

I.  MS. PHILLIPS: "I DID NOT APPLY"..................................................................1

II.  MS. PHILLIPS PRESENTED NO EVIDENCE THAT SHE IS ELIGIBLE FOR ANY ECONOMIC LOSS DAMAGES.................................................................1

III.  THE COURT SHOULD NOT AWARD MS. PHILLIPS ECONOMIC LOSS DAMAGES.........................................................................................................2

    A.  MS. PHILLIPS HAS NOT SUFFERED ANY LOSS OF EARNING CAPACITY ......................3

    B.  MS. PHILLIPS ALSO ATTEMPTS TO MANUFACTURE DAMAGES WITH SPECULATIVE EVIDENCE REGARDING HER MEDICAL AND STOCK BENEFITS AT RAYMOUR & FLANNIGAN THAT DO NOT WITHSTAND SCRUTINY ..............................6

    C.  MS. PHILLIPS HAS NOT APPLIED FOR ANY JOBS SINCE HER EMPLOYMENT WITH STARBUCKS ENDED AND AS SUCH HAS NOT SUFFERED ANY ECONOMIC LOSS DAMAGES ..............................................................................8

    D.  THE COURT MUST NOT AWARD DUPLICATIVE DAMAGES........................................10

IV.  CONCLUSION ..........................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Booker v. Taylor Milk Co.*,
  64 F.3d 860 (3d Cir. 1995)..................................................................................3, 8

*Donlin v. Philips Lighting North America Corp.*,
  581 F.3d 73 (3d Cir. 2009)......................................................................................3

*Ellis v. Ethicon, Inc.*,
  No. CV 05-726 (FLW), 2009 WL 10641983 (D.N.J. Nov. 13, 2009)................................. 8, 9

*Hare v. Potter*,
  549 F. Supp. 2d 688 (E.D. Pa. 2007) ................................................................. 5, 6

*Lienhard v. CHC Sols., Inc.*,
  No. CV 21-3230, 2023 WL 4237076 (E.D. Pa. June 28, 2023) ...................................3

*McKenna v. Pac. Rail Serv.*,
  817 F.Supp. 498 (D.N.J. 1993) ..............................................................................5

*Tubari Ltd. v. NLRB*,
  959 F.2d 451 (3d Cir. 1992)..................................................................................3, 8

## I.  MS. PHILLIPS: "I DID NOT APPLY"[1]

As a matter of law, Ms. Phillips cannot recover front-pay or back-pay damages because she:

- **completely failed to engage in a meaningful job search** (*see, e.g.*, Damages Hearing Tr. (July 19, 2023), at 16:2-17:14; 24:1-21; 26:16-27:4; 28:16-24);

- **admittedly withdrew from seeking other employment once her colleague at Starbucks referred her the position at Raymour & Flannigan** (*id.* at 29:16-30:15);

- **presented *zero* evidence of any loss of earning capacity** (*id.* 57:8-13); and

- **relies on completely speculative evidence regarding any future benefits** (*see id.* at 13:2-22; 33:3-20; 44:8-15; 82:20-85:12).

Ms. Phillips cannot claim that her damages continue to accrue given that she has made absolutely no effort to secure new employment.  Ms. Phillips also cannot manufacture a loss by claiming she lost earning capacity.  She has failed to present *any* evidence that she could not earn the same (or perhaps even more) in the future and has similarly presented no evidence, beyond her speculation, as to what benefits she may have received had she remained at Starbucks.  Further, given that there is no evidence of intentional discrimination, Starbucks requests that this Court award Ms. Phillips no wage loss damages.  In the alternative, Starbucks requests that this Court limit Ms. Phillips' economic loss award to the difference between what she would have made at Starbucks during the interim period between her termination and the beginning of her employment at Raymour & Flannigan – $78,343.00.  Damages Hearing Tr. (July 19, 2023), at 79:9-20.

## II.  MS. PHILLIPS PRESENTED NO EVIDENCE THAT SHE IS ELIGIBLE FOR ANY ECONOMIC LOSS DAMAGES

On June 12, 2023, despite ***zero evidence*** of racial animus, the jury issued a verdict in favor

---

[1] Damages Hearing Tr. (July 19, 2023) attached hereto as Exhibit 1, at 17:3.

of Ms. Phillips and awarded her $25.6 million in compensatory and punitive damages.[2]  On July

19, 2023, this Court held a hearing on Ms. Phillips's request for economic loss damages.  Dkt Nos.

171-73.   During the hearing, Ms. Phillips and her expert, Stephen J. Scherf, CPA/CFF, CFE,

testified in Ms. Phillips' favor.  In rebuttal, Starbucks called its expert, Howard Silverstone, MBE,

CPA, CFF, FCA, CFE, to testify concerning Ms. Phillips' claim of economic loss damages.

Following the hearing, the Court ordered the parties to brief the issue of Ms. Phillips' purported

economic loss.  *See* Dkt Nos. 172-73.

Ms. Phillips requested an award of $3,040,251.00 in lost wages based on Mr. Scherf's

calculation of her economic loss as the difference between what she would have made at Starbucks,

speculating as to the amount she would receive in bonuses, equity awards, and benefits, and what

she will make at her new employer (Raymour & Flannigan) through to her expected retirement at

age 70.  Damages Hearing Tr. (July 19, 2023), at 50:4-6.  These estimates are flawed because they

assume that Ms. Phillips could not and will not make more than she currently makes at Raymour

& Flannigan, despite the complete lack of evidence to the contrary.  *Id.* at 57:8-13.  Given that Ms.

Phillips withdrew from seeking other employment after securing the position at Raymour &

Flannigan, her damages should be, at the very most, the difference between what she would have

made at Starbucks during the interim period between her termination and her employment at

Raymour & Flannigan – $78,343.00.  *Id.* at 79:9-20.

## III.   THE COURT SHOULD NOT AWARD MS. PHILLIPS ECONOMIC LOSS DAMAGES

Whether a successful plaintiff in an employment discrimination suit is awarded back-pay

---

[2] On July 13, 2023, Starbucks filed three (3) post-trial motions (Dkt Nos. 165, 166, and 167) challenging the jury's verdict and the damages award and moving for judgment as a matter of law or, in the alternative, a new trial.  As of the date of this filing, these motions remain outstanding with this Court.  The present Motion does not alter or amend Starbucks' position as to the outstanding motions.

or front-pay is within the equitable discretion of the trial court judge.  *Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 78 n.1 (3d Cir. 2009); Model Civ. Jury Instr. 3rd Cir. 5.4.3, 5.4.4, 6.4.3, 6.4.4 (2023).  A successful plaintiff has a duty to mitigate her damages.  *See Booker v. Taylor Milk Co.*, 64 F.3d 860, 864 (3d Cir. 1995).  While the statutory duty to mitigate damages is placed on Ms. Phillips, Starbucks has the burden of proving a failure to mitigate.  *See id.* (citing *Anastasio v. Schering Corp.*, 838 F.2d 701, 707-08 (3d Cir. 1988)).  To meet its burden, Starbucks must demonstrate that "1) substantially equivalent work was available, and 2) the … [plaintiff] did not exercise reasonable diligence to obtain the employment."  *Id.*  A defendant is not required to establish the first element of its claim – that substantially equivalent work was available – where a plaintiff made no effort to search for comparable employment.  *See Tubari Ltd. v. NLRB*, 959 F.2d 451, 454, 459 (3d Cir. 1992) (finding evidence of alternative employment "irrelevant where ... the [plaintiff] made no search for comparable interim employment."); *Lienhard v. CHC Sols., Inc.*, No. CV 21-3230, 2023 WL 4237076, at *4 (E.D. Pa. June 28, 2023) ("A withdrawal from the employment market or '[a] willful loss of earnings' has been found where the plaintiff 'has . . . refused to accept comparable employment [or] failed to search diligently for other work . . . .'") (quoting *Holocheck v. Luzerne Cnty. Head Start, Inc.*, No. 04-cv-2082, 2007 WL 954308, at *15 (M.D. Pa. Mar. 28, 2007)).

A.     <u>Ms. Phillips Has Not Suffered Any Loss of Earning Capacity</u>

Ms. Phillips, through her expert, Mr. Scherf, claims she is entitled to over $3 million in wage loss damages based on the entirely unfounded supposition that Ms. Phillips is incapable of ever making a comparable salary as she made at Starbucks.  Indeed, Mr. Scherf claimed he did not do a vocational analysis (Damages Hearing Tr. (July 19, 2023), at 57:8-13), but Mr. Scherf also testified that he took into consideration Ms. Phillips' allegations that "she looked for positions,

[and] she doesn't have a college degree" when making his calculations.  *Id.* at 57:14-58:8. By claiming lack of earning capacity into the future, Mr. Scherf was making an improper vocational opinion, which he is not qualified to make as an economic expert.  *Id.* at 57:8-13 ("Frankly, I'm not qualified to do a vocational analysis.").

His opinion is vocational because it assumes Ms. Philips' inability to find a new job based on no supporting data or evidence other than his entirely speculative and unqualified opinion concerning her ability to find a new job.  Nevertheless, Ms. Phillips mistakenly claims that it is Mr. Silverstone's expert opinion that is vocational.  However, Mr. Silverstone is not making any assumptions about Ms. Phillips' ability to find a job into the future.  Instead, he made his analysis based on the evidence provided and based on his experience as an economic loss expert, which demonstrated that Ms. Phillips did not apply for any jobs since the end of her employment with Starbucks.  This opinion is not outside of his expertise, but is an analysis of her economic loss based on the objective data as part of the record evidence.  As Starbuck's expert, Mr. Silverstone, testified:

> Specifically, my opinion is – again, as I said, I don't disagree with what Mr. Scherf said her earning capacity was when she was at Starbucks.  But in terms of a diminution or a loss in her earning capacity into the future, I did not make a determination of that.  And that's the reason why I calculated the loss I did, because I don't – I have not seen any opinion from any employability expert or vocational expert that tells me that because of what happened, she actually had a loss of earning capacity into the future. . . . I would need to see an opinion that someone would tell me that she is permanently impaired and unable to earn what she was earning at Starbucks in the future.

> Damages Hearing Tr. (July 19, 2023), at 73:7-74:14.

Ms. Phillips has not presented evidence of loss of earning capacity to support a finding by this Court that she should receive ongoing damages into the future based on the difference in her pay at Raymour & Flannigan and Starbucks.  Proving loss of earning capacity typically requires testimony from an expert not in medicine or physical rehabilitation, as in personal-injury cases,

but in labor-market dynamics. *McKenna v. Pac. Rail Serv.*, 817 F.Supp. 498, 516 (D.N.J. 1993) (explaining that the analysis in employment cases is guided by personal injury law and must be grounded in expert testimony and evidence).[3]  Ms. Phillips has not presented any evidence of labor-market dynamics that would suggest she has lost earning capacity.  To the contrary, Ms. Phillips attempts to manufacture a loss by claiming she will never earn as much as she did at Starbucks without presenting ***any*** evidence to support such a claim.  *See Hare v. Potter*, 549 F. Supp. 2d 688, 695-97 (E.D. Pa. 2007) (denying economic loss damages because the evidence was too speculative and holding the economic loss remedy "must be specifically tailored to expunge only the actual, and not merely speculative, consequences of the unfair labor practices."). Therefore, this Court should not allow Ms. Phillips to recover, in the guise of an equitable award of "front-pay," what is in reality an award for alleged lost future earning capacity.

As such, this Court should reject Mr. Scherf's unsupported opinion that Ms. Phillips can never find comparable employment; and, instead, calculate Ms. Phillips' wage loss as nothing or, at most, the amount she would have made in the interim period between when she left Starbucks and found new employment with Raymour & Flannigan – $78,343.00.  Damages Hearing Tr. (July 19, 2023), at 79:9-20.

---

[3] Mr. Scherf's future loss analysis in this employment case is more akin to one made for a personal injury case.  In those situations, medical professionals provide evidence that the plaintiff's injury will prevent the plaintiff from performing the duties of her former job in the future, often permanently.  By contrast, a claim of employment discrimination does not involve proof of a personal injury that may reduce future earnings or earning capacity.  The injury in discrimination cases is an adverse employment action such as discharge.  Here, Ms. Phillips has no injury or otherwise that would prevent her from finding comparable employment.  While a discriminatory discharge may injure an employee's reputation, thus causing her future harm in the job market, that is clearly not the case here.  Ms. Phillips has never claimed any injury to her reputation that would impact her employability.  To the contrary, Ms. Phillips was ***recommended*** to her current position at Raymour & Flannigan by a former co-worker at Starbucks.  Damages Hearing Tr. (July 19, 2023), at 7:9-13 ("a former VP from Starbucks had been interviewing with Raymour [& Flannigan] and didn't want to move . . . so he had said, you should reach out to Shannon, and that's how I got connected to Raymour.").

**B.** **Ms. Phillips Also Attempts to Manufacture Damages with Speculative Evidence Regarding Her Medical and Stock Benefits at Raymour & Flannigan that Do Not Withstand Scrutiny**

Mr. Scherf similarly attempts to further manufacture Ms. Phillips' losses by claiming that Ms. Phillips is entitled to a total of $19,950 is medical premium differentials, $77,932 in 401(k) plan differentials, and $97,882 in total lost benefits – despite no evidence that Ms. Phillips' suffered any diminution in benefits after her termination. Mr. Scherf based his loss calculation on the difference in the amounts each employer paid toward benefits; this is not the appropriate measure of damages as it does not consider what the cost to the employee is. Damages Hearing Tr., at 81:15-83:11 ("when you're looking at economic losses, you're looking at the loss to the individual. So you'd have to really look at what the loss was to Ms. Phillips in terms of, like, what her actual loss was as opposed to a difference between what the employer was actually paying [for medical benefits].") Mr. Scherf should have considered factors such as Ms. Phillips' premiums, deductibles, and/or copays — that is, her potential out-of-pocket losses — rather than what the employer contributes. *See id.*

This Court should not rely on speculative evidence in determining an economic loss award. *Hare v. Potter*, 549 F. Supp. 2d 688, 695-97 (E.D. Pa. 2007). Nevertheless, this is exactly what Ms. Phillips relies on in claiming lost benefits. Mr. Scherf relied on Ms. Phillips' speculative testimony that Starbucks' medical benefits were "better" than at Raymour & Flannigan and he speculated that Ms. Phillips would have collected hundreds of thousands of dollars in stock options. Damages Hearing Tr., at 13:2-22 (Ms. Phillips speculating about her benefits); 42:10-44:15 (Mr. Scherf assuming her stock would have vested for at least $180,000 or possibly even $480,000). However, Ms. Phillips and her expert have provided no evidence to demonstrate either are true. Specifically, Ms. Phillips has failed to present any evidence that the medical benefits she received under the plan at Raymour & Flanigan actually resulted in her paying higher premiums

6

for her medical care, or otherwise impacted her medical care, as compared to her plan at Starbucks.

*See id.* at 14:15-19 ("I **believe** I would have been paid [for 9 weeks medical leave]"); 33:3-20 (opining the benefits at Starbucks were "really good" without any concrete examples or comparisons).  For example, while Ms. Phillips points to how much the employer contributes, companies provide employees with ranges of options, and this Court has no way of knowing what packages were available to her at the time.

Similarly, Mr. Scherf's claim that Plaintiff is entitled to the value of stock options at Starbucks is also entirely speculative.  As he testified:

> Q. And do you -- can you opine to a reasonable degree of economic certainty that those stock options in the future would be worth even more money?  Not the real stock price, but I mean just the fact that stocks would be worth money from Starbucks.
>
> Mr. Scherff. Well, it was a benefit, and they -- that would be worth some money.  Obviously, you know, when you get a stock option, it depends on the performance of the stock.  But historically, she was able to liquidate those options at a profit.

Damages Hearing Tr. (July 19, 2023), at 44:8-15.

To the contrary, as Mr. Silverstone explained, there was no guarantee that Ms. Phillips would receive those stock options:

> Mr. Silverstone.  In terms of [Mr. Scherf's] calculations that were done there, number one, it's my understanding stock options aren't always guaranteed. . . . the other thing is the [sic] strike price, or what the price of the stock is at the date that those options are exercised.  And if the -- if the price is lower than the option, then you wouldn't take it up because it would actually be costing you money to do that. . . . . [And] historically, Ms. Phillips had not met the parameters of actually receiving those.  So she was, I think, due to get a certain amount, and she got a lesser amount.  So to -- you know, to project that out and say, well, she should - she would have gotten them, I think, is a little speculative.

*Id.* at 82:20-85:12

Accordingly, because Ms. Phillips has provided no competent evidence beyond her baseless conjecture as to her alleged losses, the Court cannot award her any economic damages, particularly for wholly speculative future losses.

**C.**    **Ms. Phillips Has Not Applied For Any Jobs Since Her Employment With Starbucks Ended And As Such Has Not Suffered Any Economic Loss Damages**

A prevailing plaintiff's duty "to mitigate damages is ***not*** met by using reasonable diligence to obtain ***any*** employment.   Rather, the claimant must use reasonable diligence to obtain ***substantially equivalent employment.***" *Booker*, 64 F.3d at 866 (emphasis in original) (citing *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231-32 (1982)).   "'Substantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated.'" *Booker*, 64 F.3d at 866. The Third Circuit has made clear that, because of the statutory duty to mitigate damages, a plaintiff must demonstrate she made a "continuing commitment to be a member of the work force and by remaining ready, willing and available to accept employment." *Id.* at 865.

When an employer successfully proves that a plaintiff failed to mitigate her damages, "'any back-pay award to an aggrieved employee will be cut off or reduced beginning at the time of the employee's failure to mitigate and any front-pay award will be foreclosed.'" *Ellis v. Ethicon, Inc.*, No. CV 05-726 (FLW), 2009 WL 10641983, at *16 (D.N.J. Nov. 13, 2009) (quoting *Caufield v. Center Area Sch. Dist.*, 133 F. App'x 4, 11 (3d Cir. 2005)).   Although the employer has the burden of establishing that a plaintiff failed to mitigate her damages, as a matter of law, it meets that burden when an employee has withdrawn from seeking other employment.  *Tubari*, 959 F.2d at 453-54 ("an employer need not establish that the employee would have secured such employment, for the employer meets its burden on the mitigation issue by showing that the employee has

8

withdrawn from the employment market.").  As such, where a plaintiff has fully withdrawn from the job market – or stopped looking for employment – the plaintiff's damages stop accruing.

Ms. Phillips is not entitled to back-pay or front-pay, and is, at most, entitled to a substantially reduced back-pay award, because she admittedly withdrew from seeking other employment.  Ms. Phillips admitted during the economic loss hearing that she has not searched for any employment since the end of her employment with Starbucks.  Although she stated that she spoke to some recruiters, she never applied to any positions.  *See* Damages Hearing Tr. (July 19, 2023), at 29:20-32:11 (admitting to being recruited by Starbucks competitor Wawa, but not inquiring or pursuing further).  In fact, Ms. Phillips did not even apply for the Raymour & Flannigan job, but instead was referred the position through a colleague at Starbucks.  Given Ms. Phillips complete failure to search for employment following the end of her employment, it is impossible to state whether Ms. Phillips could have found employment that paid the same or more as she made at Starbucks had she just sent out some job applications.  Therefore, because Ms. Phillips did not mitigate her damages, she cannot allege any economic losses.  *See Ellis*, 2009 WL 10641983, at *16.

During the damages hearing, Ms. Phillips admitted that rather than remaining ready, willing, and available to accept employment, much less substantially equivalent employment, she voluntarily withdrew from seeking other employment once she secured employment at Raymour & Flannigan by failing to look for alternative employment, despite the fact that her wages were less than what she earned at Starbucks.  Indeed, not only has Ms. Phillips removed herself from the job market, but she declined to pursue an opportunity at 7-11 that would likely have been "more comparable [to Starbucks]" even before accepting her current role at Raymour & Flannigan.  Damages Hearing Tr. (July 19, 2023), at 26:16-24.  Ms. Phillips' admitted failure to mitigate her

9

damages, which resulted in a willful loss of the difference in wages she earns at Raymour & Flannigan from the wages she earned as a Starbucks employee.  This clear admission precludes any award of front-pay and severely reduces her back-pay.  *Ellis*, 2009 WL 10641983, at *16.

      **D.**    <u>**The Court Must Not Award Duplicative Damages**</u>

For the reasons outlined in Starbucks Motion to Avoid Duplicate Damages (Dkt No. 166), if the Court does conclude that Ms. Phillips is entitled to wage loss damages, it must refrain from awarding duplicative damages.

**IV.**    **CONCLUSION**

For all the foregoing reasons, Starbucks respectfully requests that the Court deny Plaintiff's request for wage loss damages.  However, if the Court finds that any lost wages are warranted, the damages must not exceed $78,343.00; and, must not be duplicative across her identical claims.

Respectfully submitted,

/s/ Richard R. Harris
_____

Richard R. Harris (*admitted pro hac vice*)
Tara Param (NJ Bar ID: 394042023)
Kathleen Princivalle (NJ Bar ID 397722022)
HOLLAND & KNIGHT
1650 Market Street, Suite 3300
Philadelphia, PA 19103
Phone 215.252.9594
Fax 215.867.6070
Mobile 917.309.5752
richard.harris@hklaw.com
tara.param@hklaw.com
Dated: July 28, 2023         kathleen.princivalle@hklaw.com

*Attorneys for Defendant,*
*Starbucks Corporation d/b/a*
*Starbucks Coffee Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of July 2023, the foregoing document was filed using the United States District Court for the District of New Jersey ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

*/s/ Kathleen M. Princivalle*
Kathleen M. Princivalle
