IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANNON PHILLIPS,<br><br>       *Plaintiff*,<br><br>  v.<br><br>STARBUCKS CORPORATION<br>d/b/a STARBUCKS COFFEE<br>COMPANY<br><br>       *Defendant.* | CIVIL ACTION NO.: 2:19-cv-19432<br><br>Hon. Joel H. Slomsky, U.S.D.J. |

**PLAINTIFF'S ECONOMIC LOSS MEMORANDUM**

Pursuant to the Court's July 27, 2023 Order [Dkt. Ent. 173], Plaintiff, Shannon Phillips, by and through her undersigned counsel, hereby submits her Economic Loss Memorandum. For the reasons set forth below, Plaintiff respectfully requests that the Court enter an Order awarding her the economic losses she has incurred and will in the future incur as a result of Starbucks' discriminatory actions as follows: **$1,617,203** in past lost earnings and benefits, **$1,911,361** in future lost earnings and benefits up through her anticipated retirement age of 70, and **$75,757** in tax gross up damages, equaling a total economic loss award of **$3,040,251**.[1]

**I. INTRODUCTION AND PROCEDURAL HISTORY**

On June 12, 2023, following a six-day trial, the jury in this matter unanimously found that Defendant, Starbucks Corporation d/b/a Starbucks Coffee Company, intentionally discriminated against Plaintiff because of her race in violation of both federal and New Jersey state law [Dkt. Ent. 150]. The jury awarded Plaintiff $600,000 in compensatory damages and $25,000,000 in

---

[1] As set forth in her Motion to Amend Judgment [Dkt. Ent. 164], Plaintiff respectfully requests that the Order of Judgment [Dkt. Ent. 153] be amended to reflect the Court's award of economic loss damages. Plaintiff respectfully requests to reserve the right to file a Motion to Amend Judgment to include Prejudgment Interest at a later date.

1

punitive damages against Defendant. *Id*. The jury's verdict did not include any award of backpay or front pay ("economic loss") as the Parties stipulated prior to trial that this measure of damages would be determined by the Court.

A hearing on Plaintiff's economic loss was held on July 19, 2023 ("Economic Loss Hearing"). During the Economic Loss Hearing, the Court heard testimony from Plaintiff, Plaintiff's economic loss expert, Stephen J. Scherf, CPA/CFF, CFE and Defendant's rebuttal economic loss expert, Howard M. Silverstone, MBE, CPA, CFF, FCA, CFE. Plaintiff's expert, Mr. Scherf, has a degree in accounting from Temple University and both a Master of Science in finance and an advanced professional certificate in taxation – the equivalent of a second masters degree – from Drexel University. *See* Transcript of July 19th Economic Loss Hearing ("Hearing Tr.") 35:10-25.[2] Mr. Scherf is a Certified Public Accountant (CPA) and holds several other professional designations with respect to calculating damages. *Id*. Mr. Scherf has testified as an expert economist during litigation more than 100 times since 1995. *Id*. At the Hearing, Defendant stipulated to the qualifications of Mr. Scherf as an expert in this case and Plaintiff stipulated to the qualifications of Mr. Silverstone to testify to economic loss only.

During the Hearing, the following four (4) exhibits were admitted into evidence:

| TRIAL EXHIBIT NO. | DESCRIPTION | OFFERING PARTY |
|---|---|---|
| 21A | Shannon Phillips' W-2s (2011 through 2022) | Plaintiff |
| 126A | Past Lost Earnings Chart | Plaintiff |
| 126B | Front Pay Calculation Chart | Plaintiff |
| 126C | Fidelity Statement (as of April 30, 2018) | Plaintiff |

Based on the evidence admitted during the Economic Loss Hearing, the Parties' positions can be summarized as follows:

---

[2] The Transcript of July 19th Economic Loss Hearing is attached hereto as Exhibit A.

Defendant claims that Plaintiff's economic loss damages are limited to $78,343.00 for the fourteen (14) week period between when she left Starbucks and began her position at Raymour & Flanigan ("Raymour"). Defendant argues she should not be awarded any further back pay and no money for front pay because (1) as Defendant's expert testified, he did not have in his possession an expert opinion that Plaintiff lost her job at Starbucks due to race discrimination; and, (2) she should not have taken the job at Raymour because it paid less than she earned at Starbucks. Defendant's position is ludicrous and contrary to the law. Defendant has wholly failed to meet its burden on mitigation and failed to rebut the expert opinion of Mr. Scherf.

Plaintiff is entitled to lost wages and benefits incurred since her termination – back pay – and lost wages and benefits she will incur until her anticipated age of retirement – front pay. Plaintiff should also be awarded economic damages to neutralize the adverse tax consequences associated with the award.

## II. ARGUMENT

Title VII, Section 1981, and the NJLAD allow a successful plaintiff to recover back pay damages and permit reinstatement to prevent future lost wages. *See* 42 U.S.C. § 2000e-5(g) (Title VII); 42 U.S.C. § 1981a (Section 1981); N.J.S.A. 10:5-13 (NJLAD). Courts acknowledge that, in certain circumstances, reinstatement may not be feasible, such as where there is no position available or the relationship between the parties is so damaged by animosity that reinstatement is impracticable." *Briggs v. Temple Univ.*, 339 F. Supp. 3d 466, 507 (E.D. Pa. 2018) (citing *Maxfield v. Sinclair Int'l.*, 766 F.2d 788, 796 (3d Cir. 1985). In these situations, courts allow for front pay damages instead. *Id.* The purpose of back pay and front pay damages are one in the same: to restore Plaintiff to the position she would be in had she not been discriminated against. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975).

### A. Defendant Has Not Come Close to Meeting Its Affirmative Burden of Proving Plaintiff Failed to Mitigate[3]

While a plaintiff is required to mitigate her damages, it is **not** plaintiff's burden to prove at trial she mitigated. *Id*. Rather, "because failure to mitigate is an affirmative defense, the burden is on defendant to show plaintiff failed to mitigate [her] damages." *Andujar v. Gen. Nutrition Corp.*, 2018 U.S. Dist. LEXIS 32926, *30-32. To prove failure to mitigate, the **defendant** must show "(1) **substantially equivalent** work was available, and (2) the plaintiff did not exercise reasonable diligence to obtain the employment." *Id*. A defendant is **only** exempted from demonstrating *both* that there are substantially equivalent positions available *and* that the plaintiff failed to exercise reasonable diligence in attempting to secure such a position if it establishes that the plaintiff "has withdrawn entirely from the employment market." *Ngai v. Urban Outfitters,* No. 19-1480, 2021 WL 1175155, *20 (E.D. Pa. Mar. 29, 2021).

Starbucks has not met its affirmative burden of proving that Plaintiff failed to mitigate her damages. For starters, Starbucks has not identified a single "substantially equivalent" position that was available. "Substantially equivalent employment is that employment which affords **virtually identical** promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the [plaintiff] has been discriminatorily terminated." *Briggs v. Temple Univ.*, 339 F. Supp. 3d 466, 507 (E.D. Pa. 2018) (emphasis added). An employer demonstrates that substantially equivalent employment was available by putting forth evidence of actual job postings or job openings for positions that were **substantially equivalent** to the work that the plaintiff was performing. *See Caufield v. Ctr. Of Area Sch. Dist*, 133 Fed. Appx. 4 at 11-

---

[3] As set forth in Plaintiff's Motion *in Limine* regarding Mr. Silverstone's expert opinion [Dkt. Ent. 120], **any** opinion from Mr. Silverstone regarding Plaintiff's mitigation efforts (presented under the guise of "diminished earning capacity") is improper because Mr. Silverstone is, by his own admission, not a vocational expert and because any opinion regarding mitigation is beyond the scope of Plaintiff's affirmative expert opinion.

12 (3d Cir. 2005) (evidence of actual job openings for elementary teaching positions in plaintiff teacher's case held insufficient to satisfy defendant's burden on mitigation because there was no evidence that the positions were substantially equivalent to the position plaintiff held).

Starbucks has not identified **any** substantially equivalent position (or even attempted to argue that one exists).[4] This failure alone is fatal to Starbucks' mitigation argument. Moreover, assuming *arguendo* that a "substantially equivalent" position was available, Plaintiff exercised "reasonable diligence" in seeking employment after her wrongful termination by Starbucks. Plaintiff testified that within "a week or two" of her termination on May 9, 2018, she began searching for a job. *See* Hearing Tr. 8:1. Plaintiff' job search efforts included, without limitation, attending a job fair, taking classes through the State of New Jersey to hone interviewing skills and help create a resume, and connecting with professional contacts, including through LinkedIn. *Id*. 6:22-8:16. Within a month of her termination, Plaintiff began the interviewing process at Raymour. Plaintiff was formally offered the Regional Director role at Raymour on August 7, 2018, and began working on August 13, 2018. *Id*. 8:18-9:1. Plaintiff has held the Regional Director role at Raymour since.

The Regional Director job was similar to the job Plaintiff had at Starbucks. The title is the same and she is responsible for a similar geographic region of stores. While the number of stores in Plaintiff's Raymour region is smaller, the sales volume at the Raymour stores is significantly

---

[4] The Court should readily dismiss any argument from Starbucks that the other positions Plaintiff considered during her job search constituted "substantially equivalent" positions, as they were not. Again, it is Defendant's burden to identify and prove there were "virtually identical" jobs available and Plaintiff unreasonably failed to obtain them. Plaintiff testified that she did not pursue the 7-11 regional director role because, among other things, it would have required her to be on call 24/7. *Hearing Tr. 26:19-24*. "It is well-established that discrimination claimants are not required to take lesser or dissimilar work during the pendency of their claims to satisfy their duty to minimize damages." *Caufield*, 133 Fed. Appx. 4, 11.

greater. *Id*. 23:7-14. At Raymour, like at Starbucks, Plaintiff has supervisory authority over all store employees within the region and, conversely, Plaintiff reports into an individual with the VP title. *Id*. 23:7-14. At Raymour, like at Starbucks, Plaintiff has growth potential into the VP role. *Id*. 9:15-17. Despite the similarities between Plaintiff's Regional Director role at Raymour and the Regional Director role she held at Starbucks, Plaintiff earns less at Raymour.

"The reasonableness of a Title VII claimant's diligence should be evaluated in light of the individual characteristics of the claimant and the job market." *Caufield*, 133 Fed. Appx. 4, 11. At the time Plaintiff accepted the job at Raymour she was a single mother with two children that she cared for and financially supported. She also did not have a college degree. She testified that this hindered her ability to qualify for certain jobs. *Id*. 9:3-14. She had worked herself up at Starbucks over 12 years, eventually earning her way to the compensation level she had when she was wrongfully terminated.

Starbucks concedes that Plaintiff is entitled to backpay during the time that she was unemployed (and, in so doing, concedes that Plaintiff' job search efforts during this time were reasonable). However, Starbucks argues that Plaintiff is foreclosed from recovering economic loss damages for any point in time beyond when she started at Raymour because she is earning less than she did at Starbucks and did not demonstrate a "diminished earning capacity" so as to justify her failure to find an equally paying job since her termination. Starbucks' diminished earning capacity argument is misplaced.

"Diminished earning capacity and front [and back] pay are very different remedies." *Carter-Herman v. City of Philadelphia*, 1996 U.S. Dist. LEXIS 19065, *8-9 (E.D. Pa. Dec. 23, 1996) (quoting *Heckman v. Federal Press Co.*, 587 F.2d 612, 618 (3d Cir. 1978)). Diminished earning capacity, a personal injury concept where physical and/or mental impairments are claimed

6

to have been caused by a tortfeasors conduct, "addresses the disadvantage a plaintiff suffers in competing with uninjured persons in the same employment market," while front pay and back pay "serve to compensate a plaintiff for the [past and] continuing effects of discrimination until she can be made whole." *Id*.

In the present case, Plaintiff seeks backpay and front pay. Defendants' infusion of "diminished earning capacity" is a backdoor attempt to impose a duty upon Plaintiff to continue searching for a better paying job in perpetuity.[5] **This is not how a plaintiff's duty to mitigate works.** "It is widely understood that, in order to adequately mitigate damages, an employee may need to lower her sights following a reasonable period of unsuccessfully searching for equivalent employment." *Giedgowd v. Cafaro Grp., LLC*, 2021 U.S. Dist. LEXIS 205889, *30 (E.D. Pa. Oct. 26, 2021).[6] Accordingly, "a discriminatee who accepts suitable interim employment, even at a lower wage, has no continuing duty to search for a more lucrative job." *Tubari, Ltd. v. NLRB*, 959 F.2d 451, 458 (3d Cir. 1992). To hold otherwise "would transform a plaintiff's duty to mitigate into a duty to absolve" and would sanction that a victim of discrimination "may never be allowed to let go or move on with her life." *Briggs*, 339 F. Supp. 3d at 510.

Starbucks is attempting to re-write the rules surrounding mitigation because they cannot meet their burden. Mr. Silverstone's opinion that Plaintiff's economic loss should be limited to the $78,000 she lost in the 14 weeks she was out of work should be rejected because it is based on a

---

[5] The only employment discrimination/retaliation case plaintiff could locate within the Third Circuit/New Jersey which considered "diminished earning capacity" as part of its economic damages analysis was a CEPA whistleblower case where the plaintiff alleged that the retaliation he was subjected to by his employer caused him to suffer a psychological breakdown so severe that he had to resign from his position and accept early retirement. *Donelson v. DuPont Chambers Works*, 206 N.J. 243 (NJ 2011).

[6] In *Giedgowd*, the defendant argued that plaintiff was not permitted to front pay because within "two or three months" of his termination, he had accepted a job as an independent contractor working 25-hours per week and had not continued to look for employment after accepting that position. The court rejected the defendant's argument and awarded front pay, finding that the plaintiff's two-to-three-month job search was a "reasonable period" under the law of mitigation.

non-recognized mitigation argument, presented under the guise of "diminished earning capacity," to circumvent the issues presented in Plaintiff's motion *in limine* to limit his opinion [Dkt. Ent. 120]). The opinions of Plaintiff's expert, Mr. Scherf, are substantively unrebutted and this Court should award backpay and front pay as set forth below.

### B. Plaintiff is Entitled to Recover Her Full Back Pay Losses

The evidence presented during the Economic Loss Hearing establishes that from the date of her termination up through May 1, 2023, Plaintiff' expected earnings from Starbucks would have equaled $1,546,243. *See* Past Lost Earning Chart (attached hereto as Exhibit B), column [1]; Hearing Tr. 37:23-38:18. The evidence establishes that during this same period, Plaintiff earned $714,549 through her employment at Raymour. *See* Exhibit B, column [2]; Hearing Tr. 38:23-40:8. Accordingly, Plaintiff' lost wages from the time of her termination through April 30, 2023, as testified to by Mr. Scherf to a reasonable degree of professional certainty, equal **$831,694**. *See* Exhibit B, column [3]; Hearing Tr. 40:9-14.[7]

During the time between her termination and April 30, 2023, Plaintiff also lost out on significant benefits. At the time of her termination, Plaintiff had 4,867 shares of nonvested stock grants which were worth $180,389 when her termination forced their forfeiture. *See* Exhibit B, column [6]; Hearing Tr. 42:10-44:15. This $180,389 figure, based on the Starbucks stock price in April 2018, is a conservative estimate of Plaintiff's true loss on these nonvested stock grants; as of May 19, 2023, Starbucks' stock price had nearly doubled and these 4,867 shares are worth $513,517 in today's dollars. *Id*. Since Raymour is a privately-held company, Plaintiff no longer

---

[7] Plaintiff's expert compared Plaintiff's W-2 statements of and determined that, historically, Plaintiff's income at Starbucks increased 3% per year and 6% per year at Raymour. Hearing Tr. 38:4-22; 47:7-9. He carried these estimates through to calculate backpay and front pay. Hearing Tr. 38:4-22; 45:25-48:1. This methodology was unrebutted by Defendant. *See* Hearing Tr., generally.

8

has the ability to be awarded valuable stock options. *Id*. 13:16-22. While Plaintiff could have claimed this additional loss, she conservatively has not included it in the front pay calculations.

Plaintiff testified that her medical benefits at Raymour are less favorable than those she received at Starbucks. Specifically, Starbucks contributed approximately $1,900 more annually to Plaintiff's healthcare plan than Raymour does, causing her to lose $10,125 in employer contributions toward her health insurance since her termination.[8] *See* Exhibit B, column [4]; Hearing Tr. 40:15-41:16. Lastly, under Raymour's 401(k) Plan, Plaintiff only receives a 2% match on her 4% contribution, while Starbucks provided a full match on her 4% contribution. This 401(k) Plan differential has equated to a loss of $30,925 since Plaintiff's termination. *See* Exhibit B, column [5]; Hearing Tr. 41:17-42:9. In total, Plaintiff's lost benefits from the time of her termination through April 30, 2023, as testified to by Mr. Sherf to a reasonable degree of professional certainty, equals **$221,439**. *See* Exhibit B, column [7]; Hearing Tr. 44:16-20.

From the time of her termination through April 30, 2023, Plaintiff' past lost earnings and benefits (*i.e.*, her back pay), as testified to by Mr. Sherf to a reasonable degree of professional certainty, equal **$1,053,133**. *See* Exhibit B, column [8]; Hearing Tr. 44:20-45:3. The evidentiary record regarding Plaintiff' lost wages and benefits is unrebutted. Mr. Silverstone did not calculate losses beyond Plaintiff' fourteen (14) week period of unemployment because: (1) he strangely and wrongfully believed he needed an expert opinion that Plaintiff was discriminated against, and (2) he relied on his inadmissible conclusion that Plaintiff failed to mitigate. *See* Hearing Tr. 80:19-81:13 ("Well, I mean, in terms of my analysis, my calculation is just based on, as I said, the loss

---

[8] Plaintiff's expert testified that, in comparing the W-2 statements of Starbucks versus Raymour, he was able to determine that Starbucks contributed $1,900 more per year to Plaintiff's healthcare plan. Due to Starbucks' wrongful termination of her, she was deprived of this $1,900 per year contribution. He testified this is a reasonable, albeit very conservative, estimate of the negative healthcare coverage consequences. As Plaintiff testified, she was diagnosed with breast cancer and underwent surgery, chemotherapy and radiation in 2022. She reasonably estimated that her losses were more significant than $1,900 a year given the healthcare coverage she has at Raymour is not as good as she had Starbucks. Hearing Tr. 13:8-15; 14:3-5.

for the period of time that she was out of work between Starbucks and Raymour. I mean, that's essentially what my calculation is."). In contrast, Plaintiff's expert relied upon admissible evidence and testimony to support his opinion – provided to a reasonable degree of professional certainty – that Plaintiff is entitled under Title VII, Section 1981, and the NJLAD to recover back pay damages in a total amount of **$1,053,133.**

### C. Plaintiff is Entitled to Recover Her Full Front Pay Losses to Retirement Age

Where, as here, reinstatement is not possible,[9] a plaintiff is entitled under Title VII, Section 1981, and the NJLAD to recover an award of front pay to make her whole and restore her, "so far as possible … to a position where [she] would have been were it not for the unlawful discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975). With regard to the length of the front pay period, the Third Circuit has explained:

> [T]here will often be uncertainty concerning how long the front-pay period should be, and the evidence adduced at trial will rarely point to a single, certain number of weeks, months, or years. More likely, the evidence will support a range of reasonable front-pay periods. Within this range, the district court should decide which award is most appropriate **to make the claimant whole**.

*Donlin v. Philips Lighting North America Corp.,* 581 F.3d 73, 87 (3d Cir. 2009) (emphasis added).

When fixing front pay awards, courts within and outside the Third Circuit routinely allow plaintiffs to be compensated for future losses up until the date of anticipated retirement. *See e.g.*,

---

[9] Starbucks has never offered Plaintiff her job back, nor did they offer her the DC-metro Regional Director role which the company was actively trying to fill when it terminated her. During trial, Mr. Eckensberger – Starbucks' corporate designee – had no explanation as to why the position was not offered to Plaintiff. *See* Trial Transcript Volume V (June 9, 2023) at 715:25-716:2 (Q: As corporate designee of Starbucks, why didn't they offer Plaintiff the job in DC that was available? A: I don't have any knowledge of that.").

It is also widely recognized that reinstatement is not feasible in situations where an employee has been terminated and subsequently filed suit against their former employer. *See Ray v. AT&T*, Trial Transcript Volume V, 139:6-10 (in rejecting defendant's failure to mitigate argument based on plaintiff's failure to seek reinstatement at the company, Judge Timothy R. Rice (Ret.) noted "to suggest that after she was you call it surplused, let's call it fired, that she would then on her own seek out other opportunities in the same company that just fired her, with the same people that just fired her is completely unrealistic.").

*Broadnax v. City of New Haven*, 141 Fed. Appx. 18 (2d Cir. 2005) (affirming front pay award of 23 years); *Passantino v. Johnson & Johnson*, 212 F.3d 493 (9th Cir. 2000) (affirming front pay award of 22 years); *Padilla v. Metro-North Commuter Railroad*, 92 F.3d 117 (2d Cir. 1996) (upholding front pay award of over 20 years); *Bates v. Bd. of Educ. of Capital Sch. Dist.,* 2000 U.S. Dist. LEXIS 4873, (D. Del. Mar. 31, 2000) (upholding front pay award for 17 years); *Bianchi v. City of Philadelphia*, 80 Fed. Appx. 232, 237-38 (3d Cir. 2003) (affirming front pay award representing 13 years of lost wages); *Kengerski v. Cnty. of Allegheny*, 2023 U.S. Dist. LEXIS 10628, *17-18 (awarding 13 years of front pay, reasoning that because the plaintiff had "approximately 13 years of work-life ahead of him[,] 13 years of front pay is reasonable."); *Ray v. AT&T*, Civil Action No. 2:18-3303, Dkt. Ent. 165 (Dec. 9, 2021) (awarding more than 11 years of front pay based on plaintiff's anticipated retirement age of 65); *Newton v. Pennsylvania State Police,* 2022 U.S. Dist. LEXIS 53583, *29 (W.D. Pa. 2022) (awarding 11.8 years of front pay to account for period between plaintiff's termination and the employer's mandatory retirement age of 60); *Donlin v. Philips Lighting North America Corp.,* 581 F.3d 73, 87 (3d Cir. 2009) (upheld district court's award of 10 years of front pay up through the plaintiff's anticipated retirement age).

Plaintiff loved working at Starbucks and envisioned that she would work at the company until the day she retired. *See* Hearing Tr. 6:16-21. Plaintiff, whose date of birth is June 29, 1971, testified that she plans to work until **at least** the age of seventy (70) – eighteen (18) years from now. *Id*. This testimony was unrebutted. Consistent with the law of this Circuit, Plaintiff is entitled to be compensated for her lost future earnings up until her anticipated retirement age. *See Murtha v. Forest Electric Corp.,* 1992 U.S. Dist. LEXIS 10476, *27 (E.D. Pa. 1992) (upholding front pay award which was tethered to the plaintiff's anticipated retirement age of 73 to 75 years old, reasoning that the fact finder "had the opportunity to observe [plaintiff] for an extended period of

11

time, and could reasonably have concluded based on [plaintiff's] energetic demeanor and credible testimony that he really would have worked to that age if he had had the chance.").

The evidence presented during the Economic Loss Hearing establishes that from May 1, 2023 through Plaintiff' anticipated retirement at the age of seventy (70), her expected earnings from Starbucks would have equaled $8,035,920. *See* Front Pay Calculation Chart (attached hereto as Exhibit C), column [1]; Hearing Tr. 45:25-46:23. The evidence establishes that up through the age of retirement, Plaintiff' estimated earnings at Raymour & Flanigan will equal $5,696,894. Exhibit C, column [2]; Hearing Tr. 47:14-48:1. Accordingly, Plaintiff's future lost wages through her anticipated retirement at the age of seventy, as testified to by Mr. Sherf to a reasonable degree of professional certainty, will equal **$2,339,026**. *See* Exhibit C, column [3]; Hearing Tr. 48:2-9.

Plaintiff's loss of benefits will carry into the future, as well. With respect to medical benefits, Plaintiff will lose $34,525 until the age of retirement. *See* Exhibit C, column [4]; Hearing Tr. 48:10-19. As a result of the 401(k) plan differential, Plaintiff will lose an additional $160,718. *See* Exhibit C, column [5]; Hearing Tr. 48:20-49:5. In total, Plaintiff' total lost benefits up through the age of retirement, as testified to by Mr. Scherf to a reasonable degree of professional certainty, will equal **$195,244**. *See* Exhibit C, column [6]; Hearing Tr. 49:6-9.

Plaintiff's future lost wages and benefits through her age of retirement equal $2,534,269 – or **$1,911,361** when adjusted for their present value.[10] *See* Exhibit C, column [8]; Hearing Tr. 49:10-23. Like her back pay losses, the evidentiary record regarding Plaintiff' loss of future earnings i**s unrebutted.** Plaintiff is entitled under Title VII, Section 1981, and the NJLAD to recover her full measure of front pay damages – **$1,911,361.**

---

[10] As testified to by Mr. Scherf, adjusting to present value reduces the front pay award by the 10-year treasury rate of 3.65. Hearing Tr. 60:11-61:12. The purpose of doing so is to generate a figure where the recipient would be indifferent between receiving the cash today or in the future. *Id*.

### D. Plaintiff is Entitled to Recover Tax Gross Up Damages

Under the law, Plaintiff is entitled to recover damages to neutralize the negative tax consequences associated with receiving her economic damages in a lump sum. *See e.g.*, *O'Neill v. Sears, Roebuck & Co.*, 108 F. Supp. 2d 443, 447 (E.D. Pa. 2000) ("Compliance with [front pay's] goal requires reimbursement for the reduced amount of front pay money that the plaintiff has to invest as a result of higher taxes, as well as reimbursement for the higher taxes he must pay on his back wages caused by getting this money in a lump sum."); *Andujar v. Gen. Nutrition Corp.*, 2018 U.S. Dist. LEXIS 141244, at *10 (D.N.J. Aug. 20, 2018) ("[i]t makes logical sense that if the purpose of a[n] . . . award is to compensate plaintiff for moving into a higher tax bracket, the amount of plaintiff's future pay award should be considered. After all, the award will be taken into account in computing plaintiff's tax bracket.").

Had Plaintiff not been terminated, she would have earned $335,876 in 2023, placing her in a 35% income tax bracket. However, assuming that Plaintiff receives her full measure of back pay and front pay, her marginal tax bracket will increase to 37%, resulting in $75,757 in additional taxes which she would not have been on the hook for if Starbucks had not violated her rights. *See* Hearing Tr. 49:24-50:2. The evidence regarding Plaintiff' tax gross up damages is **unrebutted** in the record. Accordingly, Plaintiff is entitled to recover **$75,757** in tax effect damages, calculated and testified to by Mr. Scherf to a reasonable degree of professional certainty. *See Castagna v. W. Mifflin Area Sch. Dist.,* 2023 U.S. Dist. LEXIS 40273, *22 (M.D. Pa. 2023) (upholding jury's imposition of increased damages for tax consequences where unrebutted by defendant).

### III. CONCLUSION

For the reasons presented herein and during the Economic Loss Hearing, and based on the evidentiary record, Plaintiff respectfully requests that the Court enter an Order awarding her the

full measure of economic losses she has incurred and will in the future incur as a result of Starbucks' discriminatory actions as follows: **$1,617,203** in past lost earnings and benefits, **$1,911,361** in future lost earnings and benefits up through her anticipated retirement age of 70, and **$75,757** in tax gross up damages, equally a total economic loss award of **$3,040,251**.

                                              Respectfully submitted,

                                              **CONSOLE MATTIACI LAW, LLC**

Dated: July 28, 2023                By:    */s/ Laura C. Mattiacci*
                                                     Laura C. Mattiacci, Esquire
                                                     Katherine C. Oeltjen, Esquire
                                                     Holly W. Smith, Esquire (*pro hac vice*)
                                                     1525 Locust Street, Ninth Floor
                                                     Philadelphia, PA 19102
                                                     (215) 545-7676

                                                     *Attorneys for Plaintiff, Shannon Phillips*