## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHANNON PHILLIPS, | : | Civil Action No. 1:19-cv-19432 |
| | : | |
| Plaintiff, | : | Hon. Joel H. Slomsky, U.S.D.J. |
| | : | |
| v. | : | **FILED VIA ECF** |
| | : | |
| STARBUCKS CORPORATION d/b/a | : | |
| STARBUCKS COFFEE COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

---

## TABLE OF CONTENTS

I.     MS. PHILLIPS' REQUEST FOR AN EXCESSIVE AND UNREASONABLE AMOUNT IN ATTORNEYS' FEES IS UNJUSTIFIABLE ...........................................1

II.    IF THE COURT AWARDS MS. PHILLIPS ATTORNEYS' FEES AND COSTS, THE AMOUNT SHOULD BE VASTLY REDUCED....................................2

   A.   THIS IS NOT AN "EXCEPTIONAL" CASE WARRANTING AN 85% CONTINGENCY FEE ENHANCEMENT ...........................................................................4

      1.   *Since Federal Law Claims Predominate Ms. Phillips' Action, She Cannot Claim Any Contingency Fee Enhancement*...............................................4

      2.   *Ms. Phillips Has Not Demonstrated Any of the Factors Required for a Fee Enhancement* ............................................................................................8

   B.   THE FEES AND COSTS MUST BE REDUCED BECAUSE PLAINTIFF WAS NOT SUCCESSFUL ON ALL HER CLAIMS ...............................................................15

   C.   THE FEES AND COSTS AS SUBMITTED TO THIS COURT ARE NOT REASONABLE AND MUST BE REDUCED ............................................................................17

      1.   *CML's Fees Should be Reduced Because They Are Impermissibly Block-billed* ..............................................................................................................17

      2.   *CML Seeks Patently Excessive Fees* ............................................................18

      3.   *CML's Entries are too Vague to Allow the Court to Determine the Reasonableness for the Work Performed*...................................................19

III.   CONCLUSION ...................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andujar v. Gen. Nutrition Corp.*,
No. CV 14-7696 (JS), 2018 WL 3999569 (D.N.J. Aug. 20, 2018) ...............................7, 8, 11

*Arc of New Jersey, Inc. v. Twp. of Voorhees*,
986 F. Supp. 261 (D.N.J. 1997) ...................................................................................5, 6, 9

*Arku-Nyadia v. Legal Sea Foods, LLC*,
No. CV18-1089 (SDW) (LDW), 2022 WL 958465 (D.N.J. Mar. 29, 2022) ......................7, 8

*Baughman v. U.S. Liab. Ins. Co.*,
723 F. Supp. 2d 741 (D.N.J. 2010) ..............................................................................8, 9, 14

*Blakey v. Cont'l Airlines, Inc.*,
2 F. Supp. 2d 598 (D.N.J. 1998) ..................................................................................4, 6, 8

*Boles v. Wal-Mart Stores, Inc.*,
No. CIV.A. 12-1762, 2015 WL 4653233 (D.N.J. Aug. 5, 2015) ...........................................7

*City of Burlington v. Dague*,
505 U.S. 557 (1992) ..............................................................................................................5

*Daggett v. Kimmelman*,
811 F.2d 793 (3d Cir. 1987) ...............................................................................................19

*Davis v. County of Los Angeles*,
8 E.P.D. ¶ 9444 (CD Cal. 1974) ...........................................................................................3

*Dinizo v. Twp. of Scotch Plains*,
No. 07-cv-05327, 2010 WL 2880171 (D.N.J. July 19, 2010) .............................................15

*E.E.O.C. v. United Parcel Serv.*,
No. CIV. A. 06-1453 JAP, 2009 WL 3241550 (D.N.J. Sept. 30, 2009)........................ *passim*

*Erickson v. Marsh & McLennan Co.*,
569 A.2d 793 (N.J. 1990)....................................................................................................13

*Failla v. City of Passaic*,
146 F.3d 149 (3d Cir. 1998)..............................................................................................7, 8

*Gallo v. Salesian Soc'y*,
676 A.2d 580 (N.J. App. Div. 1996).....................................................................................5

## TABLE OF AUTHORITIES (CONT.)

**Page(s)**

**Cases**

*Glass v. Snellbaker*,
    No. CIVA 05-1971 (JBS), 2008 WL 4416450 (D.N.J. 2008) ......................................3, 18, 19

*Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*,
    995 F.2d 414 (3d Cir. 1993)......................................................................................................3, 16

*Hahneman Univ. Hosp. v. All Shore, Inc.*,
    514 F.3d 300 (3d Cir. 2008).........................................................................................................3

*Hatchett v. Cnty. of Philadelphia*,
    No. CIV.A. 09-1708, 2010 WL 4054285 (E.D. Pa. Oct. 15, 2010).........................................3

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...........................................................................................................*passim*

*Hightower v. Ingerman Mgmt. Co.*,
    No. CV 17-08025, 2022 WL 17543310 (D.N.J. Dec. 2, 2022) ................................................7

*Hurley v. Atl. City Police Dep't*,
    933 F. Supp. 396 (D.N.J. 1996) ........................................................................................7, 8, 10

*J.L. v. Harrison Township Bd. of Educ.*,
    2017 U.S. Dist. LEXIS 71911, 2017 WL 1954535 (D.N.J. May 11, 2017).............................2

*Jefferson v. City of Camden*,
    No. CIV. 01-4218 (RBK), 2006 WL 1843178 (D.N.J. June 30, 2006) ...............................6, 8

*In re Johnson & Johnson Derivative Litig.*,
    No. 10-2033(FLW), 2013 WL 11228425 (D.N.J. June 13, 2013)............................................3

*McDonnell v. United States*,
    870 F.Supp. 576 (D.N.J. 1994) ...............................................................................................15

*Middlebrooks v. Teva Pharms. USA Inc.*,
    No. CV 17-412, 2019 WL 936645 (E.D. Pa. Feb. 26, 2019).........................................*passim*

*Montone v. City of Jersey City*,
    No. 2-06-CV-3790 (SRC), 2020 WL 7041570 (D.N.J. Dec. 1, 2020) ....................................7

*Phillips v. Starbucks Corp.*,
    624 F. Supp. 3d 530, 549-550 (D.N.J. 2022).........................................................................16

## TABLE OF AUTHORITIES (CONT.)

**Page(s)**

**Cases**

*Rendine v. Pantzer*,
   661 A.2d 1202 (N.J. 1995) ............................................................................... *passim*

*Roccisano v. Twp. of Franklin*,
   No. CIV.A. 11-6558 FLW, 2015 WL 3649149 (D.N.J. June 11, 2015) ..................3, 16, 19, 20

*Rode v. Dellarciprete*,
   892 F.2d 1177 (3d Cir. 1990) ..................................................................................19

*S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*,
   927 F.3d 763 (3d Cir. 2019) .....................................................................................2

*School District of Phila. v. Kirsch*,
   722 F. App'x. 215 (3d Cir. 2018) ..............................................................................2

*United States v. NCH Corp.*,
   No. CIV.A. 05-881 SDW, 2010 WL 3703756 (D.N.J. Sept. 10, 2010) ...............................17

*Warner v. Twp. of S. Harrison*,
   No. 09–cv–6095, 2013 WL 3283945 (D.N.J. June 27, 2013) ...............................16

*Westberry v. Commonwealth Fin. Sys. Inc.*,
   No. 11-4387, 2013 WL 435948 (D.N.J. Feb. 4, 2013) ............................................3

**Statutes**

42 U.S.C. § 1981 ......................................................................................................6, 7, 13

42 U.S.C. § 1983 ........................................................................................................6, 7

42 U.S.C. § 1985 ...........................................................................................................6

Civil Rights Act of 1964 ...............................................................................................14

I.   **MS. PHILLIPS' REQUEST FOR AN EXCESSIVE AND UNREASONABLE AMOUNT IN ATTORNEYS' FEES IS UNJUSTIFIABLE**

Ms. Phillips' request for $1,419,608.60 in attorneys' fees and $36,369.45 in costs – including an extraordinary 85% contingency fee enhancement – is excessive and unreasonable as a matter of law.

- For the reasons outlined in Starbucks' Post-Trial Motion and incorporated herein, Ms. Phillips should not receive attorneys' fees and costs because the verdict in her favor went against the clear weight of the evidence and resulted in a miscarriage of justice.

- Even if this Court grants Ms. Phillips' request for attorneys' fees and costs (which it should not), the petition must be reduced because:

  o Ms. Phillips cannot demonstrate that exceptional circumstances exist warranting an 85% contingency fee enhancement of her already unreasonable attorneys' fees petition. In particular, the vast majority of discrimination cases in this jurisdiction refuse to implement an enhancement where a plaintiff brings claims under Federal law (where no enhancement exists) as well as State law. In the limited cases that do allow enhancement, the courts typically only permit a 5-35% enhancement.

  o Ms. Phillips' attorneys' fees petition is excessive and unreasonable, including block billing and vague entries and, as such, must be reduced accordingly.

For these reasons, and the reasons outlined below, Starbucks respectfully requests that this Court deny Ms. Phillips' attorneys' fees petition or, in the alternative, reduce it to a reasonable sum. [1]

---

[1] As an initial matter, Starbucks' post-trial motions remain outstanding with this Court. (ECF 165, 166, and 167). Starbucks continues to maintain that the verdict in Ms. Phillips' favor went against the clear weight of the evidence and resulted in a miscarriage of justice. As such, Starbucks reaffirms that it is entitled to Judgment as a Matter of Law

## II.    IF THE COURT AWARDS MS. PHILLIPS ATTORNEYS' FEES AND COSTS, THE AMOUNT SHOULD BE VASTLY REDUCED

If this Court finds that Ms. Phillips is entitled to attorneys' fees and costs, the amount should be significantly reduced because Ms. Phillips' demand for $1,419,608.60 in attorneys' fees and $36,369.45 in costs is unreasonable and excessive as a matter of law.

In considering a fee request, courts in the Third Circuit use the "lodestar" method under which the number of hours an attorney reasonably worked are multiplied by a reasonable hourly billing rate for such services in the relevant geographical area taking into consideration the nature of the services provided and the experience of the attorneys for whom fees are sought.[2] *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 773 (3d Cir. 2019).

A district court may discount any hours that it deems unreasonable, including those considered to be "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking fees bears the burden of establishing by way of satisfactory evidence, in addition to the attorney's own affidavits, that the requested hourly rates are reasonable. *School District of Phila. v. Kirsch,* 722 F. App'x. 215, 229 (3d Cir. 2018) (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)*). If sufficiently specific objections to the fee petition are raised, "a district court 'has a great deal of discretion to adjust the fee award in light of those objections.'" *J.L. v. Harrison Township Bd. of Educ.*, 2017 U.S. Dist. LEXIS 71911, 2017 WL 1954535, at *2 (D.N.J. May 11, 2017). Further, any time "work[ed] on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'"

---

or, in the alternative, a New Trial. Therefore, Ms. Phillips should not receive any attorneys' fees or costs. In the alternative, and if this Court denies Starbucks' post-trial motions, Ms. Phillips' attorneys' fee award should be reduced for the reasons outlined herein.

[2] In this Response, Starbucks does not challenge Console Mattiacci Law's ("CML") proposed hourly rates for its attorneys. Rather, for purposes of challenging CML's proposed lodestar calculation, Starbucks solely focuses on the excessive amount of hours claimed by CML in this Response.

*Hensley*, 461 U.S. at 435 (quoting *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (CD Cal. 1974)). This applies "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. The court should certainly reduce the fees requested for claims that were dismissed prior to trial. *See Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 423 (3d Cir. 1993); *Roccisano v. Twp. of Franklin*, No. CIV.A. 11-6558 FLW, 2015 WL 3649149, at *19 (D.N.J. June 11, 2015).

Courts in the Third Circuit have acknowledged that challenges to hourly rates, the relevancy of the fees incurred, practice of block billing, and vague and duplicative nature of billing entries can require that fee awards be reduced accordingly to reflect improper billing practices and unreasonable hours and rates. *See, e.g., In re Johnson & Johnson Derivative Litig.*, No. 10-2033(FLW), 2013 WL 11228425 (D.N.J. June 13, 2013), *adopted*, 2013 WL 6163858 (D.N.J. Nov. 25, 2013); *Westberry v. Commonwealth Fin. Sys. Inc.*, No. 11-4387, 2013 WL 435948 (D.N.J. Feb. 4, 2013); *Middlebrooks v. Teva Pharms. USA Inc.*, No. CV 17-412, 2019 WL 936645 (E.D. Pa. Feb. 26, 2019); *Hatchett v. Cnty. of Philadelphia*, No. CIV.A. 09-1708, 2010 WL 4054285 (E.D. Pa. Oct. 15, 2010). Courts also decline to award costs associated with legal services that did not aid in the prosecution of Plaintiff's successful claims or for full travel costs for travel outside the forum. *Hensley*, 461 U.S. at 434; *Hahneman Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 311-312 (3d Cir. 2008); *Glass v. Snellbaker*, No. CIVA 05-1971 (JBS), 2008 WL 4416450, *6-10 (D.N.J. 2008).

As detailed herein, Console Mattiacci Law ("CML") attorneys' fees petition suffers from many of the flaws just discussed and, as such, should be reduced. Before addressing those issues, however, Starbucks will address the extraordinary and "off the charts" request for an 85% contingency fee enhancement, which the Court should soundly reject.

### A.   This Is Not An "Exceptional" Case Warranting An 85% Contingency Fee Enhancement

Ms. Phillips fees requests a contingency fee enhancement that is grossly disproportional to the alleged risk that CML incurred in prosecuting this case. Ms. Phillips' claims that CML incurred attorneys' fees in the amount of $767,356. However, she claims she is entitled to an 85% contingency fee enhancement. This Court should not award Ms. Phillips *any* contingency fee enhancement under the circumstances of this case. If it nevertheless does so, any enhancement should be reduced 5-35%.

#### 1.   *Since Federal Law Claims Predominate Ms. Phillips' Action, She Cannot Claim Any Contingency Fee Enhancement*

The attorneys' fees billed towards Ms. Phillips' claims under Title VII and Section 1981 are not subject to contingency fee enhancement because no such enhancement is available under federal law. Ms. Phillips may only claim contingency fee enhancement – if at all – on the portion of CML's time spent in prosecuting one of the three claims on which she prevailed at trial – her claim under NJLAD.

As a general rule, contingency enhancements are not available in race discrimination cases under Federal law. "The United States Supreme Court has held that contingency ***enhancements are not available under federal fee-shifting statutes***." *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 607 (D.N.J. 1998) (emphasis added); *see also E.E.O.C. v. United Parcel Serv.,* No. CIV. A. 06-1453 JAP, 2009 WL 3241550, at *2 (D.N.J. Sept. 30, 2009) ("The procedure for calculating attorney's fees is generally the same under both Title VII and the LAD, with the exception of contingency enhancements, which are provided for under the LAD ***but not permitted under Title VII.***") (emphasis added); *Middlebrooks*, 2019 WL 936645, at *17-19 (noting that contingency fee enhancements do not apply to federal employment discrimination claims and refusing to extend them to PHRA claims). Therefore, Ms. Phillips' Title VII and Section 1981 claims are not subject

4

to contingency fee enhancement. *City of Burlington v. Dague*, 505 U.S. 557, 566-67 (1992) (precluding enhancement on federal fee-shifting statutory claims). Therefore, any time that Ms. Phillips' attorneys billed for prosecuting her claims under Title VII and Section 1981 – 66% of her claims – are not subject to contingency fee enhancement. *See* Chart of Enhancements Awarded in District of New Jersey, *infra*. *See also Arc of New Jersey, Inc.*, 986 F. Supp. 261, 273-74 (D.N.J. 1997) (finding that as plaintiff's NJLAD claim did not play a pivotal role in the verdict rendered, an enhancement was not justified).

Even under state law, a trial court is not *required* to enhance the lodestar fee in order to account for a contingency fee arrangement. *Rendine v. Pantzer*, 661 A.2d 1202, 1225-28 (N.J. 1995); *Gallo v. Salesian Soc'y*, 676 A.2d 580, 602 (N.J. App. Div. 1996) ("Nowhere does [Rendine] say that a fee enhancement multiplier must be awarded in every case."). If the Court is inclined to enhance the fee award – which it is not mandated to do – the enhancement is meant to compensate counsel for taking on additional risks of non-payment not present in a typical single-plaintiff employment case. *See E.E.O.C.*, 2009 WL 3241550, at *9. That is especially true here, where Ms. Phillips asserted and prevailed on overlapping federal claims for which she is not entitled to a contingency enhancement. Put differently, her attorneys' work must either be seen as only having one third attributed to the NJLAD claims, or the work was entirely overlapping, meaning that those attorneys would have done precisely the same work even in the absence of the NJLAD claim and they should receive zero contingency award as a result.

In determining whether a lodestar award should be enhanced by a contingency multiplier, *Rendine* instructs the courts to consider: "whether the case was taken on a contingent basis, whether the attorney was able to mitigate the risk of non-payment in any way, and whether other economic risks were aggravated by the contingency of payment." *Blakey*, 2 F. Supp. 2d at 607

(*citing Rendine*, 661 A.2d at 1202). Defendants' counsel has reviewed cases seeking a fee enhancement under NJLAD in the District of New Jersey (see "Chart" below). In reviewing these cases, it is clear that where a plaintiff has both federal and state claims at issue, the enhancement is largely reduced or not awarded at all. *See, e.g.*, *Blakey*, 2 F. Supp. 2d at 608; *E.E.O.C.*, 2009 WL 3241550, at *9 (D.N.J. Sept. 30, 2009); *Jefferson v. City of Camden*, No. CIV. 01-4218 (RBK), 2006 WL 1843178, at *21 (D.N.J. June 30, 2006). Even where a plaintiff brings a pure NJLAD case (which is not the case here), the highest enhancement award was 35%.

| Case | Claims at Issue | Enhancement Requested | Enhancement Awarded |
|---|---|---|---|
| *Middlebrooks v. Teva Pharms. USA, Inc.*, No. CV 17-412, 2019 WL 936645 (E.D. Pa. Feb. 26, 2019) (refusing to extend New Jersey's *Rendine* progeny to Pennsylvania employment discrimination cases) | Title VII PHRA ADEA | 50% | 0% |
| *Arc of New Jersey, Inc. v. Twp. of Voorhees*, 986 F. Supp. 261 (D.N.J. 1997) | FHA ADA NJLAD | 100% | 0% |
| *E.E.O.C. v. United Parcel Serv.*, No. CIV. A. 06-1453 JAP, 2009 WL 3241550 (D.N.J. Sept. 30, 2009) | Title VII Title I NJLAD | 50% | 5% |
| *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598 (D.N.J. 1998) | Title VII NJLAD | 50% | 5% |
| *Jefferson v. City of Camden*, No. CIV. 01-4218 (RBK), 2006 WL 1843178 (D.N.J. June 30, 2006) | NJLAD 42 U.S.C. §§ 1981, 1983, 1985 NJ Const. Common law tort claims | 75% | 10% and 20% (two plaintiffs) |
| *Arku-Nyadia v. Legal Sea Foods, LLC*, No. CV18-1089 (SDW) (LDW), 2022 WL 958465 (D.N.J. Mar. 29, 2022) | NJLAD | 40% | 25% |

| | | | |
|---|---|---|---|
| *Andujar v. Gen. Nutrition Corp.*, No. CV 14-7696 (JS), 2018 WL 3999569 (D.N.J. Aug. 20, 2018) | NJLAD | 50% | 25% |
| *Boles v. Wal-Mart Stores, Inc.*, No. CIV.A. 12-1762, 2015 WL 4653233 (D.N.J. Aug. 5, 2015), *aff'd*, 650 F. App'x 125 (3d Cir. 2016) | NJLAD FMLA | 35% | 25% |
| *Rendine v. Pantzer*, 141 N.J. 292, 661 A.2d 1202 (1995) | NJLAD | 100% | 33% |
| *Montone v. City of Jersey City,* No. 2-06-CV-3790 (SRC), 2020 WL 7041570 (D.N.J. Dec. 1, 2020), *adopted*, No. CV 06-280 (SRC), 2021 WL 8083765 (D.N.J. Jan. 12, 2021) | NJLAD NJCEPA 42 U.S.C. § 1983 NJCRA Common Law Torts | 55%, 50%, and 35% (three different law firms represented plaintiff) | 40%, 35%, and 35% |
| *Failla v. City of Passaic*, 146 F.3d 149 (3d Cir. 1998) | ADA (unsuccessful) NJLAD | [no specific percentage requested] | 35% |
| *Hurley v. Atl. City Police Dep't*, 933 F. Supp. 396 (D.N.J. 1996), *aff'd*, 174 F.3d 95 (3d Cir. 1999) | Title VII NJLAD | [no specific percentage requested] | 33% |
| *Hightower v. Ingerman Mgmt. Co.*, No. CV 17-08025, 2022 WL 17543310 (D.N.J. Dec. 2, 2022) | NJLAD 42 U.S.C. § 1981 | 85% | 40% |

Here, Ms. Phillips' fees petition is predominately based on her verdict on **two claims** – Title VII and 1981 – where fee enhancements are unavailable. To the extent she claims the work overlapped, that would weigh against any enhancement because her attorneys would have done exactly the same work even in the absence of the NJLAD claims. Therefore, the Court – after considering the factors that weigh against enhancement – should not enhance Ms. Phillips' already exorbitant fees petition.

7

## 2. *Ms. Phillips Has Not Demonstrated Any of the Factors Required for a Fee Enhancement*

The *Rendine* factors all weigh against enhancing Ms. Phillips' fees petition – in particular, an excessive 85% enhancement. Where a contingency fee enhancement is applied, courts have acknowledged that enhancements range between 5-50% with a typical enhancement between 20-35%. *Rendine*, 661 A.2d at 1202, at 123-; *E.E.O.C.*, 2009 WL 3241550, at *8 (finding 50% to be excessive and instead applying 5%); *see also, e.g.*, *Blakey*, 2 F. Supp. 2d 598 (5% enhancement); *Middlebrooks*, 2019 WL 936645 (declining to award a contingency fee enhancement); *Failla v. City of Passaic*, 146 F.3d 149, 160 n.15 (3d Cir. 1998) (35% enhancement); *Hurley*, 933 F. Supp. at 431 (33% enhancement); *Arku-Nyadia*, 2022 WL 958465, at *9–10 (25% enhancement); *Andujar v. Gen. Nutrition Corp.*, 2018 WL 3999569, at *7–8 (D.N.J. Aug. 20, 2018) (25% enhancement); *Jefferson*, 2006 WL 1843178, at *20 (rejecting requested 75% "extraordinary" enhancement and awarding 10% and 20% finding that the case was less than typical); *Rendine*, 661 A.2d at 1232 (rejecting request for 100% enhancement and awarding 33%).

"[A]n award over 50 percent is only appropriate in rare and exceptional cases." *Baughman v. U.S. Liab. Ins. Co.*, 723 F. Supp. 2d 741, 753 (D.N.J. 2010). Cases are only considered "exceptional" (i.e., awarding over 50% enhancement), if they meet the following five elements: "(1) the risk of non-payment has not been mitigated at all; (2) the legal risk or risk of failure constitutes an economic disincentive independent of that created by the basis contingency in payment; (3) the result achieved is significant and of broad public interest; (4) no prospect existed for the attorney to be compensated by payment of a percentage of a large damages award; and (5) the relief sought was primarily equitable in nature." *Id.* (internal quotation marks omitted). Courts have discretion to determine whether factors are present, to decline to grant enhancements when there is no evidence of additional risk non-payment and where other federal claims are also at

issue. *See Arc of New Jersey, Inc.*, 986 F. Supp. at 273-74; *Middlebrooks*, 2019 WL 936645, at

*17-19 (declining to award a contingency fee enhancement). As demonstrated in the Chart, *supra*,

where both federal and state claims are at issue, the enhancement fee is noticeably lower (if any is

awarded) than under "pure" NJLAD claims.

Although courts have found a typical enhancement ranges between 20-35%, CML requests

an unsupported 85% enhancement, which is 50% above the high-end of a typical enhancement.

There is simply no basis for requesting this type of extreme enhancement. To manufacture a need

for an 85% enhancement, and in order to establish the above factors warranting an exceptional

enhancement, CML argues that (1) Starbucks "vigorously resisted [Ms. Phillips'] claims," (2) there

was a risk of non-payment by [Ms. Phillips], (3) the "risk of failure was far greater" for a reverse

discrimination plaintiff, (4) Ms. Phillips had the burden of proving her case by a preponderance of

the evidence, and (5) that there was a "strong public interest" in the outcome of this case. *See*

Motion at 25-27. None of these factors warrant a fee enhancement, let alone one for 85%.

First, Ms. Phillips' argument that Starbucks' vigorous resistance of Ms. Phillips' claim

necessitates a fee enhancement is nonsensical. Starbucks' efforts to mount a compelling defense

against Ms. Phillips' reverse race discrimination claims do not create risks of non-payment nor

justify a contingency enhancement. Where a litigation is equally contentious, the court should not

punish a defendant for vigorously defending their case while rewarding a plaintiff for the same

behavior. *See Hurley*, 933 F. Supp. at 430 (noting that "plaintiff was never willing to reduce her

own ambitious settlement demands meaningfully" and awarding a 33% enhancement). To follow

CML's logic here would be tantamount to punishing Starbucks for ardently defending itself against

claims they know to be false. Taking Ms. Phillips' logic to its conclusion, any time a defendant

chooses to defend itself against a claim, the defendant would incur an unmitigated risk of an

enhancement. This is not, and cannot be, the law. Fee-shifting statutes are meant to incentivize lawyers to take cases for indigent plaintiffs who otherwise could not afford representation. They are not meant to serve as another category for punitive damages.

Further, Ms. Phillips' claim that Starbucks "never demonstrated a willingness to consider a reasonable settlement" as evidence of the risk of non-payment is blatantly false and should not be considered. Motion for Attorneys' Fees at 26 (ECF 168). To the contrary, Starbucks did engage in settlement discussions with Ms. Phillips; however, she was unwilling to make a demand that reflected her actual damages in this matter.

Second, there was no risk of non-payment to Ms. Phillips. Ms. Phillips attempts to use Starbucks' net worth as evidence for fee enhancement is unavailing. [3]  Rather, Starbucks' large net worth supports the very opposite of what Ms. Phillips contends – it supports *not* awarding Ms. Phillips a contingency fee enhancement because of the lack of risk of non-payment. Courts have found that a company's large net worth goes ***against*** awarding a fee enhancement because bringing an action against a company with a large net worth poses no risk to a plaintiff of non-payment. *See E.E.O.C.*, 2009 WL 3241550, at *9 (finding plaintiff's risk was mitigated where "Defendant UPS [ ] is one of the largest employers in the United States. [Thus, if Plaintiff] had been successful on all of his claims to the degree sought, he would have received significant compensation from Defendant. This potential for a large recovery, therefore, also mitigated [Plaintiff's] risk of non-payment."); *Andujar*, 2018 WL 3999569, at *7 ("Further, the Court considers an enhancement necessary in order to incentivize competent counsel to represent plaintiffs such as ***[plaintiff] who do not present unduly large damage claims***.") (emphasis added). Instead, it offers the plaintiff a

---

[3] To support this point, Ms. Phillips argues that "Starbucks was represented by two separate law firms" throughout litigation, which is knowingly misleading. To the contrary, lead trial counsel has remained the same throughout this litigation. Starbucks' lead counsel, Richard Harris, transferred firms in the middle of the litigation, and the case was in process of transfer, which was completed prior to trial.

potential for a larger recovery because of the perceived deeper pockets of the large corporate defendant. As such, Starbucks' large net worth supports not awarding Ms. Phillips any contingency fee enhancement.

In addition to Starbucks' large net worth, Ms. Phillips' own high earning capacity is inapposite to the purpose underpinning fee enhancement. As Ms. Phillips cites in her brief, the purpose the New Jersey's fee enhancement is to "incentive[] [lawyers] to take the gamble of representing ***clients of little means***[.]" Motion for Attorneys' Fees at 23 (ECF 168). This is certainly not the case here. Ms. Phillips demonstrated earning capacity of nearly $300,000. *See* Exhibit 2, Silverstone Expert Report, at 2-3 (demonstrating that she earned $281,292 from Starbucks in 2017 (her final full year of employment)). Ms. Phillips found comparable employment with Raymour & Flannigan only approximately—14 weeks after Starbucks terminated her employment—earning a base salary of $155,000 with opportunity for a bonus. Exhibit 2, at 2; Transcript of Economic Loss Hearing, at 17:15-24 (Dkt No. 174-1). Therefore, Ms. Phillips earned and continues to earn over ***600%*** over the poverty line for a family of three.[4] As such, this was not a case in which CML had to undertake representation on a pure contingency fee. They could have elected to bill Ms. Phillips hourly or on a hybrid model, which would have mitigated CML's risk of non-payment. Instead, CML elected to represent Ms. Phillips on a pure contingency fee basis and now seeks to leverage its decision into an unjust payout.

Moreover, Ms. Phillips' argument that she was provided a choice between fee arrangements – hourly and contingency – does nothing to support the argument that there was a serious risk of non-payment. In Console's Declaration in support of Ms. Phillips' attorneys' fees

---

[4] See US Dep't of Health & Human Servs., 2023 Poverty Guidelines: 48 Contiguous States, at https://aspe.hhs.gov/sites/default/files/documents/1c92a9207f3ed5915ca020d58fe77696/detailed-guidelines-2023.pdf. It should be noted that Ms. Phillips' children are both over the age 18, and as such she would be considered a single household, making her income well-over 1000% of the poverty line.

petition, it argues that "CML offered to represent Ms. Phillips on an hourly fee basis … or on a contingency fee basis by which Ms. Phillips would pay no money to our firm and CML would only be compensated for its representation of her if we prevailed. Ms. Phillips chose the contingency fee arrangement."  Console Decl. ¶ 15 (emphasis added). As such, Ms. Phillips argues that because CML offered Ms. Phillips (who is *not* a client of "little means") the option to pay nothing, Starbucks should now have to pay 85% more than CML's lodestar fee would permit. Any reasonable person presented with this option would choose to pay nothing. The fact that CML offered Ms. Phillips an hourly option demonstrates that CML never considered Ms. Phillips an indigent plaintiff without means to pay an hourly rate. If they considered her to have little means, they would have never offered her an hourly option because they would know she cannot afford it.

Third, Ms. Phillips' claim that she is entitled to a high contingency fee enhancement because the "risk of failure was far greater" for a reverse discrimination plaintiff is demonstrably false. Ms. Phillips offers no evidence that there is a greater risk in reverse race discrimination cases as opposed to race discrimination cases. As Professor Wendy Greene of Drexel University notes, "[t]he surprise for many people [] is that federal civil rights laws initially designed to address the longstanding, systemic racial segregation, exclusion and discrimination endured by individuals identifying as non-white are seemingly more effective at redressing racial discrimination against individuals who identify as white[.]" Max Zahn, *Starbucks Discrimination Lawsuite Awarded White Employee $25 Million: Legal Experts Weigh In*, ABC NEWS https://abcnews.go.com/Business/starbucks-discrimination-lawsuit-awarded-white-employee-25-million/story?id=100104620 (June 16, 2023, 4:16 PM).

Fourth, Ms. Phillips' contention that having to meet her burden of proof demonstrates a need for a contingency fee enhancement essentially asserts the proposition that anytime a jury finds a plaintiff slightly more right than wrong, the defendant should have to pay an enhancement for plaintiff's counsel's fees. To the contrary, the constitutional requirement that plaintiff must prove her case is not unique to Ms. Phillips. Every plaintiff has the burden of proving their case. Further, in this case, Ms. Phillips had a lighter burden than a typical employment case because she was allowed the opportunity to try her case by showing that race was a determinative factor *or* a motivating factor in Starbucks' decision to terminate her employment – however, it was not. This standard applied even though Ms. Phillips brought a pretext case rather than a mixed-motive case and, as such, she should have been required to show that "but-for" her race, Starbucks would not have terminated her employment. Ms. Phillips also received an easier standard for establishing her case because the jury was not charged on the heightened standard required for Ms. Phillips to establish her reverse race discrimination claims under NJLAD and Section 1981 under *Erickson v. Marsh & McLennan Co.*, 569 A.2d 793 (N.J. 1990). Given that Ms. Phillips' claims were subject to the same standard as in all similar claims, if not an easier standard, the burden of proof does not warrant the exceptional contingency fee enhancement.

Fifth, the public interest in this case is less than a typical civil rights case. Starbucks does not dispute that there is a "public interest" in the outcome of cases brought under federal employment laws. These laws were designed to protect the rights of those who belong to protected classes – originally racial minorities – from discrimination and segregation in the workplace. The intent of the Civil Rights Act of 1964 was to protect marginalized groups that the laws of the United States historically did not protect. In contrast, historically, the laws of the United States have not been applied to discriminate against people of Caucasian descent. Thus, even if Ms.

Phillips prevails, the public interest is minimal. There is no evidence of sweeping – and particularly historic – discrimination against White people in the workplace. As such, this case does nothing – unlike traditional race cases – to guard the public against a historical wrong reoccurring. Further, the evidence presented at trial failed to demonstrate that Starbucks engaged in malice or reckless conduct warranting a public interest in the outcome of this action.

Moreover, the case that Ms. Phillips cites to support its public interest argument is inapposite to this case. In *Baughman v. U.S. Liability Ins. Co.*, the Court held that there was a strong public policy interest in an action brought by insured owners of a daycare center alleging that the insurer refused to indemnify insured for actions arising out of alleged mercury contamination at the center. 723 F. Supp. 2d 741, 753 (D.N.J. 2010). Unlike Ms. Phillips, there was a widespread interest to the public in protecting children from mercury poisoning. Even still, ***despite the extreme public interest in preventing mercury contamination at child daycare centers, the Court awarded an enhancement of only 35%. Id.* at 754. Here, there is no basis for this Court to award Ms. Phillips an 85% enhancement. As such, there is no evidence that this is a unique matter of public interest that warrants enhancement.

Lastly, where the particulars of the contingency fee arrangement between the firm requesting an enhancement and the client are not known, courts are further disinclined to award an enhancement given that the risk of non-payment is similarly unknown. *See, e.g., Middlebrooks*, 2019 WL 936645, at *19 ("We have no contingent fee agreement to determine which part of the lodestar figure is attributable to the PHRA claims. We do not know the percentage the CML firm is recovering on the total award and, consequently, cannot determine whether the lodestar plus a contingency fee enhancement, even if awarded, is more or less than the fee the firm is entitled under a contingency fee agreement, a factor in determining whether to award an enhancement.").

Similarly, here, CML has not submitted the particulars of its contingency fee agreement with Ms. Phillips discussing the particulars of her arrangement with CML, and therefore, the Court should not award an enhancement – especially one for 85% – when the particulars of the agreement are unknown.

Ms. Phillips has not provided evidence of additional risk of non-payment other than the typical risk associated with taking cases on a contingency fee arrangement. *Rendine*, 661 A.2d at 1229. Contingency fee arrangements are a standard practice for plaintiff-side law firms like CML. Such arrangements offer a potentially significant payout to plaintiff-side law firms who stand to receive an amount well in excess of the amount they would receive through an hourly arrangement. As such, and for all the reasons stated herein, there is no exceptional circumstances here that warrant an exceptional contingency fee enhancement in this case.

**B.      The Fees and Costs Must Be Reduced Because Ms. Phillips Was Not Successful On All Her Claims**

Ms. Phillips' retaliation and failure to hire claims did not withstand summary judgment. As such, she is not entitled to fees and costs reflecting the time her attorneys devoted to these unsuccessful claims.

Where a plaintiff is unsuccessful in some of her claims, the application for fees and costs should be reduced accordingly. *Hensley*,  461 U.S. at 435-36 ("work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved.") (internal quotations omitted). *See also, e.g.*, *Dinizo v. Twp. of Scotch Plains*, No. 07–cv–05327, 2010 WL 2880171, at *1 (D.N.J. July 19, 2010) *aff'd*, 421 F. App'x 173 (3d Cir. 2011) (reducing fees on the basis that, *inter alia*, "Plaintiff only prevailed on one of four claims at trial"); *McDonnell v. United States*, 870 F.Supp. 576, 588–89 (D.N.J. 1994) (reducing fee award by 60% where "plaintiff did not succeed on the majority of his claims"); *Warner v. Twp. of S. Harrison*, No. 09–cv–6095, 2013

WL 3283945, at *16 (D.N.J. June 27, 2013) (reducing fee award by 35% because multiple claims, and three of six defendants, were dismissed from the case). The court may reduce fees "even where the plaintiff's claims were ***interrelated***, nonfrivolous, and raised in good faith." *Id*. at 436 (emphasis added); *Gulfstream III Associates, Inc.*, 995 F.2d at 423. Moreover, the court should certainly reduce the fees requested for claims that were dismissed ***prior*** to trial. *See Gulfstream III Associates, Inc*, 995 F.2d at 423; *Roccisano*, 2015 WL 3649149, at *19.

In her Complaint, Ms. Phillips brought allegations of retaliation and failure to hire as well as her discrimination claim based on the termination of her employment against Starbucks. (Plaintiff's Second Amended Complaint, ECF 36). In total, Ms. Phillips brought eight claims: two retaliation claims (one under Title VII and one under NJLAD), three discriminatory termination claims under Title VII, NJLAD, and Section 1981, and three failure to hire claims under Title VII, NJLAD, and 1981. *See id.* In Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Ms. Phillips withdrew her failure to hire claims. (ECF 79, p. 7 n.2). On August 31, 2022, this Court granted partial summary in Starbucks' favor and dismissed Ms. Phillips' retaliation claims and acknowledged that Ms. Phillips' withdrew her claim based on her failure to be hired for the Temporary Limited Assignment ("TLA") role. (ECF 92, 93); *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 537 n.1, 549-550 (D.N.J. 2022). The Court stated: "Plaintiff also alleges that Starbucks wrongfully failed to hire her for a Temporary Limited Assignment ("TLA") role. However, ***this claim is no longer at issue***." *Id.* at 537 n.1. Further, in this Court's Opinion granting partial summary judgment in Starbucks' favor, this Court held that Ms. Phillips "wrongfully conflates the ideas of race and racism" and that her factual allegations were "insufficient to support a retaliation claim." *Id.* In partially granting summary judgment, this Court dismissed Ms. Phillips' retaliation and failure to hire claims, which represented 62.5% of

her initial claims. As such, at a minimum, Starbucks requests that Ms. Phillips' attorneys' fees application be reduced by 62.5% for any work performed prior to August 31, 2022.  Ms. Phillips seeks $253,186.00 in attorneys' fees for work prior to August 31, 2022.  Starbucks requests those fees be reduced to **$94,944.75.**

    **C.**    **The Fees And Costs As Submitted To This Court Are Not Reasonable and Must Be Reduced**

        **1.**    *CML's Fees Should be Reduced Because They Are Impermissibly Block-billed*

The Court should reduce Ms. Phillips' fees petition because it is rife with block billing and vague entries, which makes it impossible to assign time worked to the tasks completed.

Courts may award time for block-billing only if "there is a reasonable correlation between the various activities listed in the block and the time spent completing those tasks." *Middlebrooks*, 2019 WL 936645, at *5. Moreover, for confusing block-billed entries that make it difficult to allocate reasonable time to a specific task, "the blame lies on the party seeking fees because they were in the position to mitigate any confusion." *United States v. NCH Corp.*, No. CIV.A. 05-881 SDW, 2010 WL 3703756, at *5 (D.N.J. Sept. 10, 2010).

CML's billing spreadsheet is rife with block-billing. For example:

- On May 26, 2023, Mr. Console logged 2.5 hours and seeks $2,400 for the following activities: "[s]everal telephone conference with Laura, [r]eview emails, telephone conference with . . . Holly."

- On May 25, 2023, Ms. Mattiacci claims to have worked 10 hours, requesting $8,700 for the following tasks: "[t]rial prep. Review and revise direct outline for plaintiff and rough draft of cross questions/issues. Prep session with client for direct and cross examination. Create binder of rebuttal documents. Communications with trial team regarding Trinsey pay issues. Deeper review of documents of documents not marked at depositions. Internet, research of Holly Hylton alleged racist post, none found. Communications with Kate regarding Holly Hylton's posts. Communications with Kate regarding legal research on hypothetical questions."

- On February 3, 2023, Ms. Oeltjen allegedly worked 6 hours and seeks $3,120 for the following tasks: "[c]ontinue to review and analyze record for updated

chronology of events; exchange emails with client; Teams messages with trial team; telephone conference with Holly Smith Esquire regarding opposition for motion for reconsideration."

- On May 22, 2023, Ms. Smith allegedly worked 11.5 hours, seeking $2,760 for the following activities: "[t]rial prep Teams meeting; [r]evised and finalized jury instructions, verdict sheet, and voir dire; [d]rafted opp to Starbucks' motions in limine; revised same."

While Starbucks does not dispute that CML should be credited for its work, it needs to state with specificity to this Court the tasks that it engaged in. The above block-billed time entries are representative examples of CML's billing spreadsheet, which is littered with block-billing. Courts are limited in their discretion to award fees for block-billing. Courts may award time for block-billing only if "there is a reasonable correlation between the various activities listed in the block and the time spent completing those tasks." *Middlebrooks*, 2019 WL 936645, at *5. Here, however, it is impossible to determine whether a "reasonable correlation" exists between the block-billed activities and the time spent completing those tasks because it is unclear how much time was spent on each specific activity. Neither the Court nor Starbucks should be responsible for allocating time to CML's activities. That's CML's responsibility. Starbucks requests blocked billed fees be reduced by **$236,397.00.**

### 2.   *CML Seeks Patently Excessive Fees*

Ms. Mattiacci claims to have worked 388.8 hours on this case, seeking $338,236 of the $767,356 lodestar. This is excessive. While Ms. Mattiacci of course has a strong reputation as a trial lawyer in Philadelphia, Ms. Phillips (or Starbucks) should not be required to pay for her excessive hours.

For example:

- On January 11, 2023, Ms. Mattiacci allegedly worked 7 hours, seeking $6,090, for the following activities: "trial team meeting regarding Everlaw, and document organization. Review documents."

- On April 25, 2023, Ms. Mattiacci allegedly worked 10.2 hours, seeking $8,874, for the following tasks: "trial prep. Create combination exhibit list from defendants, exhibit and plaintiffs, eliminate duplicates, and re-number. Review videos of depositions."

Despite it being impossible to know how much Ms. Mattiacci spent on each task described above, it is excessive to charge Ms. Phillips for Ms. Mattiacci's time for creating exhibit lists, eliminating duplicate exhibits, re-numbering exhibits, and document organization. These tasks are more suitable for junior associates or paralegals, not a leading trial lawyer who charges $870 per hour. *Glass v. Snellbaker*, No. CIVA 05-1971 (JBS), 2008 WL 4416450, at *6-7 (D.N.J. Sept. 23, 2008) (reducing fees where certain tasks could have been performed by a paralegal).

Moreover, Ms. Phillips should not bear the costs of CML's decision to bring in Ms. Mattiacci to try this case when Ms. Oeltjen and Ms. Smith are talented attorneys in their own right according to Mr. Console's affidavit. Ms. Phillips should not bear the fees stemming from CML's choice to bring in Ms. Mattiacci and the resultant fees for her to get up to speed to learn the case. These hours are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *see also Daggett v. Kimmelman*, 811 F.2d 793, 797 (3d Cir. 1987) (noting that reduction in fee award is appropriate where attorneys spent large numbers of hours for "strategy and other conferences"); *Glass v. Snellbaker*, 2008 WL 4416450, at *6-7.  Starbucks requests those excessive fees be reduced by **$68,150.00.**

### 3.    *CML's Entries are too Vague to Allow the Court to Determine the Reasonableness for the Work Performed*

CML's billing spreadsheet contains several vague entries that lack substance. Courts can "deduct hours when the fee petition inadequately documents the hours claimed." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Moreover, fee petitions must be "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Roccisano*, 2015 WL 3649149, at *7 (citing *Washington v. Philadelphia County*

19

*Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996)). The fee award should exclude any time entries that lack adequate information.

For instance, the billing spreadsheet contains over sixty entries containing the phrase "trial prep" or some alteration thereof. For example:

- On June 6, 2023, Ms. Mattiacci logged 18 hours for $15,660 for: "trial and preparation before and after."

- On June 7, 2023, Ms. Mattiacci again logged 18 hours for $15,660 for: "trial and preparation before and after. Emails to, and from opposing counsel regarding witness order and punitive damages net worth stipulation. Emails to and from Expert regarding econ loss hearing. Review email from opposing counsel regarding defendants response in opposition to motion for sanctions and renewed motion for in limine."

- On June 8, 2023, yet again, Ms. Mattiacci logged 18 hours for $15,660 for: "trial and preparation before and after. Emails to and from opposing counsel regarding net worth stipulation."

In other words, **over three days**, Ms. Mattiacci logged 54 hours and seeks $46,980. In addition to the impossibility of allocating the time she spent on each task due to block-billing, Ms. Mattiacci spent time on "preparation" for trial. It is entirely unclear what "preparation" means. In *Middlebrooks,* opining on Ms. Mattiacci's vague time entries, Judge Kearney wrote: "We know of no client who would agree to pay out of pocket for hundreds of hours of 'worked on trial prep' with no description." *Middlebrooks*, 2019 WL 936645, at *8. Starbucks certainly recognizes that Ms. Mattiacci had to prepare for trial, but it is well settled that for attorneys to get paid in a motion for fees, time entries must be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed. *Roccisano*, 2015 WL 3649149, at *7.

Moreover, a substantial amount of CML's time entries contain vague, catch-all phrases like "emails from/to client," "teleconference," "review file," "internal conference," and "Teams meeting." As Judge Kearney explained in a case where CML also sought fees, "[w]e will not

include time on internal communications with no subject matter. We cannot find an email or internal conference is properly billed to this case when the billing professional does not take the time to describe the subject matter." *Meadowbrooks*, 2019 WL 936645, at *9. Without any subject matter, this Court cannot determine whether the hours spent on each task—when they are not block-billed—were reasonable.

In total, CML entered:

- 1002 hours of blocked-billed time entries. Taking half the duration of each block-billed entry, Starbucks seeks a reduction of $236,397.

- 235 hours of excessive time entries. Accordingly, Starbucks seeks a reduction of $68,150.

- 61 hours of vague or undefined time entries. Accordingly, Starbucks seeks a reduction of $43,160.

- 586.9 hours of time entries dedicated to unsuccessful claims pre-dating August 31, 2022. Starbucks respectfully requests that CML receives 37.5% of these hours, which is a reduction of $158,241.25.

## III.   CONCLUSION

For these reasons (and subject to Starbucks' arguments for judgment as a matter of law or for a new trial), Starbucks respectfully requests the Court decline Ms. Phillips' request for a contingency fee enhancement or reduce the enhancement to a reasonable range, given that Ms. Phillips has failed to demonstrate the exceptional circumstances required to warrant an 85% enhancement. Starbucks also respectfully requests that this Court reduce Ms. Phillips' fee award to only reflect reasonable fees.

Respectfully submitted,

*/s/ Richard R. Harris*

Dated: August 16, 2023

Richard R. Harris (admitted *pro hac vice*)
Tara Param (NJ Bar ID: 394042023)
Kathleen Princivalle (NJ Bar ID 397722022)
HOLLAND & KNIGHT
1650 Market Street, Suite 3300
Philadelphia, PA 19103
Phone 215.252.9594
Fax 215.867.6070
Mobile 917.309.5752
richard.harris@hklaw.com
tara.param@hklaw.com
kathleen.princivalle@hklaw.com

*Attorneys for Defendant,*
*Starbucks Corporation d/b/a*
*Starbucks Coffee Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of August, 2023, the foregoing document was filed using the United States District Court for the District of New Jersey ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

_/s/ Kathleen Princivalle_
Kathleen Princivalle