## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SHANNON PHILLIPS,              :    Civil Action No. 1:19-cv-19432
        Plaintiff,        :
    v.                 :    Hon. Joel H. Slomsky, U.S.D.J.
                      :
STARBUCKS CORPORATION d/b/a   :    **FILED VIA ECF**
STARBUCKS COFFEE COMPANY,    :
        Defendant.      :
                      :

## <u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR A NEW TRIAL, OR IN THE ALTERNATIVE TO REMIT DAMAGES</u>

Richard R. Harris (admitted *pro hac vice*)
Tara Param (NJ Bar ID: 394042023)
Kathleen Princivalle (NJ Bar ID 397722022)
**HOLLAND & KNIGHT LLP**
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone 215.252.9594
Fax 215.867.6070
Mobile 917.309.5752
richard.harris@hklaw.com
tara.param@hklaw.com
kathleen.princivalle@hklaw.com

*Attorneys for Defendant,*
*Starbucks Corporation*
*d/b/a Starbucks Coffee Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     **MS. PHILLIPS' AWARD OF $25 MILLION IN PUNITIVE DAMAGES SHOCKS THE CONSCIENCE AND IS EXCESSIVE IN LIGHT OF THE RECORD EVIDENCE** ...................................................................1

      A.     Starbucks' Conduct Was Not Reprehensible as a Matter of Law ...................6

      B.     **The Ratio Should Not Include Economic Loss Damages Or the Potential Attorneys' Fees Award** .......................................................8

      C.     **Ms. Phillips' Award of Punitive Damages Is Not Comparable to Penalties Awarded for Similar Conduct** ..........................................10

II.    **STARBUCKS HAS NOT WAIVED ARGUMENTS CONCERNING BIASED JURORS**..........................................................................................11

III.   **REFUSAL TO ALLOW STARBUCKS TO INTRODUCE THE VIDEO SURVEILLANCE FOOTAGE IS GROUNDS FOR A NEW TRIAL** .......................11

IV.   **THE ADMISSION OF MR. SYKES' TESTIMONY WAS HARMFUL ERROR**....12

V.     **IT WAS AN ERROR OF LAW NOT TO INCLUDE THE COMPARATOR EVIDENCE INSTRUCTION** ....................................................................14

VI.   **CONCLUSION** .......................................................................................15

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baker v. Nat'l State Bank*,
  801 A.2d 1158 (N.J. Super. App. Div. 2002) ........................................................11

*In re Bayside Prison Litig.*,
  331 F. App'x 987 (3d Cir. 2009) ...........................................................................10

*Booker v. Taylor Milk Co.*,
  64 F.3d 860 (3d Cir. 1995)....................................................................................10

*Donlin v. Philips Lighting N. Am. Corp.*,
  581 F.3d 73 (3d Cir. 2009).....................................................................................10

*Franklin Prescriptions, Inc. v. New York Times Co.*,
  424 F.3d 336 (3d Cir. 2005)...................................................................................15

*Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*,
  244 F. App'x 424 (3d Cir. 2007) .............................................................................9

*Jackson and Coker, Inc. v. Lynam*,
  840 F.Supp 1040 (E.D. Pa. 1993) ...........................................................................5

*Laymon v. Lobby House, Inc.*,
  613 F. Supp. 2d. at 515 ......................................................................................9, 10

*Parexel Int'l Corp. v. Feliciano*,
  No. 04-CV-3798, 2008 WL 5467609 (E.D. Pa. Dec. 4, 2008)...........................9, 11

*Rathemacher v. Int'l Bus. Machines Corp.*,
  No. CIV. 88-3463 (AET), 1992 WL 41719 (D.N.J. Feb. 28, 1992)........................4

*Seneca Ins. Co. v. Beale*,
  No. CV 13-1737, 2018 WL 2984975 (W.D. Pa. June 14, 2018), *aff'd*, 820 F.
  App'x 106 (3d Cir. 2020).......................................................................................13

*Traxler v. Multnomah Cnty.*,
  596 F.3d 1007 (9th Cir. 2010) .........................................................................10, 12

*Walden v. Georgia–Pac. Corp.*,
  126 F.3d 506 (3d Cir. 1997)........................................................................12, 13, 15

*Walker v. Gordon*,
  46 F. App'x 691 (3d Cir. 2002) ..............................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*,
  399 F.3d 224 (3d Cir. 2005)................................................................9

*Wright v. City of Phila.*,
  No. CIV.A. 01-6160, 2007 WL 951421 (E.D. Pa. Mar. 27, 2007).........................13

*Zhang v. Am. Gem Seafoods, Inc.*,
  339 F.3d 1020 (9th Cir. 2003) ...........................................................11

**Statutes**

42 U.S.C. § 1981a..........................................................................10

**Other Authorities**

Federal Rule of Evidence 103(b) ...........................................................13

Federal Rule of Evidence 408...............................................................3

Below, Starbucks addresses the arguments Ms. Phillips makes in response to Starbucks' Motion for a New Trial or, in the Alternative, Remittitur. Ms. Phillips makes several specious waiver arguments to keep the Court from reviewing the substance of Starbucks' arguments. The waiver arguments are unpersuasive and should be rejected. Her heavy reliance on meritless waiver arguments highlights numerous substantive problems with upholding this flawed verdict. Ms. Phillips apparently knows that to be the case as well and thus tries mightily to prevent the Court from reaching the errors. Her efforts should fail.

**I.      Ms. Phillips' Award of $25 Million in Punitive Damages Shocks the Conscience and is Excessive in Light of the Record Evidence**

The jury's outrageous $25 million (combined) punitive damages award went against the weight of the evidence, contradicted legal precedent, and was a miscarriage of justice. Ms. Phillips points to no evidence to support her claim that the "record of extraordinarily reprehensible conduct" by Starbucks supports the award. (Pl's Opp. to Def's Motion for a New Trial or Remittitur (ECF 186) ("Opp.") at 16). Instead, she takes the "kitchen sink" approach and spews 26 purported reasons her punitive damages award is supported by the record. Listing an avalanche of reasons and hoping one sticks cannot shield an excessive and unconstitutional punitive damages award. Each of her proffered "reasons" unravels upon minimal inspection. As such, we discuss the relevant points in more detail below.[1]

*2) Ms. Phillips' disagreement with Starbucks' reason for terminating her employment does not equate to a reckless disregard for her rights.* Starbucks introduced numerous documents outlining Ms. Phillips' failures of leadership in the wake of the arrests, the termination decision, all of which were supported by testimony from three decisionmakers (who are no longer employed

---

[1] Given that many of these purported reasons are not relevant to Ms. Phillips' claim for punitive damages, and have absolutely no bearing on whether or not her extreme and unwarranted damages award should stand, Starbucks will only address those reasons that are relevant to the issue of Ms. Phillips' punitive damages.

by Starbucks and have no skin in the game) who described in detail her leadership deficiencies. In contrast, Ms. Phillips introduced no evidence that Starbucks was aware of prior discrimination against White employees and recklessly failed to act with knowledge of this discrimination. As such, no evidence exists that supports a finding that Ms. Phillip's termination was "reckless."

*4 & 5) There is no evidence that race was considered in the decision-making process.* There is no evidence that anyone at Starbucks made a comment about Ms. Phillips' race, called her a racial slur, or even considered her race during her termination. To the contrary, Ms. Phillips was replaced by Marcus Eckensberger (White). Ms. Phillips tries to avoid this issue by using Starbucks' efforts to address an incident of racial profiling as evidence of discrimination, frequently conflating the two and pointing to the obvious involvement of race in the underlying incident as though it shows race was involved in her termination. It was not. It was vital for Starbucks to address how implicit bias may have contributed to the decision of one of its SMs to call the police on two Black men for doing absolutely nothing. Of course, race relations were on the top of everyone's mind when two Black men were unjustifiably arrested at one of Starbucks' stores. However, **Ms. Phillips' race was not on anyone's mind, including when making the decision to terminate her employment**. This could not have been made clearer when, prior to Ms. Phillips' separation, they made the decision to replace her with Mr. Eckensberger and did so because of his ability to lead through crisis.  *See* Joint Trial Ex. 90 (ECF 165-10).

*6) There is absolutely no evidence of any kind of intentional scheme of race discrimination by Starbucks.* Ms. Phillips cannot point to any document, email, or verbal communication to support her contention that Starbucks had an intentional scheme to terminate White employees. Instead, Ms. Phillips relies only on speculation based on Starbucks firing less than a handful of White employees in a company with over 4,000 employees and ignores that Starbucks employed

2

many White employees in leadership over the Philadelphia market who were not terminated, including Paul Pinto, Nathalie Cioffi, and Rossann Williams. It also ignores the fact that anyone separated in the Philadelphia market during that time was replaced by another White leader. This includes Ms. Phillips (replaced by Marcus Eckensberger), Mr. Trinsey (replaced by Brian Dragone), Ms. Hylton (replaced by Angela Grass), and Mr. Sykes (replaced by Dana Roxas), all four of whom *were replaced by White individuals*. Pinto, Trial Tr., at 89:20-24; Eckensberger, Trial Tr., at 703:14-704:3.

*7) Starbucks did not disregard its policies to terminate Ms. Phillips.* Again, Ms. Phillips confuses diversity, equity and inclusion initiatives with race discrimination. By Ms. Phillips' own logic, any company that engages in implicit bias training or DEI initiatives engages in race discrimination that warrants an award of punitive damages. By the same logic, a company that engages in sexual harassment training discriminates against male employees and should be punished with punitive damages. Such a suggestion is absurd. Further, contrary to Ms. Phillips' repeated statements otherwise, Starbucks never had a policy requiring employees be placed on a Performance Improvement Plan ("PIP") before termination – particularly at Ms. Phillips' level. Witnesses testified that given the need for speedy and strong leadership in light of the crisis, there was no time to place Ms. Phillips on a PIP. This argument is another example of Ms. Phillips misstating evidence to salvage a flawed jury verdict.

*9) Starbucks did not exhibit consciousness of wrongdoing because it did not engage in any wrongdoing.* Not a single Starbucks decisionmaker – all of whom are no longer employed by Starbucks – stated that any malfeasance played a role in the decision to terminate Ms. Phillips' employment. That Starbucks offered Ms. Phillips a lucrative severance package – just as it did for Mr. Trinsey and Mr. Sykes – was simply a recognition that Starbucks wanted to help them

transition from the company. This offer is not evidence of wrongdoing under Federal Rule of Evidence 408. *See Rathemacher v. Int'l Bus. Machines Corp.*, No. CIV. 88-3463 (AET), 1992 WL 41719, at *7 (D.N.J. Feb. 28, 1992).

*10) Starbucks did not deceive the public about its Safe & Welcoming Policy.* Starbucks requesting that Ms. Phillips not publicize changes to its policy until they were finalized and Starbucks was ready to go public with this information is not evidence of reckless indifference for her rights warranting an award of punitive damages. It is a standard business practice.

*11) Starbucks did not use Ms. Phillips to execute a race-based employment decision.* Starbucks did not terminate Mr. Trinsey because of his race. While Ms. Phillips contends that it was "cruel" that she was expected to perform her job duties and suspend Mr. Trinsey's employment pending an ethic and compliance investigation initiated by Mr. Trinsey's subordinates, it is not illegal or "cruel," and it is certainly not the standard for finding race discrimination or a punitive damages award.

*12 & 14) Ms. Phillips claims that Starbucks "advanced a narrative" that Ms. Hylton called the police after Mr. Robinson and Mr. Nelson were in the store for less than 3 minutes.* This is not a false narrative; it is the truth as demonstrated by video surveillance footage. It is Ms. Phillips who continues to push the false narrative that Mr. Robinson and Mr. Nelson were in the store for 20 minutes, citing to an initial report that she knows to be incorrect. As the evidence at trial demonstrated, this report simply recorded Ms. Hylton's version of events **before** Starbucks had the opportunity to investigate the incident and determine that her version of what occurred was not accurate. Starbucks has also never argued that Ms. Phillips is to blame for Ms. Hylton's decision to call the police. Marcus Eckensberger's testimony that Ms. Phillips was responsible for implementing the Safe & Welcoming Policy in Philadelphia is irrelevant because none of the

decisionmakers testified that the Policy had any impact on the decision to terminate Ms. Phillips.

15) *Starbucks could not have given Ms. Phillips a coffee break rather than terminate her.* Given the need for strong leadership in response to the crisis, Starbucks did not have the luxury of time to give Ms. Phillips a coffee break. It needed to bring someone in quickly who was equipped to handle crises – Mr. Eckensberger (White). Regardless, not doing so is certainly not evidence of race discrimination and is even less supportive for a massive punitive damages award.

16) *Starbucks' decision to oppose Ms. Phillips' receipt of unemployment benefits does not support an award of punitive damages. See Jackson and Coker, Inc. v. Lynam*, 840 F.Supp 1040, 1051 (E.D. Pa. 1993) (finding employers have a legal right to contest unemployment benefits, and it is not evidence supporting punitive damages).

17) *Starbucks did not withhold evidence of pretext.* Starbucks did not terminate Ms. Phillips based on her performance before April 2018. As such, her performance reviews before April 2018 have no bearing on her termination. Likewise, that Ms. Phillips previously had good performance reviews has nothing to do with race discrimination or punitive damages.

18) *Ms. Phillips' subordinates being upset about her termination does not warrant an award of punitive damages.* Even if some of Ms. Phillips' subordinates were disappointed when she was terminated, such a fact has no bearing on whether the standard for punitive damages was met. Further, most of the individuals were from outside the Philadelphia market and none of whom were decisionmakers or involved in any way.

20) *Starbucks has not feigned outrage or tried to turn the arrests of Mr. Robinson and Mr. Nelson into a profit-making event.* This inflammatory argument is as false as it is insulting. That Starbucks successfully instituted a strong leadership team to respond to the arrests and resulting outrage, which in turn resulted in an increase in sales does not support an award of punitive

5

damages. To the contrary, it is Ms. Phillips who seeks to profit from the arrests through her litigation.

*22), 23), 24), & 25) Whether Ms. Phillips was very upset or devastated about her termination is not evidence that Starbucks engaged in reckless conduct warranting punitive damages.* Ms. Phillips' disappointment in losing her job does not relate to whether Starbucks' conduct warrants a punitive damages award. Any alleged emotional distress is more properly addressed by her compensatory damages.

*26) Ms. Phillips cannot use her purported economic loss as a basis for punitive damages.* Ms. Phillips was already compensated for this through her award of economic loss damages.

For all the foregoing reasons, there is absolutely no record support for the jury's excessive, unconstitutional and disproportionate award of $25 million (combined) in punitive damages.

**A.     Starbucks' Conduct Was Not Reprehensible as a Matter of Law**

Ms. Phillips cannot establish *Gore's* reprehensibility factor because her purported harm is not physical, but purely economic. *Campbell*, 538 U.S. at 419 (finding that whether the harm is physical rather than emotional is a factor in determining reprehensibility). By claiming the harm is physical, Ms. Phillips is attempting to use personal injury-styled arguments to support an excessive punitive damages award where she brought an action for economic rather than physical harm. The so-called physical injures that Ms. Phillips claims, "depression migraines and lack of sleep," are *symptoms* of her purported emotional distress, which she was already compensated for through her compensatory damages award. Similarly, Ms. Phillips' purported loss of livelihood is not evidence of physical harm supporting the reprehensibility factor. Opp. at 30. Ms. Phillips found a job at Raymour & Flanigan **only 3 months** later, making $155,000 (which increased to $160,000 in January 2021; her base salary at Starbucks was $167,503). Far from losing her livelihood, Ms.

Phillips' salary is in the 75[2] percentile in New Jersey.

There is absolutely no evidence that Starbucks engaged in conduct demonstrating reckless indifference or disregard for the health and safety of others. The only modicum of an argument that Ms. Phillips can conjure is that the jury awarded punitive damages. Opp. at 30. Ms. Phillips' inability to offer any evidence supporting this argument shows there was no evidence supporting the jury's punitive damages award. There is also no support for Ms. Phillips' claim that Starbucks' conduct was not an isolated incident. As explained above, *supra* Sect. I, Nos. 4-7, Ms. Phillips conflates implicit bias training (aimed at creating a more equitable workplace) with race discrimination. There is also no evidence that Starbucks engaged in race-based decision making in terminating Ms. Hylton or Mr. Trinsey—both of whom were replaced by White employees. Neither were terminated due to their race nor testified at trial. As such, Ms. Phillips cannot establish that their terminations were discriminatory.[3]

Ms. Phillips' argument that Starbucks engaged in abusive litigation tactics by failing to produce the video surveillance footage of the arrests is disingenuous and wrong. Ms. Phillips never directly requested the video during discovery, never sent a deficiency letter or moved to compel production of the video. Indeed, Ms. Phillips only raised the issue of the video during the pretrial conference – a week before trial. After which time, Starbucks immediately produced the video. In complete contradiction, Ms. Phillips then fought vehemently to prevent the video from being introduced into evidence at trial (after realizing the video would be unhelpful). Starbucks did not produce the video because, as Starbucks has maintained, it did not terminate Ms. Phillips because

---

[2] In 2022, Ms. Phillips earned 175% more than the median household income in New Jersey, which is $89,703. US CENSUS BUREAU,  https://www.census.gov/quickfacts/fact/table/NJ/SBO001217  (2022). Moreover, Ms. Phillips cannot credibly use her adult children (one of whom lives in Boston) to support her financial vulnerability argument. Phillips, Trial Tr., at 192:25-193:1

[3] There is also no evidence that Starbucks engaged in any intentional or egregious conduct. In support of this point, Ms. Phillips regurgitates her arguments which Starbucks addresses in detail above. For the reasons outlined above, *supra* Sect. I, these factors do not warrant the award of punitive damages.

of the arrests. Starbucks had no reason to believe that Ms. Phillips would discuss the arrests as part of the trial, because the arrests had nothing to do with her termination. Ms. Phillips made the arrest video relevant by mischaracterizing the arrests during her opening argument.

Ms. Phillips relies on *CGB Occupational Therapy, Inc. v. RHA Health Services, Inc.*, where the court considered defendant's abusive litigation tactics in awarding punitive damages. 499 F.3d 184, 193 (3d Cir. 2007). In *CGB*, the defendant engaged in "the repeated use of procedural devices to grind an opponent down, without regard for whether those devices advanced any legitimate interest." *Id.* The tactics by defendant in *CGB* do not compare to the conduct Ms. Phillips claims that Starbucks engaged in.[4] Starbucks' decision not to produce an irrelevant video of the arrests – without Ms. Phillips making a direct discovery request or seeking to compel its production – is not similar to the conduct in *CGB*. Despite this, in *CGB* the Third Circuit remitted the punitive damages award from $30 million to $2 million then further remitted to $750,000. *Id.* at 195. Thus, if anything, the case stands for the proposition that even with egregious litigation misconduct, a punitive damages award of $25 million is utterly excessive.

## B.   The Ratio Should Not Include Economic Loss Damages Or the Potential Attorneys' Fees Award

Ms. Phillips' attempt to manipulate the 1:41.6 ratio between her compensatory and punitive damages award by including this Court's award of economic loss damages in and her potential attorneys' fees award should be rejected. The Court awarded economic loss damages after Starbucks filed its post-trial motions, and Ms. Phillips' potential award of attorneys' fees should not be considered in determining whether the ratio between her compensatory and punitive damages are constitutional and reasonable.

---

[4] In *CGB*, defendant repeatedly stalled litigation, engaged in dishonesty, initiated a meritless collateral proceeding, and constantly threatened to keep the litigation forever, causing CGB's owner to take out a second mortgage out on her home. *See id.* at 195.

Ms. Phillips relies on *Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224 (3d Cir. 2005) and *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 F. App'x 424 (3d Cir. 2007) – both of which are inapposite. *Willow Inn* and *Gallatin Fuels* involve claims under Pennsylvania's insurance bad faith statutes. As recognized by the court in *Laymon v. Lobby House, Inc.*, these holdings should not apply to employment discrimination claims. 613 F. Supp. 2d 504, 515 (D. Del. 2009) ("***The holdings in* Willow Inn *and* Gallatin Fuels *do not address damages in cases of intentional discrimination in employment. … [and] are inconsistent with the plain language of [Title VII.]***"). As the Third Circuit recognized in *Gallatin*, "it would make no sense to compare awards across cases that have utterly dissimilar facts." 244 F. App'x at 436. Indeed, the one employment discrimination case Ms. Phillips does cite to specifically rejects plaintiff's request to include attorneys' fees into the ratio. *See Parexel Int'l Corp. v. Feliciano*, No. 04-CV-3798, 2008 WL 5467609, at *6 (E.D. Pa. Dec. 4, 2008).

Distinguishing *Willow Inn* and *Gallatin Fuels* for argument's sake is simple. First, *Willow Inn* was a bench trial, and the court found that punitive damages are more easily justified when awarded by a judge. *See* 399 F.3d at 231-32. Further, the Third Circuit included attorneys' fees into the constitutional ratio analysis because the actual insurance claim settled before trial. *Id.* at 235-36. Similarly, the *Gallatin Fuels* court only included attorneys' fees as part of the ratio, because "***given the absence of a compensatory damages award***, we must figure out some way to evaluate the punitive damages award under *Gore*'s second guidepost." 244 F. App'x at 436-37. Here, the Court has a compensatory damage award to weigh against the punitive damages award. There is no need to (and this Court must not) include attorneys' fees or economic loss awards as part of its analysis. Moreover, this Court has not determined the amount in attorneys' fees that will be awarded in Ms. Phillips' favor and thus cannot be considered as part of the ratio relative to her

punitive damages.

Economic loss damages should also not be considered in the ratio to punitive damages. *See Laymon*, 613 F. Supp. 2d. at 515 (finding only compensatory damages may be included in the ratio). Ms. Phillips' economic loss is an equitable remedy[5] since it was determined by the Court in a separate hearing. The parties agreed to treat the economic loss award as an equitable remedy by allowing the judge to determine the amount after trial rather than allowing the jury to decide the award. Trial Tr., at 769:25-770:3. This equitable relief should not be considered as part of the ratio. *Laymon v. Lobby House, Inc.*, 613 F. Supp. 2d. at 515.  Ms. Phillips' status as a high earner (causing her purported economic loss damages to be higher than a typical worker despite her only missing 3 months of work) should not entitle her to an exorbitant punitive damages award. As such, Ms. Phillips' pending attorneys' fees award and economic loss award (which is equitable in nature) should not be considered as part of the ratio to her punitive damages.

### C.    Ms. Phillips' Award of Punitive Damages is Not Comparable to Penalties Awarded for Similar Conduct

Ms. Phillips claims that since there is no damages cap under Section 1981 and NJLAD, her punitive damages should not be capped. Under Title VII, compensatory and punitive damages (combined) are capped at $300,000. 42 U.S.C. § 1981a. While there are no caps on damages under Section 1981 and NJLAD, it is typical for courts to limit a punitive damages award to 4 or 5 times (or less) the compensatory damages award as unconstitutional. *See, e.g.*, *In re Bayside Prison Litig.*, 331 F. App'x 987, 993 (3d Cir. 2009) (ratio of 4.5:1 was too high). Ms. Phillips' award is 41.6 times her compensatory damages award. Most tellingly, her citations to various punitive

---

[5] Generally, economic loss is treated as equitable remedy and not compensatory. *See Booker v. Taylor Milk Co.*, 64 F.3d 860, 866 (3d Cir. 1995) (holding back pay is an equitable remedy); *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 87 (3d Cir. 2009) (holding that front pay is an equitable remedy); *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1014 (9th Cir. 2010) (holding front pay is an equitable remedy distinct from compensatory damages).

awards that were upheld were (1) single digit ratios and (2) nowhere near the award here – *Baker v. Nat'l State Bank*, 801 A.2d 1158, 1771 (N.J. Super. 2002)  ($1,800,000); *Parexel Int'l Corp.*, 2008 WL 5101642, at *6  ($1,700,000); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1044 (9th Cir. 2003) ($2,600,000); *CGB Occupational Therapy, Inc.*, 499 F.3d at 187 ($750,000) – ***combining all these cases together the total punitive award is still $18,150,000 million <u>less than</u> what the jury awarded Ms. Phillips.*** *See* Opp. at 36.

## II.    Starbucks Has Not Waived Arguments Concerning Biased Jurors

Starbucks has not waived its argument that failure to dismiss jurors with more than a "hint" of bias was an error of law. Opp. at 5. While arguments raised in a footnote or in passing can sometimes be deemed waived, Starbucks did not raise this argument in passing or in a footnote. Starbucks dedicated a portion of its brief's opening section to this argument including specific citations to the record and case law explaining that these jurors should have been stricken for cause, without requiring Starbucks to use a preemptory challenge. (ECF 167 at p. 4). Moreover, contrary to Ms. Phillips' arguments otherwise, Starbucks preserved its objections to jury selection by objecting during selection to the seating of particular jurors that demonstrated an actual bias against Starbucks.[6] Because Starbucks preserved its objection by properly raising it during jury selection, Ms. Phillips' claim that Starbucks waived it is simply wrong. As such, Starbucks has preserved its right to move for a new trial, as well as appeal, on the issue of jury selection.

## III.    Refusal To Allow Starbucks To Introduce The Video Surveillance Footage Is Grounds For A New Trial

Starbucks did not waive its right to move for a new trial on the basis of the Court's denial of Starbucks' request to introduce the video surveillance footage into evidence. Starbucks did not

---

[6] *See, e.g.,* Jury Selection Tr. (June 5, 2023) at 59:12-61:18 (Starbucks' counsel objected to Proposed Juror Number 5 on the basis that the juror stated he had negative feelings towards Starbucks that demonstrated a personal bias).

raise this argument in passing or in a footnote, but discussed it in detail in its opening section to the brief. (ECF 167 at p. 4). It included citations to the record and case law demonstrating that it intended to specifically address this argument as a basis for a new trial. Failure to admit the video into evidence constituted a manifest injustice that warrants a new trial. Ms. Phillips' counsel maintains that the false narrative she pushed during her opening arguments was not an error because it was based on the report ***created with information from the SM who called the police***. Indeed, counsel saw the video before she made those statements, and it was irresponsible to push a narrative that she knew was false.[7] Ms. Phillips' counsel's misrepresentations in her opening argument – including leading to the jury to believe that an initial description of the incident by the SM who called the police was accurate – made the video content highly relevant. Failure then to allow the video into evidence was a reversible error.[8]

## IV.    The Admission of Mr. Sykes' Testimony was Harmful Error

Contrary to Ms. Phillips' argument, Starbucks has not waived its objection to Mr. Sykes' testimony because it objected to his testimony by moving *in limine* to exclude his testimony prior to trial and objected during his testimony. *See Walker v. Gordon*, 46 F. App'x 691, 694 (3d Cir. 2002); *Walden v. Georgia–Pac. Corp.,* 126 F.3d 506, 517–18 (3d Cir. 1997) ("When a definitive evidentiary ruling is made pretrial, there is surely no point to taking the time at trial to make an objection if the in *limine* ruling admitted certain evidence."). Starbucks has preserved its objection under the Third Circuit's standard: if "(1) the party filed a written pre-trial motion setting forth

---

[7] Without clarification, Ms. Phillips' counsel argued: "They refused to leave, and at one point said, why -- you can call the cops. So [the SM] went back, she called 911." Trial Tr., 33:8-34:6. She also asserted that the store manager asked them "multiple times if they wanted to purchase something;" and that they refused to leave when the police arrived which required the police to call backup. *Id.*

[8] As explained above, *supra* Section I.A, there is no support for the argument that Starbucks engaged in "reprehensible conduct" by not producing the surveillance video during discovery. Opp. at 8. While Ms. Phillips complains that Starbucks produced "over 10 hours of video," upon a cursory review of the video it is clear that only less than 3 minutes of the video show Mr. Rashon and Mr. Nelson.

reasons and case citations in support of the request that the evidence be excluded; and (2) the district court made a "definitive" ruling with no suggestion that it would reconsider the matter at trial[,]" then party "need not formally object at trial" to preserve for post-trial examination. *Id.*[9]

Ms. Phillips appears to agree as far as preservation for appeal purposes. *See* Opp. at p. 9. However, she argues that Starbucks' motion *in limine* and objection during Mr. Sykes' testimony is insufficient to preserve the issue for its Motion for a New Trial. [10] Her proposed construct does not make sense. The point of moving for a new trial post-judgment is to give the trial court an opportunity to correct errors that might lead to reversal on appeal. It would make no sense – and would run contrary to the Court's responsibility to enter a correct judgment – to say that an error is preserved for appeal but somehow not preserved for correction by the trial court before appeal.

Ms. Phillips argues that Mr. Sykes had "first-hand, personal knowledge of the pervasiveness of the race-based discussions at Starbucks. . . ." Opp. at 10. Again, Ms. Phillips wrongfully conflates race issues arising from the arrests with alleged race discrimination *in the decision to terminate her employment*. Tellingly, Ms. Phillips does not and cannot claim that Mr. Sykes' had *any* firsthand knowledge about the termination decision because he did not. Opp. at 10. Firsthand knowledge of the termination decision is the only thing that would have permitted him to offer a lay opinion about the termination process. Allowing him to offer a direct opinion of race discrimination in Ms. Phillips' discharge violated the rule on lay opinion testimony and

---

[9] Starbucks' objections to Mr. Sykes testimony go well beyond one motion in *limine*. Throughout this case Starbucks has reasserted its objections to Mr. Sykes' testimony and his relevance as a non-comparator; Starbucks knew its efforts to exclude his testimony would be futile. Starbucks repeated in its Motion for Summary Judgment, Motion for Reconsideration, and Motion in *Limine* (including during oral arguments) that Mr. Sykes is not a comparator, his testimony is not relevant and that Mr. Sykes should not be allowed to testify concerning matters he has no personal knowledge of. As such, given Starbucks had no need to continue to reassert its objections. Fed. R. Evid. 103(b).

[10] Two cases Ms. Phillips cites – *Wright v. City of Phila.*, No. CIV.A. 01-6160, 2007 WL 951421, at *3 (E.D. Pa. Mar. 27, 2007) and *Seneca Ins. Co. v. Beale*, No. CV 13-1737, 2018 WL 2984975 (W.D. Pa. June 14, 2018), *aff'd*, 820 F. App'x 106 (3d Cir. 2020) – are inapplicable for other reasons. In both cases the defendant failed to preserve their objections by (in *Wright*) failing to move *in limine* or (in *Seneca*) failing to object at trial. In contrast, here, Starbucks objected to Mr. Sykes' testimony by both moving *in limine* and objecting at trial. As such, Starbucks has not waived.

allowed the jury to receive an opinion to which it gave undue influence given Mr. Sykes' own race and position with the company.

Allowing Mr. Sykes' to testify regarding matters he had no personal knowledge about was not a harmless error. Mr. Sykes was the only witness (other than Ms. Phillips) that testified that Ms. Phillips was terminated because of her race (despite having absolutely no knowledge of this). Indeed, the significance of Mr. Sykes' testimony is clear given that Ms. Phillips' counsel spent a significant portion of her closing arguments ***reading Mr. Sykes testimony in its entirety***. That Starbucks had the opportunity to cross-examine Mr. Sykes does cure this error. Opp. at 10. On that view, there would never be harmful error in the admission of testimony so long as the opponent can cross-examine the witness. Here, once Mr. Sykes testified, the damage was done. The genie could not be put back in the bottle. The jury was misled into believing that he was testifying about matters he had knowledge about.

## V.      It Was An Error Of Law Not To Include The Comparator Evidence Instruction

Ms. Phillips argues that Starbucks has not specified the content of the "comparator instruction" and has not demonstrated that failure to include the instruction was plain error. However, Starbucks proposed the content of its comparator evidence instruction in its proposed jury instructions.[11] Moreover, failure to include the comparator evidence was an error that resulted in a miscarriage of justice. The very reason this jurisdiction has recognized that only comparator evidence – evidence that similarly situated employees outside of the plaintiff's protected class were treated more favorably – should be used as circumstantial evidence of discrimination because otherwise a plaintiff may attempt to draw improper parallels. Indeed, while Ms. Phillips admits Mr. Sykes is not similarly situated (Opp. at 12), she repeatedly points to him as evidence that

---

[11] *See* Defendant's Proposed Jury Instruction No. 3 – Similarly Situated Employees (ECF 124).

14

White managers were fired but Black managers were not; thus, using him as a comparator.

Starbucks preserved this objection by moving *in limine* to limit Mr. Sykes' testimony, proposing jury instructions that included a comparator evidence instruction and objecting to the removal of the comparator evidence jury instruction at the pretrial conference. Ms. Phillips relies on *Franklin Prescriptions, Inc. v. N.Y. Times,* 424 F.3d 336 (3d Cir. 2005) to support the proposition that "[i]t is not sufficient to propose an instruction that the Court does not give." Opp. at 11. Starbucks proposed a comparator evidence jury instruction that would have enabled the jury to determine that Mr. Sykes is not a comparator and should not be treated as such, but was ultimately not included in the instructions. Starbucks did more than simply propose an instruction. On the final day of trial, prior to the charging conference, Starbucks argued its Rule 50 motion. Trial Tr., at 667:3-671:1; 675:16-679:14. During oral argument, Starbucks made clear that Mr. Sykes is not a comparator and should not be presented as such. *Id.* Ms. Phillips and the Court agreed that he is not a comparator, but disagreed that he was being offered as one. *Id.* However, his testimony was clearly offered as a comparison to Ms. Phillips. Indeed, this issue has been a hotly contested from as early as November 2021, when Starbucks filed its Motion for Summary Judgment (ECF 68). As such, Starbucks knew that to continue to reassert its objections – after the Court already made its ruling – would be futile. *See Walden*, 126 F.3d at 517–18. Mr. Sykes compared his termination to Ms. Phillips' and the Court allowed that testimony without a comparator instruction, which misled the jury and caused a miscarriage of justice.

## VI.    Conclusion

For the foregoing reasons, Starbucks respectfully requests that the Court grant Starbucks' request for a new trial or, alternatively, to substantially remit the excessive damages award.

Respectfully submitted,

*/s/ Richard R. Harris*

Richard R. Harris (admitted *pro hac vice*)
Tara Param (NJ Bar ID: 394042023)
Kathleen Princivalle (NJ Bar ID 397722022)
HOLLAND & KNIGHT
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone 215.252.9594
Fax 215.867.6070
Mobile 917.309.5752
richard.harris@hklaw.com
tara.param@hklaw.com
kathleen.princivalle@hklaw.com
*Attorneys for Defendant,*
*Starbucks Corporation d/b/a*
*Starbucks Coffee Company*

Dated: September 15, 2023

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of September, 2023, the foregoing document was filed using the United States District Court for the District of New Jersey ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

<u>*/s/ Tara Param*</u>
Tara Param