## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SHANNON PHILLIPS,                    :
                                     :
          Plaintiff,                 :      Civil Action No. 1:19-cv-19432
                                     :
     v.                              :
                                     :      Hon. Joel H. Slomsky, U.S.D.J.
STARBUCKS CORPORATION d/b/a          :
STARBUCKS COFFEE COMPANY,            :
                                     :      ORAL ARGUMENT REQUESTED
          Defendant.                 :
                                     :
                                     :      **FILED VIA ECF**

_____

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS
## <u>RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW</u>

Richard R. Harris (admitted *pro hac vice*)
Tara Param (NJ Bar ID: 394042023)
Kathleen Princivalle (NJ Bar ID 397722022)
**HOLLAND & KNIGHT**
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone 215.252.9594
Fax 215.867.6070
Mobile 917.309.5752
richard.harris@hklaw.com
tara.param@hklaw.com
kathleen.princivalle@hklaw.com

*Attorneys for Defendant,*
*Starbucks Corporation*
*d/b/a Starbucks Coffee Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    THE MARK OF A TRUE LEADER IS A WILLINGNESS TO STEP UP, PUT THEMSELVES OUT THERE, AND LEAN INTO COURAGE – MS. PHILLIPS WAS NOT A TRUE LEADER ...................................................1

II.    MS. PHILLIPS APPLIES THE WRONG LEGAL STANDARD TO HER CLAIMS....................................................................................................2

    A.    The Cumulative Direct and Circumstantial Evidence Presented at Trial Does Not Support Judgment in Ms. Phillips' Favor .........................................4

    B.    The *Erickson* Heightened Standard Applies To Both Ms. Phillips' NJLAD and Section 1981 Claims ..................................................6

III.    STARBUCKS' REASONING FOR MS. PHILLIPS' TERMINATION HAS REMAINED STEADFAST – MS. PHILLIPS WAS NOT FIT TO LEAD HER MARKET THROUGH THE CRISIS ...................................................8

IV.    THERE IS NO EVIDENCE THAT MS. PHILLIPS WAS A SCAPEGOAT ...........10

V.    THERE IS ABSOLUTELY NO BASIS FOR THE AWARD OF PUNITIVE DAMAGES ..............................................................................11

VI.    CONCLUSION ..............................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)............................................................................................................2

*Bouton v. BMW of N. Am., Inc.*,
No. CIV.A. 90-2884 (WGB), 1994 WL 447310 (D.N.J. Apr. 13, 1994), *aff'd*,
29 F.3d 103 (3d Cir. 1994)................................................................................................5

*Boykins v. CLBW Assocs.*,
No. CIV. A. 11-6126, 2013 WL 6506309 (E.D. Pa. Dec. 11, 2013)........................................6

*Bullock v. Children's Hosp.*,
71 F. Supp. 2d 482 (E.D. Pa. 1999) ...................................................................................6

*Catalane v. Gilian Instrument Corp.*,
271 N.J. Super. 476 (App. Div. 1994) ...............................................................................13

*Collins v. Boyd*,
541 F. App'x 197 (3d Cir. 2013) ..............................................................................2, 3, 4

*Ditzel v. Univ. of Med. & Dentistry of New Jersey*,
962 F. Supp. 595 (D.N.J. Apr. 14, 1997) ...........................................................................7

*Erhart v. City of Atl. City*,
No. CV 00-6209 (JHR), 2005 WL 8174791 (D.N.J. Feb. 10, 2005)....................................6, 7

*Erickson v. Marsh & McLennan Co.*,
569 A.2d 793 (N.J. 1990).................................................................................................7

*Huang v. BP Amoco Corp.*,
271 F.3d 560 (3d Cir. 2001)..............................................................................................2

*Hurley v. Atl. City Police Dep't*,
933 F. Supp. 396 (D.N.J. 1996), *aff'd*, 174 F.3d 95 (3d Cir. 1999)........................................13

*Maietta v. United Parcel Serv., Inc.*,
749 F. Supp. 1344 (D.N.J. 1990), *aff'd*, 932 F.2d 960 (3d Cir. 1991)....................................6

*Matczak v. Frankford Candy & Chocolate Co.*,
136 F.3d 933 (3d Cir. 1997)..............................................................................................6

*Mercado v. Wells Fargo*,
No. CV 15-4086, 2017 WL 4862417 (D.N.J. Oct. 27, 2017)...................................................6

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ramirez v. United Parcel Serv.*,
  No. CIV.A. 06-1042, 2011 WL 380657 (D.N.J. Jan. 31, 2011) ...........................................2, 3

*Reeves v. Sanderson Plumbing Prod., Inc.*,
  530 U.S. 133 (2000) .........................................................................................................4

*Rendine v. Pantzer*,
  141 N.J. 292 (1995) ........................................................................................................13

*Ridley v. Costco Wholesale Corp.*,
  217 Fed. App'x 130 (3d Cir. 2007) ..................................................................................12

*Sarkaria v. Summit Anesthesia Assocs., P.A.*,
  No. A-1675-19T3, 2021 WL 222742 (N.J. Super. Ct. App. Div. Jan. 22,
  2021), *cert. denied*, 247 N.J. 219, 253 A.3d 1161 (2021) ....................................................2, 12

*Sharif v. MIQ Logistics, Inc.*,
  No. 3:CV-13-2983, 2014 WL 1653191 (M.D. Pa. Apr. 23, 2014) ........................................13

*Thomas v. Ethicon, Inc.*,
  No. CIV. A. 93-3836, 1994 WL 171345 (E.D. Pa. May 5, 1994) ..........................................6

*U.S. Postal Serv. Bd. of Governors v. Aikens*,
  460 U.S. 711 (1983) .........................................................................................................3

*Weiss v. Parker Hannifan Corp*,
  747 F.Supp. 1118 (D.N.J. 1990) ......................................................................................13

*Williams v. Greyhound Lines Inc.*,
  No. CIV. A. 97-6997, 1998 WL 551981 (E.D. Pa. Aug. 11, 1998), *aff'd*, 203
  F.3d 818 (3d Cir. 1999) .....................................................................................................6

**Other Authorities**

Federal Rule of Civil Procedure 50 ...............................................................................2, 3, 4, 5

Federal Rule of Civil Procedure 56 .......................................................................................2

I.      **THE MARK OF A TRUE LEADER IS A WILLINGNESS TO STEP UP, PUT THEMSELVES OUT THERE, AND LEAN INTO COURAGE – MS. PHILLIPS WAS NOT A TRUE LEADER**

In her sprawling Opposition to Starbucks' Renewed Motion for Judgment as a Matter of Law, Plaintiff Shannon Phillips' ("Ms. Phillips") continues to portray herself as the victim following the arrests of Donte Robinson ("Mr. Robinson") and Rashon Nelson ("Mr. Nelson") over five years ago. By doing so, Ms. Phillips demonstrates her lack of accountability during a crisis – just one of the many elements of leadership that Ms. Phillips was lacking when needed most. It was this lack of leadership that led to Ms. Phillips' termination from Starbucks – not her race.

Following these arrests, Starbucks expected and encouraged Ms. Phillips to be a leader, but Ms. Phillips was unfortunately not up to the task and froze.[1] She could not grasp the seriousness of the situation and was unwilling to take on the challenges nor responsibilities that her role required. And, as it happens when an employee does not do their job, as was the case here, Ms. Phillips was let go and replaced with someone Starbucks knew would not shy away from the challenges. In this case, that person was Marcus Eckensberger (a White male). Rather than accepting the termination for her lack of action and responsibility during this crisis and moving on, Ms. Phillips decided instead to try to manufacture a case of White race discrimination. As demonstrated in its moving brief and as further outlined below, notwithstanding the jury's award, Ms. Phillips has not proven her case as a matter of law, and this Court, therefore, must enter judgment in Starbucks' favor.

---

[1] Mr. Pinto testified why the issues with Ms. Phillips' leadership were not discovered sooner: "That was one of the 'how did we not see this' moments that many of us had, and I know that had hit [Ms. Hymes] really hard where she, you know, said she made a lot of mistakes in terms of, you know, how she approached the market. But, you know, at the time, the Philly market probably did not get as much visitation as some of the other hot button markets like a New York City or a Boston or that type of thing. That would probably be one reason. And, you know, the other part is that we probably just didn't look as closely as we needed to in terms of what was going on." Trial Tr. June 6, at 141:23-142:8.

## II.   <u>MS. PHILLIPS APPLIES THE WRONG LEGAL STANDARD TO HER CLAIMS</u>

To hold onto the legally deficient outcome reached by the jury, Ms. Phillips makes several faulty arguments in her brief. First, Ms. Phillips incorrectly argues that the standard that applied to her claims at summary judgment is inapplicable here as to Ms. Phillips' claims under Rule 50. To the contrary, Rule 50 and Rule 56 motions share the same standard. *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001) (stating the standards under Rules 50 and 56 "mirror" each other); *Collins v. Boyd*, 541 F. App'x 197, 205-06 (3d Cir. 2013) (analyzing the granting of a Rule 50 motion under the *McDonnell Douglas* framework); *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 251 (1986); *see also Ramirez v. United Parcel Serv*., No. CIV.A. 06-1042, 2011 WL 380657, at *5 (D.N.J. Jan. 31, 2011) (granting defendant's Rule 50 Motion because plaintiff failed to make a *prima facie* case of unlawful race discrimination under *McDonnell Douglas*); *Sarkaria v. Summit Anesthesia Assocs., P.A.*, No. A-1675-19T3, 2021 WL 222742, at *7-8 (N.J. Super. Ct. App. Div. Jan. 22, 2021), *cert. denied*, 247 N.J. 219, 253 A.3d 1161 (2021) (affirming directed verdict for defendant where "plaintiff had failed to prove a *prima facie* case of … discrimination").

Ms. Phillips argues that whether she can establish her *prima facie* case is irrelevant at this stage. Instead, she claims that the cumulative direct or circumstantial evidence presented at trial was sufficient for the jury to either disbelieve Starbucks' articulated reason for terminating her employment or believe that an invidious discriminatory reason was more likely than not a determinative cause of Starbucks' decision to terminate her employment.[2] However, just like at summary judgment, Ms. Phillips' claims at trial should be analyzed under the *McDonnell Douglas* standard for the purposes of Starbucks' Rule 50 motion because her claims allege intentional

---

[2] Curiously, while Ms. Phillips argues that the *McDonnell Douglas* standard is irrelevant, she spends the bulk of her argument attempting to demonstrate that she proved pretext on the part of Starbucks under the very standard she claims does not apply. *See* Plaintiff's Opposition to Defendants' Renewed Motion for Judgment as a Matter of Law ("Opp.") (ECF 185) at 27-32.

discrimination. *Ramirez*, 2011 WL 380657, at *5 (granting defendant's Rule 50 Motion because Plaintiff failed to make a *prima facie* case of unlawful race discrimination).

While Ms. Phillips relies on *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983) to support the proposition that the *McDonnell Douglas* test does not apply to this Court's analysis of her claims at the Rule 50 stage, the courts have still recognized that the *McDonnell Douglas* method is a helpful construct to evaluate whether a plaintiff has proven her case after trial. *Collins*, 541 F. App'x at 205 (applying the *McDonnell Douglas* standard, affirming the granting of defendant's Rule 50 motion against plaintiff's Title VII claims, and finding "the District Court necessarily concluded that there was insufficient evidence that the reasons proffered for terminating [plaintiff] . . . were pretextual, and insufficient evidence of racial[] discriminat[ion] . . . to withstand a directed verdict under any Title VII theory of liability"). Therefore, Ms. Phillips' failure to establish her *prima facie* case (while perhaps will not alone warrant this Court to grant judgment as a matter of law), demonstrates that she did not prove her case at trial. Here, not only did Ms. Phillips fail to present cumulative direct and circumstantial evidence supporting her claims at trial, she also failed to establish evidence demonstrating her *prima facie* case of discrimination.

Further, the jury's surprising decision to disbelieve Starbucks' decision-makers, and instead rely on those who had no involvement in the decision-making process does not mean that Ms. Phillips' claims should withstand this motion. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000) ("Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only

a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."). Ms. Phillips fails to point to any evidence that contradicts the witnesses' testimony concerning Starbucks' legitimate, non-discriminatory reasons for terminating Ms. Phillips' employment. *Id.* at 151 (finding "the court should give credence to … 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses'") (quoting 9A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2529, pp. 300 (2d ed. 1995)); *Collins*, 541 F. App'x at 205 (Rule 50 requires that the court "review all the evidence in the record and in doing so, draw all reasonable inferences in favor of the non-moving party without making credibility determinations or weighing the evidence") (cleaned up). The jury misapplied the evidence presented in this case as applied to the law by relying on testimony of those witnesses not in the decision-making process to decide what occurred during the decision-making process.

A.   **The Cumulative Direct and Circumstantial Evidence Presented at Trial Does Not Support Judgment in Ms. Phillips' Favor**

Ms. Phillips' claims fail because she cannot establish any evidence of intentional race discrimination. As Starbucks outlines in its opening brief, Ms. Phillips fails to present either direct or circumstantial evidence supporting her claims. *See, e.g.*, *Bouton v. BMW of N. Am., Inc.*, No. CIV.A. 90-2884 (WGB), 1994 WL 447310, at *8 (D.N.J. Apr. 13, 1994), *aff'd*, 29 F.3d 103 (3d Cir. 1994) (analyzing a Rule 50 motion and finding for the defendant—"[a]lthough sufficient to raise a *prima facie* case under *McDonnell Douglas* and *Burdine*, this evidence is insufficient to satisfy Bouton's ultimate burden of proving intentional discrimination. Bouton offered no evidence to rebut or cast doubt on BMW's articulated reasons for eliminating her position.").

Ms. Phillips spends nearly twenty pages in her Opposition recounting a distorted version of the "facts," which she claims demonstrates that Starbucks intentionally discriminated against

her because she is White. This recitation cannot obviate the fact that Ms. Phillips' case presented at trial was devoid of any direct evidence of discrimination that is typical of employment discrimination cases (especially given the jury's massive and unwarranted award). There were no race-based comments by any of the decision-makers in this matter, no racial epithets,[3] no racial profiling, no racial jokes, no stereotyping made against her, and no lack of opportunities to grow for members of her race. To the contrary, the evidence demonstrated that Ms. Phillips was replaced by employees of her race—Marcus Eckensberger and Linda Johnson—which in over 70 cases was sufficient for a defendant to win summary judgment.[4] Not only was Ms. Phillips' replacement in the same protected class as her, but so were the replacements of Ms. Hylton, Mr. Trinsey, and Mr. Sykes. As such, there is no support for any inference of race discrimination in this case.[5]

Most disturbingly, and further evidencing Ms. Phillips' attempt to make the arrests of Mr.

---

[3] Ms. Phillips claims that a protestor referred to her as a "White supremacist" (Opp. at 8), however, while upsetting, this is not evidence of any discrimination on the part of Starbucks as it was an unrelated third-party who allegedly made this statement.

[4] *See, e.g. Mercado v. Wells Fargo*, No. CV 15-4086 (KM-MAH), 2017 WL 4862417, at *8 (D.N.J. Oct. 27, 2017) (granting summary judgment where "[a]ll three plaintiffs were replaced, and their replacements were of precisely the same racial/ethnic mix as the plaintiffs."); *Williams v. Greyhound Lines Inc.*, No. CIV. A. 97-6997, 1998 WL 551981, at *4 (E.D. Pa. Aug. 11, 1998), *aff'd*, 203 F.3d 818 (3d Cir. 1999) (granting summary judgment on a race discrimination claim, where employee was replaced by another African-American male); *Thomas v. Ethicon, Inc.,* No. CIV. A. 93-3836, 1994 WL 171345, at *6 (E.D. Pa. May 5, 1994) ("Because plaintiff's replacement was another [B]lack [employee], he has no evidence tending to show that non-members of a protected class were treated more favorably than he was."); *Boykins v. CLBW Assocs.*, No. CIV. A. 11-6126, 2013 WL 6506309, at *8 (E.D. Pa. Dec. 11, 2013) (same); *Maietta v. United Parcel Serv., Inc.*, 749 F. Supp. 1344, 1372 (D.N.J. 1990), *aff'd*, 932 F.2d 960 (3d Cir. 1991) (granting summary judgment where employer stated they hired another Italian male to replace plaintiff).

[5] Undeterred by the clear law on this issue, Ms. Phillips argues that she is not required to establish that she was treated less favorably than employees outside of her protected class in order to establish her *prima facie* case. Although evidence of favorable treatment of individuals not in plaintiff's protected class is not an element of a *prima facie* case, it is dispositive when there is no additional evidence supporting an inference of discrimination. *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 939 (3d Cir. 1997) ("favorable treatment outside the protected class is an 'alternative' element to a *prima facie* case"); *see also Bullock v. Children's Hosp.*, 71 F. Supp. 2d 482, 487–88, 488 (E.D. Pa. 1999) ("Common circumstances giving rise to an inference of unlawful discrimination include the hiring of someone not in the protected class as a replacement or the more favorable treatment of similarly situated colleagues outside of the relevant class."); *Erhart v. City of Atl. City*, No. CV 00-6209 (JHR), 2005 WL 8174791, at *15 (D.N.J. Feb. 10, 2005) ("Adverse employment decision claims inherently require a comparison between how the plaintiff and 'someone else' of a different race, gender, religion, or national origin is treated. Another, occupying a different status, must get the job or the promotion in order for plaintiff to establish a *prima facie* case.").

Robinson and Mr. Nelson about her, Ms. Phillips argues that evidence of discrimination somehow does exist because "race in general was something that was top of mind at Starbucks throughout this time period." Opp. at 14. However, what Ms. Phillips continues to ignore is that **her** race was not on the top of anyone's mind. Starbucks' concern that implicit bias may have contributed to Mr. Robinson's and Mr. Nelson's arrests **is not** evidence of discrimination surrounding Ms. Phillips' termination.

Starbucks never considered Ms. Phillips' race in deciding whether she could lead it through the crisis caused by the April 2018 arrests; it just needed strong leadership. That is why it hired Marcus Eckensberger to handle the crisis – a **White male.** Starbucks wanted Ms. Phillips to be the person who could lead Starbucks to address her partners' needs in the wake of Mr. Nelson's and Mr. Robinson's unlawful arrests and the flurry of partner complaints that followed. *See, e.g.*, Pinto, June 6 Trial Tr., at 128:11-12 ("She was someone that we thought had potential to do more."). Instead, Ms. Phillips was not up to this task and chose not to participate, wishing it would all go away. Leaders do not do that.

### B.   The *Erickson* Heightened Standard Applies To Both Ms. Phillips' NJLAD and Section 1981 Claims

As stated above, the Court should apply the same standard here as it would apply at the summary judgment stage. This includes the *Erickson* heightened standard that applies to Ms. Phillips' NJLAD and Section 1981 reverse race discrimination claims. *See Erhart v. City of Atl. City*, No. CV 00-6209 (JHR), 2005 WL 8174791, at *11 (D.N.J. Feb. 10, 2005) (finding that **"the Jury Charge . . . did not adequately explain the heightened burden that is required to establish a prima facie case of reverse discrimination under NJ LAD."**); *Ditzel v. Univ. of Med. & Dentistry of New Jersey*, 962 F. Supp. 595, 603 n. 1 (D.N.J. Apr. 14, 1997) (applying the *Erickson* heightened standard to plaintiff's Section 1981 claims). Ms. Phillips has proffered **no** evidence

that Starbucks is the "unusual employer who discriminates against the majority [i.e., White]." *Erickson v. Marsh & McLennan Co.*, 569 A.2d 793, 799 (N.J. 1990) (quoting a collection of cases).

Ms. Phillips improperly conflates Starbucks' efforts towards implicit bias training (aimed at creating a more inclusive and equitable working environment) with intentional discrimination against White employees. These two concepts are not synonymous. Ms. Phillips argues that testimony that race was at the forefront of the minds of Starbucks in the wake of the arrests somehow supports a conclusion that race must be the reason Ms. Phillips was terminated – it was not. The undisputed credible evidence presented at trial shows that this is not what happened. Ms. Phillips lost her job because she was unable to perform. In an effort to avoid this fact, Ms. Phillips attempts to rely on testimony of Mr. Sykes (her subordinate) as the only evidence supporting the proposition that Ms. Phillips' employment was terminated due to her race. To the contrary, there is no evidence that her race, nor the race of decision-makers, was at the forefront of the decision-makers' minds. Rather than accept the truths at play: (1) Mr. Nelson and Mr. Robinson were improperly arrested in Starbucks on the basis of their race; (2) this unfortunate event made Starbucks take a deep look into its policies and how implicit bias can impact the ability of its Black customers to feel safe, and enacted policies and programs to confront these issues; (3) as the leader in the Philadelphia market, Ms. Phillips was required to lead these initiatives as well as alert upper management to other issues and possibilities for growth and reflection; and (4) Ms. Phillips did not do what she was expected and was not able to handle the pressures of her job in a crisis situation, which led to her termination. While Ms. Phillips attempts to equalize and conflate the arrests with her termination, the Court should not be tricked into doing so.

III.   **STARBUCKS' REASONING FOR MS. PHILLIPS' TERMINATION HAS REMAINED STEADFAST – MS. PHILLIPS WAS NOT FIT TO LEAD HER MARKET THROUGH THE CRISIS**

Even if Ms. Phillips could establish her *prima facie* case of discrimination, she cannot establish that Starbucks' legitimate, non-discriminatory reason for terminating Ms. Phillips' employment was pretext for discrimination. Ms. Phillips falsely argues that Starbucks had "ever-changing reasons" for terminating her employment, which she alleges as evidence as the reason for terminating her employment as pretext for discrimination. Opp. at 27. To the contrary, Starbucks has consistently maintained throughout this litigation, including through its witnesses at trial, that it terminated Ms. Phillips' employment due to her failures of leadership in the wake of the April 2018 arrests. Each of those involved in the decision to terminate Ms. Phillips' employment – none of which are still employed with Starbucks – testified consistently that Ms. Phillips was terminated because of her poor performance.

While Ms. Phillips contests whether she lacked strategic leadership skills, her position is belied by the fact that she was "physically and emotional absent" throughout the crisis. Starbucks required both strategic leadership and physical and mental presence to weather this crisis. Those are both qualities that make a good leader. Starbucks' witnesses testified persuasively and consistently concerning Ms. Phillips' emotional absence – as well as her physical absence – following the April 2018 arrests. *Compare* Pinto, Trial Tr. June 6, at 91:22-25 ("I would say there was a categorical lack of leadership and absent was part of that. And certainly physically absent when she needed to be present."); 138:17-140:2, 141:2-21; (explaining that Ms. Phillips failed to create systems to help baristas develop into higher-level positions and generally did not have the systems in place that Starbucks would expect from a regional manager); 140:9-23 ("One theme that was emerging is that there was a small, select group of stores that Shannon would visit, but not really all of the other stores, so there wasn't sort of an equity in terms of where she spent her

8

time."); *with* Hymes, Trial Tr. June 8, at 527:8-12 ("There was a disconnect in owning some of the challenges that our partners were facing and how to address those, so the strategy was absent because there was an absence of acknowledgement and ownership, so just the fundamentals were missing."). Ms. Phillips argues that she received "a plethora" of "Thank You" notes demonstrating that she had strong leadership skills. However, these notes were not from decision-makers nor were they from the Philadelphia market. They were vastly from subordinates who had no visibility to or knowledge of her performance issues given their title and role. As such, those sending the notes had no personal knowledge of Plaintiff's leadership failures in April 2018.

Ms. Phillips also tries to use Camille Hymes' recommendation of Ms. Phillips for the Temporary Limited Assignment ("TLA") role as evidence she was a good leader. This recommendation does not support Plaintiff's position, because the TLA position did not require the leadership skills that were vital for a Regional Director who was responsible for leading a market that was recovering from a crisis. Pinto, Trial Tr. June 6, at 148:6-13 ("Q. … Was it inconsistent to evaluate her for the community development role while at the same time deciding to separate her from the role that she was in? A. No. That wouldn't have been inconsistent with the way we treat partners. It -- you know, she excelled in that area and if there was an opportunity for us to move her into a place where she excelled, we would have done it. That opportunity didn't happen."). It would not require the crisis management skills and ability to handle the pressure of high stress situation. Instead, it was a government affairs position that was better suited to Ms. Phillips' skills in community development. It also demonstrates that Ms. Hymes did not hold any discriminatory animus towards Ms. Phillips. Indeed, had Ms. Hymes wanted to get rid of Ms. Phillips because of her race, then why would she recommend Ms. Phillips for another position at Starbucks? She would not. Pinto, Trial Tr. June 6, at 149:9-14 ("And this was actually in

conversation as we were talking at the leadership level about the lack of leadership we were seeing. And I recall one conversation in particular with Camille where Camille said, I really hope this role works out for Shannon because it would solve the entire situation moving forward.").

## IV.   THERE IS NO EVIDENCE THAT MS. PHILLIPS WAS A SCAPEGOAT

While Ms. Phillips incorrectly argues that Starbucks' reasons for terminating Ms. Phillips were ever-changing, it was Ms. Phillips' theory that changed *during closing arguments*. Throughout the course of trial, Ms. Phillips argued that Starbucks used Ms. Phillips as a "scapegoat" or "fall guy" even though Ms. Phillips admitted that no one even knew who she was, in contrast to the SM who called the police, and for whom the public was calling for termination. Indeed, it was only after Mr. Eckensberger (Ms. Phillips' White replacement) testified that his face was on the front page of the Philadelphia Inquirer, when Ms. Phillips suddenly pivoted and argued that she was an "internal scapegoat." *Compare* Trial Tr. June 6, 2023, at 42:25-43:7 (Plaintiff's Opening Statement) ("She was the scapegoat. . . . What Starbucks cared about was the brand, and what was best for the brand at the end was to get rid of the white people that were in line and be able to say they took action.") *with* Trial Tr. June 9, at 779:23-780:5 (Plaintiff's Closing Statement) ("Big dinner [with] all the bigwigs from Seattle . . . [and] Ms. Hymes and Ms. Smith and Ms. Williams, they got to go to that dinner, and they got to report back up and took care of it.").

The evidence Ms. Phillips proffers in support of her scapegoat theory is that Ben Trinsey and the SM who called the police (both White) were terminated and Paul Sykes (Black) was not terminated. Ms. Phillips is cherry picking the evidence that suits her version, not the facts. Mr. Pinto, Nathalie Cioffi, and Rossann Williams – who are all White – were not terminated in the period following the arrests, despite working in the market. *See* Trial Tr. June 9, at 804:1-6 (Defendant's Closing Statement). Further, another White District Manager in the market – Michael Lamborn – was also not terminated following the arrests. *Id.* at 697:1-20. Conveniently, Ms.

Phillips fails to mention any of these White employees as part of her analysis, along with the fact that all the replacements of those who were terminated in Philadelphia at the time were White. Moreover, Mr. Sykes testified that he left Starbucks only 2 months after the arrests. Sykes, Trial Tr. June 8, at 638:20-639:9. Although he claims that he resigned, he testified that he received a severance as part of his departure and Mr. Eckensberger explained that he was given a "forced resignation." Trial Tr. June 9, at 703:9-703:11 ("It was, I would say, a forced resignation. He had the opportunity to resign as I presented him the package which enabled him to have a good transition outside of Starbucks."). Further, while Ms. Phillips, Mr. Trinsey, and the SM who called the police were terminated are White, as well as Mr. Sykes (Black), all four of these employees *were replaced by White individuals*. Pinto, Trial Tr. June 6, at 89:20-24; Eckensberger, Trial Tr. June 9, at 703:14-704:3.  As such, there is no evidence that Starbucks was engaged in race discrimination.

## V.     THERE IS ABSOLUTELY NO BASIS FOR THE AWARD OF PUNITIVE DAMAGES[6]

Ms. Phillips falsely claims that Starbucks misstated the standard and that "Defendant did not address the punitive damages standard under NJLAD." Opp. at 35. In Starbucks' moving brief, it squarely addresses the Federal standard as well as the standard under NJLAD. *See* ECF 165-1, at 25-26. Under both standards, there is absolutely no evidence warranting punitive damages in this case. Under Title VII, Section 1981 and NJLAD, plaintiff is required to demonstrate that defendant acted with malice or reckless indifference to the plaintiff's protected rights, and there is

---

[6] With literally no support, Ms. Phillips argues in a footnote that Starbucks "waived any argument concerning punitive damages" because, she contends that neither Starbucks' Motion nor its proposed Order seeks any "relief from the jury's punitive damages award." *See* Opp. at 2 n.1. Starbucks is moving for judgment as a matter of law on all claims, including the jury award for punitive damages. Ms. Phillips even concedes that Starbucks' Memorandum of Law in support of the Motion includes a "discussion related to punitive damages." *See id.* Starbucks squarely argues that the punitive damages award lacks any conceivable basis, and Ms. Phillips knows this. Ms. Phillips' unfounded reliance on waiver indicates her unwillingness to face the substance of Starbucks' arguments.

absolutely no evidence supporting this high standard here. *See, e.g.*, *Sarkaria v. Summit Anesthesia Assocs., P.A., No. A-1675-19T3,* 2021 WL 222742, at *6 (N.J. Super. Ct. App. Div. Jan. 22, 2021), *cert. denied*, 247 N.J. 219 (2021) (under NJLAD the plaintiff must show by clear and convincing evidence that "the defendant's conduct must have been **wantonly reckless or malicious.** There must be an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and wil[l]ful disregard of the rights of another."); *Ridley v. Costco Wholesale Corp.*, 217 Fed. App'x 130, 137 (3d Cir. 2007) (under Title VII and §1981, plaintiff must show by a preponderance of the evidence that her employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual"); *Sharif v. MIQ Logistics, Inc.*, No. 3:CV-13-2983, 2014 WL 1653191, at *3 (M.D. Pa. Apr. 23, 2014) ("The standard for punitive damages is the same under § 1981 and Title VII.") (quoting *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1034 (8th Cir. 2013)).

Like under Section 1981 and Title VII, there must be evidence that defendant demonstrated "[c]onduct more egregious than the mere violation of the NJLAD [which] is needed to support an award of punitive damages." *Hurley v. Atl. City Police Dep't*, 933 F. Supp. 396, 421 (D.N.J. 1996), *aff'd*, 174 F.3d 95 (3d Cir. 1999); *Catalane v. Gilian Instrument Corp.*, 271 N.J. Super. 476, 501 (App. Div. 1994); *Weiss v. Parker Hannifan Corp*, 747 F.Supp. 1118, 1135 (D.N.J. 1990). While NJLAD also requires evidence that there is "actual participation by upper management or willful indifference" – this does not remove the standard that defendant's conduct must be reckless or malicious. *Hurley*, 933 F.Supp. at 421; *Lehmann*, 132 N.J. at 624–25, 626; *Rendine v. Pantzer*, 141 N.J. 292, 314 (1995). Here, there is no evidence, and certainly none that meets the clear and convincing standard, that any of the Starbucks' decision-makers demonstrating willful indifference towards Ms. Phillips, and she has not shown any conduct "more egregious than the

mere violation of the NJLAD" to support her claim for punitive damages under NJLAD.

Ms. Phillips twists a story of "Black versus White" in hopes of winning a massive payout in the wake of an actual crisis. Ms. Phillips continues to state that three White employees, but no Black employees, were fired to support her claim and as a purported basis for punitive damages – even though her position is completely false. First, as explained above, this argument neglects ***four (4) additional White employees who were not fired who also oversaw the market*** – Mr. Pinto, Ms. Cioffi, Ms. Williams, and Mr. Lamborn. Moreover, even those Black employees who were terminated were replaced by White employees. There is absolutely no evidence of a pattern of race discrimination or that race played any factor whatsoever in the decision to separated Ms. Phillips. Moreover, in an effort to concoct a pattern, Ms. Phillips tries to create the impression that there is an equal demographic of White and Black employees within those positions such that it would demonstrate a pattern for three White employees to be fired. In fact, by the time Ms. Phillips filed this lawsuit, there were more White employees in those roles than when she had been employed. Indeed, it seems that Ms. Phillips cannot fathom how she, a White person, could be terminated while certain Black employees were not terminated. Perhaps, as the testimony shows time and again, it is because individuals like Mr. Sykes (at least immediately following the incident) and Ms. Hymes saw what needed to be done, stepped up as leaders, and did not shy away from the crisis.  As Ms. Phillips herself admitted, she saw leading in this moment "above her paygrade":

| Statements By Hymes | Statements By Phillips | Statements By Eckensberger |
|---|---|---|
| "You would often have the regional director as the person that would intro. ***They are the leader of the market, so they would welcome visitors or leaders into the market, talk about the intention of*** | "I don't know that I led any specific meeting that I was in charge of leading[.]" Trial Tr. June 7, at 343: 23 – 343:24.<br><br>"I don't know that they were, you know, looking for me to | "Q. Did you facilitate conversations or meetings while [Rossann Williams, Zeta Smith and other leaders] were in town? A. Yes. Q. How did you do so? A. Well, as I understood what |

| | | |
|---|---|---|
| *the meetings, offer guidance* on how it is a safe space to have open conversations. So they really set the tone for the meetings." Trial Tr. June 8, at 515:16-21. | lead meetings with them. *It was kind of above my pay grade.*" Trial Tr. June 7, at 345:10-12.<br><br>"If it was with high-level leaders like Kevin, Rossann or Roz Brewer, no, I would not have been the one leading those meetings." Trial Tr. June 7, 2023, at 347:11-13. | was happening in the market, formulated a strategy, *I asked for resources, I made sure I had their endorsement and their imprint on that strategy, and then I went to work executing against that strategy*.<br>[…]<br>The intent of the stand-up calls are for others across the organization to have a firsthand look at what's actually happening, what's working, what's not working, and then what resources are needed to solve for some of the issues coming above. So I would work to ensure that that data was communicated effectively, and then as I put the plan together, I was able to start shifting the dialogue to a report out of the plan so they knew what was happening." Trial Tr. June 9, at 699:22-700:25 |

Further, Mr. Eckensberger's testimony regarding the Safe & Welcoming Policy in no way "blame[s] Plaintiff for the call to 911" nor equates her termination to her role in the policy as Ms. Phillips boldly states. Opp. at 37. This has never been Starbucks' position, nor any of its witnesses. Mr. Eckensberger was explaining to the jury that the Safe & Welcoming Policy was not in effect at all 8,000 stores, and instead Regional Directors chose when and where to implement them. Eckensberger, Trial Tr. June 9, at 697:21-699:14. Given the Philadelphia market's unique challenges with drug overdoses and homelessness, Ms. Phillips' added the test to her Philadelphia stores. Neither Ms. Hymes, Ms. Smith, Mr. Pinto, nor Mr. Eckensberger stated that Ms. Phillips was disciplined or terminated as a result of the Safe & Welcoming Policy. Nor was she disciplined

for her role in implementing the policy in the Philadelphia market. Ms. Phillips' termination had nothing to do with the policy nor her race.

## VI.    <u>CONCLUSION</u>

For all the foregoing reasons, Starbucks respectfully requests that the Court grant Starbucks' Renewed Motion for Judgment as a Matter of Law.

Dated: September 15, 2023                                Respectfully submitted,

<u>/s/ Richard R. Harris</u>
Richard R. Harris (*admitted pro hac vice*)
Tara Param
Kathleen M. Princivalle
**HOLLAND & KNIGHT**
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
Phone 215.252.9594
Fax 215.867.6070
Mobile 917.309.5752
richard.harris@hklaw.com
tara.param@hklaw.com
kathleen.princivalle@hklaw.com

*Attorneys for Defendant,*
*Starbucks Corporation d/b/a*
*Starbucks Coffee Company*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 15th day of September, 2023, the foregoing document was filed using the United States District Court for the District of New Jersey ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon all counsel of record.

*<u>/s/ Tara Param</u>*
Tara Param