# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHANNON PHILLIPS, <br><br> *Plaintiff*, <br> v. <br><br> STARBUCKS CORPORATION d/b/a STARBUCKS COFFEE COMPANY, <br><br> *Defendant*. | CIVIL ACTION NO.: 2:19-cv-19432 <br><br> Hon. Joel H. Slomsky, U.S.D.J. |

**PLAINTIFF'S [PROPOSED] SUR-REPLY IN OPPOSITION TO DEFENDANT'S
MOTION FOR A NEW TRIAL OR, IN THE ALTERNATIVE, A REMITTITUR**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………..ii

1. Having previously acknowledged that Plaintiff's economic loss damages must be considered when the Court rules on Defendant's challenge to the amount of the punitive damages award, Defendant now changes course and misstates the law by asserting that because the economic loss award was an "equitable remedy," the Court must not include it as part of its punitive damages/*Gore* second guidepost ratio analysis……………………………………………………………………………1

2. Defendant's Reply Brief argues for the first time that the Court's refusal to allow Defendant to introduce video surveillance footage was an error warranting a new trial. (Defendant's Reply Brief at p. 11.)   This argument has been waived, both by Defendant's failure to raise it in its Opening Brief as well as its failure to present it sufficiently even now in its Reply.  If considered (which it should not be), it should be rejected………………………………………………………………………………5

## Table of Authorities

**Cases**                                                                                                        **Page(s)**

*Baker v. Nat'l State Bank*,
 801 A.2d 1158 (N.J. Super. 2002) .............................................................................. 3,4

*CGB Occupational Therapy, Inc. v. RHA Health Servs.*,
 499 F.3d 184 (3d Cir. 2007) ...................................................................................... 3

*Goldsmith v. Bagby Elevator Co.*,
 513 F.3d 1261 (11th Cir. 2008) ................................................................................. 4

*Johnson v. Elk Lake Sch. Dist.*,
 283 F.3d 138 (3d Cir. 2002) ...................................................................................... 7

*Laborers' Intern. Union of North America, AFL-CIO*,
 26 F.3d 375 (3d Cir. 1994) ........................................................................................ 5

*Layman v. Lobby House, Inc.*,
 613 F. Supp. 2d 504 (D. Del. 2009) .......................................................................... 3

*Paraxel Int'l Corp. v. Feliciano*,
 2008 U.S. Dist. LEXIS 98195 (E.D. Pa. Sept. 10, 2021) ......................................... 3

*Pelzer v. City of Philadelphia*,
 2011 U.S. Dist. LEXIS 2519 (E.D. Pa. Jan. 11, 2011) ......................................... 7-8

*Saffos v. Avaya Inc.*,
 16 A.3d 1076 (N.J. Super. 2011) .............................................................................. 3

*Salitros v. Chrysler Vorp.*,
 306 F.3d 562 (8th Cir. 2002) ..................................................................................... 4

*Sommerfield v. Knasiak*,
 967 F.3d 617 (7th Cir. 2020) ..................................................................................... 4

*State Farm Mut. Auto Ins. Co. v. Campbell*,
 538 U.S. 408 (2003) ...............................................................................................1,2

*United States v. Centeno*,
 793 F.3d 378 (3d Cir. 2015) ...................................................................................... 6

*United States v. Vosburgh*,
 602 F.3d 512 (3d Cir. 2010) .......................................................................................7

*Walker v. Viad Corp*,
    2019 U.S. Dist. LEXIS 24614 (E.D. Pa. Feb. 14, 2019) ............................................................6

*Williams v. Advanced Urgent Care*,
    2016 U.S. Dist. LEXIS 113730 (E.D. Pa. Aug. 25, 2016) ....................................................... 4

*Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*,
    399 F.3d 224 (3d Cir. 2005) ................................................................................................... 3

*Zhang v. Am. Gem Seafoods, Inc.*,
    339 F.3d 1020 (9th Cir. 2003) ............................................................................................... 3

1. **Having previously acknowledged that Plaintiff's economic loss damages must be considered when the Court rules on Defendant's challenge to the amount of the punitive damages award,[1] Defendant now changes course and misstates the law by asserting that because the economic loss award was an "equitable remedy," the Court must not include it as part of its punitive damages/*Gore* second guidepost ratio analysis.** (Defendant's Reply Brief, ECF 200, pages 12-14[2].) In its Opening Brief (and before the Court issued its Order awarding $2,736,755 in economic loss damages, thereby making the punitive damages presumptively constitutional), Defendant correctly recognized that the second *Gore* guidepost directs reviewing courts to consider "the disparity between the **harm or potential harm** suffered by the plaintiff and its punitive damages award." Defendant's Opening Brief (ECF 167-2) at p. 19 (quoting *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (*citing BMW of N. Am., Inc. v. Gore*, [517] U.S. 559, 575 (1996) (emphasis added))). Defendant's assertion now in its Reply Brief that the *Gore* second guidepost ratio must not include Plaintiff's economic losses damages because they were an "equitable remedy" is wholly unsupported and flies in the face of common sense.

As a preliminary matter, the parties jointly requested that the Court make the determination of economic loss damages, which the Court did per its August 16, 2023 Order. (*See* ECF 179,

---

[1] At the conclusion of the July 29, 2023 hearing on economic loss damages, there was a discussion of the briefing schedule for post-trial motions, including Defendant's previously filed motion for a new trial and the issue of punitive damages. The consensus was that the Court needed to determine Plaintiff's economic loss damages before ruling on whether the jury's punitive damages award should remain undisturbed. *See* July 29, 2023 Transcript of Post Trial Motion Hearing at 97:1-100:21 (attached hereto as Exhibit A). Having presumably researched the issue for purposes of its previously filed motion for new trial, Starbucks' counsel stated: "I agree with that analysis, Judge. I do agree that …this Court will have to include in its analysis the economic loss first." *Id.* at 97:11-15.

[2] References to briefs are to the ECF (not internal) page numbers.

180.) Contrary to Defendant's representation, the parties never "agreed to treat the economic loss award as an equitable remedy" and its record citation to Defendant's closing argument does not demonstrate otherwise.  *See* ECF 200 at p. 14. The parties certainly did not agree that economic loss damages to be awarded by the Court did not constitute "harm or potential harm" for purposes of a punitive damages proportionality analysis or "compensatory damages" as the term is generally understood. *See, e.g., Compensatory Damages,* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining compensatory damages as "[d]amages sufficient in amount to indemnify the injured person for the loss suffered."). Back pay and front pay are among the chief losses that an employee suffers when wrongfully terminated; <u>whether or not they are denominated as "equitable" relief does not negate or diminish the fact that they are actual or potential harms suffered by an employment discrimination plaintiff</u>.

The Supreme Court in *State Farm* stated that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." 538 U.S. at 425. There is nothing in the Supreme Court's use in a tort case of the term "compensatory damages" to suggest that it meant something other than "compensatory" as generally understood (*i.e.,* make whole remuneration for actual or potential losses suffered) or was intended to exclude from the ratio's denominator of "actual or potential harm" awards of back pay and front pay wage losses suffered by plaintiffs in employment discrimination cases.  In fact, the Supreme Court stated in *State Farm*: "In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the **general** damages recovered."  538 U.S. at 426 (emphasis added).

Indeed, Defendant has cited no case from within the Third Circuit or otherwise in which an economic loss award in an employment discrimination case was not included in the *Gore* ratio.[3] The only case upon which Defendant relies to support its assertion that the economic loss damages must not be included in the ratio, *Layman v. Lobby House, Inc.*, 613 F. Supp. 2d 504, 515 (D. Del. 2009), does not even involve economic loss damages and simply does not address the issue.[4] The only relevance here of the Magistrate Judge's decision in *Layman* is that the court reduced the award of punitive damages to an amount resulting in an acceptable ratio of **16:1**. 613 F. Supp. 2d at 518.

Moreover, every one of the employment cases cited by Defendant in its own briefs includes economic loss damages as harm for purposes of the *Gore* ratio.[5] For example, in *Baker v. Nat'l*

---

[3] Even the cases cited by Defendant for the general proposition that economic loss is treated as an equitable remedy recognize that back pay and front pay awards are for purposes of making the employment discrimination whole and restoring her to the position she would have been in had the discrimination not occurred.

[4] *Layman:* a) addressed whether an award of attorney's fees -- not economic loss damages -- should be considered in the *Gore* ratio's numerator; b) considered only a claim under Title VII (not Section 1981 or NJLAD claim); c) considered in particular whether the combining of compensatory damages and attorney's fees and costs to the prevailing party under Title VII as "another type of relief" authorized by 42 U.S.C. § 2000e-5(g)(B)(l) is inconsistent with the statutory definition of compensatory damages under 42 U.S.C. § 1981a (which is inapplicable to Section 1981 and NJLAD); and d) was decided before the Third Circuit's decision in *CGB Occupational Therapy, Inc. v. RHA Health Servs.*, 499 F.3d 184, 193 n.4 (3d Cir. 2007), which explicitly noted that it was not saying (when limiting the ratio's denominator to actual harm and not taking into account mere suspicions of unquantified harm) that the ratio's denominator should in all cases be limited to the amount of compensatory damages awarded by the jury, and cited favorably in support to *Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 234-37 (3d Cir. 2005) for its inclusion in the denominator of attorney's fees in addition to compensatory damages.

[5] *See e.g., Baker v. Nat'l State Bank,* 801 A.2d 1158, 1771 (N.J. Super. 2002) (employment discrimination case under NJLAD that included in its *Gore* ratio analysis front pay, back pay and prejudgment interest); *Zhang v. Am. Gem Seafoods, Inc.,* 339 F.3d 1020 (9th Cir. 2003) (Section 1981 claim including back pay and front pay); *Paraxel Int'l Corp. v. Feliciano,* 2008 U.S. Dist. LEXIS 98195 (E.D. Pa. Sept. 10, 2021) (*Sarbanes-Oxley* wrongful termination case that included back pay as a measure of "potential harm"); *Saffos v. Avaya Inc.,* 16 A.3d 1076, 1090-91 (N.J. Super. 2011) (NJLAD discrimination case, including front pay and back pay).

3

*State Bank,* 801 A.2d 1158, 1771 (N.J. Super. 2002), an employment discrimination case under the NJLAD cited by Defendant in both its opening and reply briefs, the court <u>specifically addressed and rejected</u> the argument that the relevant compensatory damages for purposes of the proportionality analysis are only the emotional pain and suffering awards. The court explained:

> We reject the Bank's contention that compensatory damages means only pain and suffering. Compensatory damages include money damages awarded to a plaintiff "by way of compensation, to make up for some loss that was not, originally, a money loss but one that ordinarily may be measured in money." Dan B. Dobbs, Remedies, "Principle of Damages,"§ 3.1 at 135 (3d ed. 1973). **In an employment discrimination case, such damages include back pay, provided to make the discriminatee whole by reimbursement of the economic loss suffered, and front pay, provided to compensate the employee for future lost wages attributable to the employer's misconduct.**

*Baker,* 801 A.2d at 158 (emphasis added). Courts addressing punitive damages awards for employment discrimination in violation of federal law likewise <u>include</u> economic loss damages in the *Gore* ratio. For example, Judge DuBois included the court's back pay award in the ratio when considering the *Gore* ratio in a Section 1981 wrongful termination case. *Williams v. Advanced Urgent Care*, 2016 U.S. Dist. LEXIS 113730 (E.D. Pa. Aug. 25, 2016).[6]

When Plaintiff's economic loss damages award of $2,736,755 is properly included along with the jury's award of $600,000 in compensatory damages in the *Gore* harm denominator, the

---

[6] *See also, e.g., Salitros v. Chrysler Vorp.*, 306 F.3d 562, 576 (8th Cir. 2002) (ADA cases discussing front pay as equitable remedy and including it as harm in punitive damages proportionality analysis); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1283 (11th Cir. 2008) (Section 1981 case including backpay in harm ratio denominator and upholding punitive damages award with 9.2:1 ratio); *Sommerfield v. Knasiak,* 967 F.3d 617, 620-624 (7th Cir. 2020) (Section 1981 case including back pay in harm ratio and upholding punitive damage award with 5.8:1 ratio, and noting that noting that punitive damage awards "are not conditioned upon the presence of compensatory damages.").

4

result is a single digit punitive damages to harm ratio (7.5:1) that is constitutionally sound, and the punitive damages award should not be disturbed.

**2. Defendant's Reply Brief argues for the first time that the Court's refusal to allow Defendant to introduce video surveillance footage was an error warranting a new trial. (Defendant's Reply Brief at p. 11.) This argument has been waived, both by Defendant's failure to raise it in its Opening Brief as well as its failure to present it sufficiently even now in its Reply. If considered (which it should not be), it should be rejected.**

Defendant did not actually argue in its Opening Brief that the Court erred in refusing to allow Starbucks to introduce a video exhibit or that such refusal is grounds for a new trial. What Defendant asserted (in passing and in a footnote) was that the Court erred by permitting Plaintiff's counsel to make certain statements (falsely characterized by Defendant as material misrepresentations) during her opening statement. *See* Defendant's Opening Brief, ECF 167, at p. 11, n.2) ("the Court wrongfully permitted Plaintiff to argue during their opening that 20 minutes passed before the police were called") and p. 13 (alleged errors "continued during Opening Arguments when Plaintiff's counsel made ***false material misrepresentations***" (emphasis in original), and citing only to Plaintiff's opening statement in the trial transcript). Plaintiff's Opposition refuted Defendant's argument on the grounds, *e.g.,* that Defendant did not object to counsel's statements, and Plaintiff's counsel's statements were not false. Defendant may not raise a new argument in its Reply Brief. *Bernstein v. City of Atlantic City*, 2011 U.S. Dist. LEXIS 68781, *12 (D.N.J. June 27, 2011); *see also Laborers' Intern. Union of North America, AFL-CIO*, 26 F.3d 375, 398 (3d Cir. 1994) ("an issue is waived unless a party raises it in its opening brief"); *Walker v. Viad Corp*, 2019 U.S. Dist. LEXIS 24614, at *39-41 (E.D. Pa. Feb. 14, 2019) (Slomsky, J.) ("[r]eply briefs are not the proper vehicle to present a new argument").

5

Even if the Court were to consider Defendant's new argument that an error was committed by the Court in excluding evidence (which it should not), that argument has not been sufficiently presented or preserved. The Reply Brief does not identify the video evidence, specify the ruling at issue, or articulate an error warranting the extraordinary relief of a new trial. <u>It is not even clear from Defendant's Reply what video evidence it claims was erroneously excluded</u>. Defendant states that Plaintiff's counsel saw the "video" at issue <u>before</u> making her opening statement on June 6, 2023, and that she therefore irresponsibly "pushed" a false narrative during her opening. (*See* ECF 200 at p. 16.) But the video that supposedly shows that the two men were in the store for less than three minutes and thus purportedly demonstrates the falsity of the "pushed narrative" is the 10 hours of continuous time-stamped surveillance video (*see* ECF 200 at p. 16, n.8) that was <u>not even provided to Plaintiff's counsel until June 6, 2023 at 9:23 p.m. – i.e., *after* opening statements were made.</u> *See* ECF 136 p.7 (transmittal email). Issues not squarely argued by a party are not preserved and are deemed waived. *See United States v. Centeno*, 793 F.3d 378, 388 n.9 (3d Cir. 2015).

If the Court were to consider Defendant's argument (which it should not), it should be rejected. If the video evidence Defendant argues was erroneously excluded was the 40 second video clip provided to Plaintiff before trial (TR-005), the Court *permitted* its admission if Defendant could authenticate it in a proper way. (*See e.g.,* Tr. 249:18-21.) If the video evidence Defendant argues was erroneously excluded was the 10 hours of surveillance video which purportedly demonstrates the falsity of the narrative "pushed," its exclusion does not warrant a new trial. First and foremost, the Court's exclusion of the video surveillance footage was not error. The Court properly concluded that it should have been produced years before in discovery and that its production in the midst of trial "is just absolutely prejudicial to the.. plaintiff in this case,

6

because counsel has the right to examine the video, to see whether or not the videos are tampered with or edited or deleted or if there was any changes." Tr. 250:25-251:5. The Court concluded that the video had some relevance, but that its probative value was outweighed by the undue prejudice it would cause Plaintiff and should be excluded under Fed. R. Evid. 403. *See* Tr. 259:12-260:13.

The Third Circuit has explained: "The Rule 403 balancing inquiry is, at its core, an essentially discretionary one that gives the trial court significant latitude to exclude evidence." *Johnson v. Elk Lake Sch. Dist.,* 283 F.3d 138, 156 (3d Cir. 2002). The Third Circuit has further explained that the Rule 403 inquiry is inexact, "requiring sensitivity on the part of the trial court to the subtleties of the particular situation, and considerable deference on the part of the reviewing court to the hands-on judgment of the trial judge." *United States v. Vosburgh,* 602 F.3d 512, 537 (3d Cir. 2010). In this case, the Court properly conducted a balancing test as required under Rule 403 and reached a sound conclusion. Moreover, even if error (which it was not), Defendant has not demonstrated any way in which the Court's ruling was prejudicial to it. Defendant's Reply implicitly concedes that the statements made by counsel in her opening were not false, and it has not demonstrated or even argued that it could not address the supposed falsity of the "narrative pushed" in some way other than the admission of the video surveillance footage that it improperly withheld from Plaintiff.

In sum, even assuming *arguendo* that Defendant's new argument was not waived and has been squarely presented such that the Court should even now consider it (which it should not), and assuming further that the Court's ruling was error (which it was not), Defendant fails to meet the demanding standard necessary to warrant a new trial based on a Fed. R. Evid. 403 ruling and its motion should be denied. *See, e.g., Pelzer v. City of Philadelphia*, 2011 U.S. Dist. LEXIS 2519,

7

*11 (E.D. Pa. Jan. 11, 2011) (denying motion for a new trial where moving party failed to demonstrate not only that Rule 403 evidentiary ruling was erroneous, but also that it was prejudicial, affected a substantial right, and resulted in a miscarriage of justice).

                              Respectfully submitted,

                              **CONSOLE MATTIACI LAW, LLC**

By:    */s/ Susan M. Saint-Antoine*
        Laura C. Mattiacci
        Katherine C. Oeltjen
        Susan M. Saint-Antoine
        Holly W. Smith (*pro hac vice*)
        1525 Locust Street, Ninth Floor
        Philadelphia, PA 19102
        (215) 545-7676

*Attorneys for Plaintiff, Shannon Phillips*

Dated: September 19, 2023

# Exhibit A

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANNON PHILLIPS, | Case No. 1:19-cv-19432-JHS-AMD |
| Plaintiff, | |
| v. | Courtroom 13A |
| | U.S. Courthouse |
| STARBUCKS CORPORATION *doing business as* STARBUCKS COFFEE COMPANY, | 601 Market Street |
| | Philadelphia, PA 19106 |
| | July 19, 2023 |
| Defendant. | 10:10 a.m. |

### TRANSCRIPT OF POST TRIAL MOTION HEARING
### BEFORE HONORABLE JOEL H. SLOMSKY
### UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff:         Console Mattiacci Law, LLC
                           By:  LAURA C. MATTIACCI, ESQ.
                                KATHERINE OELTJEN, ESQ.
                                HOLLY SMITH, ESQ.
                           1525 Locust Street, 9TH Floor
                           Philadelphia, PA 19102

For the Defendant:         Littler Mendelson, PC
                           By:  TARA PARAM, ESQ.
                           1601 Cherry Street, Suite 1400
                           Philadelphia, PA 19102

                           Holland & Knight LLP
                           By:  KATHLEEN M PRINCIVALLE, ESQ.
                                RICHARD R. HARRIS, ESQ.
                           2929 Arch Street, Suite 800
                           Philadelphia, PA 19104

ESR Operator:              Matthew Higgins

TRANSCRIPTION SERVICE:     TRANSCRIPTS PLUS, INC.
                           435 Riverview Circle
                           New Hope, Pennsylvania 18938
                           Telephone:  215-862-1115
                           e-mail CourtTranscripts@aol.com

Proceedings recorded by electronic sound recording, transcript
              Produced by transcription service.

**1**     MS. MATTIACCI:  Can I ask, Your Honor, before you
**2** dismiss us if we could maybe look at that briefing schedule
**3** then, if you want briefs on this issue before ruling?  Because
**4** Plaintiff's response to the Defendant's motion for a new trial
**5** and the related motions are heavily contingent on the punitive
**6** damages issue, which is -- it can't be fully addressed without
**7** a ruling from Your Honor on the economic loss issue.  Or maybe
**8** it can.  I'm just -- I'm just trying -- to try to see how to
**9** best roll this out that makes sense to do the briefing
**10** because --
**11**     MR. HARRIS:  I agree with that analysis, Judge.  I do
**12** agree that --
**13**     THE COURT:  All right.
**14**     MR. HARRIS:  -- this Court will have to include in
**15** its analysis the economic loss first.
**16**     THE COURT:  Yeah, obviously there are a number of
**17** post trial matters that have to be considered and -- which
**18** means I have to render an -- get briefs from you and render an
**19** opinion on the economic damages before I rule on the other
**20** motions.
**21**     So, August 7th may not be a realistic date.  I know
**22** both sides wanted it in terms of a date to -- responses, but
**23** it's becoming unrealistic.  And I would like to -- if you order
**24** the transcript of today on an expedited basis, when would you
**25** have it?  This week?

98

1           MR. HARRIS:  Probably this week, Judge.
2           THE COURT:  Probably this week.  So today is the
3    19th?
4           MR. HARRIS:  Yes.
5           MS. MATTIACCI:  Yes.
6           THE COURT:  Friday is the 21st.
7           MR. HARRIS:  Yes.
8           THE COURT:  Do you think you can have briefs in by
9    the 28th?
10          MS. MATTIACCI:  Yes, Your Honor.
11          THE COURT:  All right.  And what I'll do is I'll try
12   my best -- I can't guarantee it -- maybe to get an opinion out
13   of an economic loss within two weeks after that.
14          MR. HARRIS:  Understood.
15          THE COURT:  Which would take us to what date?
16          MR. HARRIS:  My vacations, but that's -- but I guess
17   not anymore.
18                          (Laughter)
19          THE COURT:  I try to avoid August, but I --
20          MS. MATTIACCI:  Two weeks from the 21st, Your Honor,
21   is August 4th, that's a Friday.
22          THE COURT:  So August 4th -- so if I get an opinion
23   out by August 4th, then perhaps -- when is your vacation?
24          MR. HARRIS:  It's the first week in August.
25          THE COURT:  All right.  Then why don't I, at that

99

1  point, give the parties -- let's say till Wednesday, August 16
2  to respond.
3              MR. HARRIS:  Yes.
4              THE COURT:  And then if there is any reply, seven
5  days after that.
6              MR. HARRIS:  Yes.
7              THE COURT:  All right?
8              MR. HARRIS:  Very good.  Thank you.
9              THE COURT:  Okay.  All right, would that be a good
10 briefing schedule?
11             MS. MATTIACCI:  Are you referring just to the
12 economic loss?
13             THE COURT:  Um?
14             MS. MATTIACCI:  Are you referring just to the
15 economic loss?
16             THE COURT:  No, no, no.
17             MS. MATTIACCI:  All of it?
18             THE COURT:  What did we say, by the 28th, you would
19 have your memorandums in on economic loss?
20             MR. HARRIS:  Yes.
21             MS. MATTIACCI:  Okay.
22             THE COURT:  Hopefully by August 4th, I can render an
23 opinion on that.
24             MS. MATTIACCI:  I hear you, Your Honor.  I'm sorry, I
25 missed that.

**1**   THE COURT:  And then I'll give you some additional
**2** time to respond because the August 7th date doesn't make sense
**3** at this point.  I said, August -- Wednesday, August 16th to
**4** respond to both sides on post around motions --
**5**   MR. HARRIS:  Yes.
**6**   THE COURT:  -- and seven days to file any replies.
**7**   MS. MATTIACCI:  Great.
**8**   THE COURT:  All right?
**9**   MR. HARRIS:  Yes; thank you.
**10**   THE COURT:  And then I'll make more decisions.
**11**   MR. HARRIS:  Yes, Judge; thank you.
**12**   THE COURT:  Okay?
**13**   MS. MATTIACCI:  Great.
**14**   THE COURT:  All right?  I think that's the best way
**15** to do this then.  And my goal is to have complete resolution
**16** early in September because I know this is important to both
**17** sides.
**18**   MR. HARRIS:  Yes, Your Honor; thank you.
**19**   MS. MATTIACCI:  Great.
**20**   THE COURT:  All right?
**21**   MS. MATTIACCI:  Thank you, Your Honor.
**22**   THE COURT:  And I always encourage counsel to discuss
**23** the possibility of settling the case.
**24**   MR. HARRIS:  Yes.
**25**   THE COURT:  And if you ever do, just send in a

1  letter.
2           MR. HARRIS:  Will do.
3           THE COURT:  Okay, and we'll do the Rule 41 order.
4  All right?
5           MR. HARRIS:  Yes.
6           MS. MATTIACCI:  Okay, Your Honor.
7           THE COURT:  We'll stand in recess.
8           MR. HARRIS:  Thank you.
9           MS. MATTIACCI:  Thank you, Your Honor.
10          THE CLERK:  All rise.
11      (Whereupon, at 12:59 p.m., the hearing was adjourned.)
12
13                    CERTIFICATE OF TRANSCRIBER
14
15      I, KAREN HARTMANN, a certified Electronic Court
16  Transcriber, certify that the foregoing is a correct transcript
17  from the electronic sound recording of the proceedings in the
18  above-entitled matter.
19
20  *[signature: Karen Hartmann]*
21
22  Karen Hartmann, AAERT CET 475  Date:  July 20, 2023
23  TRANSCRIPTS PLUS, INC.
24
25